United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DANNY LANE, BEVERLY LANE, and
MERCEDES GUERRERO, individually,
and for other persons similarly situated,

    Plaintiffs,

  v.

WELLS FARGO BANK, N.A.,

    Defendant.

No. C 12-04026 WHA

**ORDER DENYING MOTION TO DISMISS AND VACATING HEARING**

## INTRODUCTION

In this putative class action involving flood and hazard insurance on home mortgages, defendant moves to dismiss plaintiffs' claims under the Bank Holding Company Act and under California's Unfair Competition Law. Defendant also moves to dismiss plaintiffs' theory that defendant wrongfully backdated insurance policies. For the reasons stated below, defendant's motion is **DENIED**.

## STATEMENT

Defendant Wells Fargo Bank, N.A. serviced the home loans of plaintiffs Danny and Beverly Lane and Mercedes Guerrero.[*] Both homes were located in flood hazard areas, and

---

[*] The Lanes have a mortgage under the laws of Arkansas, while Guerrero has a deed of trust under the laws of California. For simplicity, this order will refer to both of plaintiffs' home loans as mortgages.

1  plaintiffs were required to maintain flood insurance.  If plaintiffs did not maintain adequate

2  flood insurance, defendant could purchase flood insurance on the property and charge the cost

3  back to plaintiffs in a process known as "force-placement" of insurance.

4       The amended complaint alleges defendant force-placed flood insurance on plaintiffs'

5  homes throughout 2010 and 2011.  In doing so, defendant allegedly entered into exclusive

6  purchasing agreements with two insurers and received "kickbacks" in the form of unearned

7  commissions to its subsidiary, Wells Fargo Insurance ("WFI") (Amd. Compl. ¶¶ 4–5).

8  Under plaintiffs' backdating theory, to maximize the kickbacks, defendant force-placed

9  insurance policies with retroactive effective dates, even though defendant was aware that there

10 were no claims during the lapsed period (*id.* at ¶¶ 71–72).

11      In November 2012, defendant moved to dismiss the complaint (Dkt. No. 45).  In January

12 2013, an order issued granting in part and denying in part defendant's motion to dismiss (Dkt.

13 No. 70).  The order permitted plaintiffs to move to file an amended complaint (*id.* at 23).

14 Plaintiffs did so, adding a new plaintiff to raise California claims and a new claim under the

15 Bank Company Holding Act (Dkt. No. 76).  Defendant opposed because the additions violated

16 Rule 16(b) in modifying a scheduling order (Dkt. No. 77).  On March 20, an order issued

17 granting leave to amend (Dkt. No. 82).

18      Defendant now moves again to dismiss a number of plaintiffs' claims for failure to state a

19 cognizable legal theory:  plaintiffs' backdating theory; plaintiffs' claim under the Bank Holding

20 Company Act, 12 U.S.C. 1972(1)(B); and, plaintiffs' claim under California's Unfair

21 Competition Law, California Business and Professions Code Section 17200 *et seq*.  This order

22 finds that oral argument is unnecessary, and the hearing for May 2 is **VACATED**.

### REQUEST FOR JUDICIAL NOTICE

24      Defendant requests judicial notice be taken of the mortgage for plaintiff Guerrero (Dkt.

25 No. 89), which plaintiffs do not oppose.  Guerrero's mortgage is referenced in the amended

26 complaint; however, a blank form mortgage is appended thereto because Guerrero has not

27 located the actual mortgage (Amd. Compl. ¶ 41, Exh. B).  It appears that both parties' versions

28

of Guerrero's mortgage have identical language (RJN Exh. 1; Amd. Compl. Exh. B). Accordingly, for the purposes of this order, defendant's request for judicial notice is **GRANTED**.

## ANALYSIS

Defendant moves to dismiss a number of plaintiffs' claims for failure to state a "cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Defendant does not specify under which rule its motion is made, but invokes the pleading standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, this order will analyze defendant's motion under Rule 12(b)(6).

### 1. BACKDATING THEORY.

Defendant moves to dismiss claims based on plaintiffs' backdating theory. None of plaintiffs' claims exclusively relies on the backdating theory; rather, the theory supports several of plaintiffs' claims (Amd. Compl. ¶¶ 106, 131). Defendant contends that because federal law allegedly permits backdating of flood insurance policies to ensure continuous coverage and because plaintiffs' mortgages allegedly permit backdating, plaintiffs have failed to state a cognizable legal claim (Br. 8, 19). Neither of these arguments is persuasive.

