1
Sheri L. Kelly, SBN 226993
E-mail: slk@sherikellylaw.com
2
LAW OFFICE OF SHERI L. KELLY
31 E. Julian St.
3
San Jose, CA 95112
Telephone: 408/287-7712
4
Facsimile: 408/583-4249

5
**Attorney for Plaintiffs**
*Additional Counsel Listed on Signature Page*

6

7

8
IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION
9

10
DANNY LANE, BEVERLY LANE, and
MERCEDES GUERRERO, individually, and
11
for other persons similarly situated,

Case No. CV-12-4026 WHA

12
                           Plaintiffs,

PLAINTIFFS' NOTICE OF MOTION and
MOTION FOR CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND
AUTHORITIES
13
vs.

14
WELLS FARGO BANK, N.A.

Date: June 20, 2013
Time: 8:00 A.M.
15
                           Defendant.

Crtrm: 8
Judge: Hon. William H. Alsup
16

17
Action Filed: July 31, 2012
Trial Date: April 21, 2014

18

19

20

21

22

23

## NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

TO THE COURT, THE PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE, that Plaintiffs' Motion for Class Certification will be heard on June 20, 2013 at 8:00 a.m., before the Honorable William H. Alsup in Courtroom 8 on the 19th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California.

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs hereby move for an order certifying the following proposed Class and Sub-Classes:

**National Class:**

All persons in the United States with mortgages owned or serviced by Wells Fargo Bank, N.A. or an affiliate of Wells Fargo Bank, N.A., who were charged for force-placed insurance by Wells Fargo Bank, N.A., or an affiliate of Wells Fargo Bank, N.A., within the applicable statute of limitations.

**Arkansas Sub-Class**

All persons in Arkansas with mortgages owned or serviced by Wells Fargo Bank, N.A. or an affiliate of Wells Fargo Bank, N.A., who were charged for force-placed insurance by Wells Fargo Bank, N.A. or an affiliate of Wells Fargo Bank, N.A., from July 31, 2009 through the present.

**California Sub-Class**

All persons in California with mortgages owned or serviced by Wells Fargo Bank, N.A. or an affiliate of Wells Fargo Bank, N.A., who were charged for force-placed insurance by Wells Fargo Bank, N.A. or an affiliate of Wells Fargo Bank, N.A., from July 31, 2008 through the present.

Plaintiffs Danny Lane, Beverly Lane, and Mercedes Guerrero seek to represent the National Class, asserting claims for violation of the Bank Holding Company Act, 12 U.S.C. § 1972, *et seq*, breach of contract, and breach of the implied covenant of good faith and fair dealing. Plaintiffs Danny and Beverly Lane seek to represent the Arkansas sub-class, asserting common law claims under Arkansas law for unjust enrichment and conversion on behalf of Arkansas sub-class members. Plaintiff Mercedes Guerrero seeks to represent the California sub-class, asserting

claims under California law for violation of Cal. Bus. & Prof. Code § 17200 *et seq.*, unjust enrichment, and conversion on behalf of California sub-class members.

Plaintiffs also move for an order appointing the Owings Law Firm, Wagoner Law Firm, Walker Law Firm, and the Law Office of Sheri L. Kelly as class counsel for the above-described classes.

This Motion is based on Plaintiffs' First Amended Complaint filed on March 21, 2013 (Dkt. No. 83); the accompanying Memorandum of Points and Authorities; the accompanying Declaration of Alexander Owings and accompanying Exhibits, and Declarations of Danny Lane, Beverly Lane, Mercedes Guerrero, and Sheri L. Kelly; Plaintiffs' forthcoming reply and supporting evidence; and all files, records, and proceedings in this matter.

**Dated:** May 9, 2013                                Respectfully submitted,

LAW OFFICE OF SHERI L. KELLY


By:      *s/ Sheri L. Kelly*
            Sheri L. Kelly
            Attorney for Plaintiffs and Proposed Classes

## **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................. 1

II.  BACKGROUND ............................................................... 2

    A.      Regulatory Background ............................................. 2

    B.      Factual Background .................................................. 4

        1.      Wells Fargo's Force-Placed Insurance Scheme................. 4

            a.      Uniform Application of Insurance Practices.................... 4

            b.      Uniform Administration of Insurance Program .................. 5

            c.      Commissions to Wells Fargo .............................. 7

        2.      Plaintiffs' Experiences Comport with Wells Fargo's Uniform Practices .......... 8

    C.      Procedural History ................................................ 10

III. LEGAL ARGUMENT ......................................................... 11

    A.      Rule 23(a) Criteria ............................................... 11

        1.      Numerosity ............................................... 11

        2.      Commonality............................................... 12

        3.      Typicality ............................................... 15

        4.      Adequacy ............................................... 17

    B.      Rule 23(b)(3) Criteria ............................................ 18

        1.      Predominance ............................................. 18

        2.      Superiority................................................ 21

            a.      Class Members' Interests ................................. 22

            b.      Extent and Nature of Any Extant Litigation ................. 23

            c.      Desirability of Concentrating the Litigation in this Forum ................. 24

            d.      Manageability ............................................ 24

IV. CONCLUSION ................................................................ 25

i

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

# TABLE OF AUTHORITIES

**United States Supreme Court**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................17, 18

*Eisen v. Carlisle & Jacqueline*,
417 U.S. 156 (1974)................................................................24

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)................................................................12, 17

*Sosna v. Iowa*,
419 U.S. 393 (1975)................................................................17

*Wal-Mart Stores Inc. v. Dukes*,
131 S. Ct. 2541 (2011)................................................................12, 15

**United States Courts of Appeals**

*Bateman v. Am. Multi-Cinema, Inc.*,
623 F.3d 708 (9th Cir. 2010) ................................................................21

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ................................................................20

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) ................................................................12

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................11, 12, 16, 18

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ................................................................15

*Kamm v. Cal. City Dev. Co.*,
509 F.2d 205 (9th Cir. 1975) ................................................................21

*Klay v. Humana, Inc.*,
382 F.3d 1241 (11th Cir. 2004) ................................................................20, 22, 24

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ................................................................18

ii

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

*Parra v. Bashas,' Inc.*,
   536 F.3d 975 (9th Cir. 2008) ................................................................................12

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ..............................................................................16

*Wolin v. Jaguar Land Rover North Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) .........................................................................21, 22

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2010) ..............................................................................20

**United States District Courts**

*Cannon v. Wells Fargo Bank, N.A.*,
   Case No 3:12-cv-1376 (N.D. Cal) .........................................................................23

*Cty. of Monroe v. Priceline.com, Inc.*,
   265 F.R.D. 659 (S.D. Fla. 2010)...........................................................................22

*Ellis v. Costco Wholesale Corp.*,
   285 F.R.D. 492 (N.D. Cal. 2012)..........................................................................15

*Faulk v. Sears Roebuck & Co.*,
   2013 WL 1703378 (N.D. Cal. Apr. 19, 2013) ......................................................18

