1 | Matthew C. Helland, SBN 250451
(helland@nka.com)
2 | NICHOLS KASTER, LLP
One Embarcadero Center, Suite 720
3 | San Francisco, CA  94111
Telephone: (415) 277-7235
4 | Facsimile: (415) 277-7238

5 | Kai Richter, MN Bar No. 0296545
(krichter@nka.com)
6 | NICHOLS KASTER, PLLP
7 | 4600 IDS Center
80 South 8th Street
8 | Minneapolis, MN  55402
Telephone: (612) 256-3200
9 | Facsimile: (612) 215-6870

10 | Shanon J. Carson, PA Bar No. 85957
scarson@bm.net
11 | Patrick F. Madden, PA Bar No. 309991
pmadden@bm.net
12 | BERGER & MONTAGUE, P.C.
1622 Locust Street
13 | Philadelphia, PA 19103
Telephone: (215) 875-3000
14 |
*Counsel for Intervenors Desiree Morris,*
15 | *Clifford McKenzie, Daniel Biddix, David*
*Kibiloski and Virginia Ryan*
16 |

**IN THE UNITED STATES DISTRICT COURT**
17 | **NORTHERN DISTRICT OF CALIFORNIA**

18 |

19 | DANNY LANE, BEVERLY LANE, and
MERCEDES GUERRERO, individually,
20 | and for other persons similarly situated,

Plaintiffs,
21 | vs.

22 | WELLS FARGO BANK, N.A.,

23 | Defendant.

| | |
|---|---|
| | CASE NO. 12-CV-4026 WHA |
| | **NOTICE OF MOTION AND MOTION TO INTERVENE, AND MEMORANDUM OF POINTS AND AUTHORITIES** |
| | Date:       June 20, 2013 (Requested) |
| | Time:       8:00 a.m. PST |
| | Crtrm:      8, 19th Floor |
| | Judge:      Hon. William Alsup |

---

**NOTICE OF MOTION AND MOTION TO INTERVENE**

1

## NOTICE OF MOTION AND MOTION TO INTERVENE

2      This Motion to Intervene is brought by Plaintiff Desiree Morris in *Morris v. Wells Fargo*

3  *Bank, N.A.*, No. 2:11-cv-00474 (W.D. Pa.) (filed April 7, 2011) (the "*Morris* Action") and

4  Plaintiffs Clifford McKenzie, Daniel Biddix, David Kibiloski, and Virginia Ryan in *McKenzie v.*

5  *Wells Fargo Bank, N.A.*, No. 3:11-cv-04965 (N.D. Cal.) (filed October 7, 2011) (the "*McKenzie*

6  Action).  The Plaintiffs in these putative class actions (collectively, "Movants"), who filed their

7  actions involving force-placed flood insurance against Wells Fargo prior to the above-captioned

8  *Lane* Action, respectfully move this Court for an Order allowing them to intervene in this action

9  pursuant to Federal Rules of Civil Procedure 23(d) and 24 and to supplement the record.

10  Alternatively, Movants respectfully request that this Court defer a determination of the pending

11  Motion for Class Certification in the *Lane* Action until their class certification motions in their

12  earlier-filed actions are resolved.  This Motion is based on the points and authorities cited in

13  Movants' accompanying Memorandum, the contemporaneously-filed declarations of Kai Richter

14  ("Richter Decl.") and Shanon J. Carson ("Carson Decl."), and all files, records, and proceedings in

15  the *Morris*, *McKenzie*, and *Lane* actions.

16      **PLEASE TAKE NOTICE** that Movants have filed a separate motion pursuant to Local

17  C.R. 6-3 requesting that the Court hear this Motion to Intervene on June 20, 2013 at 8:00 a.m., or

18  as soon thereafter as the Motion may be heard, in Courtroom 8 on the 19th Floor of the United

19  States Courthouse, 450 Golden Gate Avenue, San Francisco, California, before the Honorable

20  William H. Alsup.

21  Dated: May 23, 2013                          **NICHOLS KASTER,  LLP**

22                                              By: s/ Matthew C. Helland
                                                    Matthew C. Helland

23

24                                              *Counsel for Intervenors Desiree Morris,*
                                                *Clifford McKenzie, Daniel Biddix, David*
25                                              *Kibiloski and Virginia Ryan*

26

27

i

# MEMORANDUM OF POINTS AND AUTHORITIES

## **TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................1

BACKGROUND .............................................................................................................4

I.   THE FIRST-FILED ACTION IN THE COUNTRY: *MORRIS V. WELLS FARGO BANK, N.A.* ...........4

II.  THE FIRST-FILED CALIFORNIA ACTION: *MCKENZIE V. WELLS FARGO BANK, N.A.* .............6

III. THE LATER-FILED *LANE* ACTION .......................................................................8

IV.  MISREPRESENTATIONS IN THE *LANE* PLAINTIFFS' MOTION FOR CLASS CERTIFICATION ....10

V.   HISTORY IS REPEATING ITSELF: THE INSTRUCTIVE HISTORY OF THE *HOFSTETTER* CASE ....12

VI.  MOVANTS AND THEIR COUNSEL ARE BETTER ABLE TO REPRESENT THE INTERESTS OF THE

     CLASS ....................................................................................................13

ARGUMENT ...............................................................................................................16

I.   MOVANTS SHOULD BE ALLOWED TO INTERVENE IN THIS ACTION .................................16

     A.  Movants Are Entitled to Intervene as of Right ...............................................16

         1. The Motion Is Timely ..........................................................................17

         2. Movants Have a Significant Protectable Interest in the Action .......................19

         3. The Disposition of the Action May Impair or Impede Movants' Ability to

            Protect Their Interests and Those of the Class Members ............................20

         4. The Interests of Movants and Class Members Who Were Force-Placed with

            Flood Insurance by Wells Fargo Are Inadequately Represented .................21

     B.  Movants Also Satisfy the Standard for Permissive Intervention .........................22

II.  ALTERNATIVELY, THIS COURT SHOULD DEFER RULING ON CLASS CERTIFICATION UNTIL

     AFTER THE ISSUE OF CLASS CERTIFICATION IS DECIDED IN THE FIRST-FILED *MORRIS* AND

     *MCKENZIE* ACTIONS ...................................................................................23

CONCLUSION ...........................................................................................................25

NOTICE OF MOTION AND MOTION TO INTERVENE

## TABLE OF AUTHORITIES

**Federal Rules**

Fed. R. Civ. P. 23(d)(1)(B)(iii) ................................................................16, 19

Fed. R. Civ. P. 23(g) ....................................................................................13

Fed. R. Civ. P. 24(a)(2) ...............................................................................16

Fed. R. Civ. P. 24(b)(1) ...............................................................................22

Fed. R. Civ. P. 24, advisory comm. note (1966), 39 F.R.D. 69, 110 ...........16

**Cases**

*Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622 (9th Cir. 1991) .......................23

*Arnett v. Bank of America, N.A.*, 874 F. Supp. 2d 1021 (D. Or. 2012) ........................15

*Beach v. Healthways, Inc.*, 264 F.R.D. 360 (M.D. Tenn. 2010) ...................................18

*Cal. ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006) .....................17, 19

*Casey v. Citibank, N.A.*, -- F. Supp. 2d --, No. 5:12-CV-820, 2013 WL 11901 (N.D.N.Y. Jan. 2, 2013) ................................................................14, 15

*Cedars–Sinai Med. Ctr. v. Shalala*, 125 F.3d 765 (9th Cir. 1997) ...............................23

*Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326 (1980) ...................19

*Dickstein v. Able Telcom Holding Corp.*, 192 F.R.D. 331 (N.D. Ga. 2000) ............19, 20

*Elec. Arts, Inc. v. Textron, Inc.*, No. 12-00118, 2012 WL 1496170 (N.D. Cal. Apr. 27, 2012) ..23

*Ellsworth v. U.S. Bank, N.A.*, -- F. Supp. 2d --, No. C 12-02506 LB, 2012 WL 6176905 (N.D. Cal. Dec. 11, 2012) ................................................................14

*Fleury v. Richemont North Am., Inc.*,  No. C-05-4525 EMC, 2007 WL 2457543 (N.D. Cal. Aug. 27, 2007) ................................................................16, 23

*Foster v. Gueory*, 655 F.2d 1319 (D.C. Cir. 1981) ....................................................18

*Gibson v. Chase Home Finance, LLC*, No. 8:11–cv–1302–T–23TBM., 2012 WL 1094323 (M.D. Fla. Apr. 2, 2012) ................................................................12

*Gordon v. Chase Home Finance, LLC*, No. 8:11-cv-02001 (M.D. Fla. June 22, 2011) .............12

iii

*Gordon v. Chase Home Finance, LLC*, No. 8:11-cv-02001, 2013 WL 436445 (M.D. Fla. Feb. 5, 2013) ..................................................................................................................12

*Greene v. United States,* 996 F.2d 973 (9th Cir.1993) ................................................................19

*Gustafson v. BAC Home Loans Servicing, LP*, No. 8:11-cv-00915, 2012 WL 4761733 (C.D. Cal. Apr. 12, 2012) ..............................................................................................................14

*Hofstetter v. Chase Home Finance, LLC* 751 F. Supp. 2d 1116 (N.D. Cal. 2010) ......................14

*Holmes v. Bank of Am., N.A.*, No. 3:12-CV-00487-MOC-DSC, 2013 WL 1693709 (W.D.N.C. Apr. 16, 2013) ....................................................................................................14, 15

