1  Matthew C. Helland, SBN 250451
   (helland@nka.com)
2  NICHOLS KASTER, LLP
   One Embarcadero Center, Suite 720
3  San Francisco, CA  94111
   Telephone: (415) 277-7235
4  Facsimile: (415) 277-7238

5  Kai Richter, MN Bar No. 0296545
   (krichter@nka.com)
6  NICHOLS KASTER, PLLP
7  4600 IDS Center
   80 South 8th Street
8  Minneapolis, MN  55402
   Telephone: (612) 256-3200
9  Facsimile: (612) 215-6870

10 Shanon J. Carson, PA Bar No. 85957
   (scarson@bm.net)
11 Patrick F. Madden, PA Bar No. 309991
   (pmadden@bm.net)
12 BERGER & MONTAGUE, P.C.
   1622 Locust Street
13 Philadelphia, PA 19103
   Telephone: (215) 875-3000
14
   *Counsel for Intervenors Desiree Morris,*
15 *Clifford McKenzie, Daniel Biddix, David*
   *Kibiloski and Virginia Ryan*
16
                IN THE UNITED STATES DISTRICT COURT
17                NORTHERN DISTRICT OF CALIFORNIA

18
19 DANNY LANE, BEVERLY LANE, and        CASE NO. 12-CV-4026 WHA
   MERCEDES GUERRERO, individually,
20 and for other persons similarly situated,   **DECLARATION OF SHANON J.**
                                              **CARSON IN SUPPORT OF MOTION TO**
21         Plaintiffs,                         **INTERVENE**
         vs.
22
   WELLS FARGO BANK, N.A.,
23
           Defendant.
24
25
26
27

1        I, Shanon J. Carson, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746

2    that the following is true and correct:

3        1.    I am a Shareholder of Berger & Montague, P.C. ("B&M").  Berger & Montague is

4    one of the preeminent class action law firms in the United States, and is routinely appointed by

5    federal courts as class counsel pursuant to Rule 23(g).  I have attached a current copy of our firm's

6    resume as Exhibit 1 hereto.  Berger & Montague consists of over 60 attorneys who represent

7    plaintiffs in complex and class action litigation.  Our firm's Consumer Law Group has extensive

8    experience in representing consumers and borrowers in class action litigation.  Our firm has played

9    lead roles in major class action cases across the country for over 40 years resulting in recoveries of

10    billions of dollars for its clients and the classes they represent.

11        2.    I have been admitted to practice *pro hac vice* in three force-placed flood insurance

12    class action cases pending against Wells Fargo in the Northern District of California, which allege

13    similar claims as the claims in the above-captioned case.  These three cases include *McKenzie, et*

14    *al. v. Wells Fargo Bank, N.A., et al.*, No. 3:11-cv-04965 (N.D. Cal.); *Leghorn v. Wells Fargo Bank,*

15    *N.A., et al.*, No. 3:13-cv-708 (N.D. Cal.); and *Corbin v. Wells Fargo Bank, N.A., et al.*, No. 3:13-

16    cv-1353 (N.D. Cal.).  I am also plaintiffs' counsel in *Morris v. Wells Fargo Bank, N.A., et al.*, No.

17    2:11-cv-00474-DSC (W.D. Pa.) (filed April 7, 2011).  I respectfully submit this declaration in

18    support of Movants' Motion to Intervene in this action.

19        3.    On October 7, 2011, our co-counsel, Kabateck Brown Kellner LLP ("KBK"), filed

20    *McKenzie, et al. v. Wells Fargo Bank, N.A. et al.*, which to my knowledge is the first class action

21    complaint filed in California against Wells Fargo alleging abuses in its forced-placed flood

22    insurance program.

23        4.    On January 30, 2012, the Complaint in *McKenzie* was amended to add Wells Fargo

24    Insurance, Inc., the entity that directly received the kickback from the force-placed insurance

25    vendors.

26        5.    At this time, Berger & Montague had been contacted by numerous borrowers whose

27

1

**DECLARATION OF SHANON J. CARSON IN SUPPORT OF MOTION TO INTERVENE**

loans were serviced by Wells Fargo and who had been force-placed with flood insurance. In order to increase efficiency and reduce the burden such cases put on the court, on March 7, 2012, I reached out to the attorneys who filed the *McKenzie* action, and our firms ultimately decided to cooperate. Together, we decided to file an amended complaint that would add Berger & Montague's clients to the *McKenzie* action and proceed in a coordinated fashion. The Second Amended Complaint was filed on April 25, 2012.

6. In or about July 2012, counsel for the *Lane* Plaintiffs (referred to herein as Owings/Wagoner/Walker, or "OWW"), approached me to discuss the *McKenzie* case and certain actions that OWW had filed or was contemplating filing, including their action captioned *Cannon v. Wells Fargo Bank, N.A.*, No. 3:12-cv-01376 (N.D. Cal.). OWW was aware of the pendency of the *McKenzie* action.

7. On July 31, 2012, OWW filed the *Lane* action. Notwithstanding OWW's knowledge of their similar case, *Cannon*, and the *McKenzie* action, the *Lane* plaintiffs did not alert the clerk of this Court of the pendency of the potentially related actions.

8. On October 22, 2012, the plaintiffs in the *McKenzie* action filed an administrative motion to relate the *Cannon* and *Lane* actions to the *McKenzie* action in an effort to coordinate the actions. The *Cannon* and *Lane* plaintiffs objected to the motion to relate, including on the basis that they had not consented to the jurisdiction of Magistrate Judge Spero.

9. On November 9, 2012, the plaintiffs in the *McKenzie* action and Wells Fargo filed an Amended Joint Case Management Statement wherein the parties agreed to set a deadline of May 31, 2013 for the plaintiffs' motion for class certification. The Court entered an order confirming that schedule on November 19, 2012.

10. In April 2013, the plaintiffs in the *McKenzie* action and Wells Fargo met and conferred, and stipulated that the discovery taken in the first-filed and longest pending action, *Morris v. Wells Fargo Bank, N.A., et al.,* No. 2:11-cv-00474-DSC (W.D. Pa.) (filed April 7, 2011), would be deemed produced in the *McKenzie* action subject to certain limitations. In addition, the

**DECLARATION OF SHANON J. CARSON IN SUPPORT OF MOTION TO INTERVENE**

1    parties have served and responded to written discovery in the *McKenzie* action, and are arranging

2    for depositions to take place as soon as possible.  Based on this discovery, the plaintiffs in the

3    *McKenzie* action have been preparing to file a motion for class certification by May 31, 2013.

4            11.    I have reviewed the *Lane* docket and the *Lane* plaintiffs' motion for class

5    certification.  The *Lane* plaintiffs' proposed class appears to subsume the classes sought by my

6    clients in the *McKenzie* and *Morris* actions.  I believe that in due fairness to the putative class

7    members, the *Lane* plaintiffs' motion needs to be supplemented with the additional discovery that

8    my co-counsel and I have worked to develop in order to avoid prejudice to my clients and the

9    putative classes, and that if a class is certified, that the Court should permit briefing to determine

10   which firms should be appointed as lead counsel pursuant to Rule 23(g) of the Federal Rules of

11   Civil Procedure.

12           12.    In the alternative, I believe that the putative class members would be protected by

13   permitting the *McKenzie* and *Morris* motions for class certification to be decided first as they will

14   be fully supported by a more developed discovery record.

15           13.    Plaintiffs' counsel in *McKenzie* intends to proceed according to Magistrate Judge

16   Spero's scheduling order, and file a class certification motion in the *McKenzie* action by May 31,

17   2013.   In their motion, the *McKenzie* Plaintiffs intend to seek to certify a nationwide class

18   consisting of borrowers who were force-placed with flood insurance by Wells Fargo.

19

20   Dated: May 23, 2013                          **BERGER & MONTAGUE, P.C.**

21                                                By: s/ Shanon J. Carson_____
                                                     Shanon J. Carson
22
                                                  *Counsel for Intervenors Desiree Morris,*
23                                                *Clifford McKenzie, Daniel Biddix, David*
                                                  *Kibiloski and Virginia Ryan*
24

25

26

27

                                                  3

**DECLARATION OF SHANON J. CARSON IN SUPPORT OF MOTION TO INTERVENE**

# Exhibit 1



Dated:  March 26, 2013

**BERGER & MONTAGUE, P.C.**

## THE FIRM:

Berger & Montague has been engaged in the practice of complex and class action litigation from its Center City Philadelphia office for 40 years. The firm has been recognized by courts throughout the country for its ability and experience in handling major complex litigation, particularly in the fields of securities, antitrust, consumer, mass torts, civil and human rights, qui tam and whistleblower cases, and employment litigation. In numerous precedent-setting cases, the Berger firm has played a principal or lead role. The firm has achieved the highest possible rating by its peers and opponents as reported in *Martindale-Hubbell*. Currently, the firm consists of approximately 68 lawyers; 17 paralegals; and an experienced support staff. Few if any firms in the United States have our breadth of practice and match our successful track record in such a broad array of complex litigation.

The *National Law Journal* has selected Berger & Montague in nine out of the last ten years (2003-05, 2007-12) to its "Hot List" of top plaintiffs' oriented litigation firms in the United States with a history of high achievement and significant, groundbreaking cases. Normally 15 or fewer firms are chosen for this honor. The *Legal 500*, a guide to worldwide legal services providers, has repeatedly cited Berger & Montague's antitrust practice as "stand[ing] out by virtue of its first-class trial skills." For four straight years, Berger & Montague has been selected by *Chambers and Partners' USA's* America's Leading Lawyers for Business as one of Pennsylvania's top antitrust firms. *Chambers USA* has specifically noted that Berger & Montague "specializes in plaintiffs' antitrust class actions, and is noted for its exceptional work in pharmaceutical and financial disputes." In 2009, *Employment Law360°* named Berger & Montague as one of the top employment plaintiffs' firms in the U.S. selecting only eight law firms in the country for this honor. Also in 2009, The Public Justice Foundation bestowed its prestigious Trial Lawyer of the Year Award on the Berger & Montague trial team in the Rocky Flats mass environmental tort class action for their "long and hard-fought" victory against "formidable corporate and government defendants," the second time Berger & Montague has won this honor. The jury verdict in that case was vacated on appeal; appellate proceedings are continuing.

