1   Sheri L. Kelly, SBN 226993
    E-mail: slk@sherikellylaw.com
2   LAW OFFICE OF SHERI L. KELLY
    31 E. Julian St.
3   San Jose, CA  95112
    Telephone:  408/287-7712
4   Facsimile:  408/583-4249

5   **Attorney for Plaintiffs**
    *Additional Counsel Listed on Signature Page*

6

7

8                   IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
9                        SAN FRANCISCO DIVISION

10  DANNY LANE, BEVERLY LANE, and
    MERCEDES GUERRERO, individually, and          Case No. CV-12-4026 WHA
11  for other persons similarly situated,
                                                  PLAINTIFFS' NOTICE OF MOTION and
12                          Plaintiffs,            MOTION FOR CLASS CERTIFICATION;
    vs.                                           MEMORANDUM OF POINTS AND
13                                                AUTHORITIES
    WELLS FARGO BANK, N.A.
14                                                Date: June 20, 2013
                                                  Time: 8:00 A.M.
15                          Defendant.            Crtrm: 8
                                                  Judge: Hon. William H. Alsup
16
                                                  Action Filed: July 31, 2012
17                                                Trial Date: April 21, 2014

18

19

20

21

22

23

## NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

TO THE COURT, THE PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE, that Plaintiffs' Motion for Class Certification will be heard on June 20, 2013 at 8:00 a.m., before the Honorable William H. Alsup in Courtroom 8 on the 19th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California.

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs hereby move for an order certifying the following proposed Class and Sub-Classes:

**National Class:**

All persons in the United States with mortgages owned or serviced by Wells Fargo Bank, N.A. or an affiliate of Wells Fargo Bank, N.A., who were charged for force-placed insurance by Wells Fargo Bank, N.A., or an affiliate of Wells Fargo Bank, N.A., within the applicable statute of limitations.

**Arkansas Sub-Class**

All persons in Arkansas with mortgages owned or serviced by Wells Fargo Bank, N.A. or an affiliate of Wells Fargo Bank, N.A., who were charged for force-placed insurance by Wells Fargo Bank, N.A. or an affiliate of Wells Fargo Bank, N.A., from July 31, 2009 through the present.

**California Sub-Class**

All persons in California with mortgages owned or serviced by Wells Fargo Bank, N.A. or an affiliate of Wells Fargo Bank, N.A., who were charged for force-placed insurance by Wells Fargo Bank, N.A. or an affiliate of Wells Fargo Bank, N.A., from July 31, 2008 through the present.

Plaintiffs Danny Lane, Beverly Lane, and Mercedes Guerrero seek to represent the National Class, asserting claims for violation of the Bank Holding Company Act, 12 U.S.C. § 1972, *et seq*, breach of contract, and breach of the implied covenant of good faith and fair dealing. Plaintiffs Danny and Beverly Lane seek to represent the Arkansas sub-class, asserting common law claims under Arkansas law for unjust enrichment and conversion on behalf of Arkansas sub-class members. Plaintiff Mercedes Guerrero seeks to represent the California sub-class, asserting

claims under California law for violation of Cal. Bus. & Prof. Code § 17200 *et seq.*, unjust enrichment, and conversion on behalf of California sub-class members.

Plaintiffs also move for an order appointing the Owings Law Firm, Wagoner Law Firm, Walker Law Firm, and the Law Office of Sheri L. Kelly as class counsel for the above-described classes.

This Motion is based on Plaintiffs' First Amended Complaint filed on March 21, 2013 (Dkt. No. 83); the accompanying Memorandum of Points and Authorities; the accompanying Declaration of Alexander Owings and accompanying Exhibits, and Declarations of Danny Lane, Beverly Lane, Mercedes Guerrero, and Sheri L. Kelly; Plaintiffs' forthcoming reply and supporting evidence; and all files, records, and proceedings in this matter.

**Dated:** May 9, 2013                                  Respectfully submitted,

                                                       LAW OFFICE OF SHERI L. KELLY


                                                       By:      *s/ Sheri L. Kelly*
                                                                Sheri L. Kelly
                                                                Attorney for Plaintiffs and Proposed Classes

## **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................... 1

II. BACKGROUND .......................................................................... 2

    A.    Regulatory Background ..................................................... 2

    B.    Factual Background .......................................................... 4

            1.    Wells Fargo's Force-Placed Insurance Scheme ................. 4

                    a.    Uniform Application of Insurance Practices ................ 4

                    b.    Uniform Administration of Insurance Program .............. 5

                    c.    Commissions to Wells Fargo ................................. 7

            2.    Plaintiffs' Experiences Comport with Wells Fargo's Uniform Practices ........... 8

    C.    Procedural History .......................................................... 10

III. LEGAL ARGUMENT .................................................................. 11

    A.    Rule 23(a) Criteria ......................................................... 11

            1.    Numerosity ............................................................ 11

            2.    Commonality .......................................................... 12

            3.    Typicality .............................................................. 15

            4.    Adequacy .............................................................. 17

    B.    Rule 23(b)(3) Criteria ..................................................... 18

            1.    Predominance ......................................................... 18

            2.    Superiority ............................................................. 21

                     a.    Class Members' Interests .................................. 22

                     b.    Extent and Nature of Any Extant Litigation ............ 23

                     c.    Desirability of Concentrating the Litigation in this Forum ........ 24

                     d.    Manageability ............................................... 24

IV. CONCLUSION ......................................................................... 25

i

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

# TABLE OF AUTHORITIES

## United States Supreme Court

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) .................................................................................................17, 18

*Eisen v. Carlisle & Jacqueline*,
   417 U.S. 156 (1974) .........................................................................................................24

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ...................................................................................................12, 17

*Sosna v. Iowa*,
   419 U.S. 393 (1975) .........................................................................................................17

*Wal-Mart Stores Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ...............................................................................................12, 15

## United States Courts of Appeals

*Bateman v. Am. Multi-Cinema, Inc.*,
   623 F.3d 708 (9th Cir. 2010) ...........................................................................................21

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ...........................................................................................20

*Evon v. Law Offices of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012) .........................................................................................12

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .....................................................................11, 12, 16, 18

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ...........................................................................................15

*Kamm v. Cal. City Dev. Co.*,
   509 F.2d 205 (9th Cir. 1975) ...........................................................................................21

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) .............................................................................20, 22, 24

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ...........................................................................................18

ii

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

*Parra v. Bashas,' Inc.*,
  536 F.3d 975 (9th Cir. 2008) ................................................................. 12

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) ............................................................... 16

*Wolin v. Jaguar Land Rover North Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) .......................................................... 21, 22

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
  594 F.3d 1087 (9th Cir. 2010) ............................................................... 20

**United States District Courts**

*Cannon v. Wells Fargo Bank, N.A.*,
  Case No 3:12-cv-1376 (N.D. Cal) .......................................................... 23

*Cty. of Monroe v. Priceline.com, Inc.*,
  265 F.R.D. 659 (S.D. Fla. 2010) ........................................................... 22

*Ellis v. Costco Wholesale Corp.*,
  285 F.R.D. 492 (N.D. Cal. 2012) .......................................................... 15

*Faulk v. Sears Roebuck & Co.*,
  2013 WL 1703378 (N.D. Cal. Apr. 19, 2013) ....................................... 18

*Fladell v. Wells Fargo*,
  Case No. 0:13-cv-60721 (S.D. Fla) ....................................................... 23

*Gutierrez v. Wells Fargo Bank, N.A.*,
  2008 WL 4279550 (N.D. Cal. Sep. 11, 2008) ................................ passim

*In re Facebook, Inc. PPC Advertising Litig.*,
  282 F.R.D. 446 (N.D. Cal. 2012) ..................................................... 11, 12

