United States District Court
For the Northern District of California

1
2
3
4
5
6
7          IN THE UNITED STATES DISTRICT COURT
8          FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10
11   DANNY LANE, BEVERLY LANE, and          No. C 12-04026 WHA
12   MERCEDES GUERRERO, individually,
     and for other persons similarly situated,
13              Plaintiffs,                  **CONDITIONAL ORDER GRANTING
                                            IN PART AND DENYING IN PART
14     v.                                   MOTION TO CERTIFY CLASS;
                                            DENYING MOTION TO INTERVENE**
15   WELLS FARGO BANK, N.A.,
16              Defendant.
17   _____/
18                    **INTRODUCTION**
19        In this putative class action involving force-placed insurance on home mortgages,
20   plaintiffs move to certify a nationwide class and two state subclasses. Prior to the hearing on the
21   motion for class certification, several parties who are plaintiffs in similar lawsuits against
22   defendant filed a motion to intervene. For the reasons stated below, plaintiffs' motion for class
23   certification is **GRANTED IN PART AND DENIED IN PART** and the motion to intervene is **DENIED**.
24                     **STATEMENT**
25        Plaintiffs filed this action challenging the practice of defendant Wells Fargo Bank, N.A.
26   of purchasing flood and hazard insurance for residential properties securing mortgage loans, a
27   practice known as "force-placement" or "lender-placement" of insurance. This action is one of
28   many lawsuits filed in recent years challenging this practice (*see, e.g.*, Dkt. No. 112).

Plaintiffs Danny and Beverly Lane are residents of Arkansas. They obtained a loan in 2001 from Freedom Financial Services of Arkansas, Inc. To secure the loan, plaintiffs executed a "Fannie Mae/Freddie Mac form mortgage" on a residential property in Arkansas (Amd. Compl. ¶ 27). Wells Fargo was the servicer and eventually purchased the note and mortgage. In its capacity as a mortgage servicer, Wells Fargo collected payments on behalf of the mortgage owner.

Plaintiff Mercedes Guerrero is a resident of California. She obtained a mortgage loan from Washington Mutual Bank, F.A. based on a Federal Housing Administration form mortgage. While the Lanes have a mortgage under the laws of Arkansas, Guerrero has a deed of trust under the laws of California. For simplicity, however, this order will use the term "mortgage" to include a mortgage, deed of trust, or other type of security instrument securing a closed-end mortgage loan on residential real property inasmuch as the differences among them are immaterial. Wells Fargo began servicing Guerrero's mortgage in 2010. Although the complaint does not allege that Wells Fargo is the owner or assignee of Guerrero's mortgage, plaintiffs have filed supplemental evidence establishing that her deed of trust was assigned to Wells Fargo on December 7, 2006 (Dkt. No. 152-2).

Both homes were located in flood hazard areas. Plaintiffs were therefore required to maintain flood insurance. If plaintiffs did not maintain adequate flood insurance, Wells Fargo could purchase flood insurance on the property and charge the cost back to plaintiffs. Similarly, Wells Fargo was also authorized to force-place hazard insurance on the properties if plaintiffs did not maintain adequate hazard insurance. The amended complaint alleges that Wells Fargo force-placed flood insurance on both the Lanes' and Guerrero's homes throughout 2010 and 2011. Wells Fargo also force-placed hazard insurance on the Lanes' home (but did not do so on Guerrero's home). Prior to force-placing insurance, borrowers were mailed notices requesting that they provide proof of insurance coverage. The notices stated that "the cost of insurance we may secure may be much higher than the amount you would normally pay." They further stated that Wells Fargo Insurance, Inc. ("WFI"), an affiliate of Wells Fargo Bank, would receive a

United States District Court
For the Northern District of California

commission on the insurance (Wagner Decl. Exh. B-B).  Both the Lanes and Guerrero received "dozens" of such notices in connection with force-placed insurance (Opp. at 3).

In placing flood and hazard insurance policies on the subject properties, defendant Wells Fargo allegedly entered into exclusive purchasing agreements with two insurers, QBE Insurance Corporation and American Security Insurance Company ("ASIC").  Under these agreements, Wells Fargo received "kickbacks" in the form of unearned commissions paid by QBE and ASIC to Wells Fargo's affiliate, WFI (Amd. Compl. ¶¶ 4–5).  Plaintiffs also allege that to maximize the kickbacks, defendant force-placed insurance policies with retroactive effective dates, even though defendant was aware that there were no claims during the lapsed period, a practice plaintiffs characterize as "backdating" (*id.* at ¶¶ 71–72).

Plaintiffs have now filed a motion for class certification, seeking to certify a nationwide class and California and Arkansas subclasses.  Two weeks after plaintiffs' class certification motion was filed, and the same day that defendant's opposition was due, certain individuals in other litigation, namely Desiree Morris, Clifford McKenzie, Daniel Biddix, David Kibiloski, and Virginia Ryan ("proposed intervenors"), filed a motion to intervene.  The proposed intervenors are plaintiffs in two putative class actions against Wells Fargo involving force-placed flood insurance, one filed in Pennsylvania, *Morris v. Wells Fargo Bank, N.A.*, No. 11-00474 (W.D. Pa. 2011) (Judge David Cercone), and one filed in this district, *McKenzie v. Wells Fargo Bank, N.A.*, No. 11-04965 (N.D. Cal. 2011) (Magistrate Judge Joseph Spero).  The proposed intervenors are represented by the same counsel as in their respective other actions.  Uncomplimentary statements are made by counsel for would-be intervenors against counsel for plaintiffs herein. All parties in this action oppose the motion to intervene.

Having considered the parties' briefs, supplemental briefs, and related materials, and following a full hearing, the motion for class certification is **GRANTED IN PART AND DENIED IN PART** and the motion to intervene is **DENIED WITHOUT PREJUDICE**.[1]

---

[1]  Along with their reply brief in support of class certification, plaintiffs' counsel submitted new material — namely, a second expert declaration regarding damages and an attorney declaration advancing a survey of state law.  Due to the new material submitted on reply, defendant's motion to file a sur-reply brief was granted.  Defendant's sur-reply brief was limited to responding to plaintiffs' new material.  Accordingly,

United States District Court

For the Northern District of California

**ANALYSIS**

**1.    LEGAL STANDARD FOR CLASS CERTIFICATION.**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal–Mart Stores, Inc. v. Dukes*, — U.S. —, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks and citation omitted).  "In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Ibid*.  "Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *as amended by* 273 F.3d 1266 (9th Cir. 2001)).

