# Exhibit A

Steve Berman (*pro hac vice*)
Thomas E. Loeser (202724)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Ave, Suite 2900
Seattle WA  98101
Telephone:  (206) 268-9337
Facsimile:  (206) 623-0594
Email: toml@hbsslaw.com

*Attorneys for Plaintiff and the Certified Class*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERCEDES GUERRERO, individually and for other persons similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>　　　　　　　　Defendant. | No. 3:12-cv-04026 WHA<br><br>CLASS ACTION<br><br>SETTLEMENT AGREEMENT AND RELEASE |

07725.0152/3136763.1

SETTLEMENT AGREEMENT AND RELEASE

1518534.1
1545734.2

**SETTLEMENT AGREEMENT AND RELEASE**

1.    This Settlement Agreement and Release is entered into by Plaintiff Mercedes Guerrero, individually and on behalf of the Certified Class as defined below, and Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), subject to the approval of the Court.

**DEFINITIONS**

2.    As used in this Settlement Agreement, the following terms shall have the following meanings:

a.    "Action" means the above-captioned lawsuit.

b.    "Agreement" or "Settlement Agreement" or "Settlement" means this Settlement Agreement and Release.

c.    "CAFA Notice" means the notice to be sent by Wells Fargo to appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA"), within ten (10) days after the Motion for Preliminary Approval is filed with the Court.

d.    "Claims Administrator" means Gilardi & Co., LLC

e.    "Class" or "Class Members" means:

All persons with a residential mortgage loan secured by an FHA mortgage, who were charged by Wells Fargo Bank, N.A., for force-placed flood insurance on property in California from July 31, 2008, through August 16, 2013, where such flood insurance was procured with the assistance of QBE Insurance Corporation or American Security Insurance Company, or their affiliates. This class excludes charges collected or extinguished through foreclosure, short-sale agreement, or grant of a deed in lieu of foreclosure or through cancellation or waiver by borrower's agreement with the lender.

f.    "Class Period" means the period from July 31, 2008 to August 16, 2013.

g.    "Closed-End Residential Mortgage" means a consumer purpose closed-end loan secured by a mortgage on residential property.  Closed-End Residential Mortgage does not include home equity lines of credit or home equity loans.

h.    "Class Counsel" means Hagens Berman Sobol Shapiro LLP.

i.    "Class Data" means the data and information produced by Wells Fargo in this Action relating to Class Members and their loans serviced by Wells Fargo.

1              j.       "Class Notice" or "Notice of Settlement" means the Notice of Class Action

2     Settlement as approved by the Court in its Preliminary Approval Order.

3              k.       "Class Notice Date" means the date that the Class Notice is mailed to the

4     Settlement Class Members.

5              l.       "Effective Date" means the first date upon which all of the following have

6     occurred:

7              1.       The Court has entered a judgment and final order approving this

8     Settlement Agreement (the "Final Approval Order") and either:

9                         a. The time to file an appeal from the Final Approval Order expires

10    and no appeal is filed; or

11                       b. If a timely appeal from the Final Approval Order is filed, the latest

12    of

13                            i.    the date that appeal is finally dismissed;

14                        ii.    if the court of appeals affirms the Final Approval Order and

15    no timely petition for a panel rehearing, rehearing en banc, or writ of certiorari is filed, the date

16    upon which the time to file a panel rehearing, rehearing en banc and writ of certiorari has expired;

17                       iii.    if the court of appeals affirms the Final Approval Order and

18    no timely petition for a panel rehearing or rehearing en banc is filed, and a timely petition for writ

19    of certiorari is filed, the date that petition for writ of certiorari is dismissed or denied or, if

20    granted, the date of any order pursuant to the grant of the petition for writ of certiorari that has the

21    effect of confirming the Final Approval Order.

22                      iv.    if the court of appeals affirms the Final Approval Order and

23    a timely petition for a panel rehearing or rehearing en banc is filed, the date that petition is denied

24    or, if the petition is granted and the panel affirms the Final Approval Order and no timely petition

25    for writ of certiorari is filed, the date upon which the time to file a writ of certiorari has expired;

26                      v.    if the court of appeals affirms the Final Approval Order and

27    a timely petition for a panel rehearing or rehearing en banc is filed and granted and the panel

28    affirms the Final Approval Order and a timely petition for writ of certiorari is filed, the date that

1    petition for writ of certiorari is dismissed or denied or, if granted, the date of any order pursuant

2    to the grant of the petition for writ of certiorari that has the effect of confirming the Final

3    Approval Order.

4            m.      "Eligible Class Members" means Class Members who do not timely opt

5    out of this Settlement.

6            n.      "FHA Loan" means a residential home loan secured by a deed of trust

7    written on a form promulgated by the Federal Housing Administration.

8            o.      "Final Approval Hearing" means the hearing to be requested by the Parties

9    and conducted by the Court, following appropriate notice to the Class and an opportunity for

10   Class Members to exclude themselves from the Class, at which time Plaintiff will request the

11   Court to finally approve the fairness, reasonableness and adequacy of the terms and conditions of

12   this Agreement and to enter an Order of Final Approval and Final Judgment (the "Final Approval

13   Order").

14           p.      "Final Approval Motion" or "Motion for Final Approval" means Plaintiff's

15   motion seeking final approval of this Agreement.

16           q.      "Gross Settlement Fund" means the total amount of funds that Wells Fargo

17   shall pay to resolve the Released Claims by the Named Plaintiff and the Class Members.  The

18   Gross Settlement Fund shall be the sum of Six Hundred and Twenty-Five Thousand Dollars

19   ($625,000.00).   Wells Fargo's responsibility to pay any amounts in settlement, including

20   payments to the Named Plaintiff, to Class Members, for attorneys' fees or costs, and any fees or

21   costs of the Claims Administrator, shall not exceed the amount of the Gross Settlement Fund.

22           r.      "Wells Fargo" or "Defendants" means Wells Fargo Bank, N.A.

23           s.      "Net Settlement Fund" means the settlement funds that are available for

24   distribution to the Eligible Class Members, and specifically constitutes the Gross Settlement Fund

25   less: (a) the service award addressed in Paragraph 33 below for the Named Plaintiff for her efforts

26   in bringing and prosecuting this matter; (b) the payment of attorneys' fees and costs of suit to

27   Class Counsel, not to exceed twenty-three percent (23%) of the Gross Settlement Fund, as set

28   forth in Paragraph 34 below; and (c) the Claims Administrator's fees and costs of the

-4-

SETTLEMENT AGREEMENT AND RELEASE

administration of this Settlement, as addressed in Paragraph 35 below.

t.    "Opt-Out Deadline" means the date sixty (60) days after the Class Notice Date.

u.    "Parties" means the Named Plaintiff and Wells Fargo.

v.    "Plaintiff" or "Named Plaintiff" means Mercedes Guerrero.

w.    "Plaintiff's Expert" means Birny Birnbaum.

x.    "Preliminary Approval Date" means the date of the Preliminary Approval Order.

y.    "Preliminary Approval Motion" or "Motion for Preliminary Approval" means Plaintiff's motion seeking preliminary approval of this Agreement, which shall include a copy of this Settlement Agreement.

z.    "Preliminary Approval Order" means the Court's Order preliminarily approving this Agreement, setting a date for the Final Approval Hearing, and providing for notice of the Settlement Agreement to be sent to the Settlement Class Members.

aa.    "Released Claims" means all claims or causes of action actually asserted on behalf of Plaintiff and Class Members in the First Amended Complaint.  The Released Claims include: claims that Wells Fargo's business arrangements with lender-placed insurers were collusive, exploitative, or constituted self-dealing; that commission paid by lender-placed insurers to Wells Fargo or its affiliate Wells Fargo Insurance, Inc. for lender-placed flood insurance were wrongful or constituted "kickbacks"; that the premiums charged to borrowers for lender-placed flood insurance were excessive due to Wells Fargo's exclusive arrangements with lender-placed insurers; that Wells Fargo procured lender-placed flood insurance policies for borrowers with retroactive effective dates, i.e. that Wells Fargo "backdated" insurance; that lender-placed flood insurance premiums included the cost of functions that Wells Fargo outsourced to insurers, including insurance tracking for properties securing loans serviced by Wells Fargo, sending notices related to insurance coverage, and  placing lender-placed insurance on borrowers' properties; that Wells Fargo procured excessively priced lender-placed flood insurance for borrowers to enrich itself or its affiliates; that Wells Fargo obligated borrowers with loans

serviced by Wells Fargo to pay for commissions that insurers paid to Wells Fargo Insurance, Inc. through inflated lender-placed flood insurance premiums; that borrowers were charged lender-placed flood insurance premiums that included commissions to Wells Fargo Insurance, Inc. where Wells Fargo Insurance, Inc. did not perform services justifying its commission; that Wells Fargo charged excessive lender-placed flood insurance premiums to borrowers' escrow accounts; that Wells Fargo increased borrowers' monthly mortgage payments to pay for excessive lender-placed flood insurance premiums; or that Wells Fargo engaged in any other practices asserted in the First Amended Complaint in breach of Class Members' deeds of trust, the covenant of good faith and fair dealing, California Business & Professions Code Sections 17200, et seq., or constituting or supporting claims for conversion or unjust enrichment; and any other claims for insurance premiums, penalties, interest, punitive damages, costs, attorneys' fees, restitution, injunctive relief, declaratory relief, or accounting that are asserted in the First Amended Complaint. Nothing in this Settlement Agreement shall affect in any way a claim for coverage under any insurance policy, including any lender-placed insurance policy.

bb.     "Released Parties" means Wells Fargo Bank, N.A., and each and all of its past, present, and future parents, subsidiaries, affiliated companies and corporations, and each and all of the past, present, and future directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint ventures, assigns, or related entities of Wells Fargo and/or one or more of its past, present, and future parents, subsidiaries, affiliated companies, and corporations and each and all of the executors, successors, assigns, and legal representatives of Wells Fargo and/or one or more of its past, present, and future parents, subsidiaries, affiliated companies and corporations.

cc.     Settlement Payment" means the payment that Class Members are entitled to receive if they do not opt out of the Settlement.

dd.     "Voluntary Flood Insurance" means flood insurance purchased by a Settlement Class Member (*i.e.*, flood insurance that is not Lender Placed Flood Insurance).

1

## RECITALS

2   3.   The original complaint in this action was filed by former plaintiffs Danny and

3   Beverly Lane (the "Lanes"), who later voluntarily dismissed their claims.  Plaintiff Mercedes

4   Guerrero was brought into this Action through the operative First Amended Complaint ("FAC")

5   on March 21, 2013, on behalf of herself and other similarly situated customers of Wells Fargo.

6   The FAC asserted claims against Wells Fargo for breach of contract, breach of the implied

7   covenant of good faith and fair dealing, unjust enrichment, and the California Unfair Competition

8   Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*  Plaintiff also alleged violation of the

9   Bank Holding Company Act, 12 U.S.C. § 1972, but that claim was previously dismissed by the

10  Court. Among other things, Plaintiff alleged that Wells Fargo unlawfully and unfairly profited

11  from receiving kickbacks in connection with lender-placed insurance including in the form of

12  commissions paid to Wells Fargo Insurance, Inc.

13  4.   Plaintiff and her counsel and Wells Fargo and its counsel, participated in an

14  extensive alternative dispute resolution ("ADR") process that was overseen by United States

15  Magistrate Judge Jacqueline Scott Corley (the "ADR Process").  The ADR Process began in

16  November 2013 and has continued to the present.

17  5.   Prior to the ADR Process, the Action was extensively litigated with multiple

18  motions to dismiss, class certification, and post-certification motions practice concerning the

19  Bank Holding Company Act claim.

20  6.   Wells Fargo: (a) responded to numerous written discovery requests made by

21  Plaintiff and the Lanes and produced extensive written discovery to Plaintiff and the Lanes; (b)

22  produced the Class Data to Plaintiff concerning its customers who were issued lender-placed

23  flood insurance during the Class Period (*i.e.*, the Class Members); and (c) at Plaintiffs' request,

24  produced witnesses for deposition on certain key topics.  In particular, the Class Data contained

25  detailed information regarding, *inter alia*, Class Members' mortgages with Wells Fargo,

26  including: (a) the amount of any lender-placed flood insurance that was issued and the associated

27  premiums and coverage amounts; (b) the effective date of any such lender-placed flood insurance;

28  and (c) the amount of any refunds issued for premiums associated with such lender-placed flood

1    insurance, as well as additional data.

2       7.      Class Counsel retained a damages expert, Birny Birnbaum, to evaluate and analyze

3    the Class Data, and also considered and analyzed the Class Data for themselves, prior to entering

4    into this Agreement.

5       8.      The Parties attended a full-day mediation session with Magistrate Judge Corley on

6    November 20, 2013, which was attended by Plaintiff personally.  The Parties did not reach an

7    agreement at that time, but continued their discussions with the assistance of Judge Corley.

8    Ultimately, as a result of this mediation process, the analysis of the extensive discovery and Class

9    Data produced by Wells Fargo, and subsequent negotiations between the Parties, the Parties have

10   agreed to settle this Action according to the terms of this Agreement.

11      9.      At all times, the Parties have negotiated vigorously with each other and at arm's

12   length.  The Parties have investigated the facts relating to the claims alleged in the FAC, and have

13   made a thorough study of the legal principles applicable to the claims asserted against Defendant.

14   Based upon Class Counsel's investigation, legal evaluation and taking into account the contested

15   legal and factual issues involved, including the Parties' assessment of the uncertainties of

16   litigation and the relative benefits conferred upon the Class Members pursuant to this Agreement,

17   Class Counsel have concluded that the Settlement with Defendant on the terms set forth in this

18   Agreement is fair, reasonable, adequate and in the best interests of the Plaintiff and the Class

19   Members.

20      10.     The Parties recognize that notice to the Class Members of the material terms of

21   this Agreement, as well as Court approval of the Agreement, are required to effectuate the

22   Agreement, and that the Agreement will not become operative until the Court grants final

23   approval of it and the Agreement becomes effective.

24      11.     Wells Fargo has asserted or would assert numerous defenses to the claims alleged

25   in the FAC and expressly denies each of the claims and allegations asserted against it and any and

26   all liability arising out of the conduct alleged in this Action.  Wells Fargo asserts that its flood

27   insurance procedures for residential borrowers that were in place during the Class Period were not

28   unlawful or improper in any manner, and denies that either the Named Plaintiff or Class Members

07725.0152/3136763.1
-8-
SETTLEMENT AGREEMENT AND RELEASE
1545734.2

1   suffered any cognizable injury as a result of Wells Fargo's conduct.  By entering into this

2   Agreement, Wells Fargo does not admit any wrongdoing and this Agreement shall not constitute

3   an admission of liability by Wells Fargo.

4       12.   NOW THEREFORE, IT IS HEREBY AGREED, BY AND BETWEEN the

5   undersigned Parties, that this Action shall be settled, subject to the approval of the Court,

6   pursuant to the following terms and conditions:

7                                **INJUNCTIVE RELIEF**

8       15.   <u>Commissions</u>.  For a period of three (3) years from the date of final approval of the

9   Settlement, neither Wells Fargo no any affiliate of Wells Fargo will receive commissions in

10  connection with the placement of lender placed flood insurance on any residential California real

11  estate that serves as collateral for an FHA Loan unless the receipt of such commissions is

12  specifically authorized by statute, regulation or a federal or state regulatory body with appropriate

13  jurisdiction. (*I.e.*, Wells Fargo and/or its affiliates shall no longer accept commissions from

14  lender-placed insurers in connection with the placement of flood insurance on properties secured

15  by FHA form deeds of trust  during this time period unless the receipt of such commissions is

16  specifically authorized by statute, regulations or a federal or state regulatory body with

17  appropriate jurisdiction.).

18      16.   Wells Fargo has made a good faith effort to produce reasonable data and

19  information to Class Counsel and Plaintiff and Class Counsel believe, based on Wells Fargo's

20  representations regarding the data and Plaintiff's independent analysis of the data, that Plaintiff

21  can rely on the data to determine the monetary value of the injunctive relief and present it to the

22  Court when she files her Motion for Final Approval.

23      17.   For a period of three years following the final approval of the Settlement, if

24  Plaintiff or Class Counsel have reason to believe that Wells Fargo is not in compliance with

25  paragraph 15, Class Counsel may request a conference with counsel for Wells Fargo to discuss

26  Plaintiff's or Class Counsel's concerns.  Said conference may be conducted by phone.  Wells

27  Fargo shall be provided a reasonable opportunity during and after said conference to address the

28  concerns raised in the conference and to satisfy Class Counsel that Wells Fargo is in compliance

with paragraph 15.  If 30 days after of the conference, Class Counsel still reasonably believes that Wells Fargo is not in compliance with Paragraph 15, Class Counsel may request, and Wells Fargo shall send,  a certification to Class Counsel, stating that Wells Fargo is in compliance with Paragraph 15.

## MONETARY RELIEF TO ELIGIBLE CLASS MEMBERS

18.     Establishment of Gross Settlement Fund.  Within fifteen (15) business days after the Final Approval Date, Wells Fargo shall wire the entirety of the Gross Settlement Fund to the Claims Administrator, which shall be immediately deposited (that same day) by the Claims Administrator into a Qualified Settlement Fund pursuant to Internal Revenue Code Section 1.468B-1 with a federally-chartered national bank to be selected by Class Counsel.  Also within fifteen (15) business days after the Final Approval Date, Wells Fargo shall execute an election statement provided by the Claims Administrator, which shall be affixed to the initial tax return of the Qualified Settlement Fund in order to establish the start date of the Qualified Settlement Fund. The Gross Settlement Fund shall thereafter be administered and distributed as set forth in this Agreement.  All interest with respect to the Gross Settlement Fund shall accrue to the benefit of the Class.  The monetary relief to the Class, any additional payments to the Named Plaintiff, Class Counsels' attorneys' fees and expenses, and all fees and expenses of the Claims Administrator, shall be paid from the Gross Settlement Fund.  No portion of the Gross Settlement Fund shall revert to Defendant at any time.

19.     Order of Payments.  Following the Effective Date, the Claims Administrator shall make payments from the Gross Settlement Fund for: (a) the service award for the Named Plaintiff for her efforts in bringing and prosecuting this matter; (b) the attorneys' fees and costs to Class Counsel awarded by the Court; and (c) the costs of administration of this Settlement by the Claims Administrator.  Once the payments designated above have been made, the balance remaining shall constitute the Net Settlement Fund from which Settlement Payments to Eligible Class Members shall be calculated.

20.     Payments to Settlement Class Members.  Distribution of the Net Settlement Fund to the Settlement Class Members shall be on a claims-paid basis.  Within thirty (30) days of the

Effective Date or as soon as reasonably practicable, the Claims Administrator shall distribute the Net Settlement Fund to the Settlement Class Members in accordance with the provisions below.

21.   Production of Class List.   Wells Fargo has already produced the following information to Class Counsel:

a.   Policy numbers for all Class Members' lender-placed insurance;

b.   Dates of placement for all Class Members' lender-placed insurance;

c.   Lender-placed premium amount charged for all Class Members;

d.   Lender-placed premium amount refunded, if any, for all Class Members;

e.   Commission-related information; and

f.   Other applicable information and data.

Within ten (10) business days after the Preliminary Approval Date, Wells Fargo shall provide the Claims Administrator and Class Counsel with a final Class List in electronic format which shall supplement the above information and include, to the extent reasonably available, for all Class Members:

a.   Class Members' names;

b.   Class Members' last-known billing address.

For any Class Member whose Class Notice is returned as undeliverable, Wells Fargo shall also provide the last four digits of the Class Member's Social Security Number so that the Claims Administrator may perform a standard skip trace to locate such Class Member and resend their Class Notice, pursuant to the provisions of Paragraph 43.

For any Class Member for whom a good address cannot be located through a skip trace, or whose resent Class Notice is again returned as undeliverable, Wells Fargo shall provide such Class Member's last known email address (if Wells Fargo has it) and last known telephone number, pursuant to the provisions of Paragraph 43.

22.   Distribution of Net Settlement Fund.   The Net Settlement Fund shall be distributed to Eligible Class Members in proportion to each Eligible Class Member's "Settlement Damages" as calculated by Plaintiffs' Damages Expert based upon the Class Data. The Settlement Damages for Class Members shall be a pro-rata portion of the Net Settlement Fund based upon each Class

SETTLEMENT AGREEMENT AND RELEASE

Member's lender-placed flood insurance net premiums during the Class Period in proportion to the total Class lender-placed flood insurance net premiums during the Class Period.

23.     <u>Calculation.</u>  Plaintiffs' Damages Expert shall calculate the total Settlement Damages for all Eligible Class Members based on the Class Data by the date of Plaintiffs' Final Approval Motion, and shall determine the amount owed to each Eligible Class Member based upon their *pro rata* share of the total Settlement Damages.   Counsel shall provide the completed damages calculations to Wells Fargo and the Claims Administrator.

24.     <u>No Offset for NMS or Other Settlements</u>.   There shall be no offset to any Settlement Payments received by any Eligible Class Members under this Agreement to account for any payments to Eligible Class Members under the National Mortgage Settlement ("NMS") or any other settlement between Wells Fargo and any governmental or private entity, including the United States Department of Treasury's Office of the Comptroller of the Currency (the "OCC").

25.     <u>Distribution of Settlement Payments</u>.  All Settlement Payments to Eligible Class Members shall be distributed in the form of a check sent via first class mail in a distinctive envelope stating, on the outside in large bold letters:  "**Settlement Payment Pursuant to Class Action Settlement Approved by the Court.**"   For purposes of this mailing, the Claims Administrator shall use the addresses that were used to send the Notice of Settlement, subject to appropriate updating by the Claims Administrator prior to mailing, which shall consist of the following:

a.     The Claims Administrator will check each address against the United States Post Office National Change of Address ("NCOA") Database;

b.     The Claims Administrator will conduct reasonable searches to locate valid address information for Eligible Class Members whose previous Notices of Settlement were returned as undeliverable;

c.     The Claims Administrator shall update addresses based on forwarding information received from the United States Post Office; and

d.     The Claims Administrator will update addresses based on any requests received from Settlement Class Members or Class Counsel.

26.     <u>Re-Mailing of Returned Settlement Payments</u>.  Any Settlement Payments that are returned as non-deliverable with a forwarding address shall be re-mailed by the Claims Administrator to such forwarding address within five (5) business days.  To the extent that any Settlement Payments are returned as non-deliverable without a forwarding address, the Claims Administrator shall conduct reasonable searches to locate valid address information for the intended recipients of such Settlement Payments, and shall, within five (5) business days, re-mail the Settlement Payment, as applicable, to any Eligible Class Members for whom new address information is identified.

27.     <u>Time Period to Accept Payment</u>.  Eligible Class Members shall have 120 days from the date of their Settlement Payments to cash their check.  Eligible Class Members may request new checks to be issued by the Claims Administrator during this time period, if they lose or misplace their original check, however, the time period for cashing the check will be the same as the original time period set forth above.

28.     <u>Second Payment if Applicable</u>.  Within ten (10) business days after the conclusion of the time period for Eligible Class Members to cash their checks, the Claims Administrator shall determine the amount of money remaining in the Net Settlement Fund as the result of voided or undeliverable checks.  If, following this process, the amount of money remaining in the Net Settlement Fund exceeds ten percent (10%) of the original Net Settlement Fund, the Claims Administrator shall prepare and send Class Counsel and counsel for Wells Fargo a Cashed Settlement Check List that identifies all Eligible Class Members who cashed the settlement checks, and within ten (10) business days after the calculation of the Cashed Settlement Check List, the Claims Administrator shall send each Eligible Class Member who cashed a settlement check a further payment allocated on a *pro rata* basis based on each Eligible Class Members' Settlement Damages in proportion to the total amount remaining in the Net Settlement Fund, which can be paid via check.

29.     <u>Unclaimed Monies</u>.  All unclaimed monies in the Net Settlement Fund after the second distribution (as set forth in Paragraph 28), or if, after the first distribution and crediting of escrow accounts, there is less than ten percent (10%) of the total Net Settlement Fund remaining,

07725.0152/3136763.1

1545734.2

1    shall be escheated to the State of California.  No unclaimed funds will revert to Wells Fargo.

2          30.    <u>Eligible Class Member Claims On Their Lender-Placed Flood Insurance Policies.</u>

3    Eligible Class Members who have made or who make a coverage claim in the future on any

4    lender-placed flood insurance policy will not have such coverage claim affected in any way as a

5    result of their participation in this Settlement, and may participate in this Settlement to the same

6    extent as Eligible Class Members who have not made a coverage claim on their lender-placed

7    flood insurance policy.

8          31.    <u>Final Accounting</u>.  No later than thirty (30) days after all Settlement Payments are

9    issued to Eligible Class Members, the Claims Administrator shall provide a final accounting to

10   the Parties.  The Claims Administrator shall also provide declarations to the Parties to be filed

11   with the Court, concerning the status of the administration process, at the request of Class

12   Counsel or Wells Fargo at any time.

13         32.    No person shall have any claim against Wells Fargo and its counsel, the Named

14   Plaintiff, the Settlement Class, Class Counsel, or the Claims Administrator based on distributions

15   or payments made in accordance with this Settlement Agreement.

16   **ADDITIONAL SETTLEMENT PAYMENTS**

17         33.    <u>Service Award to Named Plaintiff</u>.  Subject to the Court's approval, the Named

18   Plaintiff, Mercedes Guerrero, shall receive a service award not to exceed Seven Thousand Five-

19   Hundred Dollars ($7,500.00) for her time and efforts in bringing and prosecuting this matter.

20   Within three (3) business days after the Effective Date, the Claims Administrator shall deduct

21   from the Settlement Fund and pay to the Named Plaintiff the amount approved by the Court.

22         34.    <u>Attorneys' Fees and Expenses</u>.  At least 60 days prior to the Final Fairness

23   Hearing, Class Counsel shall file a Motion for Attorneys' Fees and Expenses to be paid from the

24   Gross Settlement Fund in accordance with FED. R. CIV. P. 23(h).  Class Counsel's Motion for

25   Attorneys' Fees and Expenses is to be considered separately by the Court from its consideration

26   of the fairness and adequacy of this Settlement Agreement, and any order with respect to this

27   separate Motion shall not affect or delay the approval of this Settlement Agreement.  Class

28   Counsels' attorneys' fees and expenses shall not exceed twenty-three percent (23%) of the Gross

1   Settlement Fund, and Wells Fargo shall not object to Class Counsels' request for attorneys' fees

2   and expenses so long as it is consistent with this paragraph.  These amounts will compensate

3   Class Counsel for work already performed in this case and all of the work remaining to be

4   performed in this case, including but not limited to documenting the Settlement, securing Court

5   approval of the Settlement, making sure that the Settlement is fairly administered and

6   implemented, and obtaining dismissal of the Action.  Within three (3) business days after the

7   Effective Date, the Claims Administrator shall deduct from the Gross Settlement Fund and pay to

8   Class Counsel the amounts approved by the Court for attorneys' fees and expenses.

9       35.   Costs of Settlement Administration.   All fees and expenses of the Claims

10  Administrator shall be paid from the Gross Settlement Fund.  The Claims Administrator shall

11  provide the Parties with an estimate of its fees and expenses of settlement administration, which

12  shall be filed as an exhibit to Plaintiffs' Motion for Preliminary Approval, and the amount paid to

13  the Claims Administrator in connection with this Settlement shall not exceed that amount.  Ten

14  (10) business days prior to the Final Fairness Hearing, the Claims Administrator shall also

15  provide the Parties with a declaration detailing its fees and expenses related to the settlement

16  administration process, which shall be filed with the Court.  The Parties agree to cooperate in the

17  settlement administration process and to make all reasonable efforts to control and minimize the

18  expenses incurred in the administration of the Settlement.

19                          **NOTICE OF SETTLEMENT**

20      36.   Notice of this settlement shall be provided to Class Members.  The Parties will

21  request that the Court determine that the proposed procedures for notice set forth below constitute

22  the best practicable notice to Class Members.

23      37.   The Claims Administrator shall be responsible for preparing, printing and mailing

24  to all Class Members the Class Notice, as directed and approved by the Court in its Preliminary

25  Approval Order.

26      38.   Within ten (10) business days after the Preliminary Approval Date, Wells Fargo

27  shall transmit the Class List set forth in Paragraph 21, above, to the Claims Administrator and

28  Counsel pursuant to an agreed protective order.

07725.0152/3136763.1

-15-

1545734.2

39.     Wells Fargo shall provide contact information for Settlement Class Members based upon its regularly maintained mortgage banking business records.   The Claims Administrator shall take reasonable measures to verify and update the Class List with respect to the contact information of inactive borrowers (*i.e.*, borrowers whose loans are not currently serviced by Wells Fargo), and before mailing the Class Notice, will run the list of Settlement Class Members who are inactive borrowers through the U.S. Postal Service's National Change of Address ("NCOA") database.

40.     As soon as reasonably practicable within thirty (30) days after receiving the Class List, the Claims Administrator shall mail the Court-approved Class Notice to all Settlement Class Members, which shall provide instructions and information to Settlement Class Members concerning the Settlement and their right to receive a share of the Net Settlement Fund, as well as their objection rights and opt-out rights.

41.     Effective on the Class Notice Date, the Claims Administrator shall also arrange for a telephone call center facility with a 1-800 number to be active until such time as all distributions of Settlement Payments are completed to Eligible Class Members, in order to respond to questions from Settlement Class Members.

42.     Effective on the Class Notice Date, the Claims Administrator shall also make active a website (www.wells-fargo-california-fha-flood-insurance-settlement.com) describing the terms of the Settlement and from which Settlement Class Members can download relevant forms such as the Class Notice; the Settlement Agreement; the Court's Preliminary Approval Order; and Class Counsel's Motion for Final Approval and Motion for Attorneys' Fees and Expenses.  The website shall include the 1-800 number applicable to this Settlement as set forth in Paragraph 41, above, and shall remain active until such time as distributions of Settlement Payments are completed to Eligible Class Members.

43.     Any Class Notice returned to the Claims Administrator as non-delivered before the deadline for opting out of the Settlement shall be sent to the forwarding address affixed thereto. If no forwarding address is provided, then the Claims Administrator shall request the last four digits of the Class Member's social security number from Wells Fargo and using that information

07725.0152/3136763.1

1545734.2

shall perform a standard skip trace or otherwise attempt to determine the most current mailing address and shall resend the Class Notice to that address(es). Within two (2) business days upon receiving a Class Notice returned as non-delivered with no forwarding address, the Claims Administrator shall request from Wells Fargo the last four digits of that Class Member's social security number. Within five (5) business days of receipt of such a request from the Claims Administrator, Well Fargo shall provide the last four digits of the Class Member's social security number to the extent the number is readily available from Wells Fargo's electronic records. If the Claims Administrator is able to obtain new address information with the social security number information provided by Wells Fargo, within two (2) business days of receipt of a Class Members' social security number information, the Claims Administrator shall resend the Class Notice to that Class Member. If any Class Notice is again returned as undeliverable with a forwarding address, the Claims Administrator shall resend the Class Notice to the forwarding address. If any Class Notice is again returned as non-deliverable with no forwarding address, within two (2) business days of receiving notice that the Class Notice was returned as non-deliverable, the Claims Administrator shall request from Wells Fargo the email address and telephone number of the Class Member. If and to the extent this information is readily available from Wells Fargo's electronic records, Wells Fargo shall provide the information within five (5) business days of such request and the Claims Administrator shall use that information in a further attempt to locate the Class Member and shall promptly re-mail Class Notice to any newly discovered address. The opt-out deadline and objection deadline shall not be extended pro rata for Settlement Class Members whose original Class Notices are re-mailed pursuant to this paragraph.

44. Because the Claims Administrator will be receiving the confidential information set forth above, the Claims Administrator shall execute an agreement to keep this information confidential and to use the information for the sole purpose of effecting the Settlement Agreement.

45. The Claims Administrator will update addresses based on any forwarding address received and/or requests to do so received from Class Members or Class Counsel.

46.     No later than fourteen (14) days prior to the Final Approval Hearing, the Claims Administrator shall provide counsel for the Parties with a declaration setting forth: (a) due diligence and proof of mailing of the Class Notice; (b) the total number of Class Members who were sent the Class Notice; and (c) the total number of Class Members who sent timely requests for exclusion or objections to the Settlement, along with the complete copies of all requests for exclusion and objections received, including the postmark dates for each request for exclusion or objection.   Counsel shall file such declaration with the Court.

## OPT-OUTS AND OBJECTIONS

47.     Requests for Exclusion:  The Class Notice shall provide that Class Members who wish to exclude themselves from the Settlement must submit a written statement requesting exclusion from the Settlement ("opt-out"), postmarked no later than the Opt-Out Deadline.  Such written request for exclusion must contain the name, address, telephone number, and email address of the Class Member requesting exclusion, and be personally signed by the Class Member who seeks to opt out.  No opt-out request may be made on behalf of a group of Class Members. The opt-out request must be sent by mail to the Claims Administrator and must be timely postmarked as set forth above.  The postmark date of the mailing envelope shall be the exclusive means used to determine whether an opt-out has been timely submitted.   The Claims Administrator shall provide the parties with copies of all opt-out requests on a weekly basis.  If the number of Class Members who file opt-out requests equal or exceed ten percent (10%) of the total number of all Class Members, then Wells Fargo, in its sole discretion, may, at any time prior to ten (10) business days after the Opt-Out Deadline, notify Plaintiffs' counsel that it believes that the Settlement Agreement cannot achieve its purpose.  In that event, this Settlement Agreement shall become null and void; the Action may continue; and the Parties shall jointly move that any and all orders entered pursuant to this Settlement Agreement be vacated.  Any Class Member who requests exclusion from (opts out of) the Settlement will not be entitled to any Settlement Award and will not be bound by the Settlement Agreement or have any right to object, appeal or comment thereon.

48.     <u>Objections</u>:  The Class Notice shall provide that any Class Members who wish to object to the Settlement Agreement must mail a written statement of objection to the Claims Administrator postmarked no later than the Opt-Out Deadline.  The Notice of Objection must state the basis for the objection.  Such objection must contain the name, address, telephone number, and email address of the Class Member making the objection, and be personally signed by the Class Member.  The Notice of Objection must also list any other cases in which the Class Member or his/her attorney has objected to a class settlement. The objection must be sent by mail to the Claims Administrator and must be timely postmarked as set forth above.  The postmark date of the mailing envelope shall be the exclusive means used to determine whether an objection has been timely submitted.  The Claims Administrator shall provide the Parties with copies of all objections on a weekly basis.  Class Members who fail to make objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement.

## FINAL APPROVAL AND JUDGMENT ORDER

49.     <u>Final Approval Motion</u>.  At least fourteen (14) days before the Final Approval Hearing, Plaintiff shall file a motion requesting that the Court grant final approval of the Settlement Agreement, with Class Counsel filing a memorandum of points and authorities in support of the motion, and addressing any timely submitted objections to the Settlement.

50.     <u>Matters to Be Considered at Final Approval Hearing</u>.  At the Final Approval Hearing, the Court will consider and determine whether the provisions of this Agreement should be approved, whether the Settlement should be finally approved as fair, reasonable, and adequate, whether any objections to the Settlement should be overruled, whether Class Counsel's motion for attorneys' fees and costs should be approved, and whether a Judgment finally approving the Settlement should be entered.

51.     This Agreement is subject to and conditioned upon the issuance by the Court of a Final Approval Order which grants final approval of this Agreement and:

07725.0152/3136763.1

SETTLEMENT AGREEMENT AND RELEASE

1545734.2

a.     Finds that the Class Notice satisfies the requirements of due process and Fed. R. Civ. P. 23(e)(1);

b.     Finds that the Agreement is fair, reasonable and adequate to the Class, that each Class Member (except those who submit a timely and valid request for exclusion from the Class) shall be bound by this Agreement;

c.     Dismisses on the merits and with prejudice all claims asserted in the Action against Wells Fargo;

d.     Permanently enjoins each and every Class Member (excluding those Class Members that submitted a timely and valid request for exclusion) from bringing, joining, or continuing to prosecute against Wells Fargo any action asserting the Released Claims; and

e.     Retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this Settlement.

## **TERMINATION OF AGREEMENT**

52.     The Named Plaintiff, on behalf of the Class Members, by Class Counsel, and Wells Fargo, by its counsel, shall each have the right to unilaterally terminate this Agreement by providing written notice of their election to do so to all other Parties hereto within ten (10) business days of:  (a) the Court's refusal to grant Preliminary Approval of this Agreement; (b) the Court's refusal to grant final approval of this Agreement; or (c) the date upon which the Judgment is modified or reversed in any material respect by the Ninth Circuit Court of Appeals or the U.S. Supreme Court.  The above notwithstanding, the Parties agree that should the Court modify the Agreement in any respect, the Parties will, within the above-indicated period, meet and confer in a good faith attempt to reach agreement and preserve the Agreement.

## **RELEASES**

53.     <u>Class Release</u>.  Subject to the approval of the Court and in consideration of the benefits inuring to the Named Plaintiff and Class Members hereto, upon entry of the Final Approval Order, the Named Plaintiff and each Class Member and his or her assigns, heirs, successors and personal representatives hereby release, resolve, relinquish, and discharge each and all of the Released Parties from each of the Released Claims that exist in their favor through

07725.0152/3136763.1

-20-

1   August 16, 2013.  The Named Plaintiff and Class Members further agree that they will not

2   institute any action or cause of action (in law, in equity, or administratively), suits, debts, liens, or

3   claims, known or unknown, fixed or contingent, which they may have or claim to have in state or

4   federal court, or with any state, federal or local government agency or with any administrative or

5   advisory body, asserting any of the Released Claims.

6          54.    Waiver of California Civil Code Section 1542.  Without limiting the foregoing, the

7   Released Claims specifically extend to claims that Class Members do not know or suspect to exist

8   in their favor at the time that the Settlement, and the releases contained therein, becomes

9   effective.  This paragraph constitutes a waiver of, without limitation to any other applicable law,

10  all rights under California Civil Code Section 1542 with respect to the Released Claims.  Section

11  1542 provides:

12          A general release does not extend to claims which the creditor does not

13          know or suspect to exist in his or her favor at the time of executing the

14          release, which if known by him or her must have materially affected his or

15          her settlement with the debtor.

16  As such, the participating Class Members understand and agree that they are providing the

17  Released parties with a full and complete release with respect to the Released Claims.

18          55.    Limit on Class Release.  Pursuant to Paragraph 4 of the Court's November 27,

19  2012 Notice of Factors to be Evaluated for any Proposed Class Settlement, the Parties recognize

20  that the Class Release will not apply to those Class Members whose Class Notices, after the

21  parties take the steps set forth in this Settlement Agreement and Release, are ultimately returned

22  as non-deliverable

23                              **MISCELLANEOUS**

24          56.    Future Change in Law.  To the extent Congress, the CFPB, the OCC, FEMA, or

25  another regulator promulgates any law or regulation that would govern the conduct affected by

26  the settlement, those laws and regulations shall control.

27          57.    Acknowledgment.  Each of the Parties acknowledges and represents that such

28  Party: (a) has fully and carefully read this Agreement prior to execution; (b) has been fully

07725.0152/3136763.1

-21-

apprised by counsel of the legal effect and meaning of the terms of this Agreement; (c) has had the opportunity to undertake whatever investigation or inquiry is necessary or appropriate in connection with this Agreement; (d) has been afforded the opportunity to negotiate any and all terms of this Agreement; and (e) is executing this Agreement voluntarily and free from any undue influence, coercion, or duress of any kind.

58. <u>Agreement to Cooperate</u>.  The Parties and their respective counsel will cooperate with each other and use their best efforts to effect the implementation of the Agreement.  In the event that the Parties are unable to reach agreement on the form or content of any document needed to implement the Agreement, or on any supplemental provisions that may become necessary to effectuate the terms of this Agreement, the Parties may seek the assistance of the Court to resolve such disagreement after meeting and conferring with each other in good faith to attempt to resolve the dispute.

59. <u>Authority</u>.  Each person executing this Settlement Agreement on behalf of any of the Parties represents that such person has the authority to execute this Agreement.

60. <u>Binding Upon Successors and Assigns</u>.  This Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Released Parties and the Parties, as previously defined.

61. <u>Construction</u>.  The Parties believe that the terms of this Agreement are a fair, adequate and reasonable settlement of this Action, and have arrived at this Settlement Agreement in arms-length negotiations and with the assistance of a United States Magistrate Judge, taking into account all relevant factors, present and potential.  This Agreement has been drafted jointly by counsel for the Parties.  Hence, in any construction or interpretation of this Agreement, the same shall not be construed against any of the Parties.

62. <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts.  All executed copies of this Agreement and photocopies thereof (including facsimile and/or emailed copies of the signature pages), shall have the same force and effect and shall be as legally binding and enforceable as the original.

63. <u>Defense Fees and Costs</u>.  All of Wells Fargo's own attorneys' fees and legal costs

07725.0152/3136763.1

SETTLEMENT AGREEMENT AND RELEASE

1545734.2

and expenses incurred in the Action (and in the original proceedings initiated by the Named Plaintiff) shall be borne by Wells Fargo from Wells Fargo's separate funds and not from the Gross Settlement Fund.

64. <u>Entire Agreement</u>.  This Agreement constitutes the entire fully-integrated agreement among the Parties relating to the Settlement.  All prior or contemporaneous agreements, understandings and statements, whether oral or written, and whether by a party or its counsel, are merged herein.  No oral or written representations, warranties or inducements of any kind have been made to any Party concerning this Agreement, other than as set forth herein.

65. <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of California.

66. <u>Headings and Captions</u>.  The headings and captions in this Agreement are for convenience only and in no way define, limit, or otherwise describe the scope or intent of this Agreement, or any term of this Agreement.  Each term of this Agreement is contractual and is not merely a recital.

67. <u>No Oral Modifications</u>.  This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest.  No rights hereunder may be waived except in writing.  No oral amendment or modification shall be permitted or effective.

68. <u>Notices</u>.  Unless otherwise agreed in writing, all notices to the Parties or counsel required by the Agreement shall be made in writing and communicated by first class mail and email to the following:

If to the Named Plaintiff or Class Counsel:

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Thomas E. Loeser
1918 Eighth Avenue
Suite 3300
Seattle, WA 98101
Telephone (206) 623-7292
Fax: (206) 623-0594
Email: toml@hbsslaw.com

07725.0152/3136763.1

-23-

SETTLEMENT AGREEMENT AND RELEASE

1545734.2

1    If to Defendants or Defendants' Counsel:

2         **SEVERSON & WERSON**
          Michael J. Steiner
3         One Embarcadero Center, Suite 2600
          San Francisco, CA 94111
4         Telephone: (415) 677-5611
          Fax: (415) 956-0439
5         E-mail: mjs@severson.com

6    69.   <u>Retention of Jurisdiction</u>.   The Court shall retain jurisdiction to interpret,

7    implement and enforce this Settlement Agreement.   The Parties consent to jurisdiction for this

8    purpose.

9

10   Mercedes Guerrero                          Wells Fargo       Bank, N.A.

11   Date: 03-10-14                             By:_____

12                                              Title_____

13                                              Date:_____

14

15   **APPROVED AS TO FORM AND CONTENT:**

16   **FOR PLAINTIFFS**

17

18   **HAGENS BERMAN SOBOL SHAPIRO LLP**
     Steve W. Berman
19   Thomas E. Loeser
     1918 Eighth Avenue, Suite 3300
20   Seattle, WA 98101
     Telephone: (206) 623-7292
21   Fax: (206) 623-0594
     Email:   steve@hbsslaw.com
22           toml@hbsslaw.com

23   *Counsel for Plaintiff and the Certified Class*

24   **FOR DEFENDANTS**

25

26   **SEVERSON & WERSON**
     Michael J. Steiner
27   One Embarcadero Center, Suite 2600
     San Francisco, CA 94111
28   Telephone: (415) 677-5611

07725.0152/3136763.1                    -24-

SETTLEMENT AGREEMENT AND RELEASE

1545734.2

If to Defendants or Defendants' Counsel:

    **SEVERSON & WERSON**
    Michael J. Steiner
    One Embarcadero Center, Suite 2600
    San Francisco, CA 94111
    Telephone: (415) 677-5611
    Fax: (415) 956-0439
    E-mail: mjs@severson.com

    69.   <u>Retention of Jurisdiction</u>.   The Court shall retain jurisdiction to interpret, implement and enforce this Settlement Agreement.  The Parties consent to jurisdiction for this purpose.

Mercedes Guerrero          Wells Fargo Bank, N.A.

                    By: _____

Date: _____         Title _EVP, Head of Home Lending Servicing_
                    Date: _3/14/2014_

**APPROVED AS TO FORM AND CONTENT:**

**FOR PLAINTIFFS**

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman
Thomas E. Loeser
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Fax: (206) 623-0594
Email:   steve@hbsslaw.com
       toml@hbsslaw.com

_Counsel for Plaintiff and the Certified Class_

**FOR DEFENDANTS**

**SEVERSON & WERSON**
Michael J. Steiner
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 677-5611

-24-

SETTLEMENT AGREEMENT AND RELEASE

07725.0152/3136763.1

1545734.2

Fax: (415) 956-0439
E-mail: mjs@severson.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28