IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MERCEDES GUERRERO, individually
and for other persons similarly situated,

    Plaintiff,

  v.

WELLS FARGO BANK, N.A.,

    Defendant.

No. C 12-04026 WHA

**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

## INTRODUCTION

In this class action involving force-placed flood insurance on home mortgages, class representative moves for preliminary approval of a proposed class settlement. Reserving on final approval of the settlement and to the extent stated below, the motion is **GRANTED**.

## STATEMENT

The background of this action is set forth in prior orders (Dkt. Nos. 157, 167, *and* 191). In brief, this action began in June 2012. An amended complaint was permitted to add plaintiff Mercedes Guerrero, a California resident, as a putative class representative (Dkt. No. 82). The other named plaintiffs in this action — Danny and Beverly Lane — have already stipulated to dismissal of their claims, and Wells Fargo Bank, N.A. is the only remaining defendant.

According to the amended complaint, Guerrero obtained a mortgage loan based on a Federal Housing Administration form mortgage. Wells Fargo then serviced that mortgage beginning in 2010. Because Guerrero's home was located in a flood-hazard area, she was

required to maintain adequate flood insurance; otherwise, Wells Fargo was authorized to (and did) force-place flood insurance on her property. In doing so, however, Wells Fargo allegedly entered into exclusive purchasing agreements with two insurers — American Security Insurance Company and QBE Insurance Corporation — so that ASIC and QBE would pay "kickbacks" in unearned commissions to a Wells Fargo affiliate. The amended complaint further claims that Wells Fargo maximized these kickbacks via a "backdating" practice, *i.e.*, by force-placing flood insurance polices with retroactive effective dates. Guerrero thus sought to represent a California class based on Wells Fargo's alleged commissions and backdating, claiming breach of contract, unjust enrichment or restitution, conversion, and violation of California's Unfair Competition Law.

On June 21, 2013, a California class was conditionally certified with Guerrero as class representative. That class was then certified under Rule 23 on August 16, 2013, upon appointment of new class counsel and counsel for Guerrero in her individual capacity. Since then, the parties have agreed to a proposed class settlement (Dkt. No. 203), for which Guerrero now moves for preliminary approval. At the hearing on April 7, 2014, counsel for Guerrero and the class systematically went through all of the factors set forth in the earlier-filed notice by the Court regarding factors to be evaluated for any proposed class settlement (Dkt. No. 39), and explained how each factor militates in favor of preliminary approval. Accordingly, the order decides as follows.

**ANALYSIS**

"A settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotations omitted).

**1. BENEFITS TO CLASS MEMBERS.**

The proposed class settlement would offer several benefits to the California class. *First*, Wells Fargo would pay a gross settlement amount of $625,000, to be distributed on a *pro rata* basis to class members. Guerrero flags, however, her request that the $625,000 amount be reduced by the following, subject to the undersigned judge's approval: (1) attorney's fees and

1  costs, which will not exceed 23% of the $625,000 amount (*i.e.*, $143,750); (2) the claims
2  administrator's fees and costs, which are both estimated and limited at $28,604 (*see* Loeser Exh.
3  A at ¶ 35; Loeser Exh. D at 11); and (3) a $7,500 "service award" for Guerrero as compensation
4  for her time and effort in prosecuting this action.  The *net* settlement amount would thus be
5  $445,146, if all of the foregoing deductions are made.

6      This order need not decide whether to approve of these requested reductions at this stage,
7  as "the settlement is *not* conditioned on the Court's approval of attorney[']s fees and costs, or
8  any service award to [Guerrero]" (Br. 3) (emphasis added).  While it is unlikely that the
9  undersigned judge would approve of the full service award as requested for Guerrero, class
10 counsel should instead move for any attorney's fees and costs, administrative expenses, and
11 service award for Guerrero when they move for final approval of the class settlement, as detailed
12 in the last paragraph of this order.  It is worth noting, however, that even the net amount of
13 $445,146 would be an adequate recovery for the class.  In fact, the $445,146 amount would
14 comprise a 121.8% recovery of the best-case amount for claim relief, which is calculated to be
15 $365,179.08 by Guerrero's damages expert (Loeser Exh. C at 2).

16     *Second*, the settlement would enjoin Wells Fargo and any of its affiliates from receiving
17 the following (Loeser Exh. A at ¶ 15):

> [C]ommissions in connection with the placement of lender[-
> ]placed flood insurance on any residential California real estate
> that serves as collateral for an FHA Loan unless the receipt of such
> commissions is specifically authorized by statute, regulation or a
> federal or state regulatory body with appropriate jurisdiction.

21 This injunction would last for three years from the date of final approval of the settlement.  Of
22 note, the settlement states that the monetary value of the injunction will be calculated and
23 presented by Guerrero when she moves for final approval of the settlement (*id.* ¶ 16).

24     *Third*, there would be no claim procedure.  Wells Fargo's records already identify the
25 1,886 class members, while providing enough data for Guerrero's damages expert to calculate
26 class members' *pro rata* portion of the net settlement amount (*see id.* ¶¶ 22–23; Loeser Exh. C at
27 1).  Upon final approval, settlement checks would be mailed to each eligible class member,
28 based on mailing addresses given by Wells Fargo and updated as needed by the claims

3

1    administrator (Loeser Exh. A at ¶¶ 25–26).  Importantly, any remaining portion of the net

2    settlement amount would *not* revert to Wells Fargo.  The money instead would be redistributed

3    to eligible class members (if more than ten percent of the settlement amount remained), *or*

4    escheated to the state of California (if less than ten percent remained) (*id.* ¶¶ 28–29).  At the

5    April 7 hearing, counsel were advised to discuss the possibility of a *cy pres* distribution of any

6    remaining net settlement amount, instead of an escheat to California.

7        Give the monetary recovery, the injunctive relief, and the lack of claim procedure or

8    reversion to Wells Fargo, the order finds that these benefits to the class support preliminary

9    approval.

10       **2.    SCOPE OF RELEASE.**

11       The settlement would limit the scope of release to "claims or causes of actions actually

12   asserted on behalf of [Guerrero] and Class Members in the First Amended Complaint" (*id.* at ¶¶

13   2(aa), 53).  Among other allegations, this includes "claims that Wells Fargo's business

14   arrangements with lender-placed insurers were collusive, exploitative, or constituted self-

15   dealing; that commission paid by lender-placed insurers to Wells Fargo or its affiliate Wells

16   Fargo Insurance, Inc. for lender-placed flood insurance were wrongful or constituted

17   'kickbacks'; . . . [and] that Wells Fargo 'backdated' insurance" (*id.* at ¶ 2(aa)).  In other words,

18   the release would apply to claims relating to those certified for class treatment.

19       The release would also be restricted to class members who actually receive the proposed

20   notice of class settlement.  Specifically, the settlement states:  "[T]he Class Release will not

21   apply to those Class Members whose Class Notices, after the parties take the steps set forth in

22   this Settlement Agreement and Release, *are ultimately returned as non-deliverable*" (*id.* ¶ 55)

23   (emphasis added).

24       In a joint statement filed on April 2, 2014, the parties clarify the definition of the class

25   certified in this action.  Although prior orders had certified the California class as borrowers with

26   FHA mortgages who were charged by Wells Fargo "or an affiliate of [Wells Fargo]" for force-

27   placed flood insurance, the settlement's class definition left out the aforementioned quote (*see id.*

28   ¶ 2(e)).  The joint statement now explains that the phrase, "or an affiliate of [Wells Fargo]," was

4

1 inadvertently omitted from the settlement, but that Wells Fargo's class list still includes
2 California FHA borrowers who may have been charged by a Wells Fargo affiliate, as opposed to
3 Wells Fargo itself. Moreover, the parties have submitted an amended settlement to include the
4 omitted phrase back in the class definition.

5 The scope of release for the certified class would thus be sufficiently narrow to favor
6 preliminary approval.

   **3.   CLASS NOTICE.**

8 Guerrero also proposes a notice of class settlement, for which several edits were
9 suggested at the April 7 hearing (*see* Loeser Exh. B).

10 The notice will be sent as follows. The claims administrator will use first-class mail to
11 send the notice to class members, within thirty days of receiving Wells Fargo's list of class
12 members' names and last-known billing addresses (this, in turn, will be provided by Wells Fargo
13 within ten business days of preliminary approval). In addition, the claims administrator will set-
14 up a telephone call center facility and a website to provide more information about the
15 settlement. The website, for instance, will post copies of the settlement, the notice of class
16 settlement, and this order (*see* Loeser Exh. A at ¶¶ 37–42).

17 This order therefore approves of the proposed notice of class settlement.

**CONCLUSION**

19 Subject to final approval of the settlement and to the extent stated, the motion for
20 preliminary approval is **GRANTED**. The proposed notice of class settlement is also **APPROVED**.
21 Please note that jurisdiction over all matters relating to the interpretation, administration,
22 implementation, effectuation, and enforcement of the settlement would be retained for only three
23 years from the date of final approval.

24 The following dates are hereby set in this action. Within **TEN BUSINESS DAYS** of this
25 order, Wells Fargo will transmit the list of class members' names and last-known billing
26 addresses, as described in Paragraph 21 of the settlement, to the claims administrator. This will
27 be done pursuant to the parties' "agreed protective order" under Paragraph 38 of the settlement.
28 Within **THIRTY CALENDAR DAYS** of receiving that list, the claims administrator will send the

notice of class settlement to class members, using first-class mail; the claims administrator will also arrange for a telephone call center facility as well as a website, to provide information about the settlement by that date that the notice of class settlement is mailed to the class.

Class counsel shall then file a motion for (1) final approval of the settlement, (2) any attorney's fees and costs, (3) any fees and costs by the claims administrator, and (4) any service award for Guerrero, by **JULY 2, 2014**. Class members must postmark and mail to the claims administrator any written objections to the settlement, by **JULY 25, 2014**. Class members must also postmark and mail any written requests to opt out of the class, by **JULY 25, 2014**. Class counsel will then file a reply brief in support of the final approval motion by **AUGUST 4, 2014**. The final approval hearing will begin at **9 AM ON AUGUST 18, 2014**.

**IT IS SO ORDERED.**

Dated: April 7, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE