STEVE W. BERMAN, *pro hac vice*
THOMAS E. LOESER (202724)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com

Jeff D. Friedman (173886)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com

*Counsel for Plaintiff and the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MERCEDES GUERRERO, individually and for other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | No. 12-cv-4026-WHA<br><br>**CLASS ACTION**<br><br>NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT<br><br>Date: September 2, 2014<br>Time: 10:30 a.m.<br>Courtroom: 8, 19th Floor, SF<br>Judge: Hon. William Alsup<br><br>[Notice and Motion for Attorneys' Fees and Service Award separately filed on July 3, 2014 for simultaneous hearing on September 2, 2014] |

| | |
|---|---|
| 1 | **NOTICE AND MOTION** |
| 2 | **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:** |
| 3 | **PLEASE TAKE NOTICE** that on September 2, 2014 at 10:30 a.m., or as soon as the |
| 4 | matter may be heard, in the United States District Court of the Northern District of California, San |
| 5 | Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, Courtroom 8, |
| 6 | 19th Floor, Honorable William Alsup presiding, Plaintiff and Class Counsel will and hereby do |
| 7 | move the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure for an order and |
| 8 | judgment granting final approval to the class action settlement in this case. |
| 9 | This motion is supported by the Order Granting Preliminary Approval of Class Action |
| 10 | Settlement (Dkt. No. 212) and associated filings, the Motion for Attorneys' Fees and Service |
| 11 | Award (Dkt. No. 224) and associated filings, including the Supplemental Report of Birny |
| 12 | Birnbaum dated May 29, 2014 (Dkt. No. 225-3), the memorandum below, and the following |
| 13 | supporting declarations filed herewith: |
| 14 | 1.    Declaration of Tricia M. Solorzano on Behalf of the Settlement Administrator; and |
| 15 | 2.    Declaration of Thomas E. Loeser, Esq. |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. SUMMARY OF ARGUMENT..............................................................................................2

III. STATEMENT OF THE CASE, SETTLEMENT, AND CLASS NOTICE.............................2

    A. The Preliminary Approval Motion and Order, and Separately-Filed Fee Motion Detail the Background of the Case and Settlement ..........................................2

    B. Summary of the Settlement Agreement and Allocation Plan.......................................3

    C. Summary of Class Notice..............................................................................................5

IV. LAW AND ARGUMENT......................................................................................................6

    A. The Court Should Grant Final Approval of the Settlement..........................................6

        1. The settlement is fair, reasonable and adequate. ..............................................6

        2. Class Notice satisfied Rule 23 and due process. ..............................................9

    B. The Court Should Approve the Plan of Allocation ....................................................10

    C. The Court Should Approve Habitat For Humanity as *Cy Pres* and/or Designate Others ........................................................................................................11

V. CONCLUSION ....................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Wells Fargo Bank, N.A.*,
   No. 13-cv-876, 2014 U.S. Dist. LEXIS 13150 (W.D. Okla. Jan. 24, 2014) ................................8

*Blass v. Flagstar Bancorp, Inc.*,
   841 F. Supp. 2d 1280 (S.D. Fla. 2012) ......................................................................................8

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ............................................................................................2, 6, 7

*Cannon v. Wells Fargo Bank, N.A.*,
   No. 12-cv-1376, Dkt. No. 106 (N.D. Cal. July 2, 2013) ............................................................8

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .................................................................................................10

*Cohen v. American Sec. Ins. Co.*,
   735 F.3d 601 (7th Cir. 2013) .....................................................................................................8

*Decambaliza v. QBE Holdings, Inc.*,
   No. 3:13-cv-286, Dkt. No. 71 (W.D. Wisc. Oct. 25, 2013) .......................................................8

*Degutis v. Financial Freedom LLC*,
   No. 2:12-cv-319, 2013 U.S. Dist. LEXIS 150086 (M.D. Fla. Oct. 18, 2013) ............................8

*Feaz v. Wells Fargo Bank, N.A.*,
   745 F.3d 1098 (11th Cir. Feb. 10, 2014) ...................................................................................8

*Gibson v. Wells Fargo Home Fin. LLC*,
   No. 8:11-cv-1302, Dkt. Nos. 102 & 108 (M.D. Fla. Apr. 2, 2012 & Apr. 30,
   2012) ..........................................................................................................................................8

*Glass v. UBS Fin. Servs.*,
   No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007),
   *aff'd*, 331 Fed. App'x 452 (9th Cir. 2009) .................................................................................7

*Gordon v. Wells Fargo Home Fin., LLC*,
   No. 8:11-cv-2001, 2013 U.S. Dist. LEXIS 15461 (M.D. Fla. Feb. 5, 2013) ..............................8

*Gustafson v. BAC Home Loan Servicing, LP*,
   294 F.R.D. 529 (C.D. Cal. 2013) ...............................................................................................8

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...................................................................................................7

*In re HP Inkjet Printer Litig.*,
    716 F.3d 1173 (9th Cir. 2013) ..................................................................................................8

*Kolbe v. BAC Home Loans Servicing, LP*,
    738 F.3d 432 (1st Cir. 2013) ................................................................................................8, 9

*Kunzelmann v. Wells Fargo Bank, N.A.*,
    No. 9:11-cv-81373, 2013 U.S. Dist. LEXIS 3962 (S.D. Fla. Jan. 10, 2013) ...............................8

*LaCroix v. U.S. Bank, N.A.*,
    No. 11-cv-3236, 2012 U.S. Dist. LEXIS 85494 (D. Minn. June 20, 2012) .................................8

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................................................................................10

*Marshall v. Holiday Magic, Inc.*,
    550 F.2d 1173 (9th Cir. 1977) ..................................................................................................7

*McKenzie v. Wells Fargo Home Mortg., Inc.*,
    No. 11-cv-4965, 2012 WL 5372120 (N.D. Cal. Oct. 30, 2012).................................................8

*Miller v. Wells Fargo Bank, N.A.*,
    No. 13-cv-1541, 2014 U.S. Dist. LEXIS 14060 (S.D.N.Y. Jan. 30, 2014).................................8

*Monterrubio v. Best Buy Stores, L.P.*,
    291 F.R.D. 443 (E.D. Cal. 2013)...............................................................................................8

*National Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)...............................................................................................9

*In re Oracle Sec. Litig.*,
    No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 16, 1994)......................10

*Radcliffe v. Experian Info. Solutions*,
    715 F.3d 1157 (9th Cir. 2013) ..................................................................................................9

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ....................................................................................................7

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ......................................................................................................7

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA)
    Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014)...............................................................................................7

## I. INTRODUCTION

This motion seeks final approval of a California class action settlement resolving allegations of abusive lender-placed flood insurance ("LPFI") practices by Defendant Wells Fargo Bank, N.A. ("Wells Fargo") with respect to FHA residential mortgages. The settlement provides a $625,000 non-reversionary gross common fund for the benefit of the class of borrowers charged LPFI premiums from July 31, 2008 to August 16, 2013, as well as injunctive relief. The key events underlying this motion are summarized and incorporated as follows:

- In March 2014, the parties executed the Settlement Agreement and Release (the "Settlement Agreement") memorializing the proposed settlement. *See* Dkt. No. 203-1.
- On April 7, 2014, this Court issued the Order Granting Preliminary Approval of Class Settlement (the "Preliminary Approval Order" or "Prelim. App."). *See* Dkt. No. 212.
- By May 28, 2014, the Settlement Administrator completed the initial mailing of the Court-approved Class Notice to each of the 1,909 unique Class Members identified through Wells Fargo loan data. *See* Declaration of Tricia M. Solorzano on Behalf of the Settlement Administrator (the "Solorzano Decl."), ¶ 10.
- On July 3, 2014, Class Counsel separately filed the Motion for Attorneys' Fees and Service Award (the "Fee Motion" or "Fee Mtn."), and sent it to the Settlement Administrator for it to be posted on the settlement website so that it was publicly accessible. *See* Solorzano Decl., ¶ 15.
- August 8, 2014 is the deadline for Class Members to request exclusion or object. Dkt. No. 216. To date there have been no objections or requests for exclusion. *See* Solorzano Decl., ¶¶ 19-21.

Plaintiff now seeks an order and judgment granting final approval to the settlement, including the proposed allocation of the Settlement Fund, as follows:

| Gross Settlement Fund | $625,000.00 | 100% |
|---|---|---|
| Attorneys' Fees (incl. expenses) | ($143,750.00) | 23% |
| Proposed Service Award | ($7,500.00) | 1.2% |
| Settlement Administration | ($28,604.00) | 4.58% |
| **Net Distribution to Class** | **$445,146.00** | **71.22%** |

MOT. FOR MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT CASE NO.: 12-04026-WHA - 1
010387-11  702537 V1

## II. SUMMARY OF ARGUMENT

The Court should approve the settlement as fair, reasonable, and adequate. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); Fed. R. Civ. P. 23(e)(2). First, the procedural indicia of fairness are strong. The settlement is the product of informed, arm's-length negotiations overseen by an experienced mediator and conducted by highly resourced and experienced attorneys whose interests were well aligned with those of the Class. Second, the settlement result is empirically excellent. The $625,000 Settlement Fund is non-reversionary and represents 180% of the best-case scenario damages. The settlement also provides for direct claims-paid distribution and valuable injunctive relief. And the class definition and release are narrowly tailored to the litigation. Third, as of the date of this filing, the reaction of the Class supports the settlement. After implementation of a comprehensive notice plan, there are no exclusion requests or objectors.

The proposed allocation of the Net Settlement Fund (after attorneys' fees, expenses, and a service award, which are discussed in the Fee Motion) among the Class Members is also fair. Unless they opt-out, all Class Members will automatically be sent shares of the fund proportionate to the premiums each Class Member was charged by Wells Fargo during the Class Period, as calculated by Plaintiffs' Damages Expert, Birny Birnbaum, in consultation with Class Counsel. *See* Supplemental Report of Birny Birnbaum (the "Birnbaum Report") (Dkt. No. 225-3). There will be a second distribution if more than 10% of the Net Settlement Fund remains after the first distribution. Any final residual will go to Habitat For Humanity or such other *cy pres* recipient as the Court approves. No settlement funds will ever revert to Wells Fargo.

### III. STATEMENT OF THE CASE, SETTLEMENT, AND CLASS NOTICE

**A. The Preliminary Approval Motion and Order, and Separately-Filed Fee Motion Detail the Background of the Case and Settlement**

The procedural history, facts, and law of this case are set forth in the Preliminary Approval Motion (Dkt. No. 198, *et seq.*) and Fee Motion (Dkt. No. 224, *et seq.*) as further detailed and affirmed in the supporting declarations filed therewith by Thomas Loeser (Dkt. Nos. 199, 225), as

well as the Court's Order Granting Preliminary Approval of Class Settlement (Dkt. No. 212). These pleadings are incorporated by reference and cited herein as indicated.

**B.     Summary of the Settlement Agreement and Allocation Plan**

The intent of the settlement is to resolve all claims concerning Wells Fargo's LPFI business practices with respect to FHA loans for California borrowers that were actually made in Ms. Guerrero's complaint in this case. *See* Settlement Agreement, Dkt. No. 203-1. The Class is:

> All persons with a residential mortgage loan secured by an FHA mortgage, who were charged by Wells Fargo Bank, N.A., [or an affiliate of Wells Fargo Bank, N.A.,] for force-placed flood insurance on property in California from July 31, 2008, through August 16, 2013, where such flood insurance was procured with the assistance of QBE Insurance Corporation or American Security Insurance Company, or their affiliates. This class excludes charges collected or extinguished through foreclosure, short-sale agreement, or grant of a deed in lieu of foreclosure or through cancellation or waiver by borrower's agreement with the lender.

Settlement Agreement, ¶ 2.e.[1] And the "Released Claims" are limited to those "claims or causes of actions actually asserted on behalf of [Plaintiff Guerrero] and Class Members in the First Amended Complaint." Settlement Agreement, ¶ 2(aa), 53; *See also* Prelim. Approval Order at p. 4.[2]

The principal consideration exchanged for the settlement and release is the $625,000 "Gross Settlement Fund." *Id.*, ¶ 2(q). The Settlement Agreement requires Wells Fargo to deliver these funds within 15 days of final approval for deposit into a Qualified Settlement Fund account with all interest accruing for the benefit of the Settlement Class. *See id.*, ¶ 18. Subject to final approval, on the settlement's "Effective Date" (*see id.*, ¶ 2(l)), the Gross Settlement Fund will first be used to pay approved Class Counsel attorneys' fees, a representative plaintiff service award – if approved, and settlement administration expenses. *See id.*, ¶ 19. The Settlement Administrator will then distribute the remaining "Net Settlement Fund" to the Settlement Class Members on a claims-paid basis. *See id.*, ¶ 20.

---

[1] The Class definition in the Settlement Agreement inadvertently omitted the bracketed language concerning affiliates of Wells Fargo. The Class Notice corrected the definition. *See* Dkt. No. 209.

[2] Note that the release does not apply whatsoever to "Class Members whose Class Notices … [were] … returned as non-deliverable." Settlement Agreement, ¶ 55.

Specifically, unless they opt-out, or their Class Notice was returned as undeliverable, every Class Member will be sent a check for their share of the Net Settlement Fund at the best available address the Settlement Administrator has found for them through the notice process. *See id.*, ¶¶ 21-23; Solorzano Decl., ¶¶ 7-14. The specific amount of the distribution to each Class Member depends on each Class Member's total net premiums paid to Wells Fargo for Lender Placed Flood Insurance during the Class Period. By way of example, incorporating the proposed distribution in this Motion:

> Net Settlement Fund $445,146
>
> Total Settlement Damages $347,751.59[3]
>
> Factor is 128% = $445,146 / $347,751.59

Class Members in the aggregate will get 128% of their individual Settlement Damages.[4] The dollar amount each individual Class Member receives will depend entirely upon the amount each individual Class Member was charged by Wells Fargo for LPFI during the Class Period. Again, incorporating the proposed distribution in this Motion, the Net Settlement Fund of $445,146 constitutes 20.1% of the $ 2,216,766.44 in total net premiums charged to all Class Members during the Class Period. *See* Birnbaum Report (Dkt. No. 225-3), ¶ 4. As such, each Class Member will receive a payment equal to a 20.1% refund of the total net premiums that such Class Member was charged during the Class Period.

The Settlement Agreement provides Settlement Class Members 120 days to cash their checks, and then provides for a second distribution in the event that the amount of money remaining in the Net Settlement Fund exceeds 10% of the original Net Settlement Fund (based upon uncashed checks). *See* Settlement Agreement, ¶¶ 27-28. In that event, second settlement payments will be sent to all those Settlement Class Members who cashed their first checks for a share of the residual equal to the proportion of their original payments to the total of all the original

---

[3] Commission damages of $169,075.01+backdating damages of 196,123.80 – overlap of $17,447.17. *See* Birnbaum Report (Dkt. No. 225-3), ¶¶ 5-9.

[4] The aggregate Settlement Damages calculation and factor are subject to nominal further adjustment as the number of Class Members and their Settlement Damages is refined based on the exclusion of opt-outs (if any). *See id.*

payments that were cashed. *See id.*, ¶ 28. Any unclaimed monies remaining will be paid to Habitat For Humanity (www.habitat.org) or such other *cy pres* recipient that the Court approves.[5] Nothing reverts to Wells Fargo under any circumstances. *See id.*, ¶ 29.

Finally, the Settlement Agreement also provides for injunctive relief. *See id.*, ¶¶ 15-17. Wells Fargo has agreed to a three-year complete moratorium on the receipt of commissions by Wells Fargo and its affiliates. Compared to Wells Fargo's prior practices, this injunctive relief will result in substantial monetary savings for borrowers, including but not limited to, Class Members, in the years to come. *See* Loeser Decl. ISO Fee Motion (Dkt. No. 225), ¶¶ 16-17.

**C.     Summary of Class Notice**

The Settlement Administrator is an expert in class notice and settlement administration programs. *See* Solorzano Decl., ¶¶ 5-6. Following preliminary approval, it dutifully performed the notice plan in accordance with the Settlement Agreement and Preliminary Approval Order. *See id.*, ¶¶ 7-18. The data that Wells Fargo provided as both the class list and basis for damages computations originally consisted of 3,730 records of LPFI transactions for Class Members, including loan numbers and contact information. *See id.*, ¶ 8. After consolidating and de-duplicating the records, the Settlement Administrator determined that the data represented 1,909 unique Settlement Class Members. *See id.*, ¶ 9.

After preliminarily updating and verifying the 1,909 member class list, the Settlement Administrator sent the Court-approved Class Notice to each of them via first class mail. *See id.*, ¶ 10. It also set up a toll free number and an email inquiry system, and published the Class Notice and other important case documents and information on a dedicated settlement website. *See id.*, ¶¶ 15-18. From this initial mailing, the postal service returned 94 pieces of mail as *undeliverable* without any forwarding address. *See id.*, ¶ 12. For these, the Settlement Administrator conducted additional searches pursuant to the Settlement Agreement and based upon commercially available

---

[5] The Settlement Agreement called for the residue, if any, to be escheated to the State of California. *See* Settlement Agreement, ¶ 29. The Court, however, stated its preference that these funds go to an appropriate *cy pres* organization. Subject to approval of the Court, the parties have agreed that any such residue shall be paid to Habitat for Humanity.

1   "skip trace" databases. *See id.*, ¶¶ 12-14. This resulted in updated contact information for 49 Class

2   Members, to whom the Class Notice was promptly re-mailed. *See id.* Of these, 12 were again

3   returned undeliverable. *Id*. Based on the above, there were 57 (=94 minus 49 + 12) Class

4   Members who were not locatable for mailed service of Class Notice in this case

5   ("undeliverable(s)"). *See id.* The Settlement Administrator knows of no practicable way to mail

6   notice to these Class Members. *See id.*, ¶ 14.

7   In accordance with the Preliminary Approval Order, the Class Notice instructs recipients to

8   send requests for exclusion or objections to the Settlement Administrator postmarked by August 8,

9   2014. *See id.*, ¶ 21. As of the date of this filing, the Settlement Administrator has received no

10  requests for exclusion and no objections. *See id*., ¶ 20.

11  Excluding *undeliverables*, the plan of allocation is to send initial distribution checks to an

12  estimated 1,852 Class Members (less opt-outs, if any).

### IV.   LAW AND ARGUMENT

**A.   The Court Should Grant Final Approval of the Settlement**

**1.   The settlement is fair, reasonable and adequate.**

Final approval should be granted because "the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth*, 654 F.3d at 946; Fed. R. Civ. P. 23(e)(2). "Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)) (internal quotation marks omitted). Generally speaking, the central concern is that class counsel may – consciously or unconsciously – collude with the defendants by tacitly reducing the overall settlement in return for a higher attorney's fee. *See id.*

"To guard against this potential for class action abuse, Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *Id.* "The factors in a court's fairness assessment will naturally vary from case to case, but courts generally must weigh:

(1) the strength of the plaintiff's case;

>(2) the risk, expense, complexity, and likely duration of further litigation;
>(3) the risk of maintaining class action status throughout the trial;
>(4) the amount offered in settlement;
>(5) the extent of discovery completed and the stage of the proceedings;
>(6) the experience and views of counsel;
>(7) the presence of a governmental participant; and [6]
>(8) the reaction of the class members to the proposed settlement.

*Id.*

"This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). Ultimately, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Hanlon*, 150 F.3d at 1027. Accordingly, where a "settlement is a product of informed, arms-length negotiations," it is entitled to a "presumption of fairness." *In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014) (citing *Rodriguez*, 563 F.3d at 965-66 ("[w]e put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution")).

Here, factors 4-6 weigh heavily in favor of the settlement because they encompass the evidence that the settlement is: (a) the product of vigorous, informed, arm's-length negotiations; (b) conducted by highly experienced, resourced, and regarded Class Counsel; (c) who represented the interests of the Class in a procedurally sound manner; (d) and thus obtained a proposed gross settlement equal to 180% of best-case damages scenario. *See* Loeser Decl. ISO Prelim. Approval,

---

[6] The participation of a governmental entity presumably "serves to protect the interest of the class members." *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). But where, as here, "[t]here is no indication that any governmental entity participated in the settlement of the instant action … this factor favors neither approval nor disapproval of the settlement." *Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *15 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 Fed. App'x 452 (9th Cir. 2009).

MOT. FOR MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT CASE NO.: 12-04026-WHA - 7
010387-11 702537 V1

1   ¶¶ 7-22 (Dkt. No. 199); Birnbaum Report, ¶ 9 (Dkt. No. 225-3). Moreover, collusion concerns are

2   minimized in this case because the attorney fee sought is below the 25% benchmark percentage-of-

3   fund, which is favored precisely because it helps "ensure faithful representation by tying together

4   the interests of class members and class counsel." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173,

5   1178 (9th Cir. 2013). Under such circumstances, there is no cause to second guess Class Counsels'

6   decision in favor of the settlement. *See Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 453-

7   454 (E.D. Cal. 2013) ("even in class action contexts … the trial judge, absent fraud, collusion, or

8   the like, should be hesitant to substitute its own judgment for that of counsel"); *see also Rodriguez*,

9   563 F.3d at 965.

10   <u>Factors 1-3</u> also weigh heavily in favor of the proposed settlement. LPI litigation is

11   complex, expensive, and risky, and has resulted in numerous dismissals and denials of class

12   certification in numerous cases nationwide.[7] Here, Wells Fargo is a formidable defendant with

13   virtually unlimited resources to engage in litigation of extreme duration.

14   Further, LPFI involve heightened complexity and risk because of the effect of the National

15   Flood Insurance Act ("NFIA") and Federal Emergency Management Agency ("FEMA")

16   regulations. *See*, *e.g.*, *Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 447-449 (1st Cir.

---

[7] *See*, *e.g.*, *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098 (11th Cir. Feb. 10, 2014) (affirming dismissal of lender-placed insurance lawsuit); *Cohen v. American Sec. Ins. Co.*, 735 F.3d 601 (7th Cir. 2013) (same); *Kolbe b. BAC Hom Loan Servicing, LP*, 738 F.3d 432 (1st Cir. 2013) (*en banc*) (split decision resulting in affirming dismissal of force-placed flood insurance action); *Miller v. Wells Fargo Bank, N.A.*, No. 13-cv-1541, 2014 U.S. Dist. LEXIS 14060 (S.D.N.Y. Jan. 30, 2014) (dismissing force-placed insurance claims); *Ali v. Wells Fargo Bank, N.A.*, No. 13-cv-876, 2014 U.S. Dist. LEXIS 13150 (W.D. Okla. Jan. 24, 2014) (same); *Decambaliza v. QBE Holdings, Inc.*, No. 3:13-cv-286, Dkt. No. 71 (W.D. Wisc. Oct. 25, 2013) (same); *Degutis v. Financial Freedom LLC*, No. 2:12-cv-319, 2013 U.S. Dist. LEXIS 150086 (M.D. Fla. Oct. 18, 2013) (same); *Cannon v. Wells Fargo Bank, N.A.*, No. 12-cv-1376, Dkt. No. 106 (N.D. Cal. July 2, 2013) (dismissing backdating claims); *LaCroix v. U.S. Bank, N.A.*, No. 11-cv-3236, 2012 U.S. Dist. LEXIS 85494 (D. Minn. June 20, 2012) (dismissing force-placed insurance claims); *Gibson v. Wells Fargo Home Fin. LLC*, No. 8:11-cv-1302, Dkt. Nos. 102 & 108 (M.D. Fla. Apr. 2, 2012 & Apr. 30, 2012) (same and then striking counts of amended complaint concerning force-placed insurance); *McKenzie v. Wells Fargo Home Mortg., Inc.*, No. 11-cv-4965, 2012 WL 5372120 (N.D. Cal. Oct. 30, 2012) (dismissing over-insurance claims); *Blass v. Flagstar Bancorp, Inc.*, 841 F. Supp. 2d 1280 (S.D. Fla. 2012) (dismissing force-placed insurance claims); *see also Gustafson v. BAC Home Loan Servicing, LP*, 294 F.R.D. 529 (C.D. Cal. 2013) (denying class certification); *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-cv-81373, 2013 U.S. Dist. LEXIS 3962 (S.D. Fla. Jan. 10, 2013) (denying class certification); *Gordon v. Chase Home Fin., LLC*, No. 8:11-cv-2001, 2013 U.S. Dist. LEXIS 15461 (M.D. Fla. Feb. 5, 2013) (denying class certification).

1    2013). Even commission a/k/a kickback claims, for example, are subject to real risk by the

2    argument (albeit Plaintiffs' disagree) that the ultimate premium price paid by the borrowers is less

3    than that authorized by the federal scheme regardless of who received the premiums. These

4    arguments and defenses abound such that proceeding through trial, and likely appeal against an

5    entity like Wells Fargo could involve litigation of extreme duration. *See* Loeser Decl., ¶ 10. Factors

6    1-3 strongly favor the settlement because this case could have been litigated for three times as long

7    to reach the same (or a worse) result. *See id.*

8    <u>Factor 8</u>, the reaction of the Class Members, also strongly favors the settlement. The

9    "absence of a large number of objections to a proposed class action settlement raises a strong

10   presumption that the terms of [the settlement] are favorable to the class members." *National Rural*

11   *Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). In this case, another

12   exceptionally strong indication of the fairness of the settlement is that so far there have been no

13   requests for exclusion or objections submitted by Class Members.

14   Finally, this settlement raises no adequacy concerns like those in *Radcliffe v. Experian Info.*

15   *Solutions*, 715 F.3d 1157 (9th Cir. 2013). *See* Fee Mtn., pp. 18-19.[8] There, when several named

16   plaintiffs disagreed with a proposed settlement, class counsel withdrew from their representation,

17   and had different named plaintiffs execute a settlement agreement that provided for service awards

18   only to those "serving as class representatives in support of the Settlement." *See id.* at 1162. The

19   Ninth Circuit held that such "conditional incentive awards" created a structural conflict that rendered

20   the class representation inadequate. *See id*. at 1164-65, 1168. Here, the Settlement Agreement does

21   not provide for conditional incentive awards, and Class Counsel never otherwise sought to use

22   incentive awards to pressure or bribe class representatives to accept the proposed settlement. *See*

23   Loeser Decl. ISO Fee Mtn. (Dkt. No. 225), ¶¶ 20-21; Guerrero Decl. (Dkt. No. 200), ¶ 8.

24   **2.    Class Notice satisfied Rule 23 and due process.**

25   The Class Notice satisfies Rule 23 and due process in this case. Under Rule 23(e), a "class

26   action shall not be dismissed or compromised without the approval of the court, and notice of the

---

[8] *Radcliffe* is discussed in greater detail in the Fee Motion.

1  proposed dismissal or compromise shall be given to all members of the class in such manner as the

2  court directs." Fed. R. Civ. P. 23(e). Under Rule 23(c),

> the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Here, in accordance with this legal standard, the Court approved the form and plan of Class Notice in connection with its preliminary approval of the settlement. *See* Prelim. App., pp. 5-6. The Settlement Administrator has now conscientiously completed implementation of the same. *See* Solorzano Decl., ¶¶ 7-18. The Settlement Agreement, moreover, further safeguards due process because it excludes Class Members "whose Class Notices … [were] … returned as non-deliverable" from the release. *See* Settlement Agreement, ¶ 55. Thus, the best practicable notice to the Settlement Class has been achieved, and due process satisfied.

**B.     The Court Should Approve the Plan of Allocation**

The Court should approve the planned allocation of the net settlement proceeds among the Class Members because it too is fair, reasonable, and adequate. Approval of a plan to allocate settlement proceeds is governed by the same standard for approving a settlement as a whole. *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002). "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 16, 1994). Here, the planned allocation is reasonable because its design and effect is to (1) provide all Class Members with shares of the settlement fund that are

1  proportionate to their damages claims to the extent possible, and (2) maximize the distribution to

2  the settlement class. *See* Settlement Agreement, ¶¶ 18-29; Loeser Decl., ¶ 7.

3  **C.     The Court Should Approve Habitat For Humanity as *Cy Pres* and/or Designate Others**

4  The Settlement Agreement stated that any residue from the Net Settlement Fund would be

5  escheated to the State of California. However, the Court expressed its desire for the parties to

6  designate instead a non-profit that does work in the housing sector. The parties met and conferred

7  and agreed, subject to Court approval, to designate as *cy pres* Habitat For Humanity. Habitat For

8  Humanity is a non-profit organization that the parties selected based on its housing related mission

9  and involvement in providing assistance after floods. *See* www.habitat.org/disaster. The Court

10 should approve this candidate which has been agreed upon by the parties.

11                                    **V.     CONCLUSION**

12 For the reasons set forth above and in the Fee Motion, Plaintiff and Class Counsel

13 respectfully request that the Court enter the single proposed order and judgment submitted

14 herewith granting final approval to this Settlement as requested herein.

15 DATE:    July 16, 2014                      Respectfully submitted,

16                                              **HAGENS BERMAN SOBOL SHAPIRO LLP**

17
                                                By:    */s/ Thomas E. Loeser*
18                                              Steve W. Berman
                                                Thomas E. Loeser (Cal. Bar No. 202724)
19                                              1918 Eighth Avenue, Suite 3300
                                                Seattle, WA 98101
20                                              Telephone: (206) 623-7292
                                                Facsimile: (206) 623-0594
21                                              E-mail:  steve@hbsslaw.com
                                                E-mail:  toml@hbsslaw.com
22
                                                *Class Counsel*

MOT. FOR MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT CASE NO.: 12-04026-WHA - 11
010387-11  702537 V1

**CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2014, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via electronic mail to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

*s/Thomas E. Loeser*
Thomas E. Loeser

## Mailing Information for a Case 3:12-cv-04026-WHA Lane et al v. Wells Fargo Bank NA

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Steve W. Berman**
  steve@hbsslaw.com,heatherw@hbsslaw.com

- **Jeff D Friedman**
  jefff@hbsslaw.com,jeanethd@hbsslaw.com,sf_filings@hbsslaw.com,ronnie@hbsslaw.com

- **Matthew C Helland**
  helland@nka.com,assistant@nka.com

- **Laura R. Jacobsen**
  lrj@severson.com,jc@severson.com,co@severson.com

- **Sheri L. Kelly**
  slk@sherikellylaw.com

- **Thomas Eric Loeser**
  toml@hbsslaw.com,dawn@hbsslaw.com

- **Angela Mann**
  angela@wagonerlawfirm.com

- **Sean R. Matt**
  sean@hbsslaw.com,carrie@hbsslaw.com

- **Alexander Phillip Owings**
  apowings@owingslawfirm.com

- **Steven A. Owings**
  sowings@owingslawfirm.com

- **Kai Richter**
  Krichter@nka.com,assistant@nka.com

- **Michael Jan Steiner**
  mjs@severson.com,sc@severson.com

- **Jonah Sampson VanZandt**
  jvz@severson.com,lrj@severson.com,jc@severson.com,adt@severson.com

- **Jack Wagoner , III**
  jack@wagonerlawfirm.com,keith@wagonerlawfirm.com,niki@wagonerlawfirm.com,christine@wagonerlawfirm.com,angela@wagonerlawfirm.com

- **T. Brent Walker**
  bwalker@walkerlawplc.com,pmcgraw@carterwalkerlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)