#### A. Federal Law.

Defendant points to various statutory and administrative sources to show that federal law requires backdating of flood insurance policies to the date upon which the coverage lapsed, but none of these authorities is persuasive.

The National Flood Insurance Program prohibited lenders from issuing loans for any property unless flood insurance is in place "for the term of the loan." 42 U.S.C. 4012a(b)(1)(A). Defendant contends that this language required continuous coverage, and accordingly, backdating force-placed insurance was also required (Br. 15). While the statute suggests that continuous coverage was necessary, the plain language of the statute did not *require* backdating force-placed insurance and charging borrowers the increased cost. Moreover, the language did not even appear in the section that permits force-placement of insurance. The statute cannot be reasonably read to have required backdating of force-placed insurance.

3

Administrative guidance also suggests that the statute did not *require* backdating force-placed insurance. In late 2011, the Office of the Comptroller of the Currency and various other banking agencies issued new guidance regarding continuous coverage of force-placed insurance. Interagency Questions and Answers Regarding Flood Insurance, 76 Fed. Reg. 64175, 64180 (Oct. 17, 2011). The guidance stated that a servicer may charge a borrower for expired insurance during the notice period "if the borrower has given . . . its servicer the express authority to charge the borrower for such coverage as a contractual condition of the loan being made." *Ibid.* The understanding from administrative agencies did not square with defendant's interpretation that the statute requires backdating of insurance. Moreover, defendant's alleged practice did not appear to comply with these requirements because plaintiffs' mortgages did not expressly permit charging for backdated force-placed insurance (RJN Exh. 1 ¶ 4; Amd. Compl. Exh. A ¶ 5).

Defendant also points to two other federal authorities that allegedly permit backdating, but both are recent changes and were not in effect at the time of the alleged backdating. Effective January 2013, the statute provided that servicers "may charge the borrower for . . . premiums or fees incurred for coverage beginning on the date on which flood insurance coverage lapsed or did not provide a sufficient coverage amount." 42 U.S.C. 4012a(e)(2). Defendant contends that the amendment was meant to clarify existing law that permitted backdating, citing House Report No. 112-102 (2011). The House Report, however, was part of a different bill that never passed the Senate and never became law; it therefore has little persuasive value in interpreting the law that Congress did, in fact, enact.

Similarly, defendant cites a recent comment from the Consumer Financial Protection Bureau that permits retroactive force-placement of hazard insurance policies. Mortgage Servicing Rules, 78 Fed. Reg. 10696, 10891–92 (Feb. 14, 2013). This comment, however, will not be in effect until January 2014. *Id.* at 10696. Defendant's assertion that this comment clarified existing law is also unpersuasive.

Accordingly, federal law did not *require* backdating of insurance during the relevant time frame alleged in plaintiffs' amended complaint. While this order finds that federal law did not

4

*require* backdating at the time, plaintiffs' mortgages provide that the lender may take "reasonable and appropriate" or "necessary" actions to secure its interest in the collateral for the mortgages (Amd. Compl. Exh. A ¶ 9; RJN Exh. 1 ¶ 7). Defendant may still be able to show that its actions complied with these contractual requirements, but this analysis is inappropriate to undertake on a motion to dismiss.

### B. Judicial Decisions.

Defendant contends that three other district courts have read similar mortgage language to permit charging borrowers for backdated force-placed insurance, but these authorities are not persuasive.

Defendant's primary authority was decided on summary judgment and not on a motion to dismiss. *Webb v. Chase Manhattan Mortg. Corp.*, 2:05-0548, 2008 WL 2230696, *9 (S.D. Ohio May 28, 2008) (Judge George Smith). Defendant's next decision relied on *Webb* and the plaintiff's failure to show an intent to deceive, a required element under Connecticut law. *LaCroix v. U.S. Bank, N.A.*, 11-3236 DSD/JJK, 2012 WL 2357602, *5 (D. Minn. June 20, 2012), *appeal dismissed* (Oct. 16, 2012) (Judge David Doty). Finally, defendant cites a published decision where the court interpreted the mortgage language to permit backdating of force-placed insurance. *Schilke v. Wachovia Mortg., FSB*, 820 F. Supp. 2d 825, 834 (N.D. Ill. 2011) (Judge Robert Dow, Jr.). Numerous other decisions from district courts in our circuit, however, have disagreed with this decision. *See, e.g.*, *Cannon v. Wells Fargo Bank, N.A.*, No. 12-1376 EMC, 2013 WL 132450 (N.D. Cal. Jan. 9, 2013) (Judge Edward Chen); *Ellsworth v. U.S. Bank, N.A.*, 12-02506 LB, 2012 WL 6176905, *16 (N.D. Cal. Dec. 11, 2012) (Judge Laurel Beeler); *Gustafson v. BAC Home Loans Servicing, LP*, No. 11-915-JST (ANx), 2012 WL 4761733 (C.D. Cal. Apr. 12, 2012) (Judge Josephine Tucker); *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928 (N.D. Cal. 2012) (Magistrate Judge Joseph Spero); *see also Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504 (E.D. Pa. 2012) (Judge Jan DuBois); *Gallo v. PHH Mortg. Corp.*, No. 12-1117 (NLH/KMW), 2012 WL 6761876 (D.N.J. Dec. 31, 2012) (Judge Noel Hillman). Because there is a dispute on the interpretation of the mortgage language, it is not appropriate to determine the issue on a motion to dismiss.

5

Accordingly, defendant's arguments that the backdating theory fails as a matter of law is unpersuasive. Defendant's motion to dismiss plaintiffs' backdating theory is **DENIED.**

### 2. BANK HOLDING COMPANY ACT.

Plaintiffs bring a claim under the Bank Holding Company Act, specifically, 12 U.S.C. 1972(1)(B). This section provides that a "bank shall not in any manner . . . furnish any service . . . on the condition or requirement . . . that the customer shall obtain some additional credit, property, or service from . . . any other subsidiary of such bank holding company." *Ibid.* To show a violation of the Act, "a plaintiff must show that (1) the banking practice in question was unusual in the banking industry, (2) an anti-competitive tying arrangement existed, and (3) the practice benefits the bank." *S & N Equip. Co. v. Casa Grande Cotton Fin. Co.*, 97 F.3d 337, 345 (9th Cir. 1996) (quotation omitted). Defendant contends that plaintiffs cannot show a tying arrangement that was both anti-competitive and unusual.

#### A. Tying Arrangement.

A tying arrangement is "an arrangement by one party to sell one product (the tying product), but only on the condition that the buyer also purchase a different . . . product (the tied product)." *Id.* at 346 (quotation omitted). The amended complaint alleges that the tying product is Wells Fargo's purchase of flood insurance and that the tied product is the commission to WFI for unspecified services (Amd. Compl. ¶ 142).

Defendant first contends that the tying product — force-placing insurance — is not a service to the borrower (Br. 20). This order disagrees. While defendant may purchase insurance to protect itself and the equity in the borrower's home, by protecting borrower's home, purchasing insurance also protects the borrower. Thus, force-placing insurance could be a tying product under the Act.

Defendant next contends that the tied product — the insurance brokerage services provided by WFI — is not a service because the amended complaint alleges that WFI never performed a service for its commissions (Br. 20). The amended complaint plausibly pleads that even a non-existent service for which borrowers must pay may be a tied product under the Act. The amended complaint alleges that borrowers pay commissions, and, on a motion to dismiss,

6

it is inappropriate to consider defendant's assertion to the contrary.  Ultimately, the existence of a tying arrangement will turn on the characterization of the two products.  For purposes of a motion to dismiss, plaintiffs have shown that the commissions to WFI are a tied product.

Defendant also appears to contend that the two services are actually one service because WFI's services are directed at defendant and not at plaintiffs.  To the extent that defendant contends this, determining whether two products are actually one is a fact-heavy inquiry.  *S & N Equip.*, 97 F.3d at 346–47.  As such, it is inappropriate to determine whether the two products are separate on a motion to dismiss.

### B.    Anti-competitive.

Parties dispute whether plaintiffs must allege the tying arrangement is anti-competitive.  The most recent decision from our court of appeals states that:

> a plaintiff claiming an unlawful tie-in under [the Act] . . . need not establish the anti-competitive effects of the tie-in . . . .  In light of the unique economic role that banks play, Congress perceived conditional transactions involving credit as inherently anti-competitive. . . .  Thus, while our test speaks in terms of an "anti-competitive" tying, the modifier either drops out or is presumed to exist.  The deletion from the test of the misleading term "anti-competitive" or the substitution of the word "unlawful" might be helpful.

*S & N Equip.*, 97 F.3d at 346 (quotation and citations omitted).  Plaintiffs need not show that the defendant's practice is anti-competitive.

Defendant attempts to read into this decision that the tying arrangement must still be unlawful (Reply 4–5).  This order disagrees that the decision requires a showing of unlawfulness and rather that portion of the opinion is dicta.   Thus, plaintiffs need not show the tying arrangement is unlawful.

### C.    Unusual Banking Practice.

As an initial matter, plaintiffs contend that showing the banking practice is unusual is only required under Section 1972(1)(C) (Opp. 23).  Although our court of appeals has not analyzed a claim under Section 1972(1)(B), it has always held that unusual is a requirement under Section 1972(1), regardless of the specific subsection of the claim.  *See S & N Equip.*, 97 F.3d at 345; *Bieber v. State Bank of Terry*, 928 F.2d 328, 330 (9th Cir. 1991); *Rae v. Union*

7

*Bank*, 725 F.2d 478, 480 (9th Cir. 1984).  Plaintiffs assert that the inclusion of the word "usually" in Section 1972(1)(C) shows that the unusual requirement only applies to claims under that particular subsection (Opp. 22).  This order disagrees.  Section 1972(1)(A) also does not include the word "usually," but our court of appeals requires proof of an unusual practice for claims under Section 1972(1)(A).  *Rae*, 725 F.2d at 480.  Accordingly, plaintiffs must show that the banking practice was unusual.

Defendant contends that the amended complaint fails to allege any facts that the practice is unusual in the banking industry.  The amended complaint alleges that the practice was unusual because (1) defendant's subsidiary did not purchase the best available insurance policy for the property and (2) Fannie Mae forbids charging borrowers a commission for force-placed insurance (Amd. Compl. ¶¶ 145–46).  Moreover, the amended complaint alleges that defendant's motivation for the practice was to earn profits and not to protect its collateral (*id.* at ¶¶ 8, 11). This is sufficient to allege an unusual banking practice.  Defendant contends that because there are numerous actions on similar commission agreements, the practice is not unusual (Br. 23). Whether a practice is unusual or not is a factual inquiry.  *See S & N Equip.*, 97 F.3d at 346. At this stage in the pleadings, the amended complaint's allegations are sufficient.

Accordingly, defendant's motion to dismiss plaintiffs' claim under the Bank Holding Company Act is **DENIED**.

   3.  **SECTION 17200 CLAIM.**

California's Unfair Competition Law, California Business and Professions Code Section 17200 *et seq.*, prohibits business practices that are either "unlawful, unfair, or fraudulent."  Section 17200 makes actionable three varieties of business practices under each prong of the statute.  *Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  The amended complaint brings a claim under both the unlawful and unfair prongs (Amd. Compl. ¶¶ 130–31). Defendant only moves to dismiss plaintiffs' claim under the *unlawful* prong of Section 17200.  Two possible violations could support plaintiffs' unlawful claim:  (1) violation of the Bank Company Holding Act and (2) common law breach of contract. Defendant contends that both of these underlying violations cannot support a Section 17200

8

claim as unlawful business practices (Br. 23). This order finds that the Bank Holding Company Act claim supports a Section 17200 claim.

*First*, defendant moves to dismiss plaintiffs' claim under Section 17200 because it relies upon the Bank Holding Company Act claim, which defendant has moved to dismiss. Because this order does not dismiss plaintiffs' claim under the Bank Company Holding Act, defendant's argument to dismiss this claim is denied.

*Second*, defendant contends that breach of contract cannot support a Section 17200 claim. Our court of appeals states that "a common law violation such as breach of contract is insufficient" to state a Section 17200 claim under the unlawful prong. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (quotation and citation omitted). None of plaintiffs' authorities support their contention to the contrary. Rather, a breach of contract claim can support a Section 17200 claim because it can be an *unfair* business practice. *See Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463, 1483 (2005).

Accordingly, defendant's motion to dismiss plaintiffs' Section 17200 claim based on the Bank Company Holding Act is **DENIED** and, as to the claim based on breach of contract, is **GRANTED**.

## CONCLUSION

To the extent stated above, defendant's motion to dismiss plaintiffs' backdating theory, the claim under the Bank Company Holding Act, and the claim under the Unfair Competition Law is **DENIED**. The hearing for **MAY 2** is hereby **VACATED**. Defendant has until **NOON ON FRIDAY, MAY 3,** to file its answer to the amended complaint. Parties should note that a motion for class certification is due no later than **MAY 10**.

**IT IS SO ORDERED.**

Dated: April 24, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9