*Fladell v. Wells Fargo*,
   Case No. 0:13-cv-60721 (S.D. Fla) .......................................................................23

*Gutierrez v. Wells Fargo Bank, N.A.*,
   2008 WL 4279550 (N.D. Cal. Sep. 11, 2008) .................................................passim

*In re Facebook, Inc. PPC Advertising Litig.*,
   282 F.R.D. 446 (N.D. Cal. 2012)......................................................................11, 12

*Jordan v. Paul Fin., LLC*,
   285 F.R.D. 435 (N.D. Cal. 2012)..........................................................................16

*Kay v. Wells Fargo & Co.*,
   247 F.R.D. 572 (N.D. Cal. 2007)......................................................................19, 24

*McKenzie v. Wells Fargo Bank, N.A.*,
   Case No. 3:11-cv-4965 (N.D. Cal.) .......................................................................23

*Morris v. Wells Fargo*,
   2:11-cv-474 (W.D. Pa.).........................................................................................23

iii

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

*Parker v. Time Warner Entm't Co.*,
   198 F.R.D. 374 (E.D.N.Y. 2001) ......................................................22

*Passantino-Miller v. Wells Fargo Bank, N.A.*,
   Case No. 2:12-cv-420 (E.D. Cal.) ...................................................23

*Sayago v. Wells Fargo*,
   8:11-cv-2009 (M.D. Fla) .................................................................23

*Siemers v. Wells Fargo & Co*,
   243 F.R.D. 369 (N.D. Cal. 2007) ...................................................24

*Williams v. Wells Fargo Bank, N.A.*,
   280 F.R.D. 665 (S.D. Fla. 2012) ...............................................3, 23

**California Statutes**

California Business and Professions Code § 17200 ...........................15

**Rules and Regulations**

Fed. R. Civ. P. 23(a)(1) ....................................................................11

Fed. R. Civ. P. 23(a)(2) ....................................................................12

Fed. R. Civ. P. 23(a)(3) ...............................................................15, 16

Fed. R. Civ. P. 23(a)(4) ....................................................................17

Fed. R. Civ. P. 23(b)(3) ...............................................................passim

Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Am. ..........22

Fed. Reg. Vol. 78, No. 61, 19623, 19624 (Mar. 29, 2013) ...............2

**Treatises**

7A Wright and Miller, Federal Practice and Procedure, § 1779 .......22

Cal. Prac. Guide Fed. Civ. P. Before Trial......................................18

**Secondary Sources**

http://www.americanbanker.com/issues/177_204/assurant-agrees-to-cut-force-placed-premiums-in-california-1053754-1.html................................................................3

iv

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

1

http://www.bloomberg.com/news/2012-08-10/u-s-regulators-to-examine-forced-place-
        insurance.html ..................................................................................................................3

2

http://www.insurancenetworking.com/news/force-placed-insurer-offers-19-percent-rate-cut-
        florida-31533-1.html ........................................................................................................3

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

# I.   INTRODUCTION

This class action seeks relief on behalf of Defendant Wells Fargo Bank, N.A.'s borrowers across the country who were harmed by Wells Fargo's improper self-dealing through its flood and hazard insurance practices. This is not a complicated case. Wells Fargo, through its force-placed insurers QBE and Assurant, utilized uniform and standardized procedures and practices for all force-placed insurance throughout the entire class period. **Exhibit 1**, Report of Birny Birnbaum § 7. [1] Wells Fargo is a lender and loan servicer that services mortgage loans owned by itself and others. Thomas Farrell, Wells Fargo's corporate representative, testified in deposition that ████ ██████████████████████████████████████████████████████████ **Exhibit 2**, Thomas Farrell Dep. 74:10–13. ████████████████████████. *Id.* at 75:19–25. [2] All such mortgages require that the borrower carry hazard insurance on the property securing the loan. Some borrowers must also carry flood insurance. If the borrower fails to carry insurance on the property, Wells Fargo may obtain insurance on the property to protect the collateral against hazard and flood loss.

Wells Fargo abuses its contractual right to force-place insurance and engages in self-dealing and profiteering that is not authorized by the mortgages or the law. The most blatant example of this is that Wells Fargo entered into contracts with two insurers, QBE and Assurant ("Insurers"), whereby Wells Fargo agreed to purchase all force-placed insurance from these Insurers. ███ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████

---

[1] Mr. Birnbaum's report is attached as Exhibit 1 to the **Exhibit A**, Declaration of Alexander P. Owings. All numbered exhibits listed herein are exhibits to Mr. Owings's declaration. All lettered exhibits are attached separately to the Motion.

[2] The Department of Housing and Urban Development ("HUD") requires that all Fannie Mae and Freddie mortgages must be written on uniform security instruments. **Exhibit 3**, HUD Letter, p. 2 (Aug. 7, 2000). Similarly, HUD requires that all FHA mortgages must be written on a Model Mortgage Form. **Exhibit 4**, Lender's Guide to the Single Family Mortgage Insurance Process at 6-B-5; **Exhibit 5**, FHA Model Mortgage Form.

1  ████████████████████████████████████████████

2  ████████████████████████████████████████████

3  ██████████████████████████████ Force-placed insurance policies cost

substantially more than private insurance, at least in part because a large portion of the premiums

do not actually pay for the cost of the insurance. Wells Fargo also charges borrowers for

kickbacks and administrative costs for services performed by the Insurers—including tracking

insurance and sending notices to borrowers on behalf of Wells Fargo. According to Birny

Birnbaum, the most qualified expert in the country on this subject, these "costs" are not the

borrower's responsibility. *See* **Exhibit 1**, Birnbaum Report at §§ 6.1, 8.2.[3]

## II.  BACKGROUND

### A.    Regulatory Background

Since 2011, the attorneys general for all fifty (50) states, as well as the National Association

of Insurance Commissioners, have taken a hard look at the abusive practices engaged in by

lenders and servicers in the force-placed insurance arena. This year, the Federal Housing Finance

Agency, which regulates Fannie Mae and Freddie Mac, issued proposed regulations prohibiting

loan servicers from receiving, directly or indirectly, remuneration associated with placing

coverage with insurance providers. *See* Fed. Reg. Vol. 78, No. 61, 19623, 19624 (Mar. 29,

2013).[4] The State of New York, through its Financial Fraud and Consumer Protection Division of

its Department of Finance, recently reached a $14 million dollar settlement with Assurant. *See*

**Exhibit 7**, Assurant Consent Order. The settlement prohibits, *inter alia*, Assurant's payment of

commissions to entities affiliated with loan servicers (such as WFI). The Consent Order contains

---

[3] Mr. Birnbaum's qualifications are included in his Report, **Exhibit 1** § 3.

[4] Fannie Mae also clarified its existing policies in a Servicing Announcement in March 2012, and expressly stated that lenders cannot charge commissions and other administrative costs associated with force-placed insurance to the borrower. **Exhibit 6**, Fannie Mae Servicing Guide Announcement SVC-2012-04, Mar. 14, 2012.

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

a finding that affiliates of the servicers (such as WFI) do "little or no work for the commissions" and that commissions are paid to "affiliates of servicers because they are a cost of staying in the market, not for any particular work the affiliates perform." *Id.* at 5–6.[5] This situation creates a motivation for servicers to "purchase higher priced force-placed insurance and for mortgage servicers to place more homeowners into force-placed insurance, because their affiliates earn more commissions as premiums increase." *Id.* New York entered into similar settlement agreements with QBE and Balboa Insurance Company.[6] These settlements expressly prohibit the kickback arrangements complained of in this case. A detailed analysis of these Consent Orders is included in Mr. Birnbaum's Report, **Exhibit 1**, § 8.2.3.

Other agencies and regulators have also addressed these practices. On August 9, 2012, the National Association of Insurance Commissioners held hearings in Atlanta, Georgia concerning the abuses in the force-placed insurance market. Regulators from Florida, Kentucky, and Louisiana announced similar investigations.[7] California regulators have been investigating these practices for almost a year. In October 2012, Assurant reached an agreement with California's Department of Insurance to reduce force-placed premiums by 30.5% in California.[8] QBE has offered to cut its rates by 19% in Florida after Florida's Insurance Commission denied its force-placed rate filing.[9] A statewide Florida class action was certified by the Southern District of Florida in *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665 (S.D. Fla. 2012).

---

[5] Consistent with this finding, ███████████████████████████████████████████
███████████████████████████████████████████████████████ See **Exhibit 8**, Mark Chapman Dep. 33:15–22.

[6] The QBE and Balboa settlement agreements are attached as **Exhibits 9** and **10**, respectively.

[7] http://www.bloomberg.com/news/2012-08-10/u-s-regulators-to-examine-forced-place-insurance.html

[8] http://www.americanbanker.com/issues/177_204/assurant-agrees-to-cut-force-placed-premiums-in-california-1053754-1.html

[9] http://www.insurancenetworking.com/news/force-placed-insurer-offers-19-percent-rate-cut-florida-31533-1.html

1    Amidst all the investigations, lawsuits, and scrutiny of its force-placed insurance practices,

2    ████████████████████████████████████████████████████████████████████

3    However, no changes were made to the agreements between the Insurers and Wells Fargo.

4    **Exhibit 1**, Birnbaum Report § 9. Plaintiffs here seek to require that Wells Fargo return the

5    millions of dollars it took from consumers before it was forced to discontinue the practice.

6    **B.    Factual Background**

7         **1.      Wells Fargo's Force-Placed Insurance Scheme**

8    Wells Fargo's force-placed insurance practices are uniform across the proposed classes.

9    Corporate representatives for Wells Fargo, QBE, and ASIC have all testified regarding Wells

10   Fargo's uniform force-placed insurance practices. *See* **Exhibit 2**, Thomas Farrell (Wells Fargo)

11   Deposition; **Exhibit 8**, Mark Chapman (QBE) Deposition; **Exhibit 11**, Ronald Wilson (ASIC)

12   Deposition. As a result of these uniform practices, ██████████████████████████

13   ████████████████████████████████████████████████████████████████████

14   ████████████    Farrell Dep. 54:1–4, 91:4–14; Chapman Dep. 57:20–58:7, 58:13–19. *See also*,

15   **Exhibit 1**, Birnbaum Report §§ 6.2, 9.

16        **a.      Uniform Application of Insurance Practices**

17         The breadth and uniformity of Wells Fargo's actions make this case appropriate for class

18   treatment. In *Gutierrez v. Wells Fargo Bank, N.A.*, 2008 WL 4279550 (N.D. Cal. Sep. 11, 2008),

19   this Court certified a class against this same defendant because "[t]he challenged practice is a

20   standardized one applied on a routine basis to all customers" by the bank. *Id.* at *13 ████████

21   ████████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████████████

**Exhibit 1**, Birnbaum Report §§ 4.1, 6, 7. Specifically:

- [redacted]. **Exhibit 2**, Farrell Dep. 76:14–21, 95:14–96:8; **Exhibit 11**, Wilson Dep. 21:23–22:3
- [redacted]. **Exhibit 2**, 64:23–65:1; **Exhibit 8**, Chapman Dep. 22:11–22
- [redacted]. **Exhibit 2**, 59:10–13
- [redacted]. **Exhibit 11**, 75:22–24
- [redacted]. *Id.* at 76:5–9
- [redacted]. **Exhibit 2**, 135:8–14; **Exhibit 11**, 76:10–77:7
- [redacted]. **Exhibit 8**, 104:6–9
- [redacted]" *Id.* at 68:19–69:14

As Mr. Birnbaum concluded [redacted] **Exhibit 1**, Birnbaum Report § 7.

**b. Uniform Administration of Insurance Program**

Wells Fargo used two (2) vendors for insurance tracking and force-placing during the class period. [redacted] **Exhibit 2**, Farrell Dep. 33:14–25. [redacted] **Exhibit 2**, 34:5–13. [redacted]. *See* **Exhibit 13**, [redacted]; **Exhibit 14**, [redacted]. [redacted]



1   ████████████████████████████. ███████████████████████ ███████

2   ████████████████████████████████████████████████████████████████

3   ███████████████ **Exhibit 15**, ████████████████, Ex. A, ████████; **Exhibit 16**,

4   ███████████████, Ex. A; **Exhibit 2**, Farrell Dep. 30:16–31:6, 41:7–42:2.

5        Master Service Agreements set out the Insurers' duties to Wells Fargo. █████████

6   ████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████

9   ████████████████████████████████████ **Exhibit 2**, Farrell Dep. 35:11–24;

10  **Exhibit 8**, Chapman Dep. 13:9–14:1, 34:11–16. ████████████████████

11  ████████████████████████████ **Exhibits 13–14**, Master Service Agreements.

12       ██████████████████████████████████████████████████

13  ██████████████████████████. **Exhibit 8**, 39:17–40:5. ████████████

14  █████████████████████████████ **Exhibit 8**, Chapman Dep. 49:8–12; **Exhibit 11**,

15  Wilson Dep. 31:4–6, 80:9–17. ██████████████████████████

16  █████████████████████████████████████ **Exhibit 2**, 103:10–19;

17  **Exhibit 11**, 39:24–40:4. █████████████████████████

18  **Exhibit 8**, 94:13–18. █████████████████████████████

19  ██████ **Exhibit 8**, 80:9–16; **Exhibit 11**, 31:12–20, 41:23–42:4. ████████████

20       ██████ **Exhibit 8**, 95:8–13; **Exhibit 11**, 31:12–20, 41:23–42:4.

21       ████████████████████████████ **Exhibit 8**, 53:13–54:4. █████████

22  ████████████████████████████████████████████████████████████████

23  ██████ *Id.* at 55:3–8. As further evidence of the uniformity of these notices:

1   ● ██████████████████████████████ *Id.* at 53:13–54:4

2   ● ██████████████████████████████. *Id.* at 55:3–8, 94:8–13, 95:8–13,
3   103:10–19, 111:13–19; **Exhibit 11**, 31:12–20, 41:23–42:4, 109:13–15

4   ● ██████████████████████████████. **Exhibit 11**, 79:22–25, 81:1–2;
    **Exhibit 1**, Birnbaum Report, § 4.1

5   ● ██████████████████████████████. **Exhibit 8**, 112:5–6

6   ● ██████████████████████████████. **Exhibit 11**, 111:12–23

7   ● ██████████████████████████████
8   ██████████. *Id.* at 111:12–23.

9   ██████████████████████████████. **Exhibit 8**, 66:9–22; **Exhibit 11**, 42:5–7.

10  ██████████████████████████████.

11  **Exhibit 8**, 66:9–22, 71:8–19.

12                    c.    **Commissions to Wells Fargo**

13  ██████████████████████████████

14  ██████████████████████. **Exhibit 2**, Farrell Dep. 39:24–40:5, 41:7–42:2.

15  ██████████████████████████████

16  ██  **Exhibits 15–16**, Broker Agreements; Chapman Dep. 57:20–58:7. ██████████

17  ██████████████████████████████. **Exhibits
18  15–16**; **Exhibit 8**, Chapman Dep. 57:20–58:7; **Exhibit 11**, Wilson Dep. 63:25–64:3, 66:19–25.

19  ██████████████████████████████

20  ██████████████████████. **Exhibit 2**, 76:14–21. ██████████

21  ██████████████████. *Id.* at 93:4–14, 95:6–12, 98:10–19. As Wells Fargo, ██████

22  ██████ corporate representatives stated:

23  ● ██████████████████████████████
    ██████████████████████████████. **Exhibit 2**,
    54:1–4, 91:4–14; **Exhibit 8,** 57:20–58:7, 58:13–19

- ██████████████████████████████████████████████████. **Exhibit 2**, 96:21–92:2; **Exhibit 11**, 66:19–25

- ████████████████████████████████████. **Exhibit 2**, 91:4–92:6

- ████████████████████████████████. *Id.* at 99:6–21.

████████████████████████████████████████████████

██████. *See* **Exhibit 1**, Birnbaum Report, § 9.

WFI does nothing to earn the so-called "commissions" it collects in connection with force-placed insurance. In fact, █████████████████████████. **Exhibit 2**, Farrell Dep. 58:3–59:2. ██████████████████████████

███████████████████████████████████████████████

████████████████████████. **Exhibit 2**, 114:17–23.[10] ██████████████

██████████████████████████████████████████. *Id.* at 33:21–22. ████████████████████████████████████████████

████████████████████████████████████████. *Id.* at 67:14–24.

████████████████████████████████████████████

██████████████████████████ **Exhibit 8**, Chapman Dep. 86:21–87:2; **Exhibit 11**, Wilson Dep. 54:23–55:5. ████████████████████████████████

██████████████████████████ **Exhibit 2**, 114:24–115:3.

### 2.    Plaintiffs Experiences Comport with Wells Fargo's Uniform Practices

"There is nothing atypical or unique about the process or the letters sent to Named Plaintiffs."

---

[10] ████████████████████████████████████████████████████

████████████████████████████████████████████████████. *See* **Exhibit 1**, Birnbaum Report § 6.1; **Exhibit 12**, Agency Appointment and Service Agreement.

8

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

**Exhibit 1**, Birnbaum Report § 7. Plaintiffs were subjected to the same force-placed insurance practices as all Wells Fargo borrowers.

Danny and Beverly Lane are Arkansas residents with a Fannie Mae/Freddie Mac uniform security instrument secured by their home in Arkansas. **Exhibit B**, Decl of Danny Lane, ¶ 2, Ex. A; **Exhibit C**, Decl of Beverly Lane ¶ 2, Ex. A. This mortgage contains identical terms as all other Fannie Mae/Freddie Mac uniform security instruments. **Exhibit 3**, HUD Letter (stating that all Fannie Mae and Freddie Mac mortgages must use this form). Wells Fargo sent the Lanes numerous letters between 2010 and the present stating that it would force-place insurance on their property. **Exhibit B**, Decl. of Danny Lane ¶¶ 3, 5, **Exhibit C**, Decl of Beverly Lane, ¶¶ 3, 5. These letters stated that if Wells Fargo purchased force-placed insurance "it will be obtained with the assistance of Wells Fargo Insurance, Inc. . . . . Wells Fargo Insurance, Inc. will receive a commission on the insurance . . . ." **Exhibit B** ¶ 5, Ex. D; **Exhibit C** ¶ 5, Ex. D. ███████████
███████████████████████████████ **Exhibit 8**, Chapman Dep. 80:9–16, 95:8-13; **Exhibit 11**, 31:12–20, 41:23–42:4, 119:11–13. After sending these letters, Wells Fargo force-placed both hazard and flood insurance on the Lanes' property with QBE in 2010 and 2011, and ASIC in 2012 and 2013. **Exhibit B**, ¶ 3, **Exhibit C**, ¶ 3. The insurance policies were backdated. **Exhibit B**, Ex. B, **Exhibit C**, Ex. B. QBE paid ███ of the premium for these force-placed policies to WFI. **Exhibit B**, Ex. D (stating that WFI would receive a commission if Wells Fargo purchased insurance for Plaintiff); **Exhibit C**, Ex. D (same).

Mercedes Guerrero is a California resident with a FHA California Deed of Trust secured by her home in California. **Exhibit D**, Decl. of Mercedes Guerrero, ¶ 2, Ex. A. This mortgage contains identical terms to all other FHA deeds of trust. **Exhibits 4–5**, Lender Guide, FHA Model Mortgage Form (requiring identical form for all FHA mortgages). Wells Fargo sent Ms. Guerrero

---

9

numerous letters between 2007 and the present stating that it would force-place flood insurance on her property. **Exhibit D**, ¶ 7. These letters stated that if Wells Fargo purchased force-placed flood insurance, Wells Fargo Insurance, Inc. would "act as an agent for the insurance company and [] receive a commission on the insurance." **Exhibit D**, ¶ 7, Ex. D. ████████████ ████████████████████████████████████████████████████████████ **Exhibit 11**, Wilson Dep. 31:12-20, 41:23-42:4, 111:7-23. After sending these letters, Wells Fargo force-placed flood insurance on Ms. Guerrero's property with ASIC. **Exhibit D**, ¶ 4. The insurance policies were backdated. *Id.*, Ex. B. ███████████████████████████████████████████████ ████████████. **Exhibit 11**, 63:25–64:3.

## C.     Procedural History

Plaintiffs Danny and Beverly Lane filed this action on July 31, 2012 alleging that Wells Fargo improperly charges borrowers for kickbacks on force-placed insurance policies and improperly charges borrowers for excessive flood insurance. (Dkt. No. 1). On January 24, 2013, this Court entered an Order Granting in Part and Denying in Part Wells Fargo's Motion to Dismiss Plaintiffs' Complaint, upholding Plaintiffs' kickback claims. (Dkt. No. 70).  On March 20, 2013, the Court granted Plaintiffs' Motion for Leave to Amend and add Plaintiff Mercedes Guerrero to assert claims on behalf of a California class. (Dkt. No. 82). Plaintiffs filed their First Amended Class Action Complaint on March 20, 2013. (Dkt. No. 83). On April 24, 2013, the Court denied Wells Fargo's Motion to Dismiss Plaintiffs' First Amended Complaint. (Dkt. No. 83). Plaintiffs' claims include (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment; (4) conversion; (5) violation of the California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, *et seq.*; and (6) violation of the Bank Holding Company Act, 12 U.S.C. § 1972, *et seq*.

# III. ARGUMENT

Federal Rule of Civil Procedure 23 governs class action litigation. Pursuant to Rule 23, the Court may certify a class if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). A plaintiff must also satisfy at least one section of Rule 23(b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Plaintiffs' claims satisfy the requirements of Rule 23(a) and Rule 23(b)(3).

## A.      Rule 23(a) Criteria

### 1.      Numerosity

A plaintiff must show that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[P]laintiffs need not state the exact number of potential class members, nor is there a specific number that is required." *In re Facebook, Inc. PPC Advertising Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012). "[T]he ultimate issue in evaluating this factor is whether the class is too large to make joinder impracticable[.]" *Id.* Thus, "courts typically find that the numerosity factor is satisfied if the class comprises 40 or more members[.]" *Id.* Plaintiffs have defined classes to include all individuals who were charged for force-placed flood or hazard insurance by Wells Fargo where a portion of such charges included commissions or other financial remuneration to Wells Fargo. *See* FAC ¶ 79. "Assuming a total mortgage portfolio of around 10 million loans and an average of 2% of loans placed with LPI at any time, there would be about 200,000 WFB borrowers with LPI.". **Exhibit 1**, Birnbaum Report § 6. ██

████████████████████████████████████████████████████████████████████

████████████████████████     **Exhibit 8**, Chapman Dep. 130:11–19. These numbers far

1    exceed the minimum requirements for numerosity in this Circuit. *See In re Facebook*, 282 F.R.D.

2    at 452. Additionally, Wells Fargo has stated that it "will not dispute numerosity should plaintiffs

3    move for class certification." *See* **Exhibit 17**, Wells Fargo's Responses to Requests for

4    Production of Documents Nos. 8–13, (Feb. 8, 2013).

5                    **2.      Commonality**

6          Commonality requires a showing of "questions of law and fact common to the class." Fed. R.

7    Civ. P. 23(a)(2). This requirement "has been construed permissively." *Hanlon*, 150 F.3d at 1019.

8    "What matters . . . is . . . the capacity of a classwide proceeding to generate common answers apt

9    to drive the resolution of the litigation." *Wal-Mart Stores Inc. v. Dukes*, 131 S. Ct. 2541, 2551

10   (2011). "All questions of fact and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d

11   at 1019. Rather, "[w]here the circumstances of each particular class member vary but retain a

12   common core of factual or legal issues with the rest of the class, commonality exists." *Parra v.*

13   *Bashas,' Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). The commonality element is met where a

14   "claim is a common contention among the class and 'determination of its truth or falsity' is

15   pivotal to [the] lawsuit and capable of determination 'in one stroke.'" *Evon v. Law Offices of*

16   *Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012)(quoting *Wal-Mart*, 131 S.Ct. at 2551).

17         All class members' claims share a common core of factual and legal issues and common

18   questions of law and fact that will determine the outcome of this litigation. Critical to the

19   commonality inquiry is whether "the class members 'have suffered the same injury.'" *Wal-Mart*,

20   131 S.Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Evon*, 688

21   F.3d at 1029). Common injuries among all class members include: (1) class members' payment of

22   commissions to WFI, which inflated force-placed insurance premiums; (2) class members'

23   payment of excessive force-placed insurance charges because Wells Fargo charged "costs" for

administrative services that were Wells Fargo's responsibility, including costs for monitoring and tracking insurance coverage; and (3) class members' payment of backdated force-placed insurance policies that covered time periods when no losses occurred.

Wells Fargo admits that, ███████████████████████████████████

███████████████████████████████████████████████████████████████

**Exhibit 2**, Farrell Dep. 30:16–31:2, 54:1–4, 91:4–92:6, 93:4–14, 95:6–12, 96:21–97:2l 98:1-19, 99:6–21. ████████████████████████████████████████████

██████████████████████████████████████. **Exhibits 15**, ASIC Broker Agreement, ASIC 268–79; **Exhibit 16**, QBE Broker Agreement, QBE 286–87. All borrowers were charged for administrative services that were Wells Fargo's responsibility, such as insurance tracking and sending notices. **Exhibit 1**, Birnbaum Report § 4.1, 6. Wells Fargo's counsel stated before this Court that every force-placed policy is "backdated"—the effective date precedes the purchase date. *See* Hearing Transcript, Jan. 24, 2013, (Dkt. No. 72, p. 20). Wells Fargo confirmed this in its discovery. **Exhibit 18**, Wells Fargo's Responses to Requests for Production of Documents Nos. 12–13, (Jan. 14, 2013). ████████████████████████████████

████████████████████████ **Exhibit 8**, Chapman Dep. 68:19–69:14.

The pivotal factual issue at stake in this litigation is whether WFI's "commissions" are lawful or appropriate. This hinges on Plaintiffs' contention that WFI does nothing for borrowers to earn its commissions. ████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████. **Exhibit 2**, Farrell Dep. 59:10–13, 114:24–115:3; **Exhibit 8**, Chapman Dep. 52:13–53:3, 60:9–14; **Exhibit 11**, Wilson Dep. 75:22–24. Because WFI's

"services" are uniform and standardized, common evidence will establish liability on behalf of all class members.

Common questions of law and fact will determine whether Wells Fargo is liable to all class members under each of Plaintiffs' theories of liability. Common questions will establish whether Wells Fargo violated the Bank Holding Company Act. These questions include:

- Do Wells Fargo's form letters offer a service?

- Is the service conditioned on the borrower's agreement to pay for services provided by WFI?

- Is WFI a subsidiary of Wells Fargo's holding company?

- Is it unusual for an insurance agency to receive commissions from a borrower when it provides no services to borrowers?

- Does Wells Fargo benefit when WFI receives a commission?

Common questions of law and fact will also establish whether Wells Fargo breached Plaintiffs' mortgage contracts when it accepted kickbacks on force-placed insurance:

- Is the commission for force-placed insurance a charge for "holding and applying Funds" to escrowed items prohibited by Section 3 of the Fannie Mae mortgage?

- Did Wells Fargo abuse its discretion under the mortgages by force-placing insurance with companies that paid unearned commissions to WFI?

- Is an unearned "commission" a "cost" for insurance allowed under Section 5 of the Fannie Mae mortgage?

- Is it "reasonable or appropriate" for Wells Fargo to charge borrowers for an unearned commission?

- Are charges for commissions paid to WFI necessary to protect the value of a borrower's home and Wells Fargo's rights in the home?

- Are WFI's commissions "fees or charges" authorized FHA mortgages?

Common questions of law and fact will also determine whether Wells Fargo breached Plaintiffs' mortgage contracts by charging borrowers for administrative costs and backdated insurance:

- Did Wells Fargo breach the mortgages and the implied covenant of good faith and fair dealing

14

when it charged for administrative costs that were Wells Fargo's responsibility?

- Did Wells Fargo's practice of backdating force-placed insurance breach the mortgages and implied covenant of good faith and fair dealing?

- Is it "reasonable or appropriate" or necessary to protect the value of a borrower's home and Wells Fargo's rights in the home?

Common questions of law and fact will establish each of Plaintiffs' other claims as well:

- Was Wells Fargo unjustly enriched by payment of unearned commissions, administrative costs, or backdated force-placed insurance?

- Did Wells Fargo convert readily identifiable funds belonging to borrowers when it accepted a portion of force-placed insurance funds from borrowers' escrow accounts as an unearned commission and as payment for administrative services?

- Were Wells Fargo's force-placed insurance practices "unfair" within the meaning of the California Business and Professions Code § 17200, *et seq.*?

- Was Wells Fargo's force-placed insurance scheme "unlawful" under the BHCA and, therefore unlawful under California Business and Professions Code § 17200, *et seq.*?

Answering each of these questions will determine liability on behalf of all Class Members for all claims related to Wells Fargo's force-placed insurance practices. No individual issues will arise in determining liability on any of Plaintiffs' claims. Therefore, Plaintiffs' claims present numerous common questions of law and fact whose answers are "apt to drive the resolution of the litigation." *Wal-Mart*, 131 S. Ct. at 2551.

### 3.   Typicality

The "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Courts assess typicality by determining 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 533 (N.D. Cal. 2012)(quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The typicality

requirement 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 459 (N.D. Cal. 2012)(quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010)). "Rule 23(a)(3) is 'permissive' and only requires that the named plaintiffs' claims be 'reasonably co-extensive with those of absent class members.'" *Id.* (quoting *Hanlon*, 150 F.3d at 1020).

Plaintiffs' legal claims arise from the same course of conduct and are based on the same legal theories as those brought on behalf of the classes. Plaintiffs and every proposed class member have a mortgage owned or serviced by Wells Fargo that is governed by common and materially uniform mortgage agreements. **Exhibit B**, Decl. of Danny Lane, Ex. A; **Exhibit C**, Decl. of Beverly Lane, Ex. A; **Exhibit D**, Decl. of Mercedes Guerrero, Ex. A; **Exhibits 3–5**, HUD Letter, Lender Guide, FHA Model Mortgage Form. Pursuant to uniform force-placed insurance practices, Plaintiffs were charged for backdated, high-cost force-placed insurance. **Exhibit B ¶¶** 3–4, Ex. B, Ex. C; **Exhibit C ¶¶** 3–4, Ex. B, Ex. C; **Exhibit D ¶¶** 4–5, Ex. B, Ex. C. Plaintiffs paid force-placed insurance charges by increasing their monthly mortgage payments. **Exhibit B ¶** 4; **Exhibit C ¶** 4; **Exhibit D ¶** 5.

███████████████████████████████████████████████████████

██████████████████████████████████████. **Exhibit 2**, Farrell Dep. 93:4–14, 95:14–96:8. WFI received the same ████ "commission" on each of Plaintiffs' force-placed insurance policies. ████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████. *Id.* at 91:4–92:6, 95:6–12, 126:8–23. ████

1   ████████████████████████████████████████████████

2   ██████████████████████ **Exhibit 8**, Chapman Dep. 112:12–114:10; **Exhibit 11**, Wilson Dep.

3   118:3–7, 119:11–13. Thus, Plaintiffs claims are typical of the class and subclasses.

4                    **4.   Adequacy**

5        Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

6   interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "serves to uncover conflicts of

7   interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v.*

8   *Windsor*, 521 U.S. 591, 625 (1997)(citing *Gen. Tel. Co.*, 457 U.S. at 157–58, n.13. This

9   requirement is met if (1) the named plaintiff has interests in common with, and not antagonistic

10  to, the interests of the class; and (2) plaintiff's attorneys are qualified, experienced, and generally

11  able to conduct the litigation. *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975).

12       Plaintiffs satisfy the Rule 23(a)(4) adequacy requirement. The Class Representatives' interests

13  are co-extensive and do not conflict with the interests of the putative class members. The critical

14  issues in this case—the existence, implementation, and unlawfulness of Wells Fargo's force-

15  placed insurance scheme—are common to Plaintiffs' and all class members' claims. No class

16  member benefitted from Wells Fargo's anti-competitive force-placed insurance practices.

17  Proposed Class Representatives are ready, willing, and able to represent the classes and have been

18  adequately involved in the prosecution of this case. *See* **Exhibit B**, Decl. of Danny Lane ¶¶ 7–9;

19  **Exhibit C**, Decl. of Beverly Lane ¶¶ 7–9; **Exhibit D**, Decl. of Mercedes Guerrero ¶¶ 7–11.

20  Plaintiffs Danny and Beverly Lane have attended lengthy depositions where they answered every

21  questions posed by Wells Fargo.[11]

22       Additionally, Plaintiffs' Counsel have vigorously prosecuted this action and will continue to

23

---

[11] Plaintiff Beverly Lane's deposition last approximately 6 hours. Danny Lane's deposition lasted 1.5 hours.

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

do so. Plaintiffs' Counsel are experienced in prosecuting consumer protection and fraud class actions.[12] Each firm is well-established, possesses extensive knowledge of, and experience in, prosecuting class actions in courts throughout the United States, and have recovered millions of dollars for their clients and class members.

## B.   Rule 23(b)(3) Criteria

"Under Rule 23(b)(3), a plaintiff must demonstrate the superiority of maintaining a class action and show 'that the questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012). "[T]here is clear justification for handling the dispute on a representative basis rather than an individual basis" if "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. "Where questions common to class members represent significant issues that can be resolved in a single adjudication 'there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Faulk v. Sears Roebuck & Co.*, 2013 WL 1703378, at *5 (N.D. Cal. Apr. 19, 2013)(quoting *Amchem Prods.*, 521 U.S. at 623). "[T]he 'common' legal or factual issues must be of sufficient importance to the case that the Court is convinced that the most efficient, fair and sensible method of adjudication is through a class action." *Id.* (citing Cal. Prac. Guide Fed. Civ. P. Before Trial Ch. 10-C § 10:274).

### 1.   Predominance

Numerous questions of law and fact are common to all members of the class. These common questions predominate because, in each case, "[t]he challenged practice is a standardized one applied on a routine basis to all customers" by the bank. *See Gutierrez*, 2008 WL 4279550, at

---

[12] Firm resumes for Owings Law Firm, Wagoner Law Firm, and Walker Law Firm are attached as **Exhibits 19–21**, respectively. A Declaration from Sheri Kelly is attached as **Exhibit E**.

*17; *see also*, *Kay v. Wells Fargo & Co.*, 247 F.R.D. 572, 575–76 (N.D. Cal. 2007)(legality of kickbacks paid to lender in connection with mortgage insurance constituted common question that predominated over individual issues). Plaintiffs present several fundamental common questions, including (1) whether Wells Fargo unlawfully charged Class Members for kickbacks and other costs in excess of actual force-placed insurance premiums; (2) whether Wells Fargo unlawfully charged borrowers for administrative services that were Wells Fargo's responsibility; and (3) whether Wells Fargo unlawfully force-placed backdated insurance on Class Members' properties. These common questions present a "significant portion of the case" that can be resolved for all class members in a single adjudication. *See Gutierrez*, 2008 WL 4279550, at *14. The Court can resolve all issues pertaining to Wells Fargo's liability for each claim "in a single adjudication" by simply answering the common questions stated above in Section III.A.2.

Wells Fargo's force-placed insurance practices are uniformly applied to *all* Wells Fargo borrowers, and thus common questions of law and fact will predominate in determining liability for each of Plaintiffs' legal theories. *See* Section II.B, above. Specifically, (1) the terms of all Wells Fargo mortgages related to force-placed insurance are materially similar and uniform; (2) Wells Fargo applies uniform force-placed insurance practices, through its Insurers, to all Wells Fargo borrowers; (3) the Insurers follow standardized, automated procedures for notifying and force-placing insurance for Wells Fargo borrowers; (4) Wells Fargo, through WFI, received a kickback on every force-placed insurance policy during the class period; (5) Wells Fargo includes administrative costs in force-placed insurance premiums; and (6) Wells Fargo does not treat any individual borrower differently in connection with force-placed insurance. *See* Section II.B.1, above. Additionally, Plaintiffs can use common evidence from Wells Fargo's centralized database to identify class members and ascertain the amount of damages for each class member. *See*

**Exhibit 1**, Birnbaum Report § 10.

"The process of computing damages will be virtually a mechanical task." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)("The amount of damages is invariably an individual question and does not defeat class action treatment.") Individual issues relating to damages calculations do not predominate where damages can be calculated from Defendant's records with relatively simple search queries and mathematical formulas. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259–60 (11th Cir. 2004)("It is primarily when there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude Rule 23(b)(3) certification"); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010)("The potential existence of individualized damages assessments . . . does not detract from the action's suitability for class certification"); *Gutierrez*, 2008 WL 42795501, at *17 ("Given the bank's large wealth of computerized account information, this order is confident and so finds that software will be designable to extract the vital elements needed to assess damages and causation.")

The vast majority of Wells Fargo's defenses will also rise or fall on questions of law and fact common to the Class. Wells Fargo's answer raises thirty-five affirmative defenses. (Dkt. No. 91). Common evidence of Wells Fargo's uniform practices will prove or disprove nearly all of these defenses. Many of Wells Fargo's defenses rely on legal or contractual rights that are uniform for all class members, or at least uniform for all class members residing in each state. For example, Wells Fargo asserts that this action is barred by federal statutes and regulations. (Dkt. No. 91, p. 18). The federal statutes and regulations at issue apply uniformly to all citizens of the United States, so their applicability to Wells Fargo's actions is a common issue for all class members. Many other defenses will be proven or disproven using common evidence of Wells Fargo's

uniform practices, form letters, and dealings with the Insurers. For example, Wells Fargo claims that it always acted in good faith and observed reasonable commercial standards of fair dealing in the trade. *Id.* Wells Fargo's policies and procedures set forth what it views as "good faith" and "reasonable commercial standards," and govern how every single member of the class is treated in connection with force-placed insurance. No individual issues raised by Wells Fargo's defenses will predominate over the extensive common questions of law and fact inherent in this case.

### 2.    Superiority

"Rule 23(b)(3)'s superiority test requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair." *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175–76 (9th Cir. 2010). The rule provides four non-exhaustive factors for determining superiority: (1) the class members' interests in individually controlling the case; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation in a particular forum; and (4) the likely difficulties in managing a class action. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 713 (9th Cir. 2010); Fed. R. Civ. P. 23(b)(3). "Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large and (6) of the defendant." *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975)

A principal concern is whether, in the absence of a class action, most class members will be deprived of any legal redress because the claims are relatively modest compared to the cost of the litigation. *Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the costs of litigating on an individual basis, this factor weighs in favor of class certification.") "Whether common issues predominate 'has a tremendous impact on the superiority analysis . . .

---

for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims.'" *Cty. of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 671 (S.D. Fla. 2010)(quoting *Klay*, 382 F.3d at 1269); *see also Wolin*, 617 F.3d at 1176 ("Forcing individual [plaintiffs] to litigate their cases, particularly where common issues predominate for the proposed class, is an inferior method of adjudication.") Here, the fact that common issues of law and fact predominate under Rule 23(b)(3) demonstrates the superiority of adjudicating this case as a class action.

### a.     Class Members' Interests

Rule 23(b)(3)(A) addresses whether the interests of most class members in conducting separate lawsuits is so strong as to require denial of class certification. *See Parker v. Time Warner Entm't Co.*, 198 F.R.D. 374 (E.D.N.Y. 2001). Relevant considerations include the degree of "cohesion" among class members, whether "the amounts at stake for individuals . . . [are] so small that separate suits would be impracticable," and the extent to which "separate suits would impose . . . [burdens] on the party opposing the class, or upon the court calendars." Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Am.

Defendant's practices damaged each class member by several hundred to a few thousand dollars per year. Most class Members have no overriding interest in conducting separate lawsuits against Wells Fargo and have insufficient monetary incentive or ability to prosecute individual claims. It would be economically impractical for most Class Members to retain a private attorney to pursue individual litigation. *See* 7A Wright and Miller, Federal Practice and Procedure, § 1779 at 557 ("a group composed of consumers . . . typically will be unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure.")

### b.        Extent and Nature of Any Extant Litigation

Rule 23(b)(3)(B) directs that the Court consider "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class." Fed. R. Civ. P. 23(b)(3)(B). Plaintiffs are aware of several similar cases pending against Wells Fargo, although none have been deemed "related" and none have been consolidated with this case. Two other similar cases are currently pending in this District: *Cannon v. Wells Fargo Bank, N.A.*, Case No 3:12-cv-1376 (N.D. Cal)(J. Chen); and *McKenzie v. Wells Fargo Bank, N.A.*, Case No. 3:11-cv-4965 (N.D. Cal.)(J. Spero). Two similar cases have also been filed in Florida challenging Wells Fargo's force-placed insurance and kickback schemes: (1) *Williams v. Wells Fargo*, Case No. 11-cv-21233 (S.D. Fla.), is a certified Florida class action addressing hazard insurance claims against Wells Fargo; and (2) *Fladell v. Wells Fargo*, Case No. 0:13-cv-60721 (S.D. Fla), is a putative class action challenging Wells Fargo's force-placed insurance practices. Two cases addressing Wells Fargo's excessive flood insurance requirements, but not its force-placed insurance and kickback scheme, are currently pending: (1) *Morris v. Wells Fargo*, 2:11-cv-474 (W.D. Pa.); and (2) *Sayago v. Wells Fargo*, 8:11-cv-2009 (M.D. Fla). *Passantino-Miller v. Wells Fargo Bank, N.A.*, Case No. 2:12-cv-420 (E.D. Cal.), is a putative class action challenging Wells Fargo's excessive insurance requirements in connection with home equity lines of credit. These cases do not overlap with this case in any manner. Class certification motions have not been filed in any case other than *Williams*, which only sought a Florida class.[13] Plaintiffs are unaware of any cases concerning the subject matter filed by or against individual class members. Plaintiffs are aware of no case other than *Williams* that is as procedurally advanced as this one.

---

[13] The *Sayago* plaintiffs filed a motion for class certification in March, 2012 that was never ruled upon. This case was stayed pending resolution of a decision by the Judicial Panel of Multidistrict Litigation in connection with a possible MDL of these cases on August 31, 2012. On January 15, 2013, the case was unstayed but all pending motions were vacated. No new motion for class certification has been filed.

<div align="center">

**c.     Desirability of Concentrating the Litigation in this Forum**

</div>

The third factor in analyzing superiority is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). The Northern District of California is particularly appropriate for resolving this litigation as against Wells Fargo because of the impact of Wells Fargo's practices on California citizens and because of Wells Fargo's extensive business operations in California. Plaintiff Mercedes Guerrero also resides in California. **Exhibit D**, Decl. of Mercedes Guerrero ¶ 1.

<div align="center">

**d.     Manageability**

</div>

Finally, the Court must consider "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(D). Manageability "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 164 (1974). "This concern will rarely, if ever, be in itself sufficient to prevent certification of a class." *Klay*, 382 F.3d at 1272. This Court previously has certified several class actions involving defendant banks, including Wells Fargo. *See Gutierrez*, 2008 WL 4279550, at *13–18; *Kay*, 247 F.R.D. at 574–79; *Siemers v. Wells Fargo & Co*, 243 F.R.D. 369, 373–76 (N.D. Cal. 2007). No evidence suggest that class-wide adjudication would be unmanageable compared with these cases. In fact, all evidence presently available demonstrates that Wells Fargo's, ASIC's, and QBE's databases and commissions reports can easily identify all class members, determine which class members have claims, and determine the amount of each class member's damages.

Both the identity of class members and their damages can be easily ascertained from Wells Fargo's database. **Exhibit 1**, Birnbaum Report § 10. ██████████████████

██████████████████████████████████████████████

24

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████ **Exhibit 2**, Farrell Dep. 61:2–62:5, 69:9–70:5, 100:14–101:14, 101:19–102:7, 103:25–104:8, 114:18–23. 105:10–16. ████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

**Exhibit 8**, Chapman Dep. 19:11–22; **Exhibit 11**, Wilson Dep. 19:12–16, 20:13–17.

"The data necessary to calculate damages to Class Members are normal business records of WFB, WFI, QBE, and Assurant." **Exhibit 1**, Birnbaum Report § 10. "The WFI 'commissions' are calculated as a percentage of LPI premium charges. Other unreasonable expenses, unrelated to the provision of LPI, can also be quantified and expressed as a percentage of LPI amounts charged to Class Members." *Id.* "Once the percentage of unreasonable expenses in LPI charges to Class Members is determined, the calculation of damages to individual Class Members is uniform and simple to calculate." *Id.*

No overwhelming management issues are present in Plaintiffs' claims or Wells Fargo's defenses. As such, this case is ideally suited for class treatment.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court grant Plaintiffs' Motion for Class Certification; appoint Plaintiffs Danny Lane, Beverly Lane, and Mercedes Guerrero as class representatives; appoint undersigned counsel as class counsel; and for all other appropriate relief.

1    **Dated: May 9, 2013**                    Respectfully submitted,

2                                               _/s/ Sheri Kelly_____
                                                Sheri L. Kelly, SBN 226993
3                                               LAW OFFICE OF SHERI L. KELLY
                                                31 E. Julian St.
4                                               San Jose, CA  95112
                                                Telephone:  408/287-7712
5                                               Facsimile:  408/583-4249
                                                slk@sherikellylaw.com
6
                                                Steven A. Owings (*Pro Hac Vice*)
7                                               Alexander P. Owings (*Pro Hac Vice*)
                                                OWINGS LAW FIRM
8                                               1400 Brookwood Drive
                                                Little Rock, AR 72202
9                                               Telephone: (501) 661-9999
                                                Facsimile: (501) 661-8393
10                                              sowings@owingslawfirm.com
                                                apowings@owingslawfirm.com
11
                                                Jack Wagoner, (*Pro Hac Vice*)
12                                              Angela Mann (*Pro Hac Vice*)
                                                WAGONER LAW FIRM, P.A.
13                                              1320 Brookwood, Suite E
                                                Little Rock, AR 72202
14                                              Telephone: (501) 663-5225
                                                Facsimile: (501) 660-4030
15                                              jack@wagonerlawfirm.com
                                                angela@wagonerlawfirm.com
16
                                                Brent Walker (*Pro Hac Vice pending*)
17                                              WALKER LAW PLLC
                                                P.O. Box 287
18                                              Cabot, AR 72023
                                                (501) 605-8595
19                                              (888) 571-0319 (facsimile)
                                                bwalker@walkerlawplc.com
20

21
                                                **Counsel for Plaintiffs**
22

23

<u>**CERTIFICATE OF SERVICE**</u>

I, Sheri L. Kelly, hereby certify that on this 9th day of May, 2013, I served the foregoing and all exhibits in unredacted form on counsel of record via electronic mail at the address(es) indicated below. I further certify that I served the foregoing and all exhibits in unredacted form on counsel of record by hand delivery at the address indicated below on May 10th, 2013. I further certify that a redacted copy of the foregoing and all exhibits was served on all counsel of record via the Court's CM/ECF system on May 9th, 2013.

Jonah Sampson Van Zandt
SEVERSON AND WERSON
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
(415) 398-3444
jvz@severson.com

　/s/ Sheri L. Kelly　　
Sheri L. Kelly