*In re Benny*, 791 F.2d 712 (9th Cir. 1986) .................................................................17

*In re Charles Schwab Corp. Sec. Litig.*, No. C 08-01510 WHA, 2011 WL 633308 (N.D. Cal. Feb. 11, 2011) ..................................................................................................................22

*In re Cmty. Bank of N. Virginia*, 418 F.3d 277 (3d Cir. 2005) .................................................19

*In re Discovery Zone Sec. Litig.*, 181 F.R.D. 582 (N.D. Ill. 1998) ..........................................22

*In re JDS Uniphase Corp. Sec. Litig.*, No. C02-1486CW 2005 WL 2562621 (N.D. Cal. Oct. 12, 2005) ..................................................................................................................18

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949 (N.D. Cal. 2008) ...25

*Lass v. Bank of America, N.A.*, 695 F.3d 129 (1st Cir. Sept. 21, 2012) ......................................14

*League of United Latin Am. Citizens v. Wilson,* 131 F.3d 1297 (9th Cir.1997) ..........................22

*Morris v. Wells Fargo Bank, N.A.*, No. 2:11-cv-00474, 2012 WL 3929805 (W.D. Pa. Sept. 7, 2012) ..............................................................................................................2, 4, 14

*Nankash v. Marciano*, 882 F.2d 1411 (9th Cir. 1989) .........................................................24, 25

*Nw. Forest Res. Council v. Glickman,* 82 F.3d 825 (9th Cir. 1996) ...........................................17

*Pac. Coast Fed'n of Fishermen's Associations v. Gutierrez*, No. 1:06-CV-00245 OWW GSA, 2008 WL 4104257 (E.D. Cal. Sept. 2, 2008) .......................................................................22

*Passantino-Miller v. Wells Fargo Bank, N.A.*, No. 2:12-CV-00420-GEB-DAD, 2013 WL 57024 (E.D. Cal. Jan. 3, 2013) ..................................................................................................14

*Richards v. RBS Citizens, N.A.*, No. 12-cv-239, Dkt. No. 21 (D.R.I. Oct. 10, 2012) .................15

*Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014 (N.D. Cal. 2008) ......................................24

*Ruderman v. Washington Mut. Nat'l Ins. Co.*, 263 F.R.D. 670 (S.D. Fla. 2010) ........................23

*Sherman v. Griepentrog*, 775 F. Supp. 1383 (D. Nev. 1991) ......................................................17

*Sierra Club v. Envtl. Prot. Agency,* 995 F.2d 1478 (9th Cir. 1993) ............................................17

*Skansgaard v. Bank of Am., N.A.*, -- F. Supp. 2d --, No. SACV 11-915-JST (ANx), 2011 WL
        9169945 (W.D. Wash. Oct. 13, 2011) ...........................................................................14

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) ..................17, 19, 20, 21

*Thompson v. Woodford*, No. C 79-01630 WHA, 2006 WL 889391 (N.D. Cal. Apr. 6, 2006) ....16

*Trbovich v. United Mine Workers,* 404 U.S. 528 (1972) .............................................................21

*Ulbrich v. GMAC Mortgage, LLC*, No. 11-62424-Civ., 2012 WL 3516499 (S.D. Fla. Aug. 15,
        2012) ..............................................................................................................................14

*United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977) .....................................................18, 19

*United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004) ............................................17

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) ...........................................17

*United States v. State of Or.*, 839 F.2d 635 (9th Cir. 1988) ........................................................20

*Walls v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-673-H., 2012 WL 3096660 (W.D. Ky. July 30,
        2012) ..............................................................................................................................14

*Wells v. Cingular Wireless LLC*, No. C 06-03191 WHA, 2006 WL 2792432 (N.D. Cal. Sept. 27,
        2006) .........................................................................................................................23, 24

*Widjaja v. YUM! Brands, Inc.,* No. CV-F-09-1074 OWW/DLB, 2009 WL 3462040 (E.D. Cal. Oct.
        22, 2009) ........................................................................................................................21

*Williams v. Wells Fargo Bank, N.A.*, -- F.R.D. --, 2012 WL 566067 (S.D. Fla. Feb. 21, 2012) ....5

*Wulf v. Bank of Am., N.A.*, 798 F. Supp. 2d 586 (E.D. Pa. June 27, 2011) ..................................14

**Other Authorities**

C. Wright et. al, 7B FEDERAL PRACTICE & PROCEDURE § 1799 (3d ed. 2005)..............................16

NOTICE OF MOTION AND MOTION TO INTERVENE

1

## INTRODUCTION

2      Movants bring this Motion for Intervention to (1) ensure that their interests and the interests

3   of the putative class members are adequately represented in this proceeding; (2) allow for

4   development of a more complete record in support of class certification and the class claims; and

5   (3) correct several misstatements by counsel for the *Lane* Plaintiffs in connection with the *Lane*

6   Plaintiffs' Motion for Class Certification.

7      In an apparent attempt to leapfrog the *Morris* and *McKenzie* Actions – which were filed

8   well **before** the instant *Lane* Action – counsel for the *Lane* Plaintiffs have rushed to file a motion

9   for class certification on an incomplete factual record without joining a complete set of defendants.

10  Specifically, counsel for the *Lane* Plaintiffs have taken only **one** deposition of a Wells Fargo

11  witness (Thomas Farrell), and have not submitted testimony from any of the eight Wells Fargo

12  witnesses who were deposed in the *Morris* Action and whose deposition transcripts are also part of

13  the record in the *McKenzie* Action.[1]  Based on the sparse number of exhibits that were presented in

14  support of the *Lane* Plaintiffs' Motion for Class Certification, it is also evident that counsel for the

15  *Lane* Plaintiffs did not engage in a meaningful review of documents in this case, and certainly did

16  not review the extensive written discovery that was obtained in the *Morris* Action and that has now

17

---

18  [1] Movants' counsel took eight depositions of the following witnesses from Wells Fargo Bank, N.A.
    ("WFB") or Wells Fargo Insurance, Inc. ("WFI") in the *Morris* case:

19

20      • David Franske (taken April 27, 2012, May 1, 2012, and May 14, 2013);
        • Mike Northagen (taken May 1, 2012 and May 16, 2013);

21      • Charles Aguanno (taken May 30, 2012)
        • Ryan Haselby (taken May 30, 2012)

22      • Mary Coffin (taken June 7, 2012)
        • Bill Tucker (taken June 8, 2012)

23      • Tamara Golden (taken June 15, 2012).
        • Beverly Reynolds (taken June 20, 2012)

24

25  *Richter Decl., ¶ 4.*  In addition, Movants' counsel also took the depositions of Mark Chapman
    (QBE First Insurance Agency, Inc.) and Ronald Wilson (American Security Insurance Company)

26  in June 2012.  *Id.*  All ten of the above depositions are also part of the record in the *McKenzie*
    Action pursuant to a stipulation between the parties in the *McKenzie* Action, which was approved

27  by Magistrate Judge Spero.  *See McKenzie*, Dkt. No. 121.

---

been deemed produced in the *McKenzie* Action, which includes more than 213,000 pages of documents and an extensive set of class data.  Further, counsel for the *Lane* Plaintiffs have not included WFI as a party defendant, as was done in the *Morris* and *McKenzie* Actions, even though the *Lane* Plaintiffs' claims focus on "class members' payment of commissions to WFI[.]"  *Lane Plaintiffs' Memo in Support of Class Certification (ECF No. 92) at 12*.  Accordingly, Movants believe that it is imperative that they be allowed to intervene in the present proceeding to ensure that the putative class members are adequately represented and to protect the rights of these putative class members, who Movants seek to represent in the *Morris* and *McKenzie* actions.

Even more troubling is that counsel for the *Lane* Plaintiffs have misrepresented the nature and status of the *Morris* and *McKenzie* Actions in an effort to portray the *Lane* Action as the most "procedurally advanced" of its kind (which it is not).  *See Lane Plaintiffs' Memo in Support of Class Certification at 23*.  Specifically, counsel for the *Lane* Plaintiffs made the following misrepresentations on page 23 of their memorandum:

- **Misrepresentation No. 1**: **The *Morris* Action relates to "Wells Fargo's excessive flood insurance requirements, but not its force-placed insurance and kickback scheme[.]"**  To the contrary, the First Amended Complaint in the *Morris* Action explicitly states that WFB and WFI ("Wells Fargo") "unfairly, unjustly, and unlawfully profited from force-placing flood insurance on Plaintiff's property and the property of other borrowers, by charging Plaintiff and other borrowers amounts in excess of the net costs incurred for such flood insurance and by directing kickbacks, commissions, and other compensation to Wells Fargo in connection with force-placed (also known as lender-placed) flood insurance."  *Richter Decl., Ex. 2* at p.2, ¶ 4.  These kickback claims remain intact following the *Morris* Court's order denying, in part, Wells Fargo's motion to dismiss the *Morris* Action.  *See Morris v. Wells Fargo Bank, N.A.*, No. 2:11-cv-00474, 2012 WL 3929805 (W.D. Pa. Sept. 7, 2012).

- **Misrepresentation No. 2**: **The *Morris* and *McKenzie* Actions "do not overlap with this case in any manner."**  To the contrary, all three cases involve common allegations of unlawful kickbacks in connection with force-placed flood insurance.  *See, e.g., Richter Decl., Ex. 2* at p.2, ¶ 4; *id., ex. 4* at ¶¶ 14-17.  Moreover, all three cases involve overlapping nationwide putative classes composed of borrowers who were force-placed with flood insurance by Wells Fargo.

- **Misrepresentation No. 3**: **"Class certification motions have not been filed" in the *Morris* or *McKenzie* Actions.**  To the contrary, a motion for class certification was filed in the *Morris* Action on September 19, 2012.  *See, e.g., Morris*, Dkt. No.

2

103.[2]   Moreover, counsel for the *Lane* Plaintiffs omit to mention that a class certification motion is scheduled to be filed (and will be filed) in the *McKenzie* Action on or before May 31, 2013 pursuant to Magistrate Judge Spero's scheduling order in that case.  *See McKenzie*, Dkt. No. 75.

- **Misrepresentation No. 4**: **The *Morris* and *McKenzie* Actions are not as "procedurally advanced."**  To the contrary, the *Morris* and *McKenzie* Actions were filed substantially before *Lane*, benefit from a more complete record, and involve their own class certification motions that were either filed before the present class certification motion (in the *Morris* Action) or which will be pending at the same time (in the *McKenzie* Action).

Finally, this is not the first time that counsel for the *Lane* Plaintiffs (referred to herein as Owings/Wagoner/Walker, or "OWW") have attempted to file a putative class action lawsuit on top of an existing class action lawsuit relating to force-placed flood insurance.  As the Court may recall, OWW previously filed what this Court described as a "me-too" lawsuit, attempting to piggyback off of the work of Movants' undersigned counsel (Nichols Kaster, PLLP) in *Hofstetter v. Chase Home Finance, LLC*, No. 3:10-cv-01313-WHA (N.D. Cal.).  *See Richter Decl., Ex. 10 at p.24* (final approval hearing transcript).  Now, history is repeating itself, with the new wrinkle that OWW seeks to file a rushed motion for class certification on an incomplete record in an effort to obtain appointment as class counsel in this case before the courts in the earlier-filed *Morris* and *McKenzie* actions are able to make their own class certification rulings based on the extensive factual record that Movants' counsel has worked methodically to build.  Needless to say, this is ***not*** in the best interest of the class members and is not how the process is supposed to work.  Accordingly, Movants respectfully request that they be allowed to intervene in the present action, or alternatively, request that this Court stay a determination of the pending motion for class certification in the *Lane* Action until after their class certification motions in their earlier-filed actions are resolved.

---

[2] The *Morris* court denied that motion without prejudice pending a status conference, which has not yet been held because Wells Fargo filed two more Rule 12 motions on December 4, 2012, as well as a motion for interlocutory review of the *Morris* court's ruling on the earlier motion to dismiss.

**NOTICE OF MOTION AND MOTION TO INTERVENE**

1

## BACKGROUND

2

### I.   THE FIRST-FILED ACTION IN THE COUNTRY: *MORRIS V. WELLS FARGO BANK, N.A.*

3

The *Morris* Action was filed against WFB on April 7, 2011, over a year before the *Lane*

4

Action was commenced.  *Morris*, Dkt. No. 1.[3]  On November 28, 2011, Plaintiff Morris filed a

5

First Amended Complaint, adding WFI as an additional defendant.  *Richter Decl., Ex. 2.*  In her

6

First Amended Complaint, Plaintiff Morris asserts claims against WFB relating to excessive flood

7

insurance coverage requirements, and claims against both Wells Fargo Defendants relating to

8

unlawful kickbacks in connection with force-placed flood insurance.  *Id., ¶¶ 2-4, 30-31, 67-68, 96-*

9

*98.*

10

On January 9, 2012, WFB and WFI filed a pair of motions to dismiss Plaintiff's First

11

Amended Complaint.  *Morris*, Dkt. Nos. 52, 53.   Those motions were partially denied on

12

September 7, 2012.  *See Morris v. Wells Fargo Bank, N.A.*, No. 2:11-cv-00474, 2012 WL 3929805

13

(W.D. Pa. Sept. 7, 2012).  In its order, the court held that Plaintiff Morris may pursue her claims

14

for (1) breach of contract against WFB; (2) violation of the Truth-In-Lending Act ("TILA") against

15

WFB; and (3) unjust enrichment against WFI.  In addition, the court held that Plaintiff Morris may

16

pursue her claim for breach of the covenant of good faith and fair dealing as part of her breach of

17

contract claim against WFB.

18

On September 19, 2012, Plaintiff Morris filed a motion for class certification, and asked the

19

court to certify four nationwide classes of borrowers, including two "force-placed" classes tailored

20

to her kickback claims against WFB and WFI.  *See Richter Decl., Ex. 7.*  These classes overlap

21

with the force-placed classes that the *Lane* Plaintiffs seek to certify in the *Lane* Action.  *See Lane*

22

*Plaintiffs' Notice of Motion and Motion for Class Certification (ECF No. 92).* For example, in

23

connection with her unjust enrichment claim against WFI, Plaintiff sought to certify a class of

24

Wells Fargo borrowers who were force-placed with flood insurance, defined as follows:

25

26

---

[3] The dockets in the *Morris*, *McKenzie*, and *Lane* Actions are attached as Exhibits 1, 3, and 5 to the Richter Declaration.  The relevant complaints in each case are attached as Exhibits 2, 4, and 6.

27

4

1

2

3

> All persons who were charged by Defendants for lender-placed flood insurance that was arranged through Assurant or QBE (or their affiliates) within the applicable limitations period, excluding any persons who are members of the of the class certified by the court in *Williams v. Wells Fargo Bank, N.A.*, -- F.R.D. --, 2012 WL 566067, at *5 (S.D. Fla. Feb. 21, 2012).

*Richter Decl., Ex. 7.* Moreover, in connection with her breach of contract/breach of covenant of good faith and fair dealing claim against WFB as it relates to improper kickbacks or commissions, Plaintiff Morris sought certification of a subclass of Wells Fargo borrowers who were force-placed with flood insurance in connection with FHA loans, defined as follows:

> All persons who have or had an FHA loan with Defendants secured by their residential property, and were charged by Defendants for lender-placed flood insurance that was arranged through Assurant or QBE (or their affiliates) within the applicable limitations period, excluding any persons who are members of the class certified by the court in *Williams v. Wells Fargo Bank, N.A.*, -- F.R.D. --, 2012 WL 566067, at *5 (S.D. Fla. Feb. 21, 2012).

*Id.*

On September 21, 2012, the *Morris* court denied the motion for class certification without prejudice pending a status conference. *See Morris Dkt. No. 110.* As it turned out, no status conference was held because Wells Fargo declined to participate. *Richter Decl., ¶ 7.* Instead, Wells Fargo filed a flurry of additional motions on December 4, 2012, including: (1) a motion for judgment on the pleadings with respect to Plaintiff Morris' TILA claim against WFB; (2) a motion for judgment on the pleadings with respect to the Plaintiff Morris' unjust enrichment claim against WFI; and (3) a motion requesting leave to certify the court's ruling as to the breach of contract claim for interlocutory review. *See Morris*, Dkt. Nos. 114, 116, 118. All three of these motions are fully briefed and are pending before the *Morris* court. *Richter Decl., ¶ 7.* As soon as those motions are resolved, Plaintiff Morris intends to renew her motion for class certification. *Id.*

While the parties were engaged in this extensive motion practice, the Court allowed discovery to proceed, and Plaintiff Morris took a total of ten depositions prior to filing her motion for class certification. *Richter Decl., ¶ 4.* This extensive set of depositions included eight depositions of witnesses from the Wells Fargo Defendants, one deposition of non-party QBE First

Insurance Agency, Inc. ("QBE First"), and one deposition of non-party American Security Insurance Company ("ASIC").  *Id.*  Recently, the *Morris* court ordered two of Wells Fargo's witnesses, David Franske and Michael Northagen, to reappear to continue their depositions, *see Morris*, Dkt. No. 140, and those depositions were completed on May 14 and May 16, 2013, respectively.  *See Richter Declaration, ¶ 4 & n.1.*  In addition, Wells Fargo has produced more than 213,000 pages of documents and an extensive set of class data.  *Id.,¶ 5.*  To the knowledge of Plaintiff Morris' undersigned counsel, the discovery in the *Morris* Action is by far the most extensive taken in any of the pending actions against Wells Fargo relating to force-placed flood insurance, and contains a treasure trove of materials that Plaintiff Morris used to support her previously-filed class certification motion.  *Id.*

## II.   THE FIRST-FILED CALIFORNIA ACTION: *MCKENZIE V. WELLS FARGO BANK, N.A.*

Plaintiff Clifford McKenzie filed the *McKenzie* Action on October 7, 2011.  *McKenzie*, Dkt. No. 1.  The *McKenzie* Action was the first-filed class action complaint in California against the Wells Fargo Defendants alleging abuses in their force-placed flood insurance program (including improper kickbacks to WFI and WFB), and was filed more than nine months before the *Lane* Action.

On April 25, 2012, Plaintiff McKenzie filed a Second Amended Complaint that included four additional plaintiffs: Daniel and Robin Biddix,[4] Virginia Ryan, and David Kibiloski. *McKenzie*, Dkt. No. 27.  On October 30, 2012, the Court (Hon. Joseph C. Spero) granted the Wells Fargo Defendants' motion to dismiss the Second Amended Complaint.  *See Mckenzie*, Dkt. No. 72. However, in its order, the court gave the *McKenzie* Plaintiffs leave to re-plead their claims concerning the Wells Fargo Defendants' alleged kickback scheme in connection with force-placed flood insurance.  *Id.* at 38.

Consistent with the Court's direction, the *McKenzie* Plaintiffs filed a Third Amended Complaint on November 29, 2012, which included (among other things) additional factual

---

[4] On May 2, 2013, Plaintiffs filed a voluntary notice of dismissal for Robin Biddix.  *See McKenzie*, Dkt. No. 124.

NOTICE OF MOTION AND MOTION TO INTERVENE

1    allegations in support of their kickback claims against WFB and WFI.  *McKenzie*, Dkt. No. 78.

2    Shortly thereafter, on January 3, 2013, the Wells Fargo Defendants filed another motion to dismiss

3    relating to the *McKenzie* Plaintiffs' claims regarding excessive flood insurance coverage

4    requirements, but did not challenge the *McKenzie* Plaintiffs' kickback claims.  *McKenzie*, Dkt. No.

5    79.  Although that motion also was granted by the Court, *see McKenzie*, Dkt. No. 96, the *McKenzie*

6    Plaintiffs' kickback claims are very much alive and well, and a Status Conference was recently

7    held in the *McKenzie* Action on May 17, 2013.  *McKenzie*, Dkt. No. 136.  During that Status

8    Conference, the parties discussed the five class actions pending in the Northern District of

9    California regarding Wells Fargo's force-placed flood insurance program, and Movants' counsel

10   provided notice to Magistrate Judge Spero and the Wells Fargo Defendants that they were

11   contemplating filing this motion to intervene in the *Lane* Action.[5]

12          To facilitate discovery in the *McKenzie* Action, the parties agreed that all discovery

13   materials produced to Plaintiff Morris in the *Morris* Action – including all written discovery

14   responses, documents, and deposition transcripts – shall be deemed produced in the *McKenzie*

15   Action, and may be used by the *McKenzie* Plaintiffs to the extent that such materials relate to their

16   kickback claims.  *See McKenzie*, Dkt. No. 121.  As noted above, this discovery is extensive.  *See*

17   *supra* at 5-6.  Moreover, each of the parties have served and responded to written discovery, and

18   the *McKenzie* Plaintiffs are in the process of scheduling their depositions.  *Carson Decl., ¶ 10.*

19          The Court's scheduling order calls for the *McKenzie* Plaintiffs to file their class certification

20
---
21   [5] Movants' counsel in the *Morris* and *McKenzie* Actions are also counsel of record in two other
     putative class actions against the Wells Fargo Defendants in the Northern District of California
22   alleging abuses in Wells Fargo's force-placed flood insurance program.  *See Leghorn v. Wells
     Fargo Bank, N.A.*, No. 3:13-cv-708 (N.D. Cal.); *Corbin v. Wells Fargo Bank, N.A.*, 3:13-cv-1353
23   (N.D. Cal.).  The *Leghorn* matter involves force-placed flood insurance claims relating to alleged
     backdating and kickbacks.  The *Corbin* matter involves kickback claims similar to those asserted in
     the *McKenzie* Action on behalf of commercial borrowers.  On April 23, 2013, the Court (Hon.
24   Joseph C. Spero) issued an order relating the *Leghorn* and *Corbin* actions to the *McKenzie* Action
     at the request of plaintiffs' counsel in each of those cases, and which request was unopposed by
25   Wells Fargo.  *See McKenzie*, Dkt. Nos. 122, 123.  In addition, Movants' counsel is also counsel of
     record in three other pending actions against Wells Fargo in other jurisdictions relating to forced-
     placed flood or hazard insurance: *Passantino-Miller v. Wells Fargo Bank, N.A.*, No. 2:12-cv-00420
26   (E.D. Cal.) (flood insurance) (filed by Nichols Kaster, PLLP); *Simpkins v. Wells Fargo Bank, N.A.*,
     No. 3:12-cv-768 (S.D. Ill.) (hazard insurance) (filed by Berger & Montague, P.C.); *Jackson v.
27   Wells Fargo Bank, N.A.*, No. 2:12-cv-02162 (W.D. Pa.) (flood insurance) (filed by Nichols Kaster,
     PLLP).

**NOTICE OF MOTION AND MOTION TO INTERVENE**

motion on or before May 31, 2013.  *McKenzie*, Dkt., No. 75.  During the recent Status Conference, the Court reaffirmed this timetable.  *McKenzie*, Dkt. No. 136.  Thus, there will be a pending class certification motion in the *McKenzie* Action before the class certification motion in the *Lane* Action is heard.  In their motion for class certification, the *McKenzie* Plaintiffs also intend to seek certification of a nationwide class of borrowers who were force-placed with flood insurance by the Wells Fargo Defendants.  *See Carson Decl., ¶ 13.*

### III.   THE LATER-FILED *LANE* ACTION

The *Lane* Action was filed on July 31, 2012, well after the *Morris* and *McKenzie* Actions.[6] In their memorandum, counsel for the *Lane* Plaintiffs admit that the *Lane* Action is "similar" to the *McKenzie* Action.  *Lane Plaintiffs' Memo of Law in Support of Motion for Class Certification at 23.*  Yet, they failed to flag the *Lane* Action as related to the *McKenzie* Action pursuant to Local CR 3-12.[7]

On October 22, 2012, the *McKenzie* Plaintiffs attempted to correct this omission by filing a motion to relate the *McKenzie* and *Lane* Actions (as well as the *Cannon* Action, which OWW also had omitted to designate as related).  *See McKenzie*, Dkt No. 69.  However, OWW opposed this motion and declined to consent to the jurisdiction of Magistrate Judge Spero (the presiding judge in *McKenzie*), *see McKenzie*, Dkt. No. 71, thereby rendering it impossible for Magistrate Judge Spero to relate the cases and efficiently consolidate them before him.  Accordingly, the motion to relate the cases was denied, even though they are similar (as counsel for the *Lane* Plaintiffs concede).

---

[6] The *Lane* Action is not even the first-filed flood insurance action against WFB in which OWW is currently serving as counsel of record.  On March 19, 2012, OWW filed a similar lawsuit against WFB in this Court relating to force-placed flood insurance, which was assigned to the Honorable Edward M. Chen.  *See Cannon v. Wells Fargo Bank, N.A.*, No. 3:12-cv-01376 (N.D. Cal.).  The *Cannon* plaintiffs' motion for class certification is currently due on or before September 6, 2013. *See Cannon*, Dkt. No. 103.  In addition, OWW filed a a flood insurance action against WFB in the Middle District of Florida on November 3, 2011.  *See Sayago v. Wells Fargo Bank, N.A.*, No. 8:11-cv-2009 (M.D. Fla.).  On March 1, 2012, just four months after the *Sayago* Action was filed, OWW filed a motion for class certification in *Sayago*.  *See Sayago*, Dkt. No. 38.  However, the proposed class in that action was eventually limited to Florida borrowers only, and does not include any of the Movants here.  *See Sayago*, Dkt. No. 82.  In any event, that motion was vacated by the *Sayago* court.  *See Lane Plaintiffs' Memo in Support of Class Certification at 23 n.13*.

[7] This is all the more curious given that counsel for the *Lane* Plaintiffs acknowledge that the *Lane* Action is related to the *Cannon* Action.  *See Lane*, Dkt. No. 35 at 15.

8

*See McKenzie*, Dkt. No. 73.

Consistent with their practice in the *Sayago* action, *see supra* at n. 6, OWW then went about to set an aggressive class certification motion schedule that built in little time for class discovery, in an effort to manipulate the system and catapult the *Lane* Action ahead of the *Morris* and *McKenzie* Actions. Specifically, the *Lane* Plaintiffs filed a Case Management Statement on November 21, 2012, in which they asked for a March 1, 2013 class certification motion deadline. *Lane*, Dkt. No. 35. The purpose of this request for an early motion deadline was transparent. As even Defendant WFB noted at the time:

> The reason for this sudden urgency is readily apparent. ***Plaintiffs seek to push the Court to decide whether to certify a class in this case before the issue is decided in similar, more procedurally advanced cases around the country***.

*Lane*, Dkt No. 35 at 12 (emphasis added). Thus, the Court set a later class certification motion deadline for May 9, 2013, and cautioned counsel for the *Lane* plaintiffs not to bring their motion before March 7, 2013. *Lane*, Dkt. No. 42 at p.1, ¶ 3.

The discovery process in the *Lane* Action was an apparent train wreck. Counsel for the *Lane* Plaintiffs did not serve discovery until November 26, 2012. *See Lane*, Dkt. 60-1. Notably, these requests did not seek the documents that had been produced in the *Morris* Action. *Id.* Due to various disagreements between the parties in the *Lane* Action, WFB did not produce documents until February 8, 2013. *See Lane*, Dkt. No. 82 at 2. On or about that date, WFB produced more than 300,000 pages of documents to the *Lane* Plaintiffs. *See Lane*, Dkt 73 at 1. Thus, ***the Lane Plaintiffs had virtually no time to review the documents that were produced by WFB before deposing their one and only witness from WFB (Thomas Farrell) on February 15, 2013, only one week later***. *See* ECF No. 93 (Owings Declaration in Support of Class Certification) at p.1, ¶ 4. In spite of this obvious handicap, counsel for the *Lane* Plaintiffs did not bother to take the depositions of any other witnesses from WFB after February 15, 2013. Moreover, it appears that counsel for the *Lane* Plaintiffs never meaningfully reviewed the documents that were produced, as the only WFB documents submitted in support of their motion for class certification consist of a

9

1    handful of contracts.  *See ECF No. 93 at 12-16.*  For example, it does not appear that counsel for

2    the *Lane* Plaintiffs submitted a single internal bank email in support of their motion.  Nor does it

3    appear that counsel for the *Lane* Plaintiffs submitted any documents relating to the so-called "soft

4    dollar" accounting transactions between WFI and WFB, which are a matter of public record and

5    are explicitly referenced in Exhibit 23 to the *McKenzie* Plaintiffs' Third Amended Complaint.  *See*

6    *ECF No. 78-3 at p. 225.*  Counsel for the *Lane* Plaintiffs either ignored this evidence or never

7    obtained it in the first place.

8    **IV.    MISREPRESENTATIONS IN THE *LANE* PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

9            In their class certification motion, counsel for the *Lane* Plaintiffs seek certification of the

10   following "National Class:"

11           All persons in the United States with mortgages owned or serviced by Wells Fargo
12           Bank, N.A. or an affiliate of Wells Fargo Bank, N.A., who were charged for force-
             placed insurance by Wells Fargo Bank, N.A. or an affiliate of Wells Fargo Bank,
13           N.A., within the applicable statute of limitations.

14   This proposed class definition overlaps with the nationwide classes that were proposed by Plaintiff

15   Morris in her motion for class certification, *see supra* at 4-5, and also overlaps with the nationwide

16   class definition proposed by the *McKenzie* Plaintiffs in their Third Amended Complaint.  *See ECF*

17   *No. 78 at ¶ 146.*  Yet, counsel for the *Lane* Plaintiffs misleadingly state that "[t]hese cases do not

18   overlap with [*Lane*] in any manner."  *Lane Plaintiffs' Memo in Support of Class Certification at*

19   *23.*  This is simply and objectively a false statement to the Court.

20           Troublingly, the *Lane* Plaintiffs' motion for class certification also includes other apparent

21   misrepresentations.  For example, counsel for the *Lane* Plaintiffs represent to the Court that the

22   *Morris* Action does not involve claims relating to Wells Fargo's alleged "force-placed insurance

23   and kickback scheme."  However, a simple review of the pleadings shows that this is not the case.

24   *See Richter Decl., Ex. 2 at ¶¶ 4, 30-31, 67-68, 96-98* (asserting kickback allegations); *Id., Ex. 7*

25   (seeking certification of a Forced-Placed Class in connection with Plaintiff Morris' kickback

26   claims against WFI, and also seeking certification of a Force-Placed Subclass "[i]n connection with

27

10

**NOTICE OF MOTION AND MOTION TO INTERVENE**

her breach of contract/breach of covenant of good faith and fair dealing claim [against WFB] *as it relates to improper kickbacks or commissions*") (emphasis added).

Counsel for the *Lane* Plaintiffs also assert that "[c]lass certification motions have not been filed in any case other than *Williams* …."[8] That assertion is also demonstrably false. As discussed above, Plaintiff Morris filed her motion for class certification on September 19, 2012—nearly eight months before the *Lane* Plaintiffs filed their motion. *See supra* at 4-5. OWW is well aware of this fact. On the same day that Plaintiff Morris filed her motion for class certification, she filed a notice with the Judicial Panel on Multidistrict Litigation ("JPML"), advising the JPML and all parties to a proposed "Force-Placed Insurance" MDL proceeding of her class certification motion. *See Richter Decl., Ex. 8.*[9] The electronic service list to this MDL filing identifies Jack Wagoner, Steven Owings, Brent Walker, and Sheri L. Kelly as recipients. *See Richter Decl., Ex. 9 at p.31* (Wagoner), *p.34* (Wagoner, Kelly), *p.35* (Wagoner), *p.36* (Wagoner), *p.38* (Wagoner), *p.39* (Wagoner), *p.40* (Owings), *p.42* (Wagoner, Walker), *p.49* (Wagoner). In the same notice, Plaintiff Morris indicated that her motion was supported by a voluminous record, including 12 depositions (including the depositions of Plaintiff Morris and her father), more than 200,000 pages of documents, and millions of data points for members of the proposed classes. *See Richter Decl., Ex. 8.* Therefore, it is also false for OWW to assert that they are "aware of no case other than *Williams* that is as procedurally advanced…" *Lane Plaintiffs' Memo of Law in Support of Class Certification at 23.* Indeed, a review of the relevant dockets indicates that the *Morris* Action was

---

[8] The *Williams* case is a case in the Southern District of Florida involving a Florida-only class and force-placed **hazard** insurance claims against Wells Fargo. *See Lane Plaintiffs' Memo in Support of Class Certification at 23.*

[9] The proposed MDL petition, which would have joined together cases involving different banks and different types of force-placed insurance (hazard, flood, and wind) was overwhelmingly opposed by the majority of plaintiffs and all of the defendants in the "tagged" proceedings, and the JPML denied the MDL petition in an order dated September 28, 2012. *See* MDL No. 2388, Dkt. No. 262. OWW was one of the few sets of counsel in the country that filed briefs on behalf of their clients in support of this misguided MDL. *See* MDL No. 2388, Dkt. No. 186. Yet, strangely, just two months after OWW submitted a brief to the JPML in August 2012 supporting consolidation of all force-placed insurance cases in the country involving all banks and all types of force-placed insurance, *id.*, OWW filed a brief in October 2012 opposing the relatedness of force-placed flood insurance cases against only Wells Fargo pending in this judicial district (*McKenzie, Lane,* and *Cannon*). *See McKenzie,* Dkt. No. 71. There is no explanation for such intellectual gymnastics other than the self-interest of counsel.

**NOTICE OF MOTION AND MOTION TO INTERVENE**

1    filed on the very same day (April 7, 2011) as the *Williams* Action.[10]

2    **V.    HISTORY IS REPEATING ITSELF: THE INSTRUCTIVE HISTORY OF THE *HOFSTETTER* CASE**

3              This is not the first time that OWW have filed a "piggyback" lawsuit involving claims

4    relating to force-placed flood insurance.  Indeed, a similar scenario previously played out in this

5    judicial district and before this Court less than a year-and-a-half ago.

6              As the Court may recall, Movants' undersigned counsel, Nichols Kaster, PLLP ("Nichols

7    Kaster") previously was appointed by this Court as class counsel in a certified class action lawsuit

8    against JPMorgan Chase Bank, N.A. and Chase Home Finance, LLC (collectively, "Chase"),

9    relating to force-placed flood insurance.  *See Hofstetter v. Chase Home Finance, LLC*, No. 1313-

10   WHA, 2011 WL 1225900, at *17 (N.D. Cal. Mar. 31, 2011)).  Following this class certification

11   ruling, Nichols Kaster successfully negotiated a nationwide settlement of that action, which was

12   approved by this Court.   During the final approval hearing, OWW sought to challenge the

13   settlement on the ground that it might potentially impact a later-filed action that OWW had brought

14   against Chase in Florida.  However, this Court rebuked OWW's efforts to preserve what the Court

15   described as their "me-too" lawsuit:

16              THE COURT: …[I]f that hurts you and **your me-too case** down in Florida, too bad.

17                                                    * * *

18              [Y]our position is totally unfounded.  And you're lucky I'm not making you pay
                their attorneys' fees for resisting this motion [for final approval].

19   *Richter Decl., Ex. 10 at p. 24* (emphasis added); *see also Hofstetter v. Chase Home Finance, LLC*,

20   No. 1313-WHA, 2011 WL 5415073 (N.D. Cal. Nov. 8, 2011).[11]

─────────────────────────────────────────

21   [10] On page 23 of their memorandum in support of class certification, counsel for the *Lane* Plaintiffs
22   also omitted to acknowledge the *Simpkins*, *Leghorn*, and *Corbin* cases referenced above, which
     also involve claims relating to force-placed hazard or flood insurance.  *See supra* at 7 n.5.

23   [11] Approximately six months later, the federal court in the later-filed Florida action chided OWW
     for their "self-servingly inconsistent and muddied" arguments, and dismissed their claims for
24   money damages on grounds entirely unrelated to the *Hofstetter* settlement.  *See Gibson v. Chase
     Home Finance, LLC*, No. 8:11–cv–1302–T–23TBM., 2012 WL 1094323 (M.D. Fla. Apr. 2, 2012).
25   Moreover, in another action filed by OWW against Chase in the Middle District of Florida
     involving force-placed insurance (the "*Gordon* Action"), the court stated that "Plaintiff's present
     action necessarily falls into the category of *a 'copycat' suit*[.]"  *Gordon v. Chase Home Finance,
26   LLC*, No. 8:11-cv-02001 (M.D. Fla. June 22, 2011) (emphasis added).  That "copycat" action also
     turned out poorly, as the court denied OWW's motion for class certification in its entirety.  *See
27   Gordon v. Chase Home Finance, LLC*, No. 8:11-cv-02001, 2013 WL 436445 (M.D. Fla. Feb. 5,
     2013).  Needless to say, Movants have serious concerns regarding OWW's ability to adequately

                                                    12

─────────────────────────────────────────

1    By contrast, this Court expressed praise for the work performed by Nichols Kaster and

2    Chase's counsel in *Hofstetter*.  At the conclusion of the final approval hearing, the Court stated:

3        I want to say that both sides here have performed at an admirable level. And I wish
         that the lawyers of all cases would perform at your level. I say this to both of you,
4        because you have you have been of assistance to the Court.

5    *Richter Decl., Ex. 10 at p. 38*; *see also Hofstetter*, Dkt. No. 282 at p.8 (Feb. 2, 2012 hearing

6    transcript) ("I want to congratulate you. You're both -- both sides have been represented by what I

7    regard as models of excellent professionals.").

8    **VI.    MOVANTS AND THEIR COUNSEL ARE BETTER ABLE TO REPRESENT THE INTERESTS OF
             THE CLASS**
9

10    By their conduct, OWW have shown themselves to be inadequate to represent the interests

11   of the class members.  By contrast, Movants' counsels have distinguished themselves in the area of

12   force-placed insurance litigation.

13    Following its groundbreaking work on the *Hofstetter* case (which seems to have been at

14   least part of the impetus for the current wave of force-placed insurance litigation across the

15   country), Nichols Kaster also was appointed class counsel or interim class counsel in two other

16   cases involving force-placed insurance.  On February 25, 2013, Nichols Kaster was appointed

17   interim co-lead class counsel under Fed. R. Civ. P. 23(g) in *Gustafson v. BAC Home Loans Serv.,*

18   *L.P.*, No. 8:11-cv-00915 (C.D. Cal.), which involves claims against Bank of America relating to

19   force-placed hazard insurance.  *Richter Decl., Ex. 11*.  Prior to that, on January 16, 2013, Nichols

20   Kaster was appointed class counsel in *Ulbrich v. GMAC Mortgage,* No. 0:11-cv-32424 (S.D. Fla.),

21   which involves claims against GMAC Mortgage, LLC and Balboa Insurance Services, Inc. relating

22   to force-placed wind insurance.  *Richter Decl., Ex. 12.*  Notably, Nichols Kaster also negotiated a

23   nationwide class action settlement in the *Ulbrich* action, which was granted final approval by the

24   Court on May 10, 2013.  *Richter Decl., Ex. 13.*

25

26   represent the interests of the class members that OWW seeks to represent as class counsel, and is
     particularly concerned that OWW is pressing a motion for class certification on an incomplete
27   record when OWW know that a fuller record exists in the first-filed *Morris* and *McKenzie* cases.

13

1    In total, Nichols Kaster currently serves as counsel of record in approximately 20 class

2    action lawsuits relating to force-placed insurance or property insurance requirements.  *Richter*

3    *Decl., ¶ 11.*   In many of these cases, Nichols Kaster already has achieved significant litigation

4    victories.  *Id.*  For example, Nichols Kaster successfully argued before the First Circuit Court of

5    Appeals in *Lass v. Bank of America, N.A.*, 695 F.3d 129 (1st Cir. Sept. 21, 2012).  *Id.*  In addition,

6    Nichols Kaster also has achieved important victories in *Holmes v. Bank of Am., N.A.*, No. 3:12-CV-

7    00487-MOC-DSC, 2013 WL 1693709 (W.D.N.C. Apr. 16, 2013) (denying motions to dismiss in

8    their entirety); *Passantino-Miller v. Wells Fargo Bank, N.A.*, No. 2:12-CV-00420-GEB-DAD,

9    2013 WL 57024 (E.D. Cal. Jan. 3, 2013) (denying, in part, motion to dismiss); *Casey v. Citibank,*

10   *N.A.*, -- F. Supp. 2d --, No. 5:12-CV-820, 2013 WL 11901 (N.D.N.Y. Jan. 2, 2013) (denying

11   motions to dismiss in their entirety); *Ellsworth v. U.S. Bank, N.A.*, -- F. Supp. 2d --, No. C 12-

12   02506 LB, 2012 WL 6176905 (N.D. Cal. Dec. 11, 2012) (denying motions to dismiss in their

13   entirety); *Morris v. Wells Fargo Bank, N.A.*, No. 2:11CV474, 2012 WL 3929805 (W.D. Pa. Sept.

14   7, 2012) (denying, in part, motions to dismiss); *Ulbrich v. GMAC Mortgage, LLC*, No. 11-62424-

15   Civ., 2012 WL 3516499 (S.D. Fla. Aug. 15, 2012) (denying motion to dismiss in its entirety);

16   *Walls v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-673-H., 2012 WL 3096660 (W.D. Ky. July 30,

17   2012) (denying motion to dismiss in its entirety); *Gustafson v. BAC Home Loans Servicing, LP*,

18   No. 8:11-cv-00915, 2012 WL 4761733 (C.D. Cal. Apr. 12, 2012) (denying, in part, motion to

19   dismiss); *Skansgaard v. Bank of Am., N.A.*, -- F. Supp. 2d --, No. SACV 11-915-JST (ANx), 2011

20   WL 9169945 (W.D. Wash. Oct. 13, 2011) (denying motion to dismiss in its entirety); *Wulf v. Bank*

21   *of Am., N.A.*, 798 F. Supp. 2d 586 (E.D. Pa. June 27, 2011) (denying, in part, motion to dismiss);

22   and *Hofstetter v. Chase Home Finance, LLC* 751 F. Supp. 2d 1116 (N.D. Cal. 2010) (allowing

23   plaintiffs to proceed with claims relating to excessive flood insurance requirements and related

24   commissions).  *See Richter Decl., ¶ 12.*  Thus, it is beyond dispute that Nichols Kaster can capably

25   and reliably represent the interests of Movants and the putative class members they are seeking to

26   represent.

27

NOTICE OF MOTION AND MOTION TO INTERVENE

1    In order to ensure a proper level of resources for each case, the national class action law

2    firm Berger & Montague, P.C. ("Berger Montague") is working together with Nichols Kaster on

3    many of the above cases, including the *Morris* and *McKenzie* Actions.   In addition, Berger

4    Montague is separately serving as counsel of record in certain other force-placed insurance cases

5    pending across the country.   Berger Montague has a successful track record in these types of cases

6    in its own right.   For example, in *Scheetz v. JPMorgan Chase Bank, N.A.*, No. 12-cv-4113

7    (S.D.N.Y.) and *Piterniak v. JPMorgan Chase Bank, N.A.*, No. 12-cv-7619 (S.D.N.Y.), two

8    nationwide class actions involving force-placed flood insurance, Berger Montague recently led a

9    team of firms in mediation with Chase.   The parties recently informed the United States District

10   Court for the Southern District of New York that the mediation successfully resulted in a

11   nationwide settlement, the terms of which remain confidential until the settlement papers are

12   finalized.   *See Scheetz*, Dkt. No. 39 (Mar. 5, 2013) ("the pending settlement seeks to resolve all

13   claims on a nation-wide basis with respect to all class members alleged to be similarly situated in

14   certain lender placed flood insurance cases"); *Piterniak*, Dkt. No. 30 (Mar. 5, 2013).   In addition,

15   Berger Montague has had success in numerous other force-placed insurance class action cases.

16   *See, e.g., Holmes*, No. 3:12-CV-00487-MOC-DSC, 2013 WL 1693709 (denying motion to dismiss

17   in its entirety); *Casey*, No. 5:12-CV-820, 2013 WL 11901 (denying motion to dismiss in its

18   entirety); *Richards v. RBS Citizens, N.A.*, No. 12-cv-239, Dkt. No. 21 (D.R.I. Oct. 10, 2012)

19   (denying motion to dismiss in its entirety); *Arnett v. Bank of America, N.A.*, 874 F. Supp. 2d 1021

20   (D. Or. 2012) (denying, in part, motion for judgment on the pleadings; class certification motion

21   now pending).   In addition to force-placed insurance class actions, Berger Montague has for over

22   40 years been one of the leading and preeminent class action firms in the United States, and is

23   routinely appointed by federal courts as class counsel pursuant to Rule 23(g). *Carson Decl., ¶ 1.*[12]

24   _____

25   [12] In the event that the Court grants this motion to intervene, and considers whether to appoint
     interim lead counsel to more fully develop the class certification motion in this case, and better
26   coordinate this case with the *Morris* Action and *McKenzie* Action, Nichols Kaster and Berger
     Montague would be happy to submit a Rule 23(g) motion at the Court's invitation and/or supply
27   further information relating to their qualifications and background.

**NOTICE OF MOTION AND MOTION TO INTERVENE**

1

**<u>ARGUMENT</u>**

2

**I.    MOVANTS SHOULD BE ALLOWED TO INTERVENE IN THIS ACTION**

3

Motions to intervene in class actions "should be liberally allowed[.]"  C. Wright et. al, 7B

4

FEDERAL PRACTICE & PROCEDURE § 1799 at 246 (3d ed. 2005).  As the advisory committee notes

5

to the 1966 amendments to Rule 24 explain:

6

***A class member who claims that his "representative" does not adequately***

7

***represent him***, and is able to establish that proposition with sufficient probability,
should not be put to the risk of having a judgment entered in the action which by its

8

terms extends to him, and be obligated to test the validity of the judgment as applied
to his interest by later collateral attack.  Rather he ***should, as a general rule, be***

9

***entitled to intervene in the action***.

10

Fed. R. Civ. P. 24, advisory comm. note (1966), 39 F.R.D. 69, 110 (emphasis added).  Consistent

11

with this principle, Rule 23 expressly provides that class members should have the opportunity "to

12

intervene and present claims or defenses, or [] otherwise come into the action" to protect class

13

members and fairly conduct the action.  Fed. R. Civ. P. 23(d)(1)(B)(iii).  This further supports

14

intervention in the present class action context.  *See, e.g.*, *Fleury v. Richemont North Am., Inc.*,

15

No. C-05-4525 EMC, 2007 WL 2457543, at *1 (N.D. Cal. Aug. 27, 2007) (granting motion to

16

intervene as plaintiff class representatives under Rule 23(d) and Rule 24); *Thompson v. Woodford*,

17

No. C 79-01630 WHA, 2006 WL 889391, at *2 (N.D. Cal. Apr. 6, 2006) (Alsup, J.) (finding it

18

appropriate to consider Rule 23(d) in evaluating intervenor's motion to intervene in case where

19

counsel intended to seek certification).

20

**A.    Movants Are Entitled to Intervene as of Right**

21

Movants are entitled to intervene in this case as a matter of right.  Under Rule 24(a)(2), the

22

Court "must permit" an applicant to intervene if the applicant:

23

claims an interest relating to the property or transaction that is the subject of the

24

action, and is so situated that disposing of the action may as a practical matter
impair or impede the movant's ability to protect its interest, unless existing parties

25

adequately represent that interest.

26

Fed. R. Civ. P. 24(a)(2) (emphasis added).  In accordance with this Rule, the Ninth Circuit has held

27

16

that an applicant is entitled to intervene as of right if (1) the application is timely; (2) the applicant has "significantly protectable" interest relating to the transaction that is the subject of the litigation; (3) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interests are inadequately represented by the parties before the court. *Nw. Forest Res. Council v. Glickman,* 82 F.3d 825, 836 (9th Cir. 1996); *accord Cal. ex rel. Lockyer v. United States ("Lockyer")*, 450 F.3d 436, 440 (9th Cir. 2006) (*quoting Sierra Club v. Envtl. Prot. Agency,* 995 F.2d 1478, 1381 (9th Cir. 1993)).

These requirements are construed broadly in favor of intervention. *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002); *see also In re Benny*, 791 F.2d 712, 721 (9th Cir. 1986) ("Courts generally construe Rule 24 liberally in favor of potential intervenors.").[13]  For the reasons explained below, all four conditions are satisfied here.

### 1.        The Motion Is Timely

In considering timeliness, courts in the Ninth Circuit examine (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay. *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004).  All three factors demonstrate that Movants have timely requested intervention here.

<u>First</u>, this Court has not yet made any determination regarding class certification or the adequacy of the proposed class representatives or class counsel. *See Sherman v. Griepentrog*, 775 F. Supp. 1383, 1386 (D. Nev. 1991) (finding motion for intervention by proposed class representative was timely where the motion was "made relatively early in the proceedings, at a time prior to the court's ruling on class certification").  Thus, Movants have acted much more proactively than the typical situation, where a party seeks to intervene for the purpose of revisiting a class certification ruling that already has been made.  Even in those circumstances, it is not

---

[13] In evaluating whether the relevant criteria are satisfied, a district court is required to accept as true all non-conclusory allegations made in support of an intervention motion. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001).

17

uncommon for intervention motions to be granted.  *See United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394-95 (1977) (affirming ruling allowing intervention to appeal class certification ruling after final judgment); *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) ("In the present case appellants satisfied the timeliness requirement when their motion was made little more than one month after the district court denied the original plaintiffs' motion for class certification."); *Beach v. Healthways, Inc.*, 264 F.R.D. 360, 365 (M.D. Tenn. 2010) (motion to intervene found timely where it was filed 15 days after court's ruling on class certification).

Notably, this is ***not*** a situation (like the *Hofstetter* case) where the proposed intervenor is seeking to inject himself or herself into a certified class action after it has already borne fruit; rather, Movants seek to intervene to help ensure the best opportunity for certification of an appropriate class and a successful outcome.  Simply put, Movants want solely to protect the rights of the absent putative class members and make sure that the strongest possible case is made for them, by utilizing all of the discovery and other resources available to Movants.

Second, the existing parties will not be prejudiced if Movants are allowed to intervene.  By the time the Court hears the *Lane* Plaintiffs' Motion for Class Certification (on June 20, 2013), the *McKenzie* Plaintiffs already will have moved for class certification in the *McKenzie* Action (on May 31, 2013).   If this Court grants the motion to intervene, Movants could promptly file a supplemental memorandum in support of class certification in this action in less than 30 days (provided that Wells Fargo also agrees to allow use of the *Morris* and *McKenzie* record in this case or this Court orders it produced for purposes of this case).   Alternatively, the Court could consolidate the *Lane* and *McKenzie* Actions for purposes of ruling on class certification.  This would result in a fuller – and fairer – record on which to decide class certification, with little delay and no prejudice to the existing parties.[14]

----

[14] This lack of prejudice weighs heavily in favor of a finding that the motion is timely.  "[A]s long as prejudice is not likely to result from the timing of the motion, courts interpret the timeliness requirement liberally."   *In re JDS Uniphase Corp. Sec. Litig.*, No. C02-1486CW 2005 WL 2562621 at *3 (N.D. Cal. Oct. 12, 2005) (allowing class member intervention more than three years after filing of suit ).

NOTICE OF MOTION AND MOTION TO INTERVENE

<u>Finally</u>, there has been no delay in filing this motion.  Movants filed the present motion to intervene within the 14-day deadline for responding to the *Lane* Plaintiffs' motion for class certification.  Prior to the time that the *Lane* Plaintiffs filed their class certification motion, it was uncertain which classes they would seek to certify and the adequacy of their class certification motion (and their representation in general) was not yet ascertainable, as it now is.

### 2.     Movants Have a Significant Protectable Interest in the Action

Movants have a significant protectable interest in this action.  In order to satisfy this test, the intervening party need only demonstrate that it will "suffer a practical impairment of its interests as a result of the pending litigation."  *Lockyer*, 450 F.3d at 441.  "No specific legal or equitable interest need be established." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818  (quoting *Greene v. United States,* 996 F.2d 973, 976 (9th Cir.1993)).

It is well-established that putative class members have a significant protectable interest in actions such as this that may implicate their rights as absent class members.  *See Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 331 (1980) (recognizing "the rights of putative class members as potential intervenors"); *accord*, *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 314 (3d Cir. 2005) ("In the class action context, the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation.").  For this reason, Rule 23(d)(1)(B)(iii) expressly provides for intervention by putative class members.  In fact, the Supreme Court has specifically recognized the interest of putative class members to intervene in order to litigate the question of whether a class should be certified.  *See United Airlines*, 432 U.S. at 394-95.

Because the *Lane* Plaintiffs have moved for certification of a class that includes Movants as class members, Movants necessarily have an interest as intervenors.  Indeed, this interest is particularly acute in the present context because Movants are not only putative class members, but putative class representatives in their own, earlier-filed actions, and the *Lane* Action may impair or impede Movants' ability to litigate those actions.  In *Dickstein v. Able Telcom Holding Corp.*, the

19

court evaluated intervenors' interest as representatives of putative class members in "competing class actions, neither of which have been certified."   192 F.R.D. 331, 334 (N.D. Ga. 2000).   The court held:

> This is sufficient to show an interest relating to the property or transaction which is the subject of the action. [Intervenors] have shown that they are so situated that disposition of the action, as a practical matter, may impede or impair their ability to protect that interest. They have shown that their interest is represented inadequately by the existing parties to the suit. … What is at stake here is control over the right to prosecute the class action. Therefore, the motion to intervene should be granted.

*Id.*  The same reasoning applies here, especially in light of the fact that Movants have developed a more complete discovery record, identified a more complete set of defendants (both WFB and WFI), and are represented by more adequate counsel.

### 3.   The Disposition of the Action May Impair or Impede Movants' Ability to Protect Their Interests and Those of the Class Members

Unless Movants are allowed to intervene, the disposition of the *Lane* Action may impair or impede their ability to protect their interests, regardless of how the Court rules on the pending motion for class certification.  If class certification is denied in *Lane* based on the incomplete evidence presented by counsel for the *Lane* Plaintiffs, this may have negative repercussions for Movants' class certification motions in *Morris* and *McKenzie*.  Alternatively, if the Court certifies the proposed classes, Movants will be relegated to bystander status in litigation that they initiated and have vigorously prosecuted, and will be bound by the outcome of the *Lane* Action (unless they elect to opt-out of the class).  Moreover, even if Movants did elect to opt-out after receiving notice under Rule 23(c)(2), the Court's rulings in this action may loom large in Movant's own actions. The Ninth Circuit has expressly recognized that "such a *stare decisis* effect is an important consideration in determining the extent to which an applicant's interest may be impaired."  *United States v. State of Or.*, 839 F.2d 635, 638 (9th Cir. 1988) (citations omitted).  Accordingly, Movants should be allowed to intervene.  *See Berg*, 268 F.3d at 822 ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should ... be entitled to

20

intervene.").

### 4.     The Interests of Movants and Class Members Who Were Force-Placed with Flood Insurance by Wells Fargo Are Inadequately Represented

In determining whether a would-be intervenor's interests will be adequately represented by an existing party, courts consider:

> (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.

*Berg*, 268 F.3d at 822 (internal quotation omitted).  Notably, the burden of showing inadequacy is "minimal," and the applicant need only show that representation of its interests by existing parties "may be" inadequate. *Id.* at 823; *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972).

For the reasons explained at length above, counsel for the *Lane* Plaintiffs do not adequately represent the interests of Movants or, indeed, any of the putative class members.  By neglecting to add WFI as a party, by failing to develop a complete record in support of class certification, by rushing the litigation process in an effort to leapfrog this case ahead of Movant's first-filed cases, and by making misrepresentations to the Court as detailed above, counsel for the *Lane* Plaintiffs have shown that they are not only inadequately representing the interests of Movants and the class members, they are in fact acting in a manner directly adverse to the interests of Movants and the class members.[15]

The case of *Widjaja v. YUM! Brands, Inc.,* No. CV-F-09-1074 OWW/DLB, 2009 WL 3462040 (E.D. Cal. Oct. 22, 2009) is directly on point.  In that case, the proposed intervenors, who were also the plaintiffs in a more procedurally-advanced and better-developed class action regarding the same subject matter, were allowed to intervene as of right.  *Id.*   The proposed intervenors argued that their "interests will be significantly impaired if this action is allowed to

---

[15] By contrast, Movants and their counsel have asserted claims against both WFI and WFB, have developed a full record on which to move for class certification, and have acted in the best interests of the class members at all times.

21

proceed because of the risk of inconsistent rulings and because [they] have already conducted

significant discovery to establish class-wide practices constituting wage and hour violations … and

are in the process of marshaling evidence in support of class certification." *Id.* at *4.  In addition,

the proposed intervenors argued that the plaintiffs in the case did not adequately protect their

interests because they had differing views on whether the two class actions should be consolidated.

*Id.* at *6.  The Court found that the proposed intervenors' "interest will not be adequately

represented by the parties to this action" and granted the motion to intervene.  *Id.* at *7.  The same

result should apply here.[16]

### B.      Movants Also Satisfy the Standard for Permissive Intervention

Even if Movants are not entitled to intervene as of right – which they are – this Court

should permit Movants to intervene under Rule 24(b).  Under this Rule, "the court may permit

anyone to intervene who ... has a claim or defense that shares with the main action a common

question of law or fact."  Fed. R. Civ. P. 24(b)(1).

Absent class members "have little difficulty" making this showing.  *In re Discovery Zone

Sec. Litig.*, 181 F.R.D. 582, 589 (N.D. Ill. 1998) ("[A]n absent class member would have little

difficulty showing …. a common question of law or fact with the class (Rule 24(b)).").  Movants

are no exception.  The claims asserted by Movants and the *Lane* Plaintiffs involve common

questions of law and fact regarding, among other things: (1) the nature of WFB's kickback scheme

in connection with force-placed flood insurance; (2) whether these kickbacks violated the uniform

covenants in their mortgage contracts; and (3) whether WFB breached the implied covenant of

---

[16] Movants are conscious of the fact that "[w]hen a proposed intervenor ... has vested [his] claim for intervention entirely upon a disagreement over litigation strategy or legal tactics, courts have been hesitant to accord the applicant full-party status."  *In re Charles Schwab Corp. Sec. Litig.*, No. C 08-01510 WHA, 2011 WL 633308, at *4 (N.D. Cal. Feb. 11, 2011) (Alsup, J.) (quoting *League of United Latin Am. Citizens v. Wilson,* 131 F.3d 1297, 1306 (9th Cir.1997)).  However, Movants' concerns go far beyond mere case strategy or tactics – they go to whether counsel for the *Lane* Plaintiffs have acted in the best interests of the class and are capable of adequately representing Movants and the class members, given the limited discovery they have taken, the limited evidence they have put forward, and their decision to limit their claims to a single defendant (WFB).  *See Pac. Coast Fed'n of Fishermen's Associations v. Gutierrez,* No. 1:06-CV-00245 OWW GSA, 2008 WL 4104257, at *8 (E.D. Cal. Sept. 2, 2008) ("Applicants are not suggesting a mere difference in litigation strategy. Rather, they assert that the witnesses proposed by the Federal Defendants are incapable of conveying the substantive information Applicants believe is necessary to protect their interests").

good faith and fair dealing by arranging for these kickbacks.  The *Lane* Plaintiffs expressly state that the *McKenzie* Action is "similar" to the *Lane* Action.  Moreover, the *McKenzie* Plaintiffs and Plaintiff Morris both fall within the *Lane* Plaintiffs' proposed National Class.  Accordingly, this Court should permit Movants to intervene because the common questions in this case cannot be resolved without impact to Movants' own cases, and Movants have developed a fuller record to present to the Court in support of their common claims.  *See Ruderman v. Washington Mut. Nat'l Ins. Co.*, 263 F.R.D. 670, 678 (S.D. Fla. 2010) ("[E]ven if Proposed Intervenors do not satisfy all four of the factors for intervention as a matter of right, the Court will permit Proposed Intervenors to intervene in this class action to bolster the representation offered by Plaintiffs."); *accord*, *Fleury*, 2007 WL 2457543, at *1 (granting motion to intervene as plaintiffs and class representatives under Rule 24(b)).[17]

## II. ALTERNATIVELY, THIS COURT SHOULD DEFER RULING ON CLASS CERTIFICATION UNTIL AFTER THE ISSUE OF CLASS CERTIFICATION IS DECIDED IN THE FIRST-FILED *MORRIS* AND *MCKENZIE* ACTIONS

As an alternative to allowing Movants to intervene in this case, the Court could apply the "first-to-file" rule and stay a determination of the *Lane* Plaintiffs' class certification motion until after the issue of class certification is decided in the earlier-filed *Morris* and *McKenzie* Actions. Under the first-to-file rule, a district court may transfer, stay, or dismiss an action when a similar action has previously been filed.  *Elec. Arts, Inc. v. Textron, Inc.*, No. 12-00118, 2012 WL 1496170, at *6 (N.D. Cal. Apr. 27, 2012) (Alsup, J.) (citing *Cedars–Sinai Med. Ctr. v. Shalala,* 125 F.3d 765, 769 (9th Cir. 1997)).  This rule serves the purpose of promoting judicial economy and efficiency, and "should not be disregarded lightly."  *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991).  This is particularly true in the context of a putative class action, where failure to apply the rule could result in inconsistent class certification rulings and muddle the issue of which individuals are class members.  *Wells v. Cingular Wireless LLC*, No. C 06-03191 WHA, 2006 WL 2792432, at *3 (N.D. Cal. Sept. 27, 2006) (Alsup, J.).

---

[17] As noted above, Movants' motion is timely and will not prejudice WFB.  Therefore, there is no reason for the Court to deny the motion.

When applying the first-to-file rule, courts look to three factors: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of issues.  *Nankash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989).  All three of these considerations support application of the first-to-file rule here.

First, it is undisputed that the *McKenzie* Action (the first-filed California action) was filed more than eight months before the *Lane* Action, and the *Morris* Action (the first-filed action nationwide) was filed over a year before the *Lane* Action.  This chronology requires that these prior actions be given deference.  *See Wells*, 2006 WL 2792432, at *3 ("The [earlier] action … was filed over a year before this action, requiring that the [earlier] action be given deference.").

Second, each of the actions involve a common defendant – WFB.  Although the *Lane* action originally included QBE Americas, Inc. ("QBE Americas") as an additional defendant, QBE Americas has been voluntarily dismissed from the case.  *See Lane*, Dkt. No. 50.  Likewise, although the *McKenzie* Action originally included Assurant, ASIC, and QBE First as additional defendants, each of those defendants have been voluntarily dismissed from the *McKenzie* Action.  *McKenzie*, Dkt. No. 112.  The only non-common defendant in the cases is WFI (an affiliate of WFB), which is a party defendant to the *Morris* and *McKenzie* Actions but was omitted from the *Lane* Action.  Moreover, on the plaintiff side of the ledger, each of the actions involve overlapping classes of borrowers who were force-placed with flood insurance by WFB.  This also weighs in favor of application of the first-to-file rule.  *See Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008) (for purposes of evaluating similarity of parties in class actions, "the classes, and not the class representatives, are compared") (citing Cal. Jur.3d Actions § 284)).

Third, as discussed above, the issues in all three cases are similar.  *See supra* at 22-23.  Counsel for the *Lane* Plaintiffs admit that the *McKenzie* Action is "similar" to the *Lane* Action. *See Lane Plaintiffs' Memo in Support of Class Certification at 23*.  Moreover, their assertion that the *Morris* Action does not involve kickback claims is patently false.  *See supra* at 2, 10-11.  Thus, the similarity of the actions – all of which involve force-placed flood insurance – further supports

1   application of the first-to-file rule.[18]

2          Finally, aside from the above considerations, the fact that the *Morris* and *McKenzie* Actions

3   "appear[] to have a more developed case file" also supports application of the first-to-file rule in

4   this case.  *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 963 (N.D.

5   Cal. 2008).   One of the main benefits of the first-to-file rule is that it allows litigants to

6   methodically build such a record without fear that they will be leapfrogged by less meticulous

7   counsel in a later-filed case.  Thus, this is the paradigm case in which the rule should be enforced.

8                                          **CONCLUSION**

9          For the foregoing reasons, Movants respectfully request that this Court grant their motion

10  for intervention, or alternatively, defer ruling on the *Lane* Plaintiffs' class certification motion until

11  after the issue of class certification is decided in the earlier-filed *Morris* and *McKenzie* Actions.

12

13  Dated: May 23, 2013                           **NICHOLS KASTER,  LLP**

14                                                By: s/ Matthew C. Helland
                                                      Matthew C. Helland

15                                                *Counsel for Intervenors Desiree Morris,*
16                                                *Clifford McKenzie, Daniel Biddix, David*
                                                  *Kibiloski and Virginia Ryan*

17

18

19

20

21

22

23

24

25  _____

26  [18] With respect to similarity of issues, the actions need not be parallel in every respect; it is enough
    that they are "substantially similar."  *Nakash*, 882 F.2d at 1416.

27

**NOTICE OF MOTION AND MOTION TO INTERVENE**