Berger & Montague was founded in 1970 by the late David Berger to concentrate on the representation of plaintiffs in a series of antitrust class actions. David Berger helped pioneer the use of class actions in antitrust litigation and was instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts. The firm's complement of nationally recognized lawyers has represented both plaintiffs and defendants in these and other areas, and has recovered billions of dollars for its clients. In complex litigation, particularly in areas of class action litigation, Berger & Montague has established new law and forged the path for recovery for victims of fraud and other wrongdoing.

1

The firm has been involved in a series of notable cases, some of them among the most important in the last 35 years of civil litigation.  For example, the firm was one of the principal counsel for plaintiffs in the *Drexel Burnham Lambert/Michael Milken* securities and bankruptcy litigation. Claimants in these cases recovered approximately $2 billion in the aftermath of the collapse of the junk bond market and the bankruptcy of *Drexel* in the late 1980's.  The firm was also among the principal trial counsel in the *Exxon Valdez Oil Spill* litigation in Anchorage, Alaska, a trial resulting in a record jury award of $5 billion against Exxon, later reduced by U.S. Supreme Court by $507.5 million.  Berger & Montague was lead counsel in the *School Asbestos Litigation*, in which a national class of secondary and elementary schools recovered in excess of $300 million to defray the costs of asbestos abatement.  The case was the first mass tort property damage class action certified on a national basis.  Berger & Montague was also lead/liaison counsel in the *Three Mile Island Litigation* arising out of a serious nuclear incident.

In the area of securities litigation, the firm has represented public institutional investors - such as the retirement funds for the States of Pennsylvania, Connecticut, New Hampshire, New Jersey, Louisiana and Ohio, as well as the City of Philadelphia and numerous individual investors and private institutional investors.   The firm was co-lead counsel in the *Melridge Securities Litigation* in the Federal District Court in Oregon, in which an $88.2 million jury verdict was obtained.  Berger & Montague has served as lead or co-lead counsel in numerous other major securities class action cases where substantial settlements were achieved on behalf of investors. Examples of prominent settlements are: *Merrill Lynch* ($475 million), *Rite Aid* ($334 million), *Waste Management* ($220 million), *Sunbeam* ($142 million), *IKON* ($111 million), *Medaphis* ($96 million), *Fleming Companies* ($94 million), *Cigna* ($93 million), *Xcel Energy* ($80 million), and *Alcatel* ($75 million).

Berger & Montague has served as lead or co-lead counsel in 10 of the 100 largest securities class actions settled in the United States since the advent of the Private Securities Litigation Reform Act of 1995 (PSLRA).

In antitrust litigation, the firm has served as lead, co-lead or co-trial counsel on many of the most significant civil antitrust cases over the last 30 years, including *In re Corrugated Container Antitrust Litigation* (recovery in excess of $366 million), the *Infant Formula* case (recovery of $125 million), and the *Brand Name Prescription Drug* price fixing case (settlement of more than $700 million) and the *State of Connecticut Tobacco Litigation* (settlement of $3.6 billion).  The firm has also played a leading role in cases in the pharmaceutical arena, especially in cases involving the delayed entry of generic or other rival drug competition, having achieved over $1 billion in settlements in such cases over the past decade.  Additionally in the human rights area, the firm, through its membership on the executive committee in the *Holocaust Victim Assets Litigation*, helped to achieve a $1.25 billion settlement with the largest Swiss banks on behalf of victims of Nazi aggression whose deposits were not returned after the Second World War.  The firm has also played an instrumental role in bringing about a $4.37 billion settlement with German industry and government for the use of slave and forced labor during the Holocaust.

## JUDICIAL PRAISE FOR BERGER & MONTAGUE ATTORNEYS

Berger & Montague's record of successful prosecution of class actions and other complex litigation has been recognized and commended by judges and arbitrators across the country. Some remarks on the skill, efficiency, and expertise of the firm's attorneys are excerpted below.

### *Antitrust Litigation*

From **Judge William H. Pauley, III** of the U.S. District Court of the Southern District of New York:

> "Class Counsel did their work on their own with enormous attention to detail and unflagging devotion to the cause.  Many of the issues in this litigation . . . were unique and issues of first impression."
>
> \* \* \*
>
> "Class Counsel provided extraordinarily high-quality representation.  This case raised a number of unique and complex legal issues . . .  The law firms of Berger & Montague and [another firm] were indefatigable.  They represented the Class with a high degree of professionalism, and vigorously litigated every issue against some of the ablest lawyers in the antitrust defense bar."

Regarding the work of Berger & Montague shareholders Merrill G. Davidoff and Ruthanne Gordon in *In re Currency Conversion Fee Antitrust Litigation*, MDL No. 1409, M21-95, slip op. at 33-34 (S.D.N.Y. Oct. 22, 2009)

From **Judge Charles P. Kocoras** of the U.S. District Court for the Northern District of Illinois:

> "The stakes were high here, with the result that most matters of consequence were contested.  There were numerous trips to the courthouse, and the path to the trial court and the Court of Appeals frequently traveled.  The efforts of counsel for the class has [sic] produced a substantial recovery, and it is represented that the cash settlement alone is the second largest in the history of class action litigation. . . . There is no question that the results achieved by class counsel were extraordinary[.]"

Regarding the work of Berger & Montague shareholders H. Laddie Montague and Peter R. Kahana, among others, in achieving a more than $700 million settlement with some of the defendants in *In Re Brand Name Prescription Drugs Antitrust Litigation*, 2000 U.S. Dist. LEXIS 1734 at \*5-6 (N.D. Ill. Feb. 9, 2000).

3

From **Judge Peter J. Messitte** of the U.S. District Court for the District of Maryland:

> "The experience and ability of the attorneys I have mentioned earlier, in my view in reviewing the documents, which I have no reason to doubt, the plaintiffs' counsel are at the top of the profession in this regard and certainly have used their expertise to craft an extremely favorable settlement for their clients, and to that extent they deserve to be rewarded."

Concerning the work of senior member, Merrill G. Davidoff, as stated in a Settlement Approval Hearing, Oct. 28, 1994. ***Spawd, Inc. and General Generics v. Bolar Pharmaceutical Co., Inc***., CA No. PJM-92-3624 (D. Md.).

From **Judge Donald W. Van Artsdalen** of the U.S. District Court for the Eastern District of Pennsylvania:

> "As to the quality of the work performed, although that would normally be reflected in the not immodest hourly rates of all attorneys, for which one would expect to obtain excellent quality work at all times, the results of the settlements speak for themselves. Despite the extreme uncertainties of trial, plaintiffs' counsel were able to negotiate a cash settlement of a not insubstantial sum, and in addition, by way of equitable relief, substantial concessions by the defendants which, subject to various condition, will afford the right, at least, to lessee-dealers to obtain gasoline supply product from major oil companies and suppliers other than from their respective lessors. The additional benefits obtained for the classes by way of equitable relief would, in and of itself, justify some upward adjustment of the lodestar figure."

Commending the skills of firm then chairman David Berger, shareholder Martin Twersky, and other Berger & Montague attorneys, in ***Bogosian v. Gulf Oil Corp.***, 621 F. Supp. 27, 31 (E.D. Pa. 1985).

From **Judge Joseph Blumenfeld** of the U.S. District Court for the District of Connecticut:

> "The work of the Berger firm showed a high degree of efficiency and imagination, particularly in the maintenance and management of the national class actions."

Referencing the leadership of managing partner H. Laddie Montague, co-lead counsel, in ***In re Master Key Antitrust Litigation***, 1977 U.S. Dist. LEXIS 12948 at *34-35 (Nov. 4, 1977).

## *Securities Litigation*

In *In re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation*, Master File No. 07-cv-9633(JSR)(DFE) (S.D.N.Y.), **Judge Jed Rakoff** of the U.S. District Court for the Southern District of New York stated that lead plaintiff had made "very full and well-crafted" and "excellent submissions"; that there was a "very fine job done by plaintiffs" counsel in this case"; that the attorney fees requested were "eminently reasonable" and "appropriately modest"; and that this was "surely a very good result under all the facts and circumstances." Co-lead counsel for the lead plaintiff and the class was Berger & Montague shareholder Lawrence J. Lederer, who was assisted by a team of additional Berger & Montague attorneys including Arthur Stock, Gary Cantor, Robin Switzenbaum and others.

From **Chief Justice Steele** and **Justices Holland, Berger, Jacobs and Ridgely** of the Delaware Supreme Court sitting *en banc:*

Stating that the case was litigated, Chancellor [Chandler] went on to find that:

> "All I can tell you, from someone who has only been doing this for roughly 22 years, is that I have yet to see a more fiercely and intensely litigated case than this case. Never in 22 years have I seen counsel going at it, hammer and tong, like they have gone at it in this case. And I think that's a testimony -- Mr. Valihura correctly says that's what they are supposed to do. I recognize that; that is their job, and they were doing it professionally."

Regarding the work of Lawrence Deutsch and Robin Switzenbaum in *In re Matter of The Philadelphia Stock Exchange, Inc.*, 945 A.2d 1123, 1143-44 (Del. 2008).

From **Chancellor William Chandler, III** of the Court of Chancery of Delaware when awarding counsel's fee observed:

> "Counsel, again, I want to thank you for your extraordinary efforts in obtaining this result for the class."

Concerning Lawrence Deutsch and Robin Switzenbaum at the Plan of Allocation Approval Hearing in *Ginsburg v. Philadelphia Stock Exchange, Inc.*, C.A. No. 2202 (Del. Ch.) on July 2, 2008.

From **Judge Michael M. Baylson** of the U.S. District Court for the Eastern District of Pennsylvania:

"The Court is aware of and attests to the skill and efficiency of class counsel: they have been diligent in every respect, and their briefs and arguments before the Court were of the highest quality. The firm of Berger & Montague took the lead in the Court proceedings; its attorneys were well prepared, articulate and persuasive."

Praising the work of Berger & Montague attorneys including Securities Department Chair Sherrie R. Savett and shareholders Carole A. Broderick and Barbara A. Podell in ***In re CIGNA Corp. Sec. Litig***., 2007 U.S. Dist. LEXIS 51089, **17-18 (E.D. Pa. July 13, 2007).

From **Judge David S. Doty** of the U.S. District Court for the District of Minnesota:

"… [A] just result without the assistance of a governmental investigation," plaintiffs' co-lead counsel Berger & Montague "conducted themselves in an exemplary manner," "consistently demonstrated considerable skill and cooperation to bring this matter to an amicable conclusion," and "moved the case along expeditiously".

Praising the work of Berger & Montague attorneys including Securities Department Chair Sherrie R. Savett in *In re Xcel Energy Sec. Deriv. "ERISA" Litig.,* 364 F. Supp. 2d 980, 992, 995-96 (D. Minn. 2005).

From **Judge Stewart Dalzell** of the U.S. District Court for the Eastern District of Pennsylvania:

"Thanks to the nimble class counsel, this sum, which once included securities worth $149.5 million is now all cash.  Seizing on an opportunity Rite Aid presented, class counsel first renegotiated what had been stock consideration into Rite Aid Notes and then this year monetized those Notes.  Thus, on February 11, 2003, Rite Aid redeemed those Notes from the class, which then received $145,754,922.00.  The class also received $14,435,104 in interest on the Notes.

"Co-lead counsel ... here were extraordinarily deft and efficient in handling this most complex matter... they were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write down of over $1.6 billion in previously reported Rite Aid earnings.  In short, it would be hard to equal the skill class counsel demonstrated here."

Praising the work of Berger & Montague attorneys including Securities Department Chair Sherrie R. Savett and shareholders Carole Broderick and Robin Switzenbaum in ***In re Rite Aid Corp. Securities Litigation***, 269 F. Supp. 2d 603, 605 (E.D. Pa. 2003).

From **Judge Clarence C. Newcomer** of the U.S. District Court for the Eastern District of Pennsylvania:

> "...[C]ounsel has conducted this litigation with skill, professionalism and extraordinary efficiency."

Praising the work of Sherrie R. Savett, Securities Department Chair, and Arthur Stock in ***In Re: Unisys Corporation Securities Litigation***, Civil Action No. 99-5333 , 2001 U.S. Dist. LEXIS 20160 at *10 (E.D. Pa. Dec. 6, 2001).

From **Judge Stewart Dalzell** of the U.S. District Court for the Eastern District of Pennsylvania:

> "As to 'the skill and efficiency of the attorneys involved,' we can only echo what we said about some of the same lawyers in *U.S. Bioscience*.  The results here are outstanding in a litigation that was far ahead of public agencies like the Securities and Exchange Commission and the United States Department of Justice. . . .  At the same time, these attorneys have, through the division of their labors, represented the class most efficiently[.]"

Praising the work of Berger & Montague attorneys including Securities Department Chair, Sherrie R. Savett, in achieving settlements of over $190 million in ***In re Rite Aid Inc. Securities Litigation***, 146 F. Supp.2d 706, 735 (E.D. Pa. June 8, 2001).

From **Judge Marvin Katz** of the U.S. District Court for the Eastern District of Pennsylvania:

> "Class counsel did a remarkable job in representing the class interests."

Commenting on the work of Berger & Montague attorneys Merrill G. Davidoff, Todd S. Collins and Douglas M. Risen, on the partial settlement for $111 million approved May, 2000, ***In Re: IKON Office Solutions Securities Litigation***, 194 F.R.D. 166, 197 (E.D. Pa. 2000).

From Judge **Wayne R. Andersen** of the U.S. District Court for the Northern District of Illinois:

> "...[Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases...in 15 years now as a judge and I cannot recall a significant case where I felt people were better represented than they are here ... I would say this has been the best representation that I have seen."

Praising the work of Sherrie R. Savett, Carole A. Broderick, and Gary E. Cantor at a hearing in ***In Re: Waste Management, Inc. Securities Litigation***, Civil Action No. 97-C 7709 (N.D. Ill. 1999).

7

From **Judge Helen J. Frye,** United States District Judge for the U.S. District Court for the District of Oregon:

> In order to bring about this result [partial settlements then totaling $54.25 million], Class Counsel were required to devote an unusual amount of time and effort over more than eight years of intense legal litigation which included a four-month long jury trial and full briefing and argument of an appeal before the Ninth Circuit Court of Appeals, and which produced one of the most voluminous case files in the history of this District.
>
> \* \* \*
>
> Throughout the course of their representation, the attorneys at Berger & Montague and Stoll, Stoll, Berne, Lokting & Shlachter who have worked on this case have exhibited an unusual degree of skill and diligence, and have had to contend with opposing counsel who also displayed unusual skill and diligence.

Commenting, *inter alia*, on lead counsel, lead trial counsel and lead appellate counsel Merrill G. Davidoff in awarding fees on April 15, 1996 in *In Re Melridge, Inc. Securities Litigation,* No. CV 87-1426-FR (D. Ore.).

From **Judge Stewart Dalzell** of the U.S. District Court for the Eastern District of Pennsylvania:

> "The quality of lawyering on both sides, but I am going to stress now on the plaintiffs' side, simply has not been exceeded in any case, and we have had some marvelous counsel appear before us and make superb arguments, but they really don't come any better than Mrs. Savett . . . , and the arguments we had on the motion to dismiss [Mrs. Savett argued the motion], both sides were fabulous, but plaintiffs' counsel were as good as they come."

Commenting on the settlement of a securities case litigated by Sherrie R. Savett and Carole A. Broderick, ***In re U.S. Bioscience Securities Litigation***, Civil Action No. 92-0678, hearing held April 4, 1994 (E.D. Pa. 1994).

From **Judge Joseph F. Anderson, Jr.** of the U.S. District Court for the District of South Carolina:

> "I don't have a problem at all approving the settlement.   In light of what you've said today and your submission to the Court and I am familiar with the case ... it was a sharply litigated case, with good lawyers on both sides and I think it's an

ideal case for settlement.  It's the largest settlement I've been called upon to approve in my eight years as a judge."

Praising the work of Sherrie R. Savett, Securities Department Chair in achieving a $32 million settlement in *In Re: Policy Management Systems Corporation*, Civil Action No. 3:93-0807-17 (D.S.C. 1993).

From **Judge Harry R. McCue** of the U.S. District Court for the Southern District of California:

> "There can be no doubt that the public good was fully served by the attorneys for the plaintiffs in this case, because they invested their own time, their own money, they invested their special skills and knowledge to vindicate the rights and interests of the thousands of investors who invested their money and placed their trust in the integrity of the securities market. . . .  I conclude that the achievement of plaintiffs' counsel under any of those tests was superior. "

Concerning the work of lead attorney Sherrie R. Savett in achieving a $33 million settlement in *In re Oak Industries Securities Litigation*, 1986 U.S. Dist. LEXIS 20942 (S.D. Cal. 1986).

From **Judge John F. Keenan** of the U.S. District Court for the Southern District of New York:

> "The quality of work of plaintiffs' counsel on this case is also demonstrated by the efficient manner of prosecution. . . . At the settlement hearing, defense counsel conceded that plaintiffs' counsel constitute the 'cream of the plaintiffs' bar.'  The court cannot find fault with that characterization."

Regarding the work of Sherrie R. Savett in *In re Warner Communications Securities Litigation*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985).

### *Civil/Human Rights Cases*

From **Deputy Treasury Secretary Stuart E. Eizenstat**:

> "We must be frank.  It was the American lawyers, through the lawsuits they brought in U.S. courts, who placed the long-forgotten wrongs by German companies during the Nazi era on the international agenda.  It was their research and their work which highlighted these old injustices and forced us to confront them.  Without question, we would not be here without them. . . .  For this dedication and commitment to the victims, we should always be grateful to these lawyers."

In his remarks at the July 17, 2000, signing ceremony for the international agreements which established the German Foundation to act as a funding vehicle for the payment of claims to Holocaust survivors.

### *Insurance Litigation*

From **Judge Janet C. Hall**, of the U.S. District Court of the District of Connecticut:

> Noting the "very significant risk in pursuing this action" given its uniqueness in that "there was no prior investigation to rely on in establishing the facts or a legal basis for the case….[and] no other prior or even now similar case involving parties like these plaintiffs and a party like these defendants." Further, "the quality of the representation provided to the plaintiffs . . . in this case has been consistently excellent…. [T]he defendant[s] . . . mounted throughout the course of the five years the case pended, an extremely vigorous defense…. [B]ut for counsel's outstanding work in this case and substantial effort over five years, no member of the class would have recovered a penny…. [I]t was an extremely complex and substantial class . . . case . . . [with an] outstanding result."

Regarding the work of Berger & Montague attorneys Peter R. Kahana and Steven L. Bloch, among other co-class counsel, in *Spencer, et al. v. The Hartford Financial Services Group, Inc., et al.,* in the Order approving the $72.5 million final settlement of this action, dated September 21, 2010 (USDC, D. Conn., Case Number 3:05-cv-1681).

### *Customer/Broker Arbitrations*

From **Robert E. Conner**, Public Arbitrator with the National Association of Securities Dealers, Inc.:

> ". . . [H]aving participated over the last 17 years in 400 arbitrations and trials in various settings, . . . the professionalism and the detail and generally the civility of everyone involved has been not just a cause for commentary at the end of these proceedings but between ourselves [the arbitration panel] during the course of them, and . . . the detail and the intellectual rigor that went into the documents was fully reflective of the effort that was made in general. I wanted to make that known to everyone and to express my particular respect and admiration."

About the efforts of Berger & Montague shareholders Merrill G. Davidoff and Eric L. Cramer, who achieved a $1.1 million award for their client, in *Steinman v. LMP Hedge Fund, et al.*, NASD Case No. 98-04152, at Closing Argument, June 13, 2000.

### *Other*

10

From **Stephen M. Feiler, Ph.D.,** Director of Judicial Education, Supreme Court of Pennsylvania, Administrative Office of Pennsylvania Courts, Mechanicsburg, PA *on behalf of the Common Pleas Court Judges (trial judges) of Pennsylvania*:

> "On behalf of the Supreme Court of Pennsylvania and AOPC's Judicial Education Department, thank you for your extraordinary commitment to the *Dealing with Complexities in Civil Litigation* symposia.  We appreciate the considerable time you spent preparing and delivering this important course across the state.  It is no surprise to me that the judges rated this among the best programs they have attended in recent years."

About the efforts of Berger & Montague attorneys Merrill G. Davidoff, Peter Nordberg and David F. Sorensen in planning and presenting a CLE Program to trial judges in the Commonwealth of Pennsylvania.

11

# PROMINENT JUDGMENTS AND SETTLEMENTS

The firm has a wide breadth of achievement in many significant areas of complex and business-related litigation.  The following is a partial list of some of the more notable judgments and settlements from the past few years.  For ease of reference, the specific litigation areas can be found as follows:

| | |
|---|---|
| Antitrust Litigation | Pages 12-14 |
| Securities Litigation | Pages 14-17 |
| Individual Securities Action | Pages 17-18 |
| Environmental/Mass Tort Litigation | Pages 18-19 |
| Employee Benefits/ERISA Litigation | Page 19 |
| Civil/Human Rights Litigation | Page 19 |
| Consumer Litigation | Pages 20-22 |
| Commercial Litigation | Pages 22-23 |
| Employment Litigation | Pages 23-24 |
| Insurance Litigation | Pages 24-25 |
| Other Individual Litigation | Page 25 |

## *Antitrust Litigation*

***In re Currency Conversion Fee Antitrust Litigation:***  Berger & Montague spearheaded a class action lawsuit alleging that the major credit cards had conspired to fix prices for foreign currency conversion fees imposed on credit card transactions.  After eight years of litigation, a settlement of $336 million was finally approved in October 2009.  (MDL No. 1409 (S.D.N.Y)).

***In re High Fructose Corn Syrup Antitrust Litigation:***  Berger & Montague was one of three co-lead counsel in this nationwide class action alleging a conspiracy to allocate volumes and customers and to price-fix among five producers of high fructose corn syrup.  After nine years of litigation, including four appeals, the case was settled on the eve of trial for $531 million. (MDL. No. 1087, Master File No. 95-1477 (C.D. Ill.)).

***In re Linerboard Antitrust Litigation:***  Berger & Montague was one of a small group of court-appointed executive committee members who led this nationwide class action against producers of linerboard.  The complaint alleged that the defendants conspired to reduce production of linerboard in order to increase the price of linerboard and corrugated boxes made therefrom.  At the close of discovery, the case was settled for more than $200 million. (98 Civ. 5055 and 99-1341 (E.D. Pa.)).

***In re Terazosin Antitrust Litigation:***  Berger & Montague was one of a small group of firms alleging that Abbott Laboratories was paying its competitors to refrain from introducing less expensive generic versions of Hytrin.  The case settled for a $74.5 million settlement.  (Case No. 99-MDL-1317 (S.D. Fla.)).

***In re Remeron Antitrust Litigation:***   Berger & Montague was one of a small group of firms alleging that the manufacturer of this drug was paying its competitors to refrain from introducing less expensive generic versions of Remeron.   The case settled for a $75 million settlement. (2:02-CV-02007-FSH (D. N.J.).

***In re Tricor Antitrust Litigation:***   Berger & Montague was one of a small group of firms alleging that the manufacturer of this drug was paying its competitors to refrain from introducing less expensive generic versions of Tricor.  The case settled for a $250 million settlement.  (No. 05-340 (D. Del.)).

***In re Relafen Antitrust Litigation:***   Berger & Montague was one of a small group of firms who prepared for the trial of this nationwide class action against GlaxoSmithKline, which was alleged to have used fraudulently-procured patents to block competitors from marketing less-expensive generic versions of its popular nonsteroidal anti-inflammatory drug, Relafen (nabumetone).  Just before trial, the case was settled for $175 million.  (No. 01-12239-WGY (D. Mass.)).

***In re Microcrystalline Antitrust Litigation:***   Berger & Montague was one of two co-lead counsel in this class action alleging a conspiracy to fix the price of microcrystalline cellulose, used in the manufacture of many pharmaceuticals.  The case was settled shortly before trial for a total of $50 million.  (MDL No. 1402 (E.D. Pa.)).

***In re Graphite Electrodes Antitrust Litigation:***   Berger & Montague was one of the four co-lead counsel in a nationwide class action price-fixing case.  The case eventually settled in excess of $130 million. (02 Civ. 99-482 (E.D. Pa.)).

***In re Buspirone Antitrust Litigation:***   The firm served on the court-appointed steering committee in this class action, representing a class of primarily pharmaceutical wholesalers and resellers.  The Buspirone class action alleged that pharmaceutical manufacturer BMS engaged in a pattern of illegal conduct surrounding its popular anti-anxiety medication, Buspar, namely, paying a competitor to refrain from marketing a generic version of Buspar; improperly listing a patent with the FDA; and wrongfully prosecuting patent infringement actions against generic competitors to Buspar.  On April 11, 2003, the Court finally approved a $220 million settlement. (MDL No. 1410 (S.D.N.Y.)).

***In re Cardizem CD Antitrust Litigation:***   Berger & Montague served on the Executive Committee of firms appointed to represent the class of direct purchasers of Cardizem CD.  The suit charged that Aventis (the brand-name drug manufacturer of Cardizem CD) entered into an illegal agreement to pay Andrx (the maker of a generic substitute to Cardizem CD) millions of dollars to delay the entry of the less expensive generic product.  On November 26, 2002, the district court approved a final settlement against both defendants for $110 million.  (No. 99-MD-1278, MDL No. 1278 (E.D. Mich.)).

***In re Brand Name Prescription Drugs Antitrust Litigation***:  The firm served as co-lead counsel in this antitrust price-fixing class action on behalf of a class of purchasers of brand name

13

prescription drugs.  Following certification of the class by the district court, settlements exceeded $717 million.  (No. 94 C 897 (M.D. Ill.)).

***North Shore Hematology-Oncology Assoc., Inc. v. Bristol-Myers Squibb Co.:***  The firm was one of several prosecuting an action complaining of Bristol Myers's use of invalid patents to block competitors from marketing more affordable generic versions of its life-saving cancer drug, Platinol (cisplatin).  The case settled for $50 million. (No. 1:04CV248 (EGS) (D.D.C.)).

***In re Catfish Antitrust Litig. Action***:  The firm was co-trial counsel in this action which settled with the last defendant a week before trial, for total settlements approximating $27 million.  (No. 2:92CV073-D-O, MDL No. 928 (N.D. Miss.)).

***In re Carbon Dioxide Antitrust Litigation:***  The firm was co-trial counsel in this antitrust class action which settled with the last defendant days prior to trial for total settlements approximating $53 million, plus injunctive relief.  (MDL No. 940 (M.D. Fla.)).

***In re Infant Formula Antitrust Litigation***:  The firm served as co-lead counsel in an antitrust class action where settlement was achieved two days prior to trial, bringing the total settlement proceeds to $125 million.  (MDL No. 878 (N.D. Fla.)).

***Red Eagle Resources Corp., Inc., v. Baker Hughes, Inc.:***  The firm was a member of the plaintiffs' executive committee in this antitrust class action which yielded a settlement of $52.5 million.  (C.A. No. H-91-627 (S.D. Tex.)).

***In re Corrugated Container Antitrust Litigation:***  The firm, led by H. Laddie Montague, was co-trial counsel in an antitrust class action which yielded a settlement of $366 million, plus interest, following a trial. (MDL No. 310 (S.D. Tex.)).

***Bogosian v. Gulf Oil Corp.:***  With Berger & Montague as sole lead counsel, this landmark action on behalf of a national class of more than 100,000 gasoline dealers against 13 major oil companies led to settlements of over $35 million plus equitable relief on the eve of trial.  (No. 71-1137 (E.D. Pa.)).

***In re Master Key Antitrust Litigation:***  The firm served as co-lead counsel in an antitrust class action that yielded a settlement of $21 million during trial.  (MDL No. 45 (D. Conn.)).

### *Securities Litigation*

***In re Merrill Lynch Securities Litigation:***  Berger & Montague, as co-lead counsel, obtained a recovery of $475 million in 2009 for the benefit of the class in one of the largest recoveries among the recent financial crisis cases.  (Civil Action No. 07-CV-09633 (S.D.N.Y.)).

***In re KLA Tencor Securities Litigation:***  The firm, as a member of Plaintiffs' Counsel's Executive Committee, obtained a cash settlement of $65 million in 2009 in an action on behalf of

investors against KLA-Tencor and certain of its officers and directors.  (No. 06-cv-04065 (N.D. Cal.)).

*In re Sotheby's Holding, Inc. Securities Litigation*:  The firm, as lead counsel obtained a $70 million settlement, of which $30 million was contributed, personally, by an individual defendant (No. 00 Civ. 1041 (DLC) (S.D.N.Y.)).

*Ginsburg v. Philadelphia Stock Exchange, Inc., et al.:*   The firm represented certain shareholders of the Philadelphia Stock Exchange in the Delaware Court of Chancery and in 2008, obtained a settlement valued in excess of $99 million settlement.  (C.A. No. 2202-CC (Del. Ch.)).

*In re Sepracor Inc. Securities Litigation:*  The firm, as co-lead counsel, obtained a settlement of $52.5 million for the benefit of bond and stock purchaser classes.  (Civil Action No. 02-12235-MEL (D. Mass.)).

*In re CIGNA Corp. Securities Litigation:*  The firm, as co-lead counsel, obtained a settlement of $93 million for the benefit of the class.  (Master File No. 2:02-CV-8088 (E.D. Pa.)).

*In re Fleming Companies, Inc. Securities Litigation:*  The firm, as lead counsel, obtained a class settlement of $94 million for the benefit of the class.  (Civil Action No. 5-03-MD-1530 (TJW) (E.D. Tex.)).

*In re Xcel Energy Inc. Securities, Derivative & "ERISA" Litigation:*  The firm, as co-lead counsel in the securities actions, obtained a cash settlement of $80 million on behalf of investors against Xcel Energy and certain of its officers and directors. (Civil Action No. 02-2677 (DSD/FLN) (D. Minn.)).

*Brown v. Kinross Gold U.S.A. Inc.:*  The firm represented lead plaintiffs as co-lead counsel and obtained $29.25 million cash settlement and an additional $6,528,371 in dividends for a gross settlement value of $35,778,371.  (No. 02-CV-0605 (D. Nev.))

*In re Campbell Soup Co. Securities Litigation:*  The firm, as co-lead counsel, obtained a settlement  of $35 million for the benefit of the class.  (Civil Action No. 00 152 (JEI) (D.N.J.)).

*In re Premiere Technologies, Inc. Securities Litigation:*  The firm, as co-lead counsel, obtained a class settlement of over $20 million in combination of cash and common stock. (Civil Action No.1:98-CV-1804-JOF (N.D. Ga.)).

*In re: PSINet, Inc., Securities Litigation:*  The firm, as co-lead counsel, obtained a settlement of $17.83 million on behalf of investors. (Civ. No. 00-1850-A (E.D. Va.)).

*In re Safety-Kleen Corp. Securities Litigation :*  The firm, as co-lead counsel, obtained a class settlement in the amount of $45 million against Safety-Kleen's outside accounting firm and

certain of the Company's officers and directors.  The final settlement was obtained 2 business days before the trial was to commence. (C.A. No. 3:00-CV-736-17 (D.S.C.)).

***Emil Rossdeutscher and Dennis Kelly v. Viacom:***   The firm, as lead counsel, obtained a settlement resulting in a fund of $14.25 million for the class.  (C.A. No. 98C-03-091 (JEB) (Del. Super. Ct.)).

***Aldridge v. A.T. Cross Corp.:***   The firm represented a class of investors in a securities fraud class action against the A.T. Cross , and won a significant victory in the U.S. Court of Appeals for the First Circuit when that Court reversed the dismissal of the complaint and lessened the pleading standard for such cases in the First Circuit, holding that it would not require plaintiffs in a shareholder suit to submit proof of financial restatement in order to prove revenue inflation.  See *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72 (1st Cir. 2002).  The case ultimately settled for $1.5 million.  (Civil Action 00203 ML (D.R.I.)).

***Silver v. UICI:***   The firm, as co-lead counsel, obtained a settlement resulting in a fund of $16 million for the class. (No. 3:99 CV 2860-L (N.D. Tex.)).

***In re Alcatel Alsthom Securities Litigation:***   In 2001, the firm, as co-lead counsel, obtained a class settlement for investors of $75 million cash.  (MDL Docket No. 1263 (PNB) (E.D. Tex.)).

***In re Rite Aid Corp. Securities Litigation:***   The firm, as co-lead counsel, obtained settlements totaling $334 million against Rite Aid's outside accounting firm and certain of the company's former officers.  (99 CV 1349 (E.D. Pa.)).

***In re Sunbeam Inc. Securities Litigation:***   As co-lead counsel, the firm obtained a settlement on behalf of investors of $141 million in the action against Sunbeam's outside accounting firm and Sunbeam's officers.   (98 CV 8258 (S.D. Fla.)).

***In re Waste Management, Inc. Securities Litigation:***   In 1999, the firm, as co-lead counsel, obtained a class settlement for investors of $220 million cash which included a settlement against Waste Management's outside accountants.  (97 CV 7709 (N.D. Ill.)).

***In re IKON Office Solutions Inc. Securities Litigation:***   The firm, serving as both co-lead and liaison counsel, obtained a cash settlement of $111 million in an action on behalf of investors against IKON and certain of its officers.  (MDL Dkt. No. 1318 (E.D. Pa.)).

***In re Melridge Securities Litigation:***   The firm served as lead counsel and co-trial counsel for a class of purchasers of Melridge common stock and convertible debentures. A four-month jury trial yielded a verdict in plaintiffs' favor for $88.2 million, and judgment was entered on RICO claims against certain defendants for $239 million. The court approved settlements totaling $55.4 million.  (CV-87-1426 FR (D. Ore.)).

16

***Walco Investments, Inc. et al. v. Kenneth Thenen, et al. (Premium Sales):*** The firm, as a member of the plaintiffs' steering committee, obtained settlements of $141 million for investors victimized by a Ponzi scheme.  Reported at: 881 F. Supp. 1576 (S.D. Fla. 1995); 168 F.R.D. 315 (S.D. Fla. 1996); 947 F. Supp. 491 (S.D. Fla. 1996)).

***In re The Drexel Burnham Lambert Group, Inc.:***  The firm was appointed co-counsel for a mandatory non-opt-out class consisting of all claimants who had filed billions of dollars in securities litigation-related proofs of claim against The Drexel Burnham Lambert Group, Inc. and/or its subsidiaries. Settlements in excess of $2.0 billion were approved in August 1991 and became effective upon consummation of Drexel's Plan of Reorganization on April 30, 1992. (90 Civ. 6954 (MP), Chapter 11, Case No. 90 B 10421 (FGC), Jointly Administered, reported at, *inter alia*, 960 F.2d 285 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993) ("Drexel I") and 995 F.2d 1138 (2d Cir. 1993) ("Drexel II")).

***In re Michael Milken and Associates Securities Litigation:***  As court-appointed liaison counsel, the firm was one of four lead counsel who structured the $1.3 billion "global" settlement of all claims pending against Michael R. Milken, over 200 present and former officers and directors of Drexel Burnham Lambert, and more than 350 Drexel/Milken-related entities.  (MDL Dkt. No. 924, M21-62-MP (S.D.N.Y.).

***RJR Nabisco Securities Litigation:***  In this action, Berger & Montague represented individuals who sold RJR Nabisco securities prior to the announcement of a corporate change of control. This securities case settled for $72 million. (88 Civ. 7905 MBM (S.D.N.Y.)).

### *Individual Securities Actions*

***New Jersey v. Qwest Communications International:***  The Berger firm represented the pension funds for public employees in the State of New Jersey seeking to recover losses on their investments in Qwest common stock. The action settled for $45 million.  (MER-L-3738-02 (N.J. Super. Ct., Mercer Cty.)).

***Pennsylvania Public School Employees' Retirement System, et al. v. Time Warner, Inc., et al.:*** The Berger firm represented a group of pension funds seeking to recover for losses on their investments in AOL/Time Warner common stock. The case settled for $23 million.  (July 2003, No. 002103 (Pa. Ct. Com. Pl., Phila. Cty.)).

***Kelly v. McKesson HBOC, Inc.:***  The Berger firm represented a group of private shareholders who sold their companies to a large publicly-held corporation in exchange for $103.5 million in stock. The case settled for a confidential sum on the eve of trial for a percentage of plaintiffs' damages far greater than plaintiffs would have received from a related class action. (C.A. No. 99C-09-265WCC (Del. Super. Ct.)).

***Forbes v. GMH:***  The Berger firm represented a private real estate developer/investor who sold a valuable apartment complex to GMH for cash and publicly-held securities. The case settled for a

confidential sum which represented a significant portion of the losses experienced. (C.A. No. 07-cv-00979 (E.D. Pa.)).

### *Environmental/Mass Tort Litigation*

***Cook v. Rockwell International Corporation:***  In February 2006, the firm won a $554 million jury verdict on behalf of thousands of property owners whose homes were exposed to plutonium or other toxins.  Judgment in the case was entered by the court in June 2008 which, with interest, totaled $926 million (with proceedings now continuing on appeal).  Recognizing this tremendous achievement, the Public Justice Foundation bestowed its prestigious Trial Lawyer of the Year Award for 2009 on Mr. Davidoff, Mr. Sorensen and the entire trial team for their "long and hard-fought" victory against "formidable corporate and government defendants."  (No. 90-cv-00181-JLK (D. Colo.)).  .)).  The jury verdict in that case was vacated on appeal; appellate proceedings are continuing.

***In re Exxon Valdez Oil Spill Litigation***:  On September 16, 1994, a jury trial of several months duration resulted in a record punitive damages award of $5 billion against the Exxon defendants as a consequence of one of the largest oil spills in U.S. history.  The award was reduced to $507.5 million pursuant to a Supreme Court decision.  David Berger was co-chair of the plaintiffs' discovery committee (appointed by both the federal and state courts).  Harold Berger served as a member of the organizing case management committee.  H. Laddie Montague was specifically appointed by the federal court as one of the four designated trial counsel.  Both Mr. Montague and Peter Kahana shared (with the entire trial team) the 1995 "Trial Lawyer of the Year Award" given by the Trial Lawyers for Public Justice.  (No. A89-0095-CVCHRH (D. Alaska)).

***In re Ashland Oil Spill Litigation***:  The firm led by Harold Berger served as co-lead counsel and obtained a $30 million settlement for damages resulting from a very large oil spill. (Master File No. M-14670 (W.D. Pa.)).

***State of Connecticut Tobacco Litigation:***  Berger & Montague was one of three firms to represent the State of Connecticut in a separate action in state court against the tobacco companies.  The case was litigated separate from the coordinated nationwide actions.  Although eventually Connecticut joined the national settlement, its counsel's contributions were recognized by being awarded the fifth largest award among the states from the fifty states' Strategic Contribution Fund.

***In re School Asbestos Litigation***:  As co-lead counsel, the firm successfully litigated a case in which a nationwide class of elementary and secondary schools and school districts suffering property damage as a result of asbestos in their buildings were provided relief.  Pursuant to an approved settlement, the class received in excess of $70 million in cash and $145 million in discounts toward replacement building materials. (No. 83-0268 (E.D. Pa.)).

18

***Drayton v. Pilgrim's Pride Corp.:***  The firm served as counsel in a consolidation of wrongful death and other catastrophic injury cases brought against two manufacturers of turkey products, arising out of a 2002 outbreak of Listeria Monocytogenes in the Northeastern United States, which resulted in the recall of over 32 million pounds of turkey – the second largest meat recall in U.S. history at that time.  A significant opinion issued in the case is *Drayton v. Pilgrim's Pride Corp.*, 472 F.Supp.2d 638 (E.D. Pa. 2006) (denying the defendants' motions for summary judgment and applying the alternative liability doctrine).  All of the cases settled on confidential terms in 2006.  (No. 03-2334 (E.D. Pa.)).

***In re SEPTA 30th Street Subway/Elevated Crash Class Action:***  Berger & Montague represented a class of 220 persons asserting injury in a subway crash.  Despite a statutory cap of $1 million on damages recovery from the public carrier, and despite a finding of sole fault of the public carrier in the investigation by the National Highway Transit Safety Administration, Berger & Montague was able to recover an aggregate of $3.03 million for the class.  (1990 Master File No. 0001 (Pa. Ct. Com. Pls., Phila. Cty.)).

***In re Three Mile Island Litigation:***  As lead/liaison counsel, the firm successfully litigated the case and reached a settlement in 1981 of $25 million in favor of individuals, corporations and other entities suffering property damage as a result of the nuclear incident involved.  (C.A. No. 79-0432 (M.D. Pa.)).

### *Employee Benefits /ERISA Litigation*

***In re Unisys Corp. Retiree Medical Benefits:***  The firm, as co-lead counsel, handled the presentation of over 70 witnesses, 30 depositions, and over 700 trial exhibits in this action that has resulted in partial settlements in 1990 of over $110 million for retirees whose health benefits were terminated. (MDL No. 969 (E.D. Pa.)).

***Local 56 U.F.C.W. v. Campbell Soup Co.:***  The firm represented a class of retired Campbell Soup employees in an ERISA class action to preserve and restore retiree medical benefits. A settlement yielded benefits to the class valued at $114.5 million. (No. 93-MC-276 (SSB) (D.N.J.)).

### *Civil/Human Rights*

***In re Holocaust Victim Assets Litigation:***  Through membership on the executive committee in cases brought by Holocaust survivors against the three largest Switzerland-based banks, this litigation was settled for $1.25 billion. (105 F. Supp.2d 139 (E.D.N.Y. 2000)).

***In re Nazi Era Cases Against German Defendants Litigation:***  Through the firm's co-lead counsel role, cases against German industry and banks for the use of slave and forced labor during the Nazi era were ultimately settled in the context of international negotiations which created a fund for victims of $4.5 billion. (198 F.R.D. 429 (D.N.J. 2000)).

19

### *Consumer Litigation*

***Countrywide Predatory Lending Enforcement Action:***  Berger & Montague advised the Ohio Attorney General (and several other state attorneys general) regarding predatory lending in a landmark law enforcement proceeding against *Countrywide* (and its parent, Bank of America) culminating in 2008 in mortgage-related modifications and other relief for borrowers across the country valued at some $8.6 billion.

***In re Pet Foods Product Liability Litigation***: The firm is one of plaintiffs' co-lead counsel in this multidistrict class action suit seeking to redress the harm resulting from the manufacture and sale of contaminated dog and cat food.  The case has been settled for $24 million.  Many terms of the settlement are unique and highly beneficial to the class, including allowing class members to recover up to 100% of their economic damages without any limitation on the types of economic damages they may recover.  (1:07-cv-02867 (D.N.J.), MDL Docket No. 1850 (D.N.J.)).  On December 16, 2010, the Third Circuit upheld the settlement as fair, reasonable and adequate in all respects except one. While the settlement establishes a cash fund of $24 million to reimburse claims for all reasonable economic damages, the settlement limits claims for the purchase price of recalled pet food ("Purchase Claims") to an aggregate maximum of $250,000. This means that if all Purchase Claims total more than $250,000, each Purchase Claim would be reduced to its proportionate share of $250,000. The Appellate Court held that Judge Hillman "lacked the information necessary to determine whether the $250,000 allocated to Purchase Claims was fair, reasonable, and adequate."  The Appellate Court instructed Judge Hillman to reconsider whether the $250,000 allocated to Purchase Claims was fair, reasonable, and adequate and asked the settling parties to "either produce the relevant information or demonstrate that it is unavailable or that producing it would be unfeasible."

***In re TJX Companies Retail Security Breach Litigation***: The firm served as co-lead counsel in this multidistrict litigation brought on behalf of individuals whose personal and financial data was compromised in the then-largest theft of personal data in history.  The breach involved more than 45 million credit and debit card numbers and 450,000 customers' driver's license numbers. The case was settled for benefits valued at over $200 million. Class members whose driver's license numbers were at risk were entitled to 3 years of credit monitoring and identity theft insurance (a value of $390 per person based on the retail cost for this service), reimbursement of actual identity theft losses, and reimbursement of driver's license replacement costs.  Class members whose credit and debit card numbers were at risk were entitled to cash of $15-$30 or store vouchers of $30-$60.  (No. 1:07-cv-10162-WGY, (D. Mass.)).

***In Re: Heartland Payment Systems, Inc. Customer Data Security Breach Litigation:*** The firm served on the Executive Committee of this multidistrict litigation and obtained a settlement of cash and injunctive relief for a class of 130 million credit card holders whose credit card information was stolen by computer hackers.  The breach was the largest known theft of credit card information in history.  The settlement is subject to court approval.  (No. 4:09-MD-2046 (S.D. Tex. 2009)).

***In re: Countrywide Financial Corp. Customer Data Security Breach Litigation***:  The firm served on the Executive Committee of this multidistrict litigation and obtained a settlement for a class of 17 million individuals whose personal information was at risk when a rouge employee sold their information to unauthorized third parties. Settlement benefits included: (i) reimbursement of several categories of out-of-pocket costs; (ii) credit monitoring and identity theft insurance for 2 years for consumers who did not accept Countrywide's prior offer of credit monitoring; and (iii) injunctive relief.  The settlement was approved by the court in 2010.  (3:08-md-01998-TBR (W.D. Ky. 2008)).

***In re Educational Testing Service Praxis Principles of Learning and Teaching: Grades 7-12 Litigation***:  The firm served on the plaintiffs' steering committee and obtained an $11.1 million settlement in 2006 on behalf of persons who were incorrectly scored on a teacher's licensing exam.  (MDL No. 1643 (E.D. La.)).

***Vadino, et al. v. American Home Products Corporation, et al.:***  The firm filed a class complaint different from that filed by any other of the filing firms in the New Jersey State Court "Fen Phen" class action, and the class sought in the firm's complaint was ultimately certified.  It was the only case anywhere in the country to include a claim for medical monitoring.  In the midst of trial, the New Jersey case was folded into a national settlement which occurred as the trial was ongoing, and which was structured to include a medical monitoring component worth in excess of $1 billion.  (Case Code No. 240 (N.J. Super. Ct.)).

***Parker v. American Isuzu Motors, Inc.***:  The firm served as sole lead counsel and obtained a settlement whereby class members recovered up to $500 each for economic damages resulting from accidents caused by faulty brakes.  (Sept. Term 2003, No. 3476 (Pa. Ct. Com. Pl., Phila. Cty.)).

***In re: Bridgestone Firestone, Inc. ATX, ATX II and Wilderness Tires Products Liab. Litig.:***  The firm filed a complaint that was later consolidated into the master multidistrict litigation (MDL).   Claims in the MDL were focused on: (1) products liability claims against Bridgestone/Firestone for faulty tires; and (2) diminution in value (DIV) claims against Ford for the falling value of Ford Explorers.  B&M was one of three firms on the Discovery Committee.  After surviving in part the motion to dismiss, engaging in substantial discovery, and litigating the motion for class certification, the case was settled on a non-class basis. (Master File No. 00-ml-09374-SEB-JMS (S.D. Ind.), MDL No. 1373).

***Salvucci v. Volkswagen of America, Inc. d/b/a Audi of America, Inc.***:  The firm served as co-lead counsel in litigation brought on behalf of a nationwide class alleging that defendants failed to disclose that its vehicles contained defectively designed timing belt tensioners and associated parts and that defendants misrepresented the appropriate service interval for replacement of the timing belt tensioner system.  After extensive discovery, a settlement was reached.  (Docket No. ATL-1461-03 (N.J. Sup. Ct. 2007)).

21

***Burgo v. Volkswagen of America, Inc. d/b/a Audi of America, Inc.:***  The firm served as co-lead counsel in litigation brought on behalf of a nationwide class against premised on defendants' defective tires that were prone to bubbles and bulges.  Counsel completed extensive discovery and class certification briefing.  A settlement was reached while the decision on class certification was pending.  The settlement consisted of remedies including total or partial reimbursement for snow tires, free inspection/replacement of tires for those who experienced sidewall bubbles, blisters, or bulges, and remedies for those class members who incurred other costs related to the tires' defects.  (Docket No. HUD-L-2392-01 (N.J. Sup. Ct. 2001)).

***Crawford v. Philadelphia Hotel Operating Co.:***  The firm served as co-lead counsel and obtained a settlement whereby persons who contracted food poisoning at a business convention recovered $1,500 each.  (March Term, 2004, No. 000070 (Pa. Ct. Com. Pl., Phila. Cty.)).

***Block v. McDonald's Corporation:***  The firm served as co-lead counsel and obtained a settlement of $12.5 million with McDonald's stemming from its failure to disclose the use of beef fat in its french fries.  (No. 01-CH-9137 (Ill. Cir. Ct., Cook Cty.)).

## *Commercial Litigation*

***Erie Power Technologies, Inc. v. Aalborg Industries A/S, et al.:***  Berger & Montague represented a trustee in bankruptcy against officers and directors and the former corporate parent and obtained a very favorable confidential settlement.  (No. 04-282E (W.D. Pa.)).

***Moglia v. Harris et al.:***  Berger & Montague represented a liquidating trustee against the officers of U.S. Aggregates, Inc. and obtained a settlement of $4 million. (No. C 04 2663 (CW) (N.D. Cal.)).

***Gray v. Gessow et al.:***  The firm represented a litigation trust and brought two actions, one against the officers and directors  of Sunterra Inc. an insolvent company, and the second  against Sunterra's accountants, Arthur Andersen and obtained an aggregate settlement of $4.5 million. (Case No. MJG 02-CV-1853 (D. Md.) and No. 6:02-CV-633-ORL-28JGG (M.D. Fla.)).

***Fitz, Inc. v. Ralph Wilson Plastics Co.:***  The firm served as sole lead counsel and obtained, after 7 years of litigation, in 2000 a settlement whereby fabricator class members could obtain full recoveries for their losses resulting from defendants' defective contact adhesives.  (No. 1-94-CV-06017 (D.N.J.)).

***Provident American Corp. and Provident Indemnity Life Insurance Company v. The Loewen Group Inc. and Loewen Group International Inc.:***  Berger & Montague settled this individual claim, alleging a 10-year oral contract (despite six subsequent writings attempting to reduce terms to writing, each with materially different terms added, all of which were not signed), for a combined payment in cash and stock of the defendant, of $30 Million.  (No. 92-1964 (E.D. Pa.)).

22

***Marilou Whitney (Estate of Cornelius Vanderbilt Whitney) v. Turner/Time Warner:***  Berger & Montague settled this individual claim for a confidential amount, seeking interpretation of the distribution agreement for the movie, *Gone with the Wind* and undistributed profits for the years 1993-1997, with forward changes in accounting and distribution.

***American Hotel Holdings Co., et. al v. Ocean Hospitalities, Inc., et. al.:***  Berger & Montague defended against a claim for approximately $16 million and imposition of a constructive trust, arising out of the purchase of the Latham Hotel in Philadelphia.  Berger & Montague settled the case for less than the cost of the trial that was avoided.  (June Term, 1997, No. 2144 (Pa. Ct. Com. Pl., Phila. Cty.))

***Creative Dimensions and Management, Inc. v. Thomas Group, Inc.:***  Berger & Montague defended this case against a claim for $30 million for breach of contract.  The jury rendered a verdict in favor of Berger & Montague's client on the claim (i.e., $0), and a verdict for the full amount of Berger & Montague's client on the counterclaim against the plaintiff.  (No. 96-6318 (E.D. Pa.)).

***Robert S. Spencer, et al. v. The Arden Group, Inc., et al.***:  Berger & Montague represented an owner of limited partnership interests in several commercial real estate partnerships in a lawsuit against the partnerships' general partner. The terms of the settlement are subject to a confidentiality agreement. (Aug. Term, 2007, No. 02066 (Pa. Ct. Com. Pl., Phila. Cty. - Commerce Program)).

## *Employment Litigation*

***Employees Committed for Justice v. Eastman Kodak Company:***  The firm served as co-lead counsel and obtained a settlement of $21.4 million on behalf of a nationwide class of African American employees of Kodak alleging a pattern and practice of racial discrimination (pending final approval).  A significant opinion issued in the case is *Employees Committed For Justice v. Eastman Kodak Co.*, 407 F.Supp.2d 423 (W.D.N.Y. 2005) (denying Kodak's motion to dismiss). No. 6:04-cv-06098 (W.D.N.Y.)).

***Salcido v. Cargill Meat Solutions Corp.:***  The firm served as co-lead counsel and obtained a settlement of $7.5 million on behalf of a class of thousands of employees of Cargill Meat Solutions Corp. alleging that they were forced to work off-the-clock and during their breaks.  This is one of the largest settlements of this type of case involving a single plant in U.S. history.   (Civil Action Nos. 1:07-cv-01347-LJO-GSA and 1:08-cv-00605-LJO-GSA (E.D. Cal.)).

***Miller v. Hygrade Food Products, Inc.:***  The firm served as lead counsel and obtained a settlement of $3.5 million on behalf of a group of African American employees of Sara Lee Foods Corp. to resolve charges of racial discrimination and retaliation at its Ball Park Franks Plant.  (No. 99-1087 (E.D. Pa.)).

***Chabrier v. Wilmington Finance, Inc.:***   The firm served as co-lead counsel and obtained a settlement of $2,925,000 on behalf of loan officers who worked in four offices of to resolve claims for unpaid overtime wages.   A significant opinion issued in the case is *Chabrier v. Wilmington Finance, Inc.*, 2008 WL 938872 (E.D. Pa. April 04, 2008) (denying the defendant's motion to decertify the class).   (No. 06-4176 (E.D. Pa.)).

***Bonnette v. Rochester Gas & Electric Co.:***   The firm served as co-lead counsel and obtained a settlement of $2 million on behalf of a class of African American employees of Rochester Gas & Electric Co. to resolve charges of racial discrimination in hiring, job assignments, compensation, promotions, discipline, terminations, retaliation, and a hostile work environment.   (No. 07-6635 (W.D.N.Y.)).

***Confidential.***   The firm served as lead counsel and obtained a settlement of $6 million on behalf of a group of African American employees of a Fortune 100 company to resolve claims of racial discrimination, as well as injunctive relief which included significant changes to the Company's employment practices (settled out of court while charges of discrimination were pending with the U.S. Equal Employment Opportunity Commission).

### *Insurance Litigation*

***Spencer v. Hartford Financial Services Group, Inc.:***   The firm, together with co-counsel, prosecuted this national class action against The Hartford Financial Services Group, Inc. and its affiliates in the United States District Court for the District of Connecticut (*Spencer v. Hartford Financial Services Group, Inc.*, Case No. 05-cv-1681) on behalf of approximately 22,000 claimants, each of whom entered into structured settlements with Hartford property and casualty insurers to settle personal injury and workers' compensation claims.   To fund these structured settlements, the Hartford property and casualty insurers purchased annuities from their affiliate, Hartford Life.   By purchasing the annuity from Hartford Life, The Hartford companies allegedly were able to retain up to 15% of the structured amount of the settlement in the form of undisclosed costs, commissions and profit - all of which was concealed from the settling claimants.   On March 10, 2009, the U.S. District Court certified for trial claims on behalf of two national subclasses for civil RICO and fraud (256 F.R.D. 284 (D. Conn. 2009)).   On October 14, 2009, the Second Circuit Court of Appeals denied The Hartford's petition for interlocutory appeal under Federal Rule of Civil Procedure 23(f).On September 21, 2010, the U.S. District Court entered judgment granting final approval of a $72.5 million cash settlement.

***Nationwide Mutual Insurance Company v. O'Dell:***   The firm, together with co-counsel, prosecuted this class action against Nationwide Mutual Insurance Company in West Virginia Circuit Court, Roane County (*Nationwide Mutual Insurance Company v. O'Dell*, Case No. 00-C-37), on behalf of current and former West Virginia automobile insurance policyholders, which arose out of Nationwide's failure, dating back to 1993, to offer policyholders the ability to purchase statutorily-required optional levels of underinsured ("UIM") and uninsured ("UM") motorist coverage in accordance with West Virginia Code 33-6-31.   The court certified a trial class seeking monetary damages, alleging that the failure to offer these optional levels of

coverage, and the failure to provide increased first party benefits to personal injury claimants, breached Nationwide's insurance policies and its duty of good faith and fair dealing, and violated the West Virginia Unfair Trade Practices Act. On June 25, 2009, the court issued final approval of a settlement that provided a minimum estimated value of $75 million to Nationwide auto policyholders and their passengers who were injured in an accident or who suffered property damage.

### *Other Individual Litigation*

***Rita Rappaport v. Samuel Rappaport; Estate of Samuel Rappaport, Deceased:*** Berger & Montague settled this divorce action involving significant marital real estate holdings for in excess of $20 million for the client.

### *BIOGRAPHIES OF THE PRIMARY BERGER & MONTAGUE ATTORNEYS INVOLVED IN THE BANK OF AMERICA FLOOD LITIGATION*

### **Shanon J. Carson**

Shanon J. Carson is a shareholder at Berger & Montague. He is the chair of the firm's Employment Law Department, and a member of the firm's Consumer Protection and Employee Benefits/ERISA Departments.

Mr. Carson concentrates his practice on the prosecution of class actions, collective actions and multiple plaintiff litigation on behalf of employees, consumers and shareholders across the country. Mr. Carson has served as lead or co-lead counsel in a large number of class actions in federal and state courts across the country, including, for example:

*Employees Committed for Justice v. Eastman Kodak Company*, No. 6:04-cv-06098 (W.D.N.Y.). Co-Lead Counsel. Mr. Carson obtained a settlement of $21.4 million on behalf of a nationwide class of African American employees of Kodak alleging a pattern and practice of racial discrimination. A significant opinion issued in the case is *Employees Committed For Justice v. Eastman Kodak Co.*, 407 F.Supp.2d 423 (W.D.N.Y. 2005) (denying Kodak's motion to dismiss).

*Salcido v. Cargill Meat Solutions Corp.*, Civil Action Nos. 1:07-cv-01347-LJO-GSA and 1:08-cv-00605-LJO-GSA (E.D. Cal.). Co-Lead Counsel. Mr. Carson obtained a settlement of $7.5 million on behalf of a class of thousands of employees of Cargill Meat Solutions Corp. alleging that they were forced to work off-the-clock and during their meal and rest breaks. This is one of the largest settlements of this type of case involving a single plant in U.S. history.

*Miller v. Hygrade Food Products, Inc.*, No. 99-1087 (E.D. Pa.). Lead Counsel. Mr. Carson obtained a settlement of $3.5 million on behalf of a group of African American employees of Sara Lee Foods Corp. to resolve charges of racial discrimination and retaliation at its Ball Park Franks plant in Philadelphia, PA.

*Chabrier v. Wilmington Finance, Inc.*, No. 06-4176 (E.D. Pa.). Co-Lead Counsel. Mr. Carson obtained a settlement of $2.9 million on behalf of retail loan officers who worked in four offices of Wilmington Finance, Inc. to resolve claims for unpaid overtime wages and related penalties. A significant opinion issued in the case is *Chabrier v. Wilmington Finance, Inc.*, 2008 WL 938872 (E.D. Pa. April 04, 2008) (denying the defendant's motion to decertify the class).

*Bonnette v. Rochester Gas & Electric Co.*, No. 07-6635 (W.D.N.Y.). Co-Lead Counsel. Mr. Carson obtained a settlement of $2 million on behalf of a class of African American employees of Rochester Gas & Electric Co. to resolve charges of racial discrimination in hiring, job assignments, compensation, promotions, discipline, terminations, retaliation, and a hostile work environment.

*Confidential*.  Lead Counsel.  Mr. Carson obtained a settlement of $6 million on behalf of a group of African American employees of a Fortune 100 company to resolve claims of racial discrimination, as well as injunctive relief which included significant changes to the Company's employment practices (settled out of court while Charges of Discrimination were pending with the U.S. Equal Employment Opportunity Commission).

*Drayton v. Pilgrim's Pride Corp.*, No. 03-2334 (E.D. Pa.).  Mr. Carson served as counsel in a consolidation of wrongful death and other catastrophic injury cases brought against two manufacturers of turkey products, arising out of a 2002 outbreak of Listeria Monocytogenes in the Northeastern United States, which resulted in the recall of over 32 million pounds of turkey - the second largest meat recall in U.S. history. A significant opinion issued in the case is *Drayton v. Pilgrim's Pride Corp.*, 472 F.Supp.2d 638 (E.D. Pa. 2006) (denying the defendants' motions for summary judgment and applying the alternative liability doctrine). All of the cases settled on confidential terms in 2006.

*Aldridge v. A.T. Cross Corp*., Civil Action 00203 ML (D.R.I.). Mr. Carson represented a class of investors in a securities fraud class action against the A.T. Cross Company, and won a significant victory in the U.S. Court of Appeals for the First Circuit when that Court reversed the dismissal of the Complaint and lessened the pleading standard for such cases in the First Circuit, holding that it would not require Plaintiffs in a shareholder suit to submit proof of financial restatement in order to prove revenue inflation. *See Aldridge v. A.T. Cross Corp.*, 284 F.3d 72 (1st Cir. 2002). The case settled for $1.5 million.

Mr. Carson currently serves as lead or co-lead counsel in many employment and consumer class actions pending in federal and state courts across the United States.  Mr. Carson is also active in non-profit and professional organizations and is available for speaking engagements concerning the U.S. civil law system, class actions and collective actions, employment law, and other legal issues.

Mr. Carson is a graduate of the Indiana University of Pennsylvania (B.A. *cum laude* 1996 - Criminology) and the Dickinson School of Law of the Pennsylvania State University (J.D.

26

2000). While in law school, Mr. Carson was Senior Editor of the Dickinson Law Review, and also served as a law clerk for the Honorable William W. Caldwell, Senior Judge, United States District Court, Middle District of Pennsylvania.

**Lawrence Deutsch**

Lawrence Deutsch is a shareholder at Berger & Montague. At the Berger firm, Mr. Deutsch has been involved in numerous major shareholder class action cases. He recently served as lead counsel in the Delaware Chancery Court on behalf of Class A shareholders in a corporate governance litigation concerning the rights and valuation of their shareholdings. Defendants in the case were the Philadelphia Stock Exchange, the Exchange's Board of Trustees, and six major Wall Street investment firms. The case settled for $99 million and also included significant corporate governance provisions. Chancellor Chandler, when approving the settlement allocation and fee awards on July 2, 2008, complimented counsel's effort and results, stating, "Counsel, again, I want to thank you for your extraordinary efforts in obtaining this result for the class." The Chancellor had previously described the intensity of the litigation when he had approved the settlement, "All I can tell you, from someone who has only been doing this for roughly 22 years, is that I have yet to see a more fiercely and intensely litigated case than this case. Never in 22 years have I seen counsel going at it, hammer and tong, like they have gone at it in this case."

Mr. Deutsch currently is court-appointed Lead or a primary attorney in numerous complex litigation cases: As court-appointed lead counsel *In re Revlon, Inc. Securities Litigation* (Civil Case No. 1:09-cv-01008-GMS); serving as principal attorney on behalf of a class of former principals of Towers Perrin (principals of TPAS, an entity of Towers Perrin) within the consolidated case *Alan H. Dugan et al v. Towers, Perrin, Forster & Crosby, Inc. et al* (Civil Case No. 2:09-cv-05099-MSG); serving as court-appointed lead counsel in *In Re Inergy LP Unitholder Litigation* (Del. Ch. No. 5816-VCP).

Over the 25 years working in securities litigation, Mr. Deutsch has been a lead attorney on many substantial matters. Mr. Deutsch served as one of lead counsel in the *In re Sunbeam Securities Litigation* class action concerning "Chainsaw" Al Dunlap (recovery of over $142 million for the class in 2002). As counsel on behalf of the City of Philadelphia he served on the Executive Committee for the securities litigation regarding *Frank A Dusek, et al v. Mattel Inc., et al* (recovery of $122 million for the class in 2006).

Mr. Deutsch recently served as lead counsel for a class of investors in Scudder/Deutsche Bank mutual funds in the nationwide Mutual Funds Market Timing cases. Mr. Deutsch served on the Plaintiffs' Omnibus Steering Committee for the consortium of all cases. These cases recovered over $300 million in 2010 for mutual fund purchasers and holders against various participants in widespread schemes to "market time" and late trade mutual funds, including $14million recovered for Scudder/Deutsche Bank mutual fund shareholders.

Mr. Deutsch has also represented plaintiffs in numerous matters of broker/dealer arbitrations, consumer fraud, individual securities disputes and construction litigation.

In addition to his litigation work, Mr. Deutsch has been a member of the firm's Administrative Committee over the past ten years and also manages the firm's paralegals.  He has also regularly represented indigent parties through the Bar Association's VIP Program, including the Bar's highly acclaimed representation of homeowners facing mortgage foreclosure.

Prior to joining the Berger firm, Mr. Deutsch served in the Peace Corps from 1973-1976, serving in Costa Rica, the Dominican Republic and Belize.  He then worked for ten years at the United States General Services Administration.

Mr. Deutsch is a graduate of Temple University Beasley School of Law (J.D. 1985), the George Washington University Graduate School of Government and Business (M.S.A. 1979), and Boston University (B.A. 1973).  He is licensed to practice law in Pennsylvania and New Jersey.

### Roslyn G. Pollack

Roslyn Pollack is Of Counsel in the Securities, Whistleblower/Qui Tam, and Commercial Litigation practice groups at Berger & Montague.  Before joining the firm, Ms. Pollack was a partner with Cohen, Shapiro, Polisher, Shiekman and Cohen where she was a commercial and corporate litigator.  Ms. Pollack also served as Associate General Counsel - Litigation for PECO Energy Company/Exelon Corporation.  She has extensive trial experience in federal and state courts.  While earning her degree at the University of Florida, Ms. Pollack was elected to Phi Beta Kappa.

Ms. Pollack has served as co-counsel on the following matters:  *In re Cigna Corp. Securities Litigation* (Civil Action No. 02-8088, E.D. Pa.) ($93 million settlement); *United States of America ex rel Ven-A-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corp., et al.* (Civil Action No. 07-10248, D. Mass.) ($280 million settlement); *State of Florida ex rel Ven-A-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corp., et al.* (No. 98-3032A, Leon Cty., Fla.) ($8.5 million settlement).

### Bret P. Flaherty

Bret P. Flaherty is a shareholder in the Consumer Protection, Employment Law and Human Rights and Commercial Litigation practice groups at Berger & Montague.  He concentrates his practice in the areas of complex commercial litigation and transactional corporate matters.

Mr. Flaherty has considerable experience in consumer protection and product liability class actions, breach of contract, employment, international human rights, consumer fraud and lender liability matters.  Significant representations include *Provident American Corp. and Provident Indemnity Life Insurance Company v. The Loewen Group Inc. and Loewen Group International Inc.*, (E.D. Pa.) ($30 million recovery in a claimed 10-year verbal contract case); *In Re:*

*Bridgestone/Firestone, Inc. Tires Product Liability Litigation*, MDL No. 1373 (S.D. Ind.) (multidistrict litigation relating to Firestone tires and the Ford Explorer); *Kiobel, et al v. Royal Dutch Petroleum Company, et al.*, (S.D.N.Y.) (relating to human rights violations in Nigeria against the Ogoni people) and *Unisys ERISA Benefits Litigation* (E.D. Pa.). Mr. Flaherty has also successfully defended the owner of a landmark hotel in Philadelphia in litigation relating to the acquisition of the hotel.

Mr. Flaherty is an active and involved member of his community and champions organizations supporting the arts, education and diversity.

## Sarah R. Schalman-Bergen

Sarah R. Schalman-Bergen is an associate in the Antitrust, Consumer and Employment Law practice groups at Berger & Montague. Ms. Schalman-Bergen has extensive litigation experience in both state and federal courts, including significant appellate experience.

In the Employment Law practice group, Ms. Schalman-Bergen's practice focuses on wage and hour class and collective actions as well as class action discrimination lawsuits under state and federal law. Specifically, Ms. Schalman-Bergen has worked on all aspects of wage and hour overtime lawsuits throughout the country, representing employees whose employers do not pay them properly in different industries, including at meat and poultry plants, at fast food restaurants, in white collar jobs and in the government.

In the Antitrust practice group, Ms. Schalman-Bergen has had an active role in prosecuting complex cases, including multidistrict litigation. Specifically, Ms. Schalman-Bergen has worked on cases involving anticompetitive practices in the pharmaceutical industry as well as in the online DVD rental market.

Ms. Schalman-Bergen also maintains an active *pro bono* practice. She serves as volunteer *of counsel* to the AIDS Law Project of Pennsylvania. Through her role there, Ms. Schalman-Bergen litigates HIV discrimination cases, as well as other cases impacting the rights of people living with HIV/AIDS.

Prior to joining Berger & Montague, Ms. Schalman-Bergen practiced in the litigation department at a large Philadelphia firm where she represented clients in a variety of industries in complex commercial litigation.

Ms. Schalman-Bergen is a graduate of Harvard Law School (J.D. *cum laude*, 2007), where she served as an executive editor of the *Harvard Civil Rights-Civil Liberties Law Review*. She is also a graduate of Tufts University (B.A. *summa cum laude*, 2001). During law school, Ms. Schalman-Bergen served as an executive editor for the *Harvard Civil Rights-Civil Liberties Law Review*. She is admitted to practice law in Pennsylvania.

## Patrick F. Madden

29

Patrick F. Madden is an associate in the Consumer Protection, Employment Law and ERISA practice groups at Berger & Montague. His practice principally focuses on consumer class actions concerning financial practices and construction products as well as employment class and collective actions.

Mr. Madden has worked on class and collective action wage and hour and overtime suits throughout the country on behalf of employees whose employers do not pay them for all hours worked. For example, he represents mortgage underwriters and loan officers in class and collective actions alleging they are misclassified as exempt from federal overtime requirements, *e.g., Marrero v. Fifth Third Bancorp*, *Savitskie v. Zenta Mortgage Services, LLC*.

In addition, Mr. Madden represents classes in other employment-related litigation.  For example, he is involved in representing the employees of several high tech companies including Apple, Google, Intel, Pixar, LucasFilm and Adobe who allege that the companies entered into "do not poach" agreements that illegally suppressed employees' wages in *In re High Tech Employee Antitrust Litigation*.

Prior to attending law school, Mr. Madden worked at the United States Department of Labor, Office of Labor-Management Standards as an investigator during which time he investigated allegations of officer election fraud and financial crimes by union officers and employees.  Mr. Madden is a 2010 graduate of Temple University, James E. Beasley School of Law.  He is admitted to practice law in Pennsylvania and New Jersey.