*Jordan v. Paul Fin., LLC*,
  285 F.R.D. 435 (N.D. Cal. 2012) .......................................................... 16

*Kay v. Wells Fargo & Co.*,
  247 F.R.D. 572 (N.D. Cal. 2007) ..................................................... 19, 24

*McKenzie v. Wells Fargo Bank, N.A.*,
  Case No. 3:11-cv-4965 (N.D. Cal.) ....................................................... 23

*Morris v. Wells Fargo*,
  2:11-cv-474 (W.D. Pa.) ......................................................................... 23

iii

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

*Parker v. Time Warner Entm't Co.*,
    198 F.R.D. 374 (E.D.N.Y. 2001) .......................................................................22

*Passantino-Miller v. Wells Fargo Bank, N.A.*,
    Case No. 2:12-cv-420 (E.D. Cal.) ....................................................................23

*Sayago v. Wells Fargo*,
    8:11-cv-2009 (M.D. Fla) ...................................................................................23

*Siemers v. Wells Fargo & Co*,
    243 F.R.D. 369 (N.D. Cal. 2007) .....................................................................24

*Williams v. Wells Fargo Bank, N.A.*,
    280 F.R.D. 665 (S.D. Fla. 2012) ...................................................................3, 23

**California Statutes**

California Business and Professions Code § 17200 ..................................................15

**Rules and Regulations**

Fed. R. Civ. P. 23(a)(1) .............................................................................................11

Fed. R. Civ. P. 23(a)(2) .............................................................................................12

Fed. R. Civ. P. 23(a)(3) .........................................................................................15, 16

Fed. R. Civ. P. 23(a)(4) .............................................................................................17

Fed. R. Civ. P. 23(b)(3) ......................................................................................passim

Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Am. .......................................22

Fed. Reg. Vol. 78, No. 61, 19623, 19624 (Mar. 29, 2013) ...........................................2

**Treatises**

7A Wright and Miller, Federal Practice and Procedure, § 1779 ..................................22

Cal. Prac. Guide Fed. Civ. P. Before Trial................................................................18

**Secondary Sources**

http://www.americanbanker.com/issues/177_204/assurant-agrees-to-cut-force-placed-premiums-
    in-california-1053754-1.html............................................................................3

http://www.bloomberg.com/news/2012-08-10/u-s-regulators-to-examine-forced-place-insurance.html ............................................................................................................ 3

http://www.insurancenetworking.com/news/force-placed-insurer-offers-19-percent-rate-cut-florida-31533-1.html ................................................................................................ 3

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

# I.   INTRODUCTION

This class action seeks relief on behalf of Defendant Wells Fargo Bank, N.A.'s borrowers across the country who were harmed by Wells Fargo's improper self-dealing through its flood and hazard insurance practices. This is not a complicated case. Wells Fargo, through its force-placed insurers QBE and Assurant, utilized uniform and standardized procedures and practices for all force-placed insurance throughout the entire class period. **Exhibit 1**, Report of Birny Birnbaum § 7. [1] Wells Fargo is a lender and loan servicer that services mortgage loans owned by itself and others. Thomas Farrell, Wells Fargo's corporate representative, testified in deposition that over ninety percent of these mortgages are Fannie Mae/Freddie Mac, FHA, or VA mortgages. **Exhibit 2**, Thomas Farrell Dep. 74:10–13. These are all standard form mortgages. *Id.* at 75:19–25. [2] All such mortgages require that the borrower carry hazard insurance on the property securing the loan. Some borrowers must also carry flood insurance. If the borrower fails to carry insurance on the property, Wells Fargo may obtain insurance on the property to protect the collateral against hazard and flood loss.

Wells Fargo abuses its contractual right to force-place insurance and engages in self-dealing and profiteering that is not authorized by the mortgages or the law. The most blatant example of this is that Wells Fargo entered into contracts with two insurers, QBE and Assurant ("Insurers"), whereby Wells Fargo agreed to purchase all force-placed insurance from these Insurers. In exchange, the Insurers monitor Wells Fargo's mortgage portfolio and track insurance coverage, and pay Wells Fargo Insurance, Inc. (WFI), an affiliate of Wells Fargo, a kickback equal to 11%

---

[1] Mr. Birnbaum's report is attached as Exhibit 1 to the **Exhibit A**, Declaration of Alexander P. Owings. All numbered exhibits listed herein are exhibits to Mr. Owings's declaration. All lettered exhibits are attached separately to the Motion.

[2] The Department of Housing and Urban Development ("HUD") requires that all Fannie Mae and Freddie mortgages must be written on uniform security instruments. **Exhibit 3**, HUD Letter, p. 2 (Aug. 7, 2000). Similarly, HUD requires that all FHA mortgages must be written on a Model Mortgage Form. **Exhibit 4**, Lender's Guide to the Single Family Mortgage Insurance Process at 6-B-5; **Exhibit 5**, FHA Model Mortgage Form.

of all force-placed hazard and flood insurance premiums, thus inflating the cost of the insurance premium. The premium is charged to borrowers as a "cost" of the insurance when in reality, 11% of the premium is passed back to a WFI under the table. Force-placed insurance policies cost substantially more than private insurance, at least in part because a large portion of the premiums do not actually pay for the cost of the insurance. Wells Fargo also charges borrowers for kickbacks and administrative costs for services performed by the Insurers—including tracking insurance and sending notices to borrowers on behalf of Wells Fargo. According to Birny Birnbaum, the most qualified expert in the country on this subject, these "costs" are not the borrower's responsibility. *See* **Exhibit 1**, Birnbaum Report at §§ 6.1, 8.2.[3]

## II. BACKGROUND

### A.     Regulatory Background

Since 2011, the attorneys general for all fifty (50) states, as well as the National Association of Insurance Commissioners, have taken a hard look at the abusive practices engaged in by lenders and servicers in the force-placed insurance arena. This year, the Federal Housing Finance Agency, which regulates Fannie Mae and Freddie Mac, issued proposed regulations prohibiting loan servicers from receiving, directly or indirectly, remuneration associated with placing coverage with insurance providers. *See* Fed. Reg. Vol. 78, No. 61, 19623, 19624 (Mar. 29, 2013).[4] The State of New York, through its Financial Fraud and Consumer Protection Division of its Department of Finance, recently reached a $14 million dollar settlement with Assurant. *See* **Exhibit 7**, Assurant Consent Order. The settlement prohibits, *inter alia*, Assurant's payment of commissions to entities affiliated with loan servicers (such as WFI). The Consent Order contains

---

[3] Mr. Birnbaum's qualifications are included in his Report, **Exhibit 1** § 3.

[4] Fannie Mae also clarified its existing policies in a Servicing Announcement in March 2012, and expressly stated that lenders cannot charge commissions and other administrative costs associated with force-placed insurance to the borrower. **Exhibit 6**, Fannie Mae Servicing Guide Announcement SVC-2012-04, Mar. 14, 2012.

a finding that affiliates of the servicers (such as WFI) do "little or no work for the commissions" and that commissions are paid to "affiliates of servicers because they are a cost of staying in the market, not for any particular work the affiliates perform." *Id.* at 5–6.[5] This situation creates a motivation for servicers to "purchase higher priced force-placed insurance and for mortgage servicers to place more homeowners into force-placed insurance, because their affiliates earn more commissions as premiums increase." *Id.* New York entered into similar settlement agreements with QBE and Balboa Insurance Company.[6] These settlements expressly prohibit the kickback arrangements complained of in this case. A detailed analysis of these Consent Orders is included in Mr. Birnbaum's Report, **Exhibit 1**, § 8.2.3.

Other agencies and regulators have also addressed these practices. On August 9, 2012, the National Association of Insurance Commissioners held hearings in Atlanta, Georgia concerning the abuses in the force-placed insurance market. Regulators from Florida, Kentucky, and Louisiana announced similar investigations.[7] California regulators have been investigating these practices for almost a year. In October 2012, Assurant reached an agreement with California's Department of Insurance to reduce force-placed premiums by 30.5% in California.[8] QBE has offered to cut its rates by 19% in Florida after Florida's Insurance Commission denied its force-placed rate filing.[9] A statewide Florida class action was certified by the Southern District of Florida in *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665 (S.D. Fla. 2012).

---

[5] Consistent with this finding, QBE's corporate representative testified that he did not know that WFI provided any services to earn a commission other than bringing Wells Fargo's business to QBE. See **Exhibit 8**, Mark Chapman Dep. 33:15–22.

[6] The QBE and Balboa settlement agreements are attached as **Exhibits 9** and **10**, respectively.

[7] http://www.bloomberg.com/news/2012-08-10/u-s-regulators-to-examine-forced-place-insurance.html

[8] http://www.americanbanker.com/issues/177_204/assurant-agrees-to-cut-force-placed-premiums-in-california-1053754-1.html

[9] http://www.insurancenetworking.com/news/force-placed-insurer-offers-19-percent-rate-cut-florida-31533-1.html

---

3

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

Amidst all the investigations, lawsuits, and scrutiny of its force-placed insurance practices, Wells Fargo ceased its kickback scheme and WFI stopped receiving commissions in April 2012. However, no changes were made to the agreements between the Insurers and Wells Fargo. **Exhibit 1**, Birnbaum Report § 9. Plaintiffs here seek to require that Wells Fargo return the millions of dollars it took from consumers before it was forced to discontinue the practice.

## B.   Factual Background

### 1.   Wells Fargo's Force-Placed Insurance Scheme

Wells Fargo's force-placed insurance practices are uniform across the proposed classes. Corporate representatives for Wells Fargo, QBE, and ASIC have all testified regarding Wells Fargo's uniform force-placed insurance practices. *See* **Exhibit 2**, Thomas Farrell (Wells Fargo) Deposition; **Exhibit 8**, Mark Chapman (QBE) Deposition; **Exhibit 11**, Ronald Wilson (ASIC) Deposition. As a result of these uniform practices, Wells Fargo collects an 11% kickback from the force-placed insurers for every force-placed policy, including the 11% kickback that is the subject of this case. Farrell Dep. 54:1–4, 91:4–14; Chapman Dep. 57:20–58:7, 58:13–19. *See also*, **Exhibit 1**, Birnbaum Report §§ 6.2, 9.

#### a.   Uniform Application of Insurance Practices

The breadth and uniformity of Wells Fargo's actions make this case appropriate for class treatment. In *Gutierrez v. Wells Fargo Bank, N.A.*, 2008 WL 4279550 (N.D. Cal. Sep. 11, 2008), this Court certified a class against this same defendant because "[t]he challenged practice is a standardized one applied on a routine basis to all customers" by the bank. *Id.* at *13 Wells Fargo admits that (1) all borrowers received the same treatment in connection with force-placed insurance; (2) the 11% kickback on force-placed insurance was charged to all borrowers and never varied by borrower; and (3) WFI never performed any services for individual borrowers.

4

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

**Exhibit 1**, Birnbaum Report §§ 4.1, 6, 7. Specifically:

- Wells Fargo applies the same force-placed insurance practices to all borrowers, regardless of mortgage type. **Exhibit 2**, Farrell Dep. 76:14–21, 95:14–96:8; **Exhibit 11**, Wilson Dep. 21:23–22:3

- Assurant and QBE do not have access to borrowers' mortgages when tracking insurance or force-placing insurance. **Exhibit 2**, 64:23–65:1; **Exhibit 8**, Chapman Dep. 22:11–22

- WFI does not shop around for force-placed insurance policies. **Exhibit 2**, 59:10–13

- No individual underwriting is done for force-placed insurance. **Exhibit 11**, 75:22–24

- No distinction is made for first versus second mortgages. *Id.* at 76:5–9

- Wells Fargo maintains a "master policy" that provides automatic coverage in the event of a lapse or cancellation in coverage. **Exhibit 2**, 135:8–14; **Exhibit 11**, 76:10–77:7

- The basic force-placed insurance policy is the same for all borrowers. **Exhibit 8**, 104:6–9

- Force-placed insurance is always backdated to the "original date the exposure began" *Id.* at 68:19–69:14

As Mr. Birnbaum concluded "[t]he procedures utilized by WFB and its vendors QBE and Assurant in the LPI program are consistent and uniform across Class Members." **Exhibit 1**, Birnbaum Report § 7.

### b.  Uniform Administration of Insurance Program

Wells Fargo used two (2) vendors for insurance tracking and force-placing during the class period. From 2007 through 2012, for both hazard and flood insurance, QBE monitored approximately 20% and Assurant monitored approximately 80% of Wells Fargo's servicing portfolio. **Exhibit 2**, Farrell Dep. 33:14–25. Flood and hazard insurance protocols were the same for both Insurers. **Exhibit 2**, 34:5–13. Master Service Agreements govern the Insurers' duties, including monitoring and force-placing insurance. *See* **Exhibit 13**, ASIC Master Service Agreement and Statement of Work; **Exhibit 14**, QBE Master Service Agreement and Statement of Work. Pursuant to these contracts, QBE and Assurant are the exclusive force-placed insurance

1    providers for all Wells Fargo mortgages. In return for this substantial business, the Insurers

2    agreed to pay WFI a "commission" equal to 11% of every force-placed insurance policy resulting

3    from this agreement. **Exhibit 15**, ASIC Broker Agreement, Ex. A, ASIC 268–79; **Exhibit 16**,

4    QBE Broker Agreements, Ex. A; **Exhibit 2**, Farrell Dep. 30:16–31:6, 41:7–42:2.

5            Master Service Agreements set out the Insurers' duties to Wells Fargo. Pursuant to these

6    contracts, the Insurers agreed to (1) monitor and track borrowers' insurance coverage; (2) utilize

7    and implement procedures designed by Wells Fargo to notify borrowers on behalf of Wells Fargo

8    when insurance coverage lapsed or became insufficient according to Wells Fargo's standards; and

9    (3) force-place insurance equal to Wells Fargo's requirements. **Exhibit 2**, Farrell Dep. 35:11–24;

10   **Exhibit 8**, Chapman Dep. 13:9–14:1, 34:11–16. These contracts applied uniformly to all types of

11   mortgages, including first and second mortgages. **Exhibits 13–14**, Master Service Agreements.

12          Pursuant to the contracts with Wells Fargo, the Insurers are responsible for sending out cycle

13   letters when a borrower's policy lapses. **Exhibit 8**, 39:17–40:5. The first notice that the Insurers

14   send out is a notice of expiration of insurance. **Exhibit** 8, Chapman Dep. 49:8–12; **Exhibit 11**,

15   Wilson Dep. 31:4–6, 80:9–17. Next, the Insurers send a "reminder notice." Then the Insurers

16   issue a force-placed policy and send notice of the policy to borrowers. **Exhibit 2**, 103:10–19;

17   **Exhibit 11**, 39:24–40:4. A notice of renewal of force-placed insurance is sent the following year.

18   **Exhibit 8**, 94:13–18. All borrowers force-placed into hazard insurance receive the same cycle

19   letters. **Exhibit 8**, 80:9–16; **Exhibit 11**, 31:12–20, 41:23–42:4. The same is true for flood

20   insurance. **Exhibit 8**, 95:8–13; **Exhibit 11**, 31:12–20, 41:23–42:4.

21          The Master Services Agreement governs cycle letters. **Exhibit 8**, 53:13–54:4. The Insurers

22   have followed the same process for sending out notices to Wells Fargo borrowers since at least

23   2007. *Id.* at 55:3–8. As further evidence of the uniformity of these notices:

6

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

- Wells Fargo drafts and approves all cycle letters. *Id.* at 53:13–54:4

- Insurers send standard cycle letters to all borrowers. *Id.* at 55:3–8, 94:8–13, 95:8–13, 103:10–19, 111:13–19; **Exhibit 11**, 31:12–20, 41:23–42:4, 109:13–15

- Cycle letters are automatically generated by the Insurers. **Exhibit 11**, 79:22–25, 81:1–2; **Exhibit 1**, Birnbaum Report, § 4.1

- The Insurers do not write individualized letters for any reason. **Exhibit 8**, 112:5–6

- The body of all letters contains standardized language. **Exhibit 11**, 111:12–23

- There is nothing unique in the standard notices except the borrower's name, address, and loan number. *Id.* at 111:12–23.

These standardized cycle letters are identified by codes. **Exhibit 8**, 66:9–22; **Exhibit 11**, 42:5–7. Thus, the Insurers can determine every borrower who received such letters from its databases. **Exhibit 8**, 66:9–22, 71:8–19.

### c.      Commissions to Wells Fargo

In return for Wells Fargo's business, the Insurers agreed to pay a flat percentage commission for each force-placed insurance policy. **Exhibit 2**, Farrell Dep. 39:24–40:5, 41:7–42:2. Commissions are governed by a "Broker Insurance Agreement," which sets out the commission rate. **Exhibits 15–16**, Broker Agreements; Chapman Dep. 57:20–58:7. Pursuant to these contracts, the Insurers kicked back 11% of all force-place insurance premiums to WFI. **Exhibits 15–16**; **Exhibit 8**, Chapman Dep. 57:20–58:7; **Exhibit 11**, Wilson Dep. 63:25–64:3, 66:19–25. Wells Fargo, QBE, and ASIC did not review borrowers' mortgages to ascertain whether the mortgages authorized or permitted commissions. **Exhibit 2**, 76:14–21. The commissions did not vary from borrower to borrower. *Id.* at 93:4–14, 95:6–12, 98:10–19. As Wells Fargo, QBE and ASIC corporate representatives stated:

- QBE and ASIC paid an 11% commission on all force-placed hazard insurance from January 1, 2007 until Wells Fargo stopped taking commissions in April 2012. **Exhibit 2**, 54:1–4, 91:4–14; **Exhibit 8,** 57:20–58:7, 58:13–19

- QBE and ASIC paid a flat 11% commission on all force-placed flood insurance throughout the applicable class period. **Exhibit 2**, 96:21–92:2; **Exhibit 11**, 66:19–25

- The 11% commission paid on force-placed insurance did not vary based on the language of any individual mortgages. **Exhibit 2**, 91:4–92:6

- All borrowers who were charged for force-placed insurance from January 2007 through April 2012 paid a commission to WFI. *Id.* at 99:6–21.

Wells Fargo received this 11% commission for the entire class period, with only three (3) minor variations. *See* **Exhibit 1**, Birnbaum Report, § 9.

WFI does nothing to earn the so-called "commissions" it collects in connection with force-placed insurance. In fact, WFI performs services for Wells Fargo Bank, not the customer. **Exhibit 2**, Farrell Dep. 58:3–59:2. Although the Insurers' duties are spelled out by the contracts between the Insurers and Wells Fargo, no document sets out duties that WFI must perform to earn commissions on force-placed insurance. **Exhibit 2**, 114:17–23.[10] QBE's corporate representative testified that he was not aware "what services [WFI] bring[s] other than business." *Id.* at 33:21–22. Wells Fargo's corporate representative testified that he was not aware of any mortgage that authorizes commissions when nothing is done to earn such commissions. *Id.* at 67:14–24. Additionally, no cycle letter mailed to borrowers identifies the commission rates or the services provided to earn such commissions. **Exhibit 8**, Chapman Dep. 86:21–87:2; **Exhibit 11**, Wilson Dep. 54:23–55:5. The duties that WFI performs in connection with force-placed insurance—if any—do not vary from borrower to borrower. **Exhibit 2**, 114:24–115:3.

## 2.      Plaintiffs Experiences Comport with Wells Fargo's Uniform Practices

"There is nothing atypical or unique about the process or the letters sent to Named Plaintiffs."

---

[10] Wells Fargo and WFI entered into an "Agency Appointment and Service Agreement" in 2004, whereby WFI agreed to perform four (4) duties for Wells Fargo. None of the activities assigned to WFI are insurance agent activities. Instead, these duties are Wells Fargo's responsibilities as servicer. Neither WFI nor Wells Fargo performs these duties. Instead, the Insurers perform these duties and borrowers pay the cost. *See* **Exhibit 1**, Birnbaum Report § 6.1; **Exhibit 12**, Agency Appointment and Service Agreement.

8

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

**Exhibit 1**, Birnbaum Report § 7. Plaintiffs were subjected to the same force-placed insurance practices as all Wells Fargo borrowers.

Danny and Beverly Lane are Arkansas residents with a Fannie Mae/Freddie Mac uniform security instrument secured by their home in Arkansas. **Exhibit B**, Decl of Danny Lane, ¶ 2, Ex. A; **Exhibit C**, Decl of Beverly Lane ¶ 2, Ex. A. This mortgage contains identical terms as all other Fannie Mae/Freddie Mac uniform security instruments. **Exhibit 3**, HUD Letter (stating that all Fannie Mae and Freddie Mac mortgages must use this form). Wells Fargo sent the Lanes numerous letters between 2010 and the present stating that it would force-place insurance on their property. **Exhibit B**, Decl. of Danny Lane ¶¶ 3, 5, **Exhibit C**, Decl of Beverly Lane, ¶¶ 3, 5. These letters stated that if Wells Fargo purchased force-placed insurance "it will be obtained with the assistance of Wells Fargo Insurance, Inc. . . . . Wells Fargo Insurance, Inc. will receive a commission on the insurance . . . ." **Exhibit B** ¶ 5, Ex. D; **Exhibit C** ¶ 5, Ex. D. These letters are form letters sent in substantially identical form to all class members. **Exhibit 8**, Chapman Dep. 80:9–16, 95:8-13; **Exhibit 11**, 31:12–20, 41:23–42:4, 119:11–13. After sending these letters, Wells Fargo force-placed both hazard and flood insurance on the Lanes' property with QBE in 2010 and 2011, and ASIC in 2012 and 2013. **Exhibit B**, ¶ 3, **Exhibit C**, ¶ 3. The insurance policies were backdated. **Exhibit B**, Ex. B, **Exhibit C**, Ex. B. QBE paid 11% of the premium for these force-placed policies to WFI. **Exhibit B**, Ex. D (stating that WFI would receive a commission if Wells Fargo purchased insurance for Plaintiff); **Exhibit C**, Ex. D (same).

Mercedes Guerrero is a California resident with a FHA California Deed of Trust secured by her home in California. **Exhibit D**, Decl. of Mercedes Guerrero, ¶ 2, Ex. A. This mortgage contains identical terms to all other FHA deeds of trust. **Exhibits 4–5**, Lender Guide, FHA Model Mortgage Form (requiring identical form for all FHA mortgages). Wells Fargo sent Ms. Guerrero

9

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

numerous letters between 2007 and the present stating that it would force-place flood insurance on her property. **Exhibit D**, ¶ 7. These letters stated that if Wells Fargo purchased force-placed flood insurance, Wells Fargo Insurance, Inc. would "act as an agent for the insurance company and [] receive a commission on the insurance." **Exhibit D**, ¶ 7, Ex. D. These letters were form letters sent in identical or substantially identical form to all class members. **Exhibit 11**, Wilson Dep. 31:12-20, 41:23-42:4, 111:7-23. After sending these letters, Wells Fargo force-placed flood insurance on Ms. Guerrero's property with ASIC. **Exhibit D**, ¶ 4. The insurance policies were backdated. *Id.*, Ex. B. ASIC paid 11% of the premium for these force-placed insurance policies to WFI each time. **Exhibit 11**, 63:25–64:3.

### C.     Procedural History

Plaintiffs Danny and Beverly Lane filed this action on July 31, 2012 alleging that Wells Fargo improperly charges borrowers for kickbacks on force-placed insurance policies and improperly charges borrowers for excessive flood insurance. (Dkt. No. 1). On January 24, 2013, this Court entered an Order Granting in Part and Denying in Part Wells Fargo's Motion to Dismiss Plaintiffs' Complaint, upholding Plaintiffs' kickback claims. (Dkt. No. 70).  On March 20, 2013, the Court granted Plaintiffs' Motion for Leave to Amend and add Plaintiff Mercedes Guerrero to assert claims on behalf of a California class. (Dkt. No. 82). Plaintiffs filed their First Amended Class Action Complaint on March 20, 2013. (Dkt. No. 83). On April 24, 2013, the Court denied Wells Fargo's Motion to Dismiss Plaintiffs' First Amended Complaint. (Dkt. No. 83). Plaintiffs' claims include (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment; (4) conversion; (5) violation of the California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, *et seq.*; and (6) violation of the Bank Holding Company Act, 12 U.S.C. § 1972, *et seq*.

10

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

### III. ARGUMENT

Federal Rule of Civil Procedure 23 governs class action litigation. Pursuant to Rule 23, the Court may certify a class if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). A plaintiff must also satisfy at least one section of Rule 23(b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Plaintiffs' claims satisfy the requirements of Rule 23(a) and Rule 23(b)(3).

**A.      Rule 23(a) Criteria**

**1.      Numerosity**

A plaintiff must show that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[P]laintiffs need not state the exact number of potential class members, nor is there a specific number that is required." *In re Facebook, Inc. PPC Advertising Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012). "[T]he ultimate issue in evaluating this factor is whether the class is too large to make joinder impracticable[.]" *Id.* Thus, "courts typically find that the numerosity factor is satisfied if the class comprises 40 or more members[.]" *Id.* Plaintiffs have defined classes to include all individuals who were charged for force-placed flood or hazard insurance by Wells Fargo where a portion of such charges included commissions or other financial remuneration to Wells Fargo. *See* FAC ¶ 79. "Assuming a total mortgage portfolio of around 10 million loans and an average of 2% of loans placed with LPI at any time, there would be about 200,000 WFB borrowers with LPI.". **Exhibit 1**, Birnbaum Report § 6. QBE's corporate representative testified that, for its 20% portion of Wells Fargo's portfolio, there are around 100,000 force-placed polices. **Exhibit 8**, Chapman Dep. 130:11−19. These numbers far

---

11

1   exceed the minimum requirements for numerosity in this Circuit. *See In re Facebook*, 282 F.R.D.

2   at 452. Additionally, Wells Fargo has stated that it "will not dispute numerosity should plaintiffs

3   move for class certification." *See* **Exhibit 17**, Wells Fargo's Responses to Requests for

4   Production of Documents Nos. 8–13, (Feb. 8, 2013).

5         **2.**     **Commonality**

6       Commonality requires a showing of "questions of law and fact common to the class." Fed. R.

7   Civ. P. 23(a)(2). This requirement "has been construed permissively." *Hanlon*, 150 F.3d at 1019.

8   "What matters . . . is . . . the capacity of a classwide proceeding to generate common answers apt

9   to drive the resolution of the litigation." *Wal-Mart Stores Inc. v. Dukes*, 131 S. Ct. 2541, 2551

10  (2011). "All questions of fact and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d

11  at 1019. Rather, "[w]here the circumstances of each particular class member vary but retain a

12  common core of factual or legal issues with the rest of the class, commonality exists." *Parra v.*

13  *Bashas,' Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). The commonality element is met where a

14  "claim is a common contention among the class and 'determination of its truth or falsity' is

15  pivotal to [the] lawsuit and capable of determination 'in one stroke.'" *Evon v. Law Offices of*

16  *Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012)(quoting *Wal-Mart*, 131 S.Ct. at 2551).

17      All class members' claims share a common core of factual and legal issues and common

18  questions of law and fact that will determine the outcome of this litigation. Critical to the

19  commonality inquiry is whether "the class members 'have suffered the same injury.'" *Wal-Mart*,

20  131 S.Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Evon*, 688

21  F.3d at 1029). Common injuries among all class members include: (1) class members' payment of

22  commissions to WFI, which inflated force-placed insurance premiums; (2) class members'

23  payment of excessive force-placed insurance charges because Wells Fargo charged "costs" for

---

12

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

administrative services that were Wells Fargo's responsibility, including costs for monitoring and tracking insurance coverage; and (3) class members' payment of backdated force-placed insurance policies that covered time periods when no losses occurred.

Wells Fargo admits that, for every force-placed insurance premium, WFI received a commission of 11% and that this commission practice did not vary from borrower to borrower. **Exhibit 2**, Farrell Dep. 30:16–31:2, 54:1–4, 91:4–92:6, 93:4–14, 95:6–12, 96:21–97:2l 98:1-19, 99:6–21. In fact, throughout the class period, ASIC and QBE were contractually obligated to pay WFI 11% of every force-placed insurance premium they received. **Exhibits 15**, ASIC Broker Agreement, ASIC 268–79; **Exhibit 16**, QBE Broker Agreement, QBE 286–87. All borrowers were charged for administrative services that were Wells Fargo's responsibility, such as insurance tracking and sending notices. **Exhibit 1**, Birnbaum Report § 4.1, 6. Wells Fargo's counsel stated before this Court that every force-placed policy is "backdated"—the effective date precedes the purchase date. *See* Hearing Transcript, Jan. 24, 2013, (Dkt. No. 72, p. 20). Wells Fargo confirmed this in its discovery. **Exhibit 18**, Wells Fargo's Responses to Requests for Production of Documents Nos. 12–13, (Jan. 14, 2013). The Insurers also confirmed that every force-placed insurance policy was backdated. **Exhibit 8**, Chapman Dep. 68:19–69:14.

The pivotal factual issue at stake in this litigation is whether WFI's "commissions" are lawful or appropriate. This hinges on Plaintiffs' contention that WFI does nothing for borrowers to earn its commissions. Wells Fargo and the Insurers have affirmed that (1) WFI provides a uniform set of services for Wells Fargo, ASIC, and QBE; (2) WFI does not under any circumstances provide services specifically to any borrower in connection with force-placed insurance; and (3) WFI's activities are uniform for all borrowers. **Exhibit 2**, Farrell Dep. 59:10–13, 114:24–115:3; **Exhibit 8**, Chapman Dep. 52:13–53:3, 60:9–14; **Exhibit 11**, Wilson Dep. 75:22–24. Because WFI's

13

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

"services" are uniform and standardized, common evidence will establish liability on behalf of all class members.

Common questions of law and fact will determine whether Wells Fargo is liable to all class members under each of Plaintiffs' theories of liability. Common questions will establish whether Wells Fargo violated the Bank Holding Company Act. These questions include:

- Do Wells Fargo's form letters offer a service?

- Is the service conditioned on the borrower's agreement to pay for services provided by WFI?

- Is WFI a subsidiary of Wells Fargo's holding company?

- Is it unusual for an insurance agency to receive commissions from a borrower when it provides no services to borrowers?

- Does Wells Fargo benefit when WFI receives a commission?

Common questions of law and fact will also establish whether Wells Fargo breached Plaintiffs' mortgage contracts when it accepted kickbacks on force-placed insurance:

- Is the commission for force-placed insurance a charge for "holding and applying Funds" to escrowed items prohibited by Section 3 of the Fannie Mae mortgage?

- Did Wells Fargo abuse its discretion under the mortgages by force-placing insurance with companies that paid unearned commissions to WFI?

- Is an unearned "commission" a "cost" for insurance allowed under Section 5 of the Fannie Mae mortgage?

- Is it "reasonable or appropriate" for Wells Fargo to charge borrowers for an unearned commission?

- Are charges for commissions paid to WFI necessary to protect the value of a borrower's home and Wells Fargo's rights in the home?

- Are WFI's commissions "fees or charges" authorized FHA mortgages?

Common questions of law and fact will also determine whether Wells Fargo breached Plaintiffs' mortgage contracts by charging borrowers for administrative costs and backdated insurance:

- Did Wells Fargo breach the mortgages and the implied covenant of good faith and fair dealing

14

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

when it charged for administrative costs that were Wells Fargo's responsibility?

- Did Wells Fargo's practice of backdating force-placed insurance breach the mortgages and implied covenant of good faith and fair dealing?

- Is it "reasonable or appropriate" or necessary to protect the value of a borrower's home and Wells Fargo's rights in the home?

Common questions of law and fact will establish each of Plaintiffs' other claims as well:

- Was Wells Fargo unjustly enriched by payment of unearned commissions, administrative costs, or backdated force-placed insurance?

- Did Wells Fargo convert readily identifiable funds belonging to borrowers when it accepted a portion of force-placed insurance funds from borrowers' escrow accounts as an unearned commission and as payment for administrative services?

- Were Wells Fargo's force-placed insurance practices "unfair" within the meaning of the California Business and Professions Code § 17200, *et seq.*?

- Was Wells Fargo's force-placed insurance scheme "unlawful" under the BHCA and, therefore unlawful under California Business and Professions Code § 17200, *et seq.*?

Answering each of these questions will determine liability on behalf of all Class Members for all claims related to Wells Fargo's force-placed insurance practices. No individual issues will arise in determining liability on any of Plaintiffs' claims. Therefore, Plaintiffs' claims present numerous common questions of law and fact whose answers are "apt to drive the resolution of the litigation." *Wal-Mart*, 131 S. Ct. at 2551.

### 3. Typicality

The "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Courts assess typicality by determining 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 533 (N.D. Cal. 2012)(quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The typicality

15

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

1    requirement 'is satisfied when each class member's claim arises from the same course of events,

2    and each class member makes similar legal arguments to prove the defendant's liability.'" *Jordan*

3    *v. Paul Fin., LLC*, 285 F.R.D. 435, 459 (N.D. Cal. 2012)(quoting *Rodriguez v. Hayes*, 591 F.3d

4    1105, 1124 (9th Cir. 2010)). "Rule 23(a)(3) is 'permissive' and only requires that the named

5    plaintiffs' claims be 'reasonably co-extensive with those of absent class members.'" *Id.* (quoting

6    *Hanlon*, 150 F.3d at 1020).

7        Plaintiffs' legal claims arise from the same course of conduct and are based on the same legal

8    theories as those brought on behalf of the classes. Plaintiffs and every proposed class member

9    have a mortgage owned or serviced by Wells Fargo that is governed by common and materially

10   uniform mortgage agreements. **Exhibit B**, Decl. of Danny Lane, Ex. A; **Exhibit C**, Decl. of

11   Beverly Lane, Ex. A; **Exhibit D**, Decl. of Mercedes Guerrero, Ex. A; **Exhibits 3–5**, HUD Letter,

12   Lender Guide, FHA Model Mortgage Form. Pursuant to uniform force-placed insurance practices,

13   Plaintiffs were charged for backdated, high-cost force-placed insurance. **Exhibit B ¶¶** 3–4, Ex. B,

14   Ex. C; **Exhibit C ¶¶** 3–4, Ex. B, Ex. C; **Exhibit D ¶¶** 4–5, Ex. B, Ex. C. Plaintiffs paid force-

15   placed insurance charges by increasing their monthly mortgage payments. **Exhibit B ¶** 4; **Exhibit**

16   **C ¶** 4; **Exhibit D ¶** 5.

17       Wells Fargo and the Insurers treated all borrowers in a standardized and uniform manner

18   regardless of mortgage type or variations in individual circumstances. **Exhibit 2**, Farrell Dep.

19   93:4–14, 95:14–96:8. WFI received the same 11% "commission" on each of Plaintiffs' force-

20   placed insurance policies. According to Wells Fargo's corporate representative, Wells Fargo

21   applied the same insurance requirements to all borrowers, received the same 11% "commission"

22   on every force-placed insurance policy, and withdrew premiums for every force-placed insurance

23   policy from the borrower's escrow account. *Id.* at 91:4–92:6, 95:6–12, 126:8–23. All

correspondence that Plaintiffs received in connection with force-placed insurance was standard, system-generated letters. **Exhibit 8**, Chapman Dep. 112:12–114:10; **Exhibit 11**, Wilson Dep. 118:3–7, 119:11–13. Thus, Plaintiffs claims are typical of the class and subclasses.

### 4.     Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)(citing *Gen. Tel. Co.*, 457 U.S. at 157–58, n.13. This requirement is met if (1) the named plaintiff has interests in common with, and not antagonistic to, the interests of the class; and (2) plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation. *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975).

Plaintiffs satisfy the Rule 23(a)(4) adequacy requirement. The Class Representatives' interests are co-extensive and do not conflict with the interests of the putative class members. The critical issues in this case—the existence, implementation, and unlawfulness of Wells Fargo's force-placed insurance scheme—are common to Plaintiffs' and all class members' claims. No class member benefitted from Wells Fargo's anti-competitive force-placed insurance practices. Proposed Class Representatives are ready, willing, and able to represent the classes and have been adequately involved in the prosecution of this case. *See* **Exhibit B**, Decl. of Danny Lane ¶¶ 7–9; **Exhibit C**, Decl. of Beverly Lane ¶¶ 7–9; **Exhibit D**, Decl. of Mercedes Guerrero ¶¶ 7–11. Plaintiffs Danny and Beverly Lane have attended lengthy depositions where they answered every questions posed by Wells Fargo.[11]

Additionally, Plaintiffs' Counsel have vigorously prosecuted this action and will continue to

---

[11] Plaintiff Beverly Lane's deposition last approximately 6 hours. Danny Lane's deposition lasted 1.5 hours.

1    do so. Plaintiffs' Counsel are experienced in prosecuting consumer protection and fraud class

2    actions.[12] Each firm is well-established, possesses extensive knowledge of, and experience in,

3    prosecuting class actions in courts throughout the United States, and have recovered millions of

4    dollars for their clients and class members.

5    **B.      Rule 23(b)(3) Criteria**

6          "Under Rule 23(b)(3), a plaintiff must demonstrate the superiority of maintaining a class

7    action and show 'that the questions of law or fact common to class members predominate over

8    any questions affecting only individual members.'" *Mazza v. Am. Honda Motor Co.*, 666 F.3d

9    581, 589 (9th Cir. 2012). "[T]here is clear justification for handling the dispute on a

10   representative basis rather than an individual basis" if "common questions present a significant

11   aspect of the case and they can be resolved for all members of the class in a single adjudication."

12   *Hanlon*, 150 F.3d at 1022. "Where questions common to class members represent significant

13   issues that can be resolved in a single adjudication 'there is clear justification for handling the

14   dispute on a representative rather than on an individual basis.'" *Faulk v. Sears Roebuck & Co.*,

15   2013 WL 1703378, at *5 (N.D. Cal. Apr. 19, 2013)(quoting *Amchem Prods.*, 521 U.S. at 623).

16   "[T]he 'common' legal or factual issues must be of sufficient importance to the case that the

17   Court is convinced that the most efficient, fair and sensible method of adjudication is through a

18   class action." *Id.* (citing Cal. Prac. Guide Fed. Civ. P. Before Trial Ch. 10-C § 10:274).

19         **1.      Predominance**

20         Numerous questions of law and fact are common to all members of the class. These common

21   questions predominate because, in each case, "[t]he challenged practice is a standardized one

22   applied on a routine basis to all customers" by the bank. *See Gutierrez*, 2008 WL 4279550, at

23

---

[12] Firm resumes for Owings Law Firm, Wagoner Law Firm, and Walker Law Firm are attached as **Exhibits 19–21**, respectively. A Declaration from Sheri Kelly is attached as **Exhibit E**.

1    *17; *see also*, *Kay v. Wells Fargo & Co.*, 247 F.R.D. 572, 575–76 (N.D. Cal. 2007)(legality of

2    kickbacks paid to lender in connection with mortgage insurance constituted common question that

3    predominated over individual issues). Plaintiffs present several fundamental common questions,

4    including (1) whether Wells Fargo unlawfully charged Class Members for kickbacks and other

5    costs in excess of actual force-placed insurance premiums; (2) whether Wells Fargo unlawfully

6    charged borrowers for administrative services that were Wells Fargo's responsibility; and (3)

7    whether Wells Fargo unlawfully force-placed backdated insurance on Class Members' properties.

8    These common questions present a "significant portion of the case" that can be resolved for all

9    class members in a single adjudication. *See Gutierrez*, 2008 WL 4279550, at *14. The Court can

10   resolve all issues pertaining to Wells Fargo's liability for each claim "in a single adjudication" by

11   simply answering the common questions stated above in Section III.A.2.

12       Wells Fargo's force-placed insurance practices are uniformly applied to *all* Wells Fargo

13   borrowers, and thus common questions of law and fact will predominate in determining liability

14   for each of Plaintiffs' legal theories. *See* Section II.B, above. Specifically, (1) the terms of all

15   Wells Fargo mortgages related to force-placed insurance are materially similar and uniform; (2)

16   Wells Fargo applies uniform force-placed insurance practices, through its Insurers, to all Wells

17   Fargo borrowers; (3) the Insurers follow standardized, automated procedures for notifying and

18   force-placing insurance for Wells Fargo borrowers; (4) Wells Fargo, through WFI, received a

19   kickback on every force-placed insurance policy during the class period; (5) Wells Fargo includes

20   administrative costs in force-placed insurance premiums; and (6) Wells Fargo does not treat any

21   individual borrower differently in connection with force-placed insurance. *See* Section II.B.1,

22   above. Additionally, Plaintiffs can use common evidence from Wells Fargo's centralized database

23   to identify class members and ascertain the amount of damages for each class member. *See*

19

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

**Exhibit 1**, Birnbaum Report § 10.

"The process of computing damages will be virtually a mechanical task." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)("The amount of damages is invariably an individual question and does not defeat class action treatment.") Individual issues relating to damages calculations do not predominate where damages can be calculated from Defendant's records with relatively simple search queries and mathematical formulas. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259–60 (11th Cir. 2004)("It is primarily when there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude Rule 23(b)(3) certification"); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010)("The potential existence of individualized damages assessments . . . does not detract from the action's suitability for class certification"); *Gutierrez*, 2008 WL 42795501, at *17 ("Given the bank's large wealth of computerized account information, this order is confident and so finds that software will be designable to extract the vital elements needed to assess damages and causation.")

The vast majority of Wells Fargo's defenses will also rise or fall on questions of law and fact common to the Class. Wells Fargo's answer raises thirty-five affirmative defenses. (Dkt. No. 91). Common evidence of Wells Fargo's uniform practices will prove or disprove nearly all of these defenses. Many of Wells Fargo's defenses rely on legal or contractual rights that are uniform for all class members, or at least uniform for all class members residing in each state. For example, Wells Fargo asserts that this action is barred by federal statutes and regulations. (Dkt. No. 91, p. 18). The federal statutes and regulations at issue apply uniformly to all citizens of the United States, so their applicability to Wells Fargo's actions is a common issue for all class members. Many other defenses will be proven or disproven using common evidence of Wells Fargo's

20

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

uniform practices, form letters, and dealings with the Insurers. For example, Wells Fargo claims that it always acted in good faith and observed reasonable commercial standards of fair dealing in the trade. *Id.* Wells Fargo's policies and procedures set forth what it views as "good faith" and "reasonable commercial standards," and govern how every single member of the class is treated in connection with force-placed insurance. No individual issues raised by Wells Fargo's defenses will predominate over the extensive common questions of law and fact inherent in this case.

### 2. Superiority

"Rule 23(b)(3)'s superiority test requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair." *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175–76 (9th Cir. 2010). The rule provides four non-exhaustive factors for determining superiority: (1) the class members' interests in individually controlling the case; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation in a particular forum; and (4) the likely difficulties in managing a class action. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 713 (9th Cir. 2010); Fed. R. Civ. P. 23(b)(3). "Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large and (6) of the defendant." *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975)

A principal concern is whether, in the absence of a class action, most class members will be deprived of any legal redress because the claims are relatively modest compared to the cost of the litigation. *Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the costs of litigating on an individual basis, this factor weighs in favor of class certification."). "Whether common issues predominate 'has a tremendous impact on the superiority analysis . . .

---

for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims.'" *Cty. of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 671 (S.D. Fla. 2010)(quoting *Klay*, 382 F.3d at 1269); *see also Wolin*, 617 F.3d at 1176 ("Forcing individual [plaintiffs] to litigate their cases, particularly where common issues predominate for the proposed class, is an inferior method of adjudication.") Here, the fact that common issues of law and fact predominate under Rule 23(b)(3) demonstrates the superiority of adjudicating this case as a class action.

### a.    Class Members' Interests

Rule 23(b)(3)(A) addresses whether the interests of most class members in conducting separate lawsuits is so strong as to require denial of class certification. *See Parker v. Time Warner Entm't Co.*, 198 F.R.D. 374 (E.D.N.Y. 2001). Relevant considerations include the degree of "cohesion" among class members, whether "the amounts at stake for individuals . . . [are] so small that separate suits would be impracticable," and the extent to which "separate suits would impose . . . [burdens] on the party opposing the class, or upon the court calendars." Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Am.

Defendant's practices damaged each class member by several hundred to a few thousand dollars per year. Most class Members have no overriding interest in conducting separate lawsuits against Wells Fargo and have insufficient monetary incentive or ability to prosecute individual claims. It would be economically impractical for most Class Members to retain a private attorney to pursue individual litigation. *See* 7A Wright and Miller, Federal Practice and Procedure, § 1779 at 557 ("a group composed of consumers . . . typically will be unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure.")

### b.       Extent and Nature of Any Extant Litigation

Rule 23(b)(3)(B) directs that the Court consider "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class." Fed. R. Civ. P. 23(b)(3)(B). Plaintiffs are aware of several similar cases pending against Wells Fargo, although none have been deemed "related" and none have been consolidated with this case. Two other similar cases are currently pending in this District: *Cannon v. Wells Fargo Bank, N.A.*, Case No 3:12-cv-1376 (N.D. Cal)(J. Chen); and *McKenzie v. Wells Fargo Bank, N.A.*, Case No. 3:11-cv-4965 (N.D. Cal.)(J. Spero). Two similar cases have also been filed in Florida challenging Wells Fargo's force-placed insurance and kickback schemes: (1) *Williams v. Wells Fargo*, Case No. 11-cv-21233 (S.D. Fla.), is a certified Florida class action addressing hazard insurance claims against Wells Fargo; and (2) *Fladell v. Wells Fargo*, Case No. 0:13-cv-60721 (S.D. Fla), is a putative class action challenging Wells Fargo's force-placed insurance practices. Two cases addressing Wells Fargo's excessive flood insurance requirements, but not its force-placed insurance and kickback scheme, are currently pending: (1) *Morris v. Wells Fargo*, 2:11-cv-474 (W.D. Pa.); and (2) *Sayago v. Wells Fargo*, 8:11-cv-2009 (M.D. Fla). *Passantino-Miller v. Wells Fargo Bank, N.A.*, Case No. 2:12-cv-420 (E.D. Cal.), is a putative class action challenging Wells Fargo's excessive insurance requirements in connection with home equity lines of credit. These cases do not overlap with this case in any manner. Class certification motions have not been filed in any case other than *Williams*, which only sought a Florida class.[13] Plaintiffs are unaware of any cases concerning the subject matter filed by or against individual class members. Plaintiffs are aware of no case other than *Williams* that is as procedurally advanced as this one.

---

[13] The *Sayago* plaintiffs filed a motion for class certification in March, 2012 that was never ruled upon. This case was stayed pending resolution of a decision by the Judicial Panel of Multidistrict Litigation in connection with a possible MDL of these cases on August 31, 2012. On January 15, 2013, the case was unstayed but all pending motions were vacated. No new motion for class certification has been filed.

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

c.       **Desirability of Concentrating the Litigation in this Forum**

The third factor in analyzing superiority is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). The Northern District of California is particularly appropriate for resolving this litigation as against Wells Fargo because of the impact of Wells Fargo's practices on California citizens and because of Wells Fargo's extensive business operations in California. Plaintiff Mercedes Guerrero also resides in California. **Exhibit D**, Decl. of Mercedes Guerrero ¶ 1.

d.       **Manageability**

Finally, the Court must consider "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(D). Manageability "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 164 (1974). "This concern will rarely, if ever, be in itself sufficient to prevent certification of a class." *Klay*, 382 F.3d at 1272. This Court previously has certified several class actions involving defendant banks, including Wells Fargo. *See Gutierrez*, 2008 WL 4279550, at *13–18; *Kay*, 247 F.R.D. at 574–79; *Siemers v. Wells Fargo & Co*, 243 F.R.D. 369, 373–76 (N.D. Cal. 2007). No evidence suggest that class-wide adjudication would be unmanageable compared with these cases. In fact, all evidence presently available demonstrates that Wells Fargo's, ASIC's, and QBE's databases and commissions reports can easily identify all class members, determine which class members have claims, and determine the amount of each class member's damages.

Both the identity of class members and their damages can be easily ascertained from Wells Fargo's database. **Exhibit 1**, Birnbaum Report § 10. Wells Fargo's database contains the following information: borrower name, property address, loan number, insurance coverage in

---

place on the borrower's property, the insurance provider, whether that insurance was force-placed, insurance premiums, insurance effective dates, insurance expiration dates, the dates Wells Fargo sent letters related to force-placed insurance to each borrower, and the specific form letter Wells Fargo sent the borrower, and any refunded premiums. **Exhibit 2**, Farrell Dep. 61:2–62:5, 69:9–70:5, 100:14–101:14, 101:19–102:7, 103:25–104:8, 114:18–23. 105:10–16. The Insurers also maintain databases that track every force-placed insurance policy, the effective dates and placement dates for each policy, and the commission paid for each force-placed insurance policy. **Exhibit 8**, Chapman Dep. 19:11–22; **Exhibit 11**, Wilson Dep. 19:12–16, 20:13–17.

"The data necessary to calculate damages to Class Members are normal business records of WFB, WFI, QBE, and Assurant." **Exhibit 1**, Birnbaum Report § 10. "The WFI 'commissions' are calculated as a percentage of LPI premium charges. Other unreasonable expenses, unrelated to the provision of LPI, can also be quantified and expressed as a percentage of LPI amounts charged to Class Members." *Id.* "Once the percentage of unreasonable expenses in LPI charges to Class Members is determined, the calculation of damages to individual Class Members is uniform and simple to calculate." *Id.*

No overwhelming management issues are present in Plaintiffs' claims or Wells Fargo's defenses. As such, this case is ideally suited for class treatment.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court grant Plaintiffs' Motion for Class Certification; appoint Plaintiffs Danny Lane, Beverly Lane, and Mercedes Guerrero as class representatives; appoint undersigned counsel as class counsel; and for all other appropriate relief.

**Dated: May 9, 2013**              Respectfully submitted,

                                    _/s/ Sheri Kelly_____
                                    Sheri L. Kelly, SBN 226993
                                    LAW OFFICE OF SHERI L. KELLY
                                    31 E. Julian St.
                                    San Jose, CA  95112
                                    Telephone:  408/287-7712
                                    Facsimile:  408/583-4249
                                    slk@sherikellylaw.com

                                    Steven A. Owings (*Pro Hac Vice*)
                                    Alexander P. Owings (*Pro Hac Vice*)
                                    OWINGS LAW FIRM
                                    1400 Brookwood Drive
                                    Little Rock, AR 72202
                                    Telephone: (501) 661-9999
                                    Facsimile: (501) 661-8393
                                    sowings@owingslawfirm.com
                                    apowings@owingslawfirm.com

                                    Jack Wagoner, (*Pro Hac Vice*)
                                    Angela Mann (*Pro Hac Vice*)
                                    WAGONER LAW FIRM, P.A.
                                    1320 Brookwood, Suite E
                                    Little Rock, AR 72202
                                    Telephone: (501) 663-5225
                                    Facsimile: (501) 660-4030
                                    jack@wagonerlawfirm.com
                                    angela@wagonerlawfirm.com

                                    Brent Walker (*Pro Hac Vice pending*)
                                    WALKER LAW PLLC
                                    P.O. Box 287
                                    Cabot, AR 72023
                                    (501) 605-8595
                                    (888) 571-0319 (facsimile)
                                    bwalker@walkerlawplc.com


                                    **Counsel for Plaintiffs**

*Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum and Points of Authority*
*Case No. CV-12-04026 WHA*

1

## CERTIFICATE OF SERVICE

2    I, Sheri L. Kelly, hereby certify that on this 9th day of May, 2013, I served the foregoing and all

3    exhibits in unredacted form on counsel of record via electronic mail at the address(es) indicated

4    below. I further certify that I served the foregoing and all exhibits in unredacted form on counsel of

5    record by hand delivery at the address indicated below on May 10th, 2013. I further certify that a

6    redacted copy of the foregoing and all exhibits was served on all counsel of record via the Court's

7    CM/ECF system on May 9th, 2013.

8

9    Jonah Sampson Van Zandt
     SEVERSON AND WERSON
     One Embarcadero Center, Suite 2600

10   San Francisco, CA 94111
     (415) 398-3444

11   jvz@severson.com

12                                                          _/s/ Sheri L. Kelly_____
                                                            Sheri L. Kelly
13

14

15

16

17

18

19

20

21

22

23