The party seeking class certification bears the burden of showing that the four prerequisites of Rule 23(a) are met:  (1) numerosity of the class; (2) that there are questions of law or fact common to the class; (3) that the named plaintiff's claims and defenses are typical; and (4) that the named plaintiff can adequately protect the interests of the class.  As plaintiffs seek to certify a damages class under Rule 23(b)(3), the Court must further find "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The Supreme Court has insisted that class-certification analysis must be "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim," *Dukes*, 131 S. Ct. at 2551; however, "[m]erits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, — U.S. —, 133 S. Ct. 1184, 1195 (2013).

Plaintiffs seek to certify a nationwide class of all persons with a mortgage owned or serviced by defendant who were charged for force-placed insurance to assert claims for violation of the Bank Holding Company Act and breach of contract, including breach of the implied

plaintiffs' motion to file a sur-sur-reply brief is **DENIED**.

4

1  covenant of good faith and fair dealing, under various state laws.  Plaintiffs Danny and Beverly

2  Lane also seek to represent an Arkansas subclass to assert state law claims for unjust enrichment

3  and conversion.  Plaintiff Mercedes Guerrero seeks to represent a California subclass based on

4  claims for unjust enrichment or restitution, conversion, and violation of the California Unfair

5  Competition Law.  Plaintiffs also move to appoint four law firms as class counsel:  Owings Law

6  Firm, Wagoner Law Firm, P.A., Walker Law PLC (all three located in Arkansas), and the Law

7  Office of Sheri L. Kelly (located in San Jose).

8          **2.      MOTION FOR A NATIONWIDE CLASS.**

9          Turning first to plaintiffs' claim for breach of contract, this order concludes that plaintiffs

10  have failed to establish that a nationwide class should be certified under Rule 23(b)(3).

11          **A.      Rule 23(a)(2) and Rule 23(b)(3): Commonality and Predominance.**

12          A class has sufficient commonality under Rule 23(a)(2) if "there are questions of law or

13  fact common to the class."  Rule 23(a)(2) does not require that each member in a class have

14  identical factual and legal issues surrounding his or her claim.  "The existence of shared legal

15  issues with divergent factual predicates is sufficient" to meet the requirements of Rule 23(a)(2).

16  *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) (quoting *Hanlon v. Chrysler Corp.*,

17  150 F.3d 1011, 1019 (9th Cir.1998)).  Although the same principles guide the predominance

18  requirement of Rule 23(b)(3), "if anything, Rule 23(b)(3)'s predominance criterion is even more

19  demanding than Rule 23(a)."  *Comcast Corp. v. Behrend*, — U.S. —, 133 S. Ct. 1426, 1432

20  (2013).

21          Plaintiffs contend that 90% of class members' mortgages are comprised of a handful of

22  form contracts, namely the Fannie Mae/Freddie Mac, FHA, and Veteran Affairs form mortgages.

23  While plaintiffs have provided their own mortgage loans as examples of the first two types, they

24  have not provided a single example of a VA mortgage.  Nor have they identified any plaintiff

25  who could adequately represent any subclass of borrowers with VA mortgages.  It appears that

26  the category of VA form mortgages is not based on a single mortgage form, but instead refers to

27  any number of mortgage loan contracts that are governed by VA regulations.  In addition to

28  these three categories of contracts, there are additional contracts, which plaintiffs term "other"

United States District Court

For the Northern District of California

1   contracts.  Neither party has provided any further information regarding these "other" contracts.

2   Possibly these contracts are limited to one or two contracts.  It is equally plausible, however, that

3   this set of "other" contracts includes hundreds of different contracts implicating the laws of fifty

4   states, each with its own choice-of-law provision and specific contractual language.

5            Defendant argues that the large number of contracts at issue weighs against finding that

6   common issues predominate.  *See Gordon v. Chase Home Fin., LLC*, No. 11-2001, 2013 WL

7   436445, at *5 (M.D. Fla. Feb. 5, 2013) (Judge Virginia Covington) (citing *Vega v. T-Mobile

8   USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009)).  In *Gordon*, class certification was denied in a force-

9   placed flood insurance lawsuit very similar to the instant action (and filed by the same counsel)

10  on the basis that plaintiffs "have not demonstrated the existence of a common contract signed by

11  all members of the proposed classes."  *Gordon*, 2013 WL 436445, at *5.  In response, plaintiffs

12  contend that the correct remedy for an overly broad class definition is for the Court to fix

13  plaintiffs' definition and instead certify subclasses.  Plaintiffs further complain that defendant

14  refused to produce any of the "other" mortgages and thus should be precluded from relying on

15  them (Dkt. No. 117 at 7).  Even setting aside for now the "other" mortgages and VA mortgages,

16  adjudicating a nationwide class on the Fannie Mae/Freddie Mac and FHA mortgages alone

17  presents serious problems of predominance and superiority.  *See Castano v. Am. Tobacco Co*., 84

18  F.3d 734, 741 (5th Cir. 1996) (citing *Walsh v. Ford Motor Co*., 807 F.2d 1000, 1016 (D.C. Cir.

19  1986)).  Both the Fannie Mae/Freddie Mac and FHA contracts include a choice-of-law provision

20  selecting "federal law and the law of the jurisdiction in which the Property is located" (Dkt. No.

21  83, Exh. A at ¶ 16; Dkt. No. 89-1 at ¶ 14).  This Court has previously found, and plaintiffs do not

22  contest, that the forum-selection clause is enforceable, such that the law of all fifty states will be

23  implicated (Dkt. No. 70).

24           "Variations in state law do not necessarily preclude a 23(b)(3) action, but class counsel

25  should be prepared to demonstrate the commonality of substantive law applicable to all class

26  members."  *Hanlon*, 150 F.3d at 1022 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797,

27  821–23 (1985)).  Plaintiffs must present "a suitable and realistic plan for trial of the class

28  claims," including how to address variances in state law.  *Zinser*, 253 F.3d at 1189.  Plaintiffs'

initial motion did not even address the issue of state-law variances.  Only after the problem was raised in defendant's opposition did plaintiffs finally provide any analysis of the differences in state law regarding their claim for breach of contract and/or breach of the implied covenant of good faith and fair dealing (Mann Decl., Exhs. A, B, and C).  Plaintiffs' submission, however, merely identifies the states that purportedly allow stand-alone causes of action for breach of the implied covenant (Mann Decl. ¶¶ 3–7).  Plaintiffs' submission fails to address significant differences in state law raised by defendant, including whether the standard for good faith is subjective or objective and whether and to what extent the implied covenant constrains discretion expressly granted to one party by the contractual terms.  *See, e.g.*, *Carma Developers v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373–74 (1992); *compare to Midwest Mgmt. Corp. v. Stephens*, 291 N.W. 2d 896, 913 (Iowa 1980).  Adjudicating plaintiffs' claim for breach of contract and/or breach of the implied covenant of good faith and fair dealing would require applying a multitude of different state law standards; where the laws of fifty states must be scrutinized for, at a minimum, two sets of contracts, "variations in state law . . . swamp any common issues and defeat predominance."  *Castano v. Am. Tobacco Co*., 84 F.3d 734, 741 (5th Cir. 1996).  "[C]ourts routinely deny class certification because plaintiffs' claims would require application of the substantive law of multiple states."  *In re Currency Conversion Fee Antitrust Litig*., 230 F.R.D. 303, 311–12 (S.D.N.Y. 2004) (Judge William Pauley) (collecting cases). Accordingly, plaintiffs' motion to certify a nationwide class on a claim for breach of contract and/or the implied covenant of good faith and fair dealing is **DENIED.**  As this order finds that variations in state law preclude certification of a nationwide class, it need not address defendant's arguments concerning the applicability of the filed-rate doctrine.

### B. Bank Holding Company Act Claim.

Plaintiffs also seek to certify a nationwide class based on their claim under the Bank Holding Company Act, 12 U.S.C. 1972(1)(B).  This section provides that a "bank shall not in any manner . . . furnish any service . . . on the condition or requirement . . . that the customer shall obtain some additional credit, property, or service from . . . any other subsidiary of such bank holding company."  *Ibid.*  To show a violation of the Act, "a plaintiff must show that (1) the

7

banking practice in question was unusual in the banking industry, (2) an anti-competitive tying arrangement existed, and (3) the practice benefits the bank." *S & N Equip. Co. v. Casa Grande Cotton Fin. Co.*, 97 F.3d 337, 345 (9th Cir. 1996) (quotation omitted).

The Court is aware that defendant has filed a motion to dismiss a claim under the Bank Company Holding Act in a similar force-placed insurance case proceeding before Judge Edward Chen (*Cannon v. Wells Fargo Bank, N.A.*, No. 12-1376 (N.D. Cal. 2012)). Because plaintiffs' claim raises novel issues, and given the significance of certifying any nationwide class on such a claim, the motion for class certification of this claim will be held in abeyance pending Judge Chen's ruling on the motion to dismiss. Following Judge Chen's order, a briefing schedule will be set herein to allow the parties to address both Judge Chen and the undersigned's earlier orders on this issue. Accordingly, plaintiffs' motion to certify a nationwide class on the Bank Holding Company Act claim is held in abeyance.

### 3. CERTIFICATION OF A CALIFORNIA CLASS.

Having determined that certification of a nationwide class based on a breach of contract claim should be denied under Rule 23, this order now considers whether a California or Arkansas class should be certified. First, this order addresses plaintiffs' motion to certify a class of California plaintiffs, with plaintiff Guerrero as the proposed class representative. Plaintiffs bring claims for breach of contract, including the implied covenant of good faith and fair dealing, unjust enrichment or restitution, conversion, and violation of California's Unfair Competition Law (California Business and Professions Code Section 17200 *et seq.*).

As discussed below, this order finds that conditional certification of a California class is appropriate, as limited to borrowers with FHA form mortgages only inasmuch as Guerrero has a FHA mortgage. Guerrero may represent class members whose mortgages were serviced by defendant and who were charged by defendant for force-placed flood insurance (but not hazard insurance). Excluded from the class definition are charges for force-placed flood insurance that were reimbursed or for which the borrower is no longer liable, such as where the subject property was foreclosed upon. Certification of this class is conditioned on selection of adequate

1    class counsel, pursuant to the notice and application procedure set forth herein. The detailed

2    analysis now follows.

### A.      Breach of Contract Claim.

4        There may be potential class members whose mortgages Wells Fargo merely serviced,

5    but did not own. Some judges have held that a plaintiff cannot assert breach of contract claims

6    against a bank in its capacity as mortgage servicer, where the plaintiff does not allege that

7    defendant was the lender or owner of plaintiff's mortgage. *See, e.g.*, *McKenzie v. Wells Fargo*

8    *Home Mortg., Inc.*, No. 11-04965, 2012 WL 5372120, at *20 n.12 (N.D. Cal. Oct. 30, 2012)

9    (Magistrate Judge Joseph Spero); *Cannon v. Wells Fargo Bank, N.A.*, No. 12-1376, 2013 WL

10   132450, at *22 (N.D. Cal. Jan. 9, 2013) (Judge Edward Chen). As this issue was never raised by

11   either party in this action, the parties were requested to submit supplemental briefing addressing

12   whether Guerrero can assert a claim for breach of contract against defendant.

13       Plaintiffs have submitted evidence establishing that Guerrero's mortgage was in fact

14   assigned to defendant in December 2006 (Dkt. No. 152-2). Plaintiffs further contend that

15   borrowers whose mortgages were serviced but not owned by defendant may nonetheless assert a

16   breach of contract claim against defendant. Wells Fargo states that it has not raised this issue as

17   a defense "because it made the decisions that are the basis of plaintiffs' claims and it stands by

18   those decisions" (*ibid*.). Additionally, it declined to assert this defense because plaintiff may

19   have then joined as a defendant the owner of her mortgage, who Wells Fargo would likely have

20   had to indemnify (*ibid*.).

21       The issue having been raised, Wells Fargo consents to litigating plaintiffs' breach of

22   contract claim, regardless of whether it was the owner or merely the servicer of their mortgages.

23   Wells Fargo will be held to this concession and will not be allowed later to draw distinctions

24   between its roles as servicer and as owner or assignee of the mortgage. For all purposes in this

25   litigation, Wells Fargo will be considered as the owner or assignee of the mortgages it serviced

26   for plaintiffs and potential class members.

27

28

United States District Court

For the Northern District of California

B.      **Rule 23(a)(1):  Numerosity.**

Turning to the Rule 23 factors, defendant does not dispute that the class is "so numerous that joinder of all members is impracticable."  Rule 23(a)(1).  "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members . . . ."  *In re Facebook, Inc. PPC Advertising Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012) (Judge Phyllis Hamilton). Plaintiffs have submitted evidence establishing that the number of loans with force-placed insurance policies is estimated to be around 200,000 (Dkt. No. 93, Birnbaum Report at 17). While plaintiffs have not submitted information based on California alone, this order finds that plaintiffs have satisfied this requirement here.  Even if the California class comprised only one percent of this figure, the numerosity requirement would be satisfied.

C.      **Rule 23(a)(3):  Typicality.**

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class. . . . [C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citations omitted).

Defendant appears to concede that plaintiff Guerrero's claims are typical of the class. Guerrero seeks to represent a class of California borrowers who were charged by defendant for force-placing insurance on their properties without distinguishing between different types of insurance, such as flood or hazard.  Guerrero, however, alleges only that defendant force-placed *flood* insurance on her house; she does not allege that defendant charged her for any other insurance purchased on her behalf.  In opposition to the motion to intervene, plaintiffs' counsel argue that flood and hazard insurance are not equivalent, and that "flood insurance plaintiffs do not have standing to represent hazard insurance class members" (Dkt. No. 123 at 8). Accordingly, this order finds that Guerrero may represent borrowers for whom flood insurance was force-placed, but that her claims are not typical of borrowers for whom defendant force-placed hazard insurance.

1    Plaintiff Guerrero seeks to represent all borrowers in California who were charged for

2    force-placed insurance by Wells Fargo.  This group would include borrowers with at least FHA,

3    Fannie Mae/Freddie Mac, and VA mortgages, in addition to an unknown number of "other"

4    contracts.  Plaintiff's own contract is a FHA form mortgage.  Accordingly, she may represent

5    borrowers with FHA mortgage contracts.  Her claims are not, however, typical of borrowers with

6    different types of contracts and she has no individual incentive to prosecute the case as to other

7    forms of mortgage.

8              **D.      Rule 23(a)(4): Adequacy.**

9         While often overlapping with typicality, the adequacy inquiry is directed at whether the

10   representative parties will "fairly and adequately protect the interests of the class."  Rule

11   23(a)(4).  The two key inquiries are (1) whether there are conflicts within the class; and (2)

12   whether plaintiffs and counsel will vigorously fulfill their duties to the class.  *Staton v. Boeing*

13   *Co*., 327 F.3d 938, 957 (9th Cir. 2003).

14        Defendant contends that plaintiff Guerrero is inadequate because "she does not

15   understand that she has responsibilities to absent class members" (Dkt. No. 105 at 24).  At

16   plaintiff's deposition, which was conducted with the assistance of a Spanish-language

17   interpreter, plaintiff was asked:  "Do you have any responsibilities to those other people that are

18   in a situation similar to yours?"  Plaintiff responded "no" (Guerrero Dep. at 172).  After a recess

19   and consultation with her attorney, plaintiff asked to correct her answer, stating that she

20   understood her responsibility as representative to absent individuals.  Defendant's attempt to

21   disqualify plaintiff based on what appears to be a misunderstood question at the end of a long

22   deposition is unavailing.  In a putative class action brought by retired football players, this Court

23   stated that "[i]t would be unfair to deny someone in [plaintiff's] position access to our courts

24   merely because he is unable to articulately respond to questions from attorneys."  *Parrish v.*

25   *Nat'l Football League Players Ass'n*, No. 07-00943, 2008 WL 1925208, at *7 (N.D. Cal. Apr.

26   29, 2008).  So too here.  Plaintiff has responded to defendant's discovery requests.  Her

27   responses to questions at her deposition indicate a general understanding of the facts and issues

28   in this action.  No evidence has been presented to indicate that plaintiff will not act adequately

United States District Court
For the Northern District of California

**United States District Court**

For the Northern District of California

1    on behalf of the class, or that plaintiff has any conflicts with other class members.  Accordingly,

2    this order finds that plaintiff Guerrero is an adequate class representative.

3         In addition to examining the adequacy of the class representative, the adequacy inquiry

4    also "factors in competency and conflicts of class counsel." *Amchem Prods., Inc. v. Windsor,*

5    521 U.S. 591, 626 n.20 (1997).  Adequacy of plaintiff's counsel will be addressed below.

6         **E.      Rule 23(a)(2) and Rule 23(b)(3):  Commonality and Predominance.**

7         Plaintiffs allege that defendant and its affiliates engaged in a common scheme to force-

8    place insurance on borrowers whose individual insurance had lapsed, and that defendant did so

9    in a manner designed to maximize the kickbacks it received from captive insurance providers

10   QBE and ASIC.  Plaintiffs further contend that defendant's policies for force-placing insurance

11   were uniform, and that borrowers received standard form letters from defendant warning them

12   that their insurance had lapsed.  The letters further stated that, if they did not provide proof of

13   insurance, defendant would purchase and charge them for insurance.

14        Defendant contends that individual issues overwhelm these common issues, including

15   that:  (1) equitable defenses may apply based on individualized facts, (2) some borrowers paid

16   less for force-placed insurance than voluntary insurance, and (3) some borrowers were charged

17   for but did not ultimately pay for force-placed insurance.  Defendant also argues that the

18   conversion claim is not susceptible to a common method of proof and that some class members

19   lack standing under the unfair competition law.

20                      ***i.      Individualized Defenses.***

21        Defendant contends that defenses of waiver, estoppel, and laches may apply, or that the

22   voluntary payment doctrine may bar individual claims.  Defendant does not contest, however,

23   that it applied the same policies and procedures for force-placing flood and hazard insurance to

24   all loans it serviced.  For example, "before [a lender-placed insurance] policy is placed, the

25   insurer sends numerous notices disclosing that [lender-placed insurance] is more expensive than

26   voluntary coverage and that commissions will be paid to WFI" (Opp. at 15).  The success or

27   failure of the potential defenses is susceptible to common methods of proof.  The basic facts are

28   common to the class:  class members had similar contracts and received the same form notice of

**United States District Court**

For the Northern District of California

lapsed insurance; they failed to act in response to receiving multiple notices; defendant eventually force-placed insurance procured from QBE or ASIC on class members' properties; defendant then charged class members an allegedly inflated premium for the insurance and received a percent of the premium as a commission or kickback through WFI. Whether and to what extent class members were adequately warned of the commissions, could have avoided the force-placement of insurance (and payment of the commission), or accepted the benefits of the force-placed insurance is a matter for trial, or summary judgment, based on common methods of proof.

Defendant also contends that some class members benefitted from the force-placed insurance because it was cheaper than insurance they could have purchased on the market (Opp. at 4). The gravamen of plaintiffs' complaint is that defendant artificially increased the cost of insurance paid by class members by requiring QBE and ASIC to pay WFI a commission equal to 11% of the insurance premiums, which was then passed on to defendant (but was still charged to the class members). Thus, plaintiffs' claims challenge the artificially inflated premium and defendant's practice of charging class members for costs that were not actually incurred, not defendant's mere purchase of insurance on their behalf.

> ### ii. Whether Class Members Suffered a Loss and Measurement of Damages.

Wells Fargo contends that plaintiffs have not demonstrated that damages can be measured on a classwide basis. *First*, a borrower may assert a claim for damages or restitution where he or she was charged for unauthorized or improper expenses associated with force-placed insurance, such as an inflated premium that included a kickback to defendant. Even if the borrower has not yet paid the charges, the borrower can seek to have his account credited in the amount of the unauthorized charge. *Second*, plaintiffs contend that the amount of damages can be calculated as a percentage of "unreasonable expenses" included in the insurance premiums charged to class members. In support, plaintiffs submit the expert report of Birny Birnbaum, who opines that the measure of damages is the percentage of "unreasonable expenses" multiplied by the amount of force-placed charges to class members. Birnbaum defines "unreasonable expenses" as those included in the premium charged to borrowers that were not actually

"associated with the provision of" force-placed insurance (Dkt. No. 118-1).  According to Birnbaum, such expenses would include an unearned commission or kickback.  They would also include expenses related to servicing the entire portfolio of mortgages, as those expenses would be incurred by Wells Fargo regardless of whether any particular mortgage required force-placed insurance (Birnbaum Report at 36).  Plaintiffs have a class-wide method for trying to prove damages.  If it turns out later in this case that such a study is inadequate, a motion to decertify will be entertained.

Defendant raises a number of scenarios where a borrower may have been charged for force-placement of insurance but never actually paid the charges, *e.g.*, "borrowers in various stages of delinquency" (Opp. at 4).  This includes borrowers with homes in active foreclosure, those who no longer own the subject properties following a foreclosure sale, and those who are delinquent on their loans (*ibid.*).  These arguments, which essentially relate to ascertainability of the class, were recently addressed in a similar class action against defendant involving state-law claims related to force-placed flood insurance.  There, the district court addressed these issues by narrowing the class definition to exclude certain groups of borrowers who had been reimbursed for or were unlikely to ever pay the insurance charges.  *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 674 (S.D. Fla. 2012) (Judge Robert Scola).  Following the certification of a Florida class of borrowers, the parties reached a settlement agreement, which has been submitted to that court for approval.  The definition of the settlement class there was substantially similar to the certified class and was defined as:

> All borrowers that had mortgages with and/or serviced by Wells Fargo Bank . . . on property located within the State of Florida, and were charged for Lender Placed Insurance . . . .  This class excludes borrowers who:  (1) the lender obtained a judgment against; (2) entered into a short-sale agreement with the lender; (3) granted a deed in lieu of foreclosure to the lender; (4) entered into a loan modification agreement with the lender; (5) filed a claim for damages which has been paid in full or part by the lender-placed insurer; or, (6) had a lender-placed insurance policy in which the cost of lender-placed insurance was canceled out in full.

(Owings Decl. Exh. B).

Here, plaintiffs argue that this class settlement indicates that Wells Fargo can identify borrowers who have been charged for insurance but have been reimbursed or will not pay the

14

charged premiums.  This order agrees.  Moreover, a narrower class definition is appropriate to exclude certain categories of borrowers who are differently situated than those who have been charged for and have paid or will pay for force-placed insurance.  The class definition will be modified to exclude the former category.  Borrowers who were charged and did pay, however, should be able to seek damages or restitution, even if they are no longer obligated for charges going forward (where, for example, the subject property was eventually foreclosed upon).  To solve this difficulty, this order finds that defining the class to exclude recovered or extinguished *charges* is appropriate (rather than excluding certain *persons*).  This order recognizes that identifying the class members will entail some effort on the part of counsel for both parties; however, the information regarding which borrowers incurred and paid for force-placed insurance charges is ascertainable from Wells Fargo's records.

### iv.     Conversion Claim.

Plaintiffs claim that defendant converted readily identifiable funds by imposing improper charges on borrowers' escrow accounts.  Defendant argues that many borrowers who are charged for force-placed insurance do not have escrow accounts, relying on the declaration of Thomas Farrell.  He states that not all borrowers have escrow accounts at the time lender-placed insurance is paid for (Farrell Decl. ¶ 2).  Plaintiffs counter that Farrell testified as defendant's Rule 30(b)(6) corporate representative that defendant's policy is to require all borrowers to escrow funds for lender-placed insurance premiums.  The deposition transcript reflects the following exchange:

> *Q: Is it Wells Fargo Bank's policy to require that the borrower escrow funds for payment of lender-placed insurance premiums?*
>
> A. For lender-placed?
>
> *Q. Right.*
>
> A. Yes.
>
> *Q. Do you have people that you don't require to escrow funds for that?*
>
> A. For lender placed?
>
> *Q. Right.*

1      A. No.

2      Q. *So the uniform policy since January 1, 2007, has been to*
          *require the borrower to pay funds into escrow to cover any*
3         *lender-placed insurance charges.*

4      A. Yes, to my knowledge.

5   (Farrell Dep. at 128).  In the same deposition, Farrell testified that there were exceptions to this

6   otherwise uniform policy, made on a case-by-case basis but that the number of such exceptions

7   would be "less than one percent" (*id.* at 130).  Those accounts could be readily identified from

8   defendant's databases (*id.* at 129).  Farrell's declaration in opposition to class certification does

9   not address or acknowledge his prior testimony regarding defendant's policy of requiring

10  borrowers to escrow funds for force-placed insurance.  Given that the number of borrowers who

11  were exempted from this policy is quite small and those accounts can be readily identified, this is

12  insufficient to defeat class certification.  Borrowers without escrow accounts may be removed

13  from the class definition at a later date, if necessary.

14                          *iv.*      **California's Unfair Competition Law.**

15         To assert a claim under California's unfair competition law, a plaintiff must have "lost

16  money or property."  *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323 (2011).  "[A] plaintiff

17  now must demonstrate some form of economic injury."  *Ibid*.  Defendant contends that class

18  members must demonstrate that they have actually paid for force-placed insurance, which would

19  allegedly require an individualized inquiry.  As discussed above, however, a borrower who was

20  charged for unauthorized or improper expenses can assert a claim for damages or restitution.

21  Even if a borrower has been charged but has not yet paid for the expenses, the debt is an

22  economic injury and lien upon his property sufficient to confer standing to assert a claim under

23  the unfair competition law (charges for borrowers who have been excused from payment of their

24  loan, and associated expenses, such as through foreclosure, are excluded from the class

25  definition).

26                  **F.      Factors Under Rule 23(b)(3).**

27         "Rule 23(b)(3) includes a nonexhaustive list of factors pertinent to a court's 'close look'

28  at the predominance and superiority criteria."  *Amchem*, 521 U.S. at 615–16.  This includes:

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1     (A) the interest of members of the class in individually controlling
2     the prosecution or defense of separate actions; (B) the extent and
      nature of any litigation concerning the controversy already
3     commenced by or against members of the class; (C) the
      desirability or undesirability of concentrating the litigation of the
4     claims in the particular forum; (D) the difficulties likely to be
      encountered in the management of a class action.

5     *Ibid.* Rule 23(b)(3)(A) addresses whether the interests of most class members in conducting

6     separate lawsuits is so strong as to require denial of class certification. Here, plaintiffs claim that

7     individual class members were damaged to the tune of several hundred to a few thousand dollars

8     per year. While the amounts are not "so small that separate suits would be impracticable," few

9     class members would likely undertake individual actions in order to recover such sums.

10    *Amchem*, 521 U.S. at 616. This factor weighs in favor of the class to be certified.

11          The "extent and nature of litigation" factor "is intended to serve the purpose of assuring

12    judicial economy and reducing the possibility of multiple lawsuits." *Zinser*, 253 F.3d at 1191

13    (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and

14    Procedure § 1780 (2d ed. 1986)). Plaintiffs identify a number of class actions filed against Wells

15    Fargo in this district, as well as in district courts in Florida and Pennsylvania, that relate to force-

16    placed insurance in connection with residential mortgages. Plaintiffs state that "these cases do

17    not overlap with this case in any manner." Contrary to this assertion, this order recognizes that a

18    number of similar class actions involving substantially similar claims and allegations are

19    currently pending that seek to certify a nationwide class. The Court is disappointed that counsel

20    would expect it to fall for this misrepresentation. It appears, however, that no class has yet been

21    certified with a class definition that overlaps with the California class proposed herein.

22          In *Zinser*, our court of appeals found that plaintiff had failed to offer an "adequate

23    justification for the concentration of the litigation in this particular forum." *Zinser*, 253 F.3d at

24    1192. Our court of appeals noted its approval of the approach taken by the district court in

25    *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 653 (N.D. Cal. 1996), where that court took into

26    account the location of the potential plaintiffs, witnesses, and evidence. In *Haley*, the court

27    determined that plaintiffs "failed to establish any particular reason why it would be especially

28    efficient for this Court to hear such a massive class action lawsuit." *Ibid*. Here, the class

representative and class members are located in California.  Wells Fargo is a national bank with a "principal address" in California (Amd. Compl. ¶ 19).  Although plaintiffs have not established that witnesses and evidence will be located here, at the very least, the class members and defendant are in California.  Accordingly, this order finds no reason why Rule 26(b)(3)(C) counsels against certifying the California class.

Finally, given the considerations addressed above and the narrowed class definition, this order finds that a class action for a California class would be manageable under Rule 26(b)(3)(D).

### 4.   MOTION FOR AN ARKANSAS CLASS.

Plaintiffs also seek to certify an Arkansas class and to appoint plaintiffs Danny and Beverly Lane as class representatives.  Having considered the factors under Rule 23(b)(3), this order finds that certification of an Arkansas class is not appropriate.  Plaintiffs have failed to meet their burden of establishing that concentration of the litigation here is desirable, where none of the putative class members are located in California.  "[Plaintiff] can choose the terrain to do battle on its own individual claims.  However, for class action purposes Rule 23(b)(3)(C) makes relevant a consideration of the overall convenience of this forum to *all* the litigants and potential litigants."  *State Sec. Ins. Co. v. Frank B. Hall & Co., Inc.*, 95 F.R.D. 496, 499 (N.D. Ill. 1982) (Judge Milton Shadur).  For absent class members in Arkansas, certifying a class in this Court would make it considerably more difficult for those individuals to follow, participate in, and possibly intervene in this action.  Rather than locating the action in a more convenient district, the class members' claims would be litigated 1800 miles away.  While it is true that defendant is a national bank that is located in California, the subject properties and the alleged victims are in Arkansas (and third-party insurers QBE and ASIC are located outside California).  Those Arkansas homeowners will be better off litigating in Arkansas.  This order finds that the Rule 23(b)(3) factors weigh heavily against class certification of an Arkansas class.  This is particularly true given the circumstances here, where numerous putative class actions involving force-placed insurance on home mortgages have been filed in recent years in a number of states, including Florida, Ohio, Pennsylvania, and Massachusetts.  Plaintiffs have failed to offer an

1  "adequate justification for the concentration of the litigation in this particular forum." *Zinser*,

2  253 F.3d at 1192.  Accordingly, plaintiffs' motion to certify an Arkansas class under Rule

3  23(b)(3) is **DENIED**.

4      **5.**    **MOTION TO INTERVENE UNDER RULE 24(A) AND (B).**

5      The proposed intervenors are plaintiffs in two putative class actions against Wells Fargo

6  involving force-placed flood insurance:  *Morris v. Wells Fargo Bank, N.A*., No. 11-00474 (W.D.

7  Pa. 2011) (Judge David Cercone) and *McKenzie v. Wells Fargo Bank, N.A*., No. 11-04965 (N.D.

8  Cal. 2011) (Magistrate Judge Joseph Spero).  They are represented by the same counsel in their

9  respective lawsuits, Nichols Kaster, LLP and Berger & Montague, P.C.  They seek to intervene

10  to supplement the record with additional discovery prior to class certification and, if a class is

11  certified, to allow briefing regarding the selection of class counsel.  In the alternative, they seek

12  to stay this action pending the outcome of class certification motions in *Morris* and *McKenzie*,

13  each of which seek to certify a nationwide class to pursue various claims against defendant

14  related to force-placed flood insurance.  The crux of the motion is that counsel for plaintiffs

15  herein filed this action as a "me-too" lawsuit after the *Morris* and *McKenzie* actions were filed

16  and that plaintiffs' counsel herein are under-prepared and inadequate to protect the proposed

17  intervenors' interest in certifying a nationwide class, a factor to be considered momentarily.

18      Given this order's ruling on plaintiffs' motion to certify a nationwide class, the motion to

19  intervene by right is **DENIED AS MOOT**.  Proposed intervenors do not have a "significantly

20  protectable" interest in this action, as they are not members of the certified California class.  Nor

21  does this Court's ruling denying certification of a nationwide class "impair or impede" their

22  ability to litigate their own actions.  They are free to pursue class certification in their own

23  lawsuits.  Moreover, as defendant points out, other district courts have already denied class

24  certification motions in similar actions against national banks.  *See Kunzelmann v. Wells Fargo*

25  *Bank, N.A.*, No. 11-81373, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013); *Gordon*, 2013 WL

26  436445.

27      The Court declines to exercise its discretion under Rule 24(b) to allow permissive

28  intervention at this stage.  Proposed intervenors have not established any reason why their

United States District Court

For the Northern District of California

involvement in this action would contribute to anything except delay. Given that the basis for the motion is allegedly to protect the proposed intervenors' interests in litigating the certification of a nationwide class, and as none of them are members of the class actually certified herein, the motion for permissive intervention is **DENIED**.

### 6. ADEQUACY OF CLASS COUNSEL.

As stated above, plaintiffs' motion for class certification is granted only as to the California class, but is certified only conditionally upon selection of adequate counsel. Rule 23(g) lists the factors a district court must consider in the appointment of counsel for the class. Rule 23(g)(2) states:

> When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4). If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class.

This is a case in which counsel for the sole plaintiff — Mercedes Guerrero — fails to measure up to the standards of Rule 23(g)(1). Counsel's misrepresentations to the Court in this action regarding the nature and status of similar ongoing class actions give cause for concern (Dkt. No. 92 at 23). For example, in plaintiffs' motion for class certification, counsel cited seven different ongoing actions alleging similar claims against defendant, but stated that "these cases do not overlap with this case in any manner" (*ibid.*).[2] This was and remains inaccurate. As discussed above, although no class has yet been certified in *Morris* or *McKenzie*, those cases and this action all involve overlapping putative nationwide classes brought on behalf of borrowers who were force-placed with flood insurance by Wells Fargo and include allegations of unlawful kickbacks. Moreover, in *Williams v. Wells Fargo Bank, N.A.*, No. 11-21233 (S.D. Fla. 2011), a Florida class was certified for breach of contract and unjust enrichment claims against defendant based on similar allegations that defendant charged borrowers artificially inflated premiums for force-placed insurance. How counsel could have represented that the cases "do not overlap with

---

[2] *Cannon v. Wells Fargo Bank, N.A.*, No. 12-1376 (N.D. Cal. 2012), *McKenzie v. Wells Fargo Bank, N.A.*, No. 11-04965 (N.D. Cal. 2011), *Williams v. Wells Fargo, N.A.*, No. 11-21233 (S.D. Fla. 2011), *Fladell v. Wells Fargo*, No. 13-60721 (S.D. Fla. 2013), *Morris v. Wells Fargo Bank, N.A.*, No. 11-474 (W.D. Pa. 2011), *Sayago v. Wells Fargo Bank, N.A.*, No. 11-2009 (M.D. Fla. 2011), *Passantino-Miller v. Wells Fargo Bank, N.A.*, No. 12-420 (E.D. Cal. 2012).

this case in any manner" is baffling.  Counsel also incorrectly state that "class certification motions have not been filed in any case other than *Williams*, which only sought a Florida class" (Dkt. No. 92 at 23).  That statement too was and is false.  The plaintiff in *Morris* filed a class certification motion on September 19, 2012.  While the motion was summarily denied, counsel's sweeping statement was at least incorrect, if not intentionally so.  Counsel's misrepresentations and inaccuracies are troubling.

Furthermore, this order finds counsel's lackluster performance in discovery troubling. Plaintiffs filed the instant motion seeking to certify a class that includes all borrowers with loans serviced but not originated by defendant.  Defendant argued that a class action would be unmanageable because the proposed class included a number of "other" contracts.  Plaintiffs complained that the contracts are absent from this litigation because defendant refused to produce them.  Plaintiffs served a document request on defendant seeking "a representative copy of each different type of promissory note form associated with each different type of mortgage for all mortgages you owned or serviced" between July 2007 and the present (Dkt. No. 118-5, Exh. D at 2–3).  In its written response, defendant agreed to produce templates for promissory notes originated by defendant, but objected to producing notes for loans defendant did not originate, claiming that "responding to this request would conceivably require Wells Fargo to review each of these promissory notes separately, which would be overly burdensome" (*ibid.*). Whether defendant acted properly or not, defendant clearly stated the documents it would produce, as well as those it refused to produce.  Plaintiffs were then on notice of defendant's position.  Plaintiffs should have moved to compel but did not.  It is plaintiffs' burden to establish that class certification is proper, including through demonstrating that common questions predominate.  Counsel's failure to diligently pursue discovery and provide the proper evidence in support of class certification does not meet the standard for adequate representation of the class.

The Court has had prior and disappointing experience with several of the applicant firms and attorneys, namely the Wagoner Law Firm, P.A., Owings Law Firm, and Attorneys Brent Walker and Sheri Kelly.  Those attorneys previously sought to intervene at the eleventh hour in a different action before the undersigned involving force-placed home insurance related to home

United States District Court

For the Northern District of California

1   equity lines of credit.  In *Hofstetter v. Chase Home Finance, LLC*, No. 10-1313 (N.D. Cal.

2   2011), counsel sought to intervene at the final fairness hearing to protest the proposed

3   nationwide class settlement.  Counsel there sought to challenge the proposed class settlement —

4   an excellent settlement for the class — on the ground that it might potentially impact an action

5   counsel had later-filed against Chase in Florida.  The undersigned judge found that there was no

6   legitimate basis for intervention at this late stage and that counsel's attempt to intervene to

7   protect their "me-too" lawsuit was "totally unfounded" (Dkt. No. 104-10 at 24).  This was a

8   hold-up maneuver unworthy of Rule 23 practice.

9       And, it is disturbing that counsel proposes to employ four law firms and thus multiply the

10  lodestar, all at the expense of the class.  At our recent hearing, six counsel were present for

11  plaintiffs.  One firm is usually best for the class because it eliminates the inefficiency in keeping

12  a multiplicity of law firms up to speed.

13      In light of the foregoing, this order will reserve judgment as to whether or not proposed

14  counsel are inadequate to represent the certified class but finds that, in light of the serious

15  questions raised concerning their adequacy, allowing others to apply for class counsel is in the

16  best interest of absent class members.  The Court recognizes that in a "plaintiff class action the

17  court usually would appoint as class counsel only an attorney or attorneys who have sought

18  appointment."  Fed R. Civ. P. 23 Advisory Committee's Note (2003); Rule 23(g)(1)(B).  This,

19  however, is the rare case in which the Court finds it will be in the best interests of the class to

20  invite other counsel to apply to represent the class.

21      Absent class members' interests "are truly in the hands of class counsel."  1 Newberg on

22  Class Actions § 3:52 (5th ed.).  Rule 23(g) places the responsibility of ensuring fair and adequate

23  counsel on the Court, not merely on the class representative.[3]  Under Rule 23(g), the Court has

24  broad authority in executing its "basic responsibility . . . to appoint class counsel" that will

25  "fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23 Advisory

---

[3]  In a securities class action under the Private Securities Litigation Reform Act, our court of appeals found that "[w]hile the appointment of counsel is made subject to the approval of the court, the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff."  *In re Cavanaugh*, 306 F.3d 726, 734 (9th Cir. 2002).  That statute is not applicable here.  In this consumer class action, Rule 23 does not grant the lead plaintiff similar authority, but instead vests that authority in the Court.

United States District Court

For the Northern District of California

1    Committee's Note (2003).  The rule includes a list of mandatory factors to consider and provides

2    that the Court "may consider any other matter pertinent" to counsel's adequate representation of

3    the class.  The rule contemplates that there can be circumstances in which more than one

4    applicant counsel can apply to represent the class.  Rule 23(g)(2).

5         Given the foregoing, the Court now conditions certification on receiving and evaluating

6    other applications to represent the class.  Counsel of record may co-apply with other counsel

7    preferably familiar with the successful conduct of class actions in this district.  As stated at the

8    motions hearing, however, it is unlikely that the Court would appoint all four law firms as class

9    counsel.

10                                    **CONCLUSION**

11        For the reasons stated above, the following class is conditionally certified:

12

13            All persons with a residential mortgage loan secured by an FHA
              mortgage, who were charged by Wells Fargo Bank, N.A., or an
14            affiliate of Wells Fargo Bank, N.A., for force-placed flood
              insurance on property in California from July 31, 2008, through
15            the present, where such flood insurance was procured with the
              assistance of QBE Insurance Corporation or American Security
16            Insurance Company, or their affiliates.  This class excludes charges
              collected or extinguished through foreclosure, short-sale
17            agreement, or grant of a deed in lieu of foreclosure or through
              cancellation or waiver by borrower's agreement with the lender.

18

19        The Court will post a notice to the public inviting applications for class counsel on the

20    Northern District of California website (www.cand.uscourts.gov).  As further laid out in the

21    request for applications, appended hereto, counsel seeking to be appointed must lodge

22    applications for the Court's review by JULY 19, 2013.  The applications should explain the

23    experience and qualifications of counsel and describe the proposed staffing and fee structure.

24    Consistent with this order, the class described above will not be certified unless or until adequate

25    counsel is selected and appointed.

26        In addition, before notice is sent to the class — which in this case will need to be by first-

27    class mail — we will need to compile a list of all class members and their addresses.  After class

28    counsel are appointed, a schedule will be set, pursuant to which counsel for both sides shall

consult the files of Wells Fargo and file such a list, to be kept under seal in our district court.  At

the same time, counsel shall submit a proposed form of class notice.

**IT IS SO ORDERED.**

Dated:  June